**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

_____

**Nadine Gazzola**, individually, and as co-owner,
President, and as BATFE Federal Firearms Licensee
Responsible Person for **Zero Tolerance**            **Civ. No.:  1:22-cv-1134 (BKS/DJS)**
**Manufacturing, Inc.**; _et al._

      _Plaintiffs_

   _v._

**KATHLEEN HOCHUL**, in her Official Capacity as
Governor of the State of New York; _et al._

      _Defendants_

_____


**DECLARATION OF PLAINTIFF**

**CRAIG SERAFINI – UPSTATE GUNS & AMMO, LLC**

1.   I am Craig Serafini and I make this Declaration under penalties of perjury.  These

statements are true to the best of my knowledge, and are based upon my personal

knowledge and experience unless otherwise specified.

2.   I oppose all laws complained of in this case.  I submit this "Declaration" to bring forward

certain of my background, credentials, employment, licenses, and relevant experience.

I reserve the right to submit such further declarations, testimony, and exhibits as may be

necessary to support our claims.

3.   Footnotes within this document that provide citation of law are inserted by Counsel.

I attest that I am, independent of Counsel and prior to this lawsuit, familiar with such laws,

as stated, discussed, and argued herein.  Legal citations are being provided as a courtesy to

the Court due to the complexity of this case.

4.   I am not a "disqualified person," as this term is defined under 18 U.S.C. §922(g).

5.   I am the single member of "Upstate Guns and Ammo, LLC," a New York business.  The business premises is located in the Town of Niskayuna,[1] Schenectady County, New York.

6.   I am the "Responsible Person"[2] for a Federal Firearms License, Type-01, Dealer in Firearms.

7.   I have two comparable licenses from New York State, issued through Schenectady County.  One for dealer in firearms; one for gunsmith.

8.   I have also a NYS Sales Tax number for the collection and reporting of sales tax.

9.   In addition to my business inventory, I also own personal firearms of all types.[3]  And I have, since 2004, had an unrestricted concealed carry permit issued by Schenectady County.  My NY permit contains a complete listing of the handguns I currently, personally own.  I also have my concealed carry permit in several, additional states.

10.  Prior to September 1, 2022, Schenectady County required completion of a firearms safety course, modeled off the NRA 4-hour course, to apply for a concealed carry permit.  I took such the course as part of my application process.

---

[1] Please note that there is an error in the Complaint [doc. 1] at ¶12, top of page 6, of the location of the business.  It is not City of Schenectady; it is Town of Niskayuna. The County is Schenectady. [PAC]

[2] "Responsible Person" is defined by BATFE on Form 7, "Definitions," as "In addition to a Sole Proprietor, a Responsible Person is, in the case of a Corporation, Partnership, or Association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of the Corporation, Partnership, or Association, insofar as they pertain to firearms."

[3] Attorney of Record note:  I am not providing the detail level in these public documents as is available from the Co-Plaintiffs in the interest of their personal safety.

11.   I have used firearms for almost forty years, beginning when I was 10-12 years of age. Several cousins and uncles were avid hunters.  I've always had a strong instinct to protect my loved ones, as well.

12.   **FFL Dealer in Firearms.**  I started "Upstate Guns and Ammo" in 2014 out of my love of the industry and shooting sports.  My background is in sales.  I was not happy with the customer service at other FFL stores.  My value add is that I offer customers a refreshing personal experience.

13.   Many customers of Upstate Guns & Ammo are first time shooters and it's important to encourage their questions and to guide them to a firearm that both fits their physical person and also fits their goals.  We serve every manner of customer.  We have a wide ethnic and religious demographic among our customers.  Some drive up in expensive cars; others in broken-down jalopies.

14.   I sell handguns, AR/AK platform rifles, and traditional long guns, such as bolt-action rifles with wood stocks.  On average, during the past five years, more than 50% of my sales have been that AR/AK platform firearm.  It is generally considered to be the most popular firearm in America, so the sales distribution comes as no surprise.

15.   Approximately 30% of my gross annual revenue is from ammunition sales.

16.   I also sell 100% stripped lower receivers.

17.   I sell only what is referred to in the industry as "100% lower receivers" (a/k/a "stripped lowers").  This is a part made by a federally-licensed manufacturer which bears a factory serial number, model, caliber or gauge, manufacturer name, and, in the case of a domestic

manufacturer also the city and state, or, in the case of a foreign manufacturer, the country of origin and the city and state of the importer, all of which is required by federal law.[4]

    a.  I am familiar with the recent ATF "Final Rule,"[5] which set forth the agency's final definition of a "frame or receiver" for mechanical distinctions between an "80% lower receiver" and a "100% lower receiver."

    b.  I do not, nor have I ever, sold any "80% lower receivers."

    c.  I do not inventory or sell any unmarked lower receivers.

    d.  I was already in compliance with this ATF Final Rule prior to its issuance.

18.    I do not sell body armor.

19.    I also offer gun locks, firearms parts and accessories, and gun cleaning kits and supplies.

20.    And, I am approved by the NYS DEC to sell hunting and fishing licenses. The minimum age for a hunting license is age 12. For freshwater fishing, it is 16 years and older.[6] We sold such licenses from our opening until 2020. We intend to sell hunting and fishing licenses, again.[7] We enjoy working with the youth sporting population.

---

[4] See, 26 U.S.C. §5842(a), "Identification of firearms." See, also, 27 CFR §478.92 for corresponding regulations and 27 CFR §479.102 relative, specifically, to markings for NFA firearms. Further, under 18 U.S.C. §922(k) it is illegal for a firearms dealer to knowingly sell a firearm with a serial number that has been removed, obliterated, or altered.

[5] See ATF "Final Rule 2021R-05F," "Definition of "Frame or Receiver" and identification of Firearms," at https://www.atf.gov/rules-and-regulations/definition-frame-or-receiver/summary.

[6] Official New York Department of Environmental Conservation website, "Sporting Licenses," then click-through under "License Types, Fees & Descriptions" for age requirements, found at https://www.dec.ny.gov/permits/365.html.

[7] Please note that the pause in sales of the licenses is unrelated to this case. In 2020, the NYS DEC changed third-party vendors for equipment and application support and this resulted in technical problems of which the DEC and the vendor are aware.

**Immediate Business Impact:**
**Generally**

21.    My initial thoughts upon reading the new laws: *it's a clear violation of my civil rights as an individual to earn a living in this country. I'm running a legitimate business and I'm entitled to do that without this kind of undue government interference.*

22.    As each day after September 1, 2022 went by, the larger truth sunk in: *if I can't do something to stop these laws from going into effect, I am probably not going to make it much longer than December 31.* I won't be in state compliance, for one. But, I also won't be able to sustain the daily losses my business is already suffering. Right now, it's costing me money every day that I stay open. That's how depressed customers and sales have become across-the-board, not just firearms. They're scared of committing a crime. I'm afraid of making a mistake and getting charged with a crime. And I'm adding to this dynamic by participating in this lawsuit, which makes me nervous about becoming the target of (let's call it) "special attention" from the Defendants, whether for inventory audits or drop-ins.

**Immediate Business Impact:**
**(1.) Mandatory Statewide Training Fiasco**

23.    Historically, New York State has not required any (zero) firearms training as part of a concealed carry permit. In general, the concealed carry licensing system was left to a sort of "home rule" where the County Clerk and the County Sheriff, and possibly some judges, would arrive at an approach and would publish those requirements and forms, they'd get out into the communities and speak at different events, and you'd see the County Clerk's Office at local gun shows to process handgun coupons and license amendments and

deletions, and county officials were readily available for questions and to ask questions of FFLs.

24. The bottom line is that the Defendant NYS Police has not published a standardized training curriculum of 16 hours in length, it has not published a test, it has not specified who will administer and grade the test, and there isn't a meaningful way to submit questions for further guidance to common questions circling around the live-fire training component.

25. The Defendant NYS Police/DCJS memo[8] (dated August 23, 2022) is not a "curriculum" as this word is generally used in an educational sense.

26. Continuing with our particulars, I do not, myself, teach the NRA firearms safety course or any live-fire training. Prior to September 1, 2022, I referred customers to a husband/wife team who taught a firearms safety training course to qualify for Schenectady County and surrounding county applications for concealed carry permits.

   a. By "surrounding counties," I mean Albany County, Columbia, Rensselaer, Warren, Washington, and Fulton Counties.

      i) Saratoga County previously required an in-county instructor of this course.

      ii) Montgomery County Sheriff's Department did a paperwork training class of their own design. No additional training was required.

   b. The course was offered monthly. Approximately 30 people came in to train per month. The cost was $100/person.

---

[8] NYS Division of Criminal Justice Services/State Police, "Minimum Standards for New York State Concealed Carry Firearm Safety Training" (Issued August 23, 2022) at https://troopers.ny.gov/system/files/documents/2022/08/final-nysp-dcjs-minimum-standards-for-firearm-safety-training-8-23-22.pdf.

27. Many of these students became customers of my store. This is another form of lost revenue for the business, as well as a loss of Second Amendment rights for individuals.

28. I, too, will have to complete such a course. I became aware this past week of a course being offered from a third-party vendor, advertised as "CCIA Complaint." I don't know what that means or who determined "compliance." It is an advertising flyer that includes an NRA logo, but I'm not aware of any such approved course being issued by the NRA, which, presumably, would require a NYS Police & NRA partnership to satisfy statutory terms.

29. I need to know that such an investment of time and moneys will actually satisfy the new laws. I have an unrestricted concealed carry permit in good standing since 2004. I do not want to risk reliance on a course that subsequently is rejected or is somehow retroactively rejected, which then tumbles into a "lapse" of my license.

30. There is active disarray in the surrounding area at the County level. Even within the past week, Schenectady County changed their website-published guidelines. It now includes "approved instructors." There is no definition from the County for their use of this term. Does that mean the Defendants are leaving it to private companies to individually come up with a course that they can sell? Does it mean individual vendors submit their materials to the Defendants for approval? Neither can be right as against a plain reading of the statute.

31. Also, I am understanding that Schenectady County has created a "legacy permit" where the previously-approved course will qualify for a restricted permit. I am unaware of a carve-out for restricted permits in the new laws.

32. This, surely, must be the epitome of "void for vagueness." I ask it to be struck down. A fundamental right cannot be allowed to be treated in such a vague and haphazard manner by the Defendants.

**Immediate Business Impact:**
**(2.) Loss of Revenue from Ammunition Sales.**

33. The new laws are considerably worse than the "SAFE Act." This has gone beyond the effect of the "SAFE Act" targeting firearms. Now, the Defendants are targeting a class of people, namely, anyone who has an interest in exercising their Second Amendment rights and, more specifically, dealers in firearms.

34. There is just no history that I've ever heard of that put the American or State government into parsing out boxes of ammunition – or even black powder – to its citizens. It was threatened under the "SAFE Act," but not put into practice. We were told an agreement was reached under Governor Cuomo that it wouldn't go forward as of 2019.[9] Then, Defendant Gov. Hochul announced she was ripping up the "Memorandum of Understanding" and repassing the same law.[10]

35. As I understand it, the new ammunition background check is coming in three waves:

- First, the dealer must write down the name, address, and occupation of anyone buying ammunition, along with ammunition information;[11]

---

[9] "Memorandum of Understanding," signed by Operations Director Jim Malatras on behalf of Governor Andrew Cuomo and NY Senate Majority Leader John Flanagan, attached as an Exhibit.

[10] Official website of the Governor of New York, "Governor Hochul Signs Landmark Legislation to Strengthen Gun Laws and Bolster Restrictions on Concealed Carry Weapons in Response to Reckless Supreme Court Decision" (July 1, 2022) available at https://www.governor.ny.gov/news/governor-hochul-signs-landmark-legislation-strengthen-gun-laws-and-bolster-restrictions.

[11] NY Pen §400.03(2).

- Second, if Defendant NYS Police can pull it off, then the ammunition background check piggy-backs into the federal NICS background check system;[12]

- Or, version "B" of "second," if not allowed to be part of NICS, then the Defendant NYS Police must create an electronic ammunition background check system, announce its completion, and then dealers will have to use the State system.[13]

36.   The first step of dealers writing down personal information is already effective and underway, even though the Defendant NYS Police have failed to approve any "form" for this information. The second step, as far as NICS is concerned is a non-starter because it is illegal under federal law, with two exceptions, for the NICS system to be used for anything other than the firearms purchase background check of the customer standing across the counter at the FFL.[14]   That moves us on to the "creation," if you will, by the Defendant NYS Police of a new, statewide, electronic ammunition background check system to be used by both dealers and sellers of ammunition.

37.   May I simply say how frustrating it is to watch one Governor and then another make the same, fundamental mistake about federal firearms compliance law? The Governor is a lawyer. So was Governor Cuomo. The lawyer is also surrounded by State government lawyers. In fact, if we listen to her speeches and read her press quotes, she's surrounded by an entire team of lawyers, including lawyers at the "Giffords Law Center" and "Everytown for Gun Safety." Does no one Defendant bother to review existing law prior

---

[12] NY Pen §400.03(6).

[13] NY §400.00(2).

[14] See, 28 CFR §25.6(a) ("FFLs may initiate a NICS background check only in connection with a proposed firearm transfer as required by the Brady Act.") and 28 CFR §25.11(2) (penalties for unauthorized use).

to interjecting another one, and a repeater of illegal by virtue of federal pre-emption one at that?

38. And, yet, here we go again.  The FFL dealer is the person who is face-to-face with the public, being asked *why?*  Why is this happening to us in New York, *again?  Gee Craig, if you're right, how can all these lawyers be getting it wrong on something so basic?*  My question to the Court is what am I supposed to say in response?

39. We are having to embark on this complicated lawsuit where even I have to work with two attorneys – both Paloma and also my business attorney – to try to make sure I am correct in the position that I am taking and in how I am running my business.

40. So imagine, if you will, Your Honor, that I own a small retail shop, designed from inception to welcome everyone from novices to experienced shooters, hunters, and sports enthusiasts, alike.  We do lots of hands-on in a one-to-one with our customers.  We answer lots and lots of questions, including sharing our basic understanding of the requirements and hoops that we and our customers have to go through to achieve the exercise of our collective, fundamental Second Amendment rights and our simple recreational interests.  We encourage lawfulness at every turn.

41. In general, people understand the nature and purpose of the NICS background check for the purchase of a firearm.  Lots to discuss, philosophically, but people get it.

42. But: the ammunition purchase interrogation?  *Why the SAR license?  Why 18 hours of training?*  And I don't have an answer.  Customers come in with a smile and go out disappointed that their rights are being denied.

43.  The Bills were rushed through the Legislature because the Defendant Governor Hochul whipped up "emergencies."  She brought the Legislature back after the close of regular session and then kept them in session into the wee hours of the night.  She ran back and forth to the microphone and the TV and the newspaper reporters and she and her team traveled across the whole state to trumpet the "red flag" and "CCIA."

44.  Oddly, the Defendants' messaging included the fiction that "nothing had changed for hunters."  An entire dichotomy was spun by the Defendants that the *NYSRPA v. Bruen* Decision created a crisis in handguns into the hundreds of thousands flooding our streets as a result.  Blended in that narrative were two things – it didn't effect hunters and it didn't effect the Adirondacks because those 6 million acres aren't actually a "park."

45.  Didn't effect hunters? Am I incorrect or am I not required to collect ammunition sales data as a precursor to an ammunition background check?  Is there not a new semi-automatic rifle license requirement?  Or an 18-hour training prerequisite for concealed carry permits, to name the top three?  Semi-automatic hunting rifles date bac to the very early 1900s.  As with the now-compulsory training for the concealed carry permit and the soon-to-be training for employees, New York State has no history of regulatory action in these spheres.

46.  Attached as an Exhibit to this Motion is a print-out of the NYS DEC website pages of "FAQ" on the new laws.  I will highlight just one example of the misleading positioning, which is the "Ammunition Purchase" question and answer, which references only the potential of a "future" NICS or NICS-style background check for an ammunition purchase. It says nothing (zero) about my current statutory obligation to collect ammunition sales data about every customer.

47.   Sadly, the same DEC "FAQ" ends with "Other," softly selling that under-18s must be "restrict[ed]" by me, unless accompanied by a parent/guardian.  It reads "To accommodate people under 18 who are seeking a sporting license, we recommend sales be in an area of the store accessible to all."  My store is accessible to all without discrimination, including discrimination based upon age.  Shooting sports, hunting, fishing – these are all inter-generational, heritage activities.  These must not be allowed to be broken down or turned into something negative.

48.   At no point have the Defendants stood and taken ownership to the public that the package of ten Bills will result in a tectonic shifting of the plates beneath our feet and that the new laws impacting dealers could result in the end of the supply chain of firearms and ammunition for anyone whose primary residence is New York.  It is as if the Defendants would erase the Second Amendment, and us along with it, if they could.

49.   It's not an exaggeration to say that without a TRO, you're about to witness the closing of gun stores across this State.  Even if Mr. Lee Zeldin wins the election, he won't be sworn in until January and our first monster deadline is December 5, followed by December 31.

50.   At that point, assuming my starting point is to remain in compliance with federal law and to refuse to comply with the new state laws, I will commit multiple felonies and misdemeanors.  At the moment I do not send in the new annual certification of compliance to the Defendant NYS Police, I will have waived my Fifth Amendment right against self-incrimination.  To not comply will, at the least, result in the inability to renew my State

license, if not its immediate suspension.  That will, at the least, shut down my business. I cannot operate with only a federal FFL in a state requiring also a state license.[15]

51.    How does this diatribe relate to my lead concern over the ammunition background check? It's all about the little steps already in effect that are conditioning us and our customers and those who simply support the Second Amendment that the Defendants are going to systematically strip our rights and turn us into criminals because of our belief in the Second Amendment.

52.    When the "SAFE Act" passed, Governor Cuomo brought in a provision of requiring registration of an "assault weapon."  There is no such thing, either technically speaking or as a matter of federal law.  The "assault weapon" a construct of a creative politician.  That one provision was simple.  Platform.  Critical parts.  Accessories.  Take off the bling, no matter how functional, no matter whether it made your shot more accurate, no matter whether it compensated for your smaller body type or strength, no matter whether it accommodated your disability.  Strip it down and keep your gun.

53.    For sure, there was a palpable resistance.  Less than 45,000 people registered their unmodified firearm in order to keep it in tact.[16]  An entire segment of the gun community made choices that turned law-abiding men and women, overnight, into felons.  The new dynamic was born of people quietly protesting, sometimes asking at town halls and public meetings that law enforcement not enforce the "SAFE Act."  The concerns have stretched

---

[15] 18 U.S.C. §923(d)(1)(F).

[16] Karlin, Rick, "New York SAFE Act gun registration numbers are released" Times Union (June 22, 2015) at https://www.timesunion.com/news/article/New-York-SAFE-Act-gun-registration-numbers-are-6343080.php.

into years of the "assault weapons ban" rarely being heard of as a charge upon arrest, prosecution, or conviction as a stand-alone crime.

54.   Now, by contrast to the fall-out from the "SAFE Act," what you now have are gun shops turning into ghost towns.  People don't want to give their name and personal information out every time they buy a box of .22 caliber to go to the range to practice or .308 because they're buying a hunting license for this year's trophy deer.  They're not criminals and they refuse to be treated like one.

55.   I don't blame them.  I, myself, haven't purchased any ammunition since the new law went into effect.  I'm leading in this section in my role as an FFL, but I also wish to remind the Court that my individual rights are being violated, as well.

56.   Most gun guys, if we're honest, have enough ammo to go through this hunting season and still kill the deer that puts meat in the freezer for the winter.  Some people reload, and perhaps more will now take it up, including myself.

57.   But, in the meantime of taking an attitude of waiting out this year's election results and using some of ammo reserves or simply taking a fall leaf drive to Pennsylvania, myself and the other Plaintiffs are trying to keep the lights on.

58.   It may not seem like much – a box of ammo – and maybe this one thing, taken in isolation if no other law had been concurrently passed --  But that's what I imagine to be some kind of law school hypothetical.  This one, "little" law passed in a blur of Bills, from which we're challenging 31 laws, hitting 20 discrete areas of business operations, are hitting FFL dealers because of these Defendants.  It's wrong on so many levels, starting with federal law and moving through the Bill of Rights.

**Immediate Impact of the New Laws:**
**(3.) Licensing Requirements Stall-Out of a County-Level Operating System**

59.     The principal problem with the training mandates for permit applications and also for the question of the semi-automatic rifle license is that the Defendants put laws on the books in such a rush and with so little coordination that the Counties are left in their individual silos of trying to figure out how to revise entire licensing schemes that are operating at the County – *not the State* – level.   That Defendants have then not done what they were supposed to do and say things that don't square up to the laws as written is only making matters worse.

60.     As to the SAR license, an application must be submitted and an appointment must then be made to personally go to the Schenectady County Clerk's Office.   The County website .pdf instructions page says "We will be processing amendments on a first come, first served basis."[17]

61.     If a person does not have a concealed carry license, then he or she must submit a new application to obtain an SAR license.   The new application includes a full permitting scheme, beginning with "The applicant must demonstrate: good moral character, which shall mean having the essential character, temperament and judgment necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others."[18]

---

[17] *Supra*, at https://www.schenectadycounty.com/sites/default/files/2022-09/SemiAutoAmendment%20092022.pdf.

[18] *Supra*, at https://www.schenectadycounty.com/sites/default/files/2022-09/Pistol%20Permit%20Instructions%20revised%20%28Sept2022a%29.pdf.

62. I am not aware of any person having applied for or having received a new semi-automatic license as of the date of signing this "Declaration." No customer has come into my store and shown one to me.

63. I am thus in a quandary over what to do about any sale of a semi-automatic rifle, even to a person with a pre-existing concealed carry permit with the new "endorsement" from Schenectady County Clerk's Office stamped on the back. And that doesn't mean it's the same thing any other of eight counties is going to do today or even next week.

64. We need an immediate TRO and a ruling that the law is void under *NYSRPA* or void for vagueness. It's just too much to ask to operate in this environment with a risk of felony criminal charges for a mistaken sale.[19]

**Impending December 5, 2022 Impact:**
**Federal Pre-Emption and Fifth Amendment Necessitated TRO**

65. I cannot, in accordance with federal law, send any of my federal firearms compliance records to the NYS Police, nor can I open my books to the Defendants, other of the Defendants' agencies, or third-parties even if it is a manufacturer of a firearm in my inventory and in my A&D Book. This is what is being demanded under the new State laws.[20]

66. My records are created under federal law for very specific purposes. They belong to me, they determine my ability to maintain my federal license, and I am not interested in

---

[19] NY Pen §265.66.
[20] NY Gen Bus §875-f.

running afoul of federal law.[21]  We need the Court to strike down the new state records requirements and authorities, as quickly as possible, preferably on or before December 5, 2022.

67.    The Defendants provide State licensees, like myself, zero (no, none) information regarding changes in law or implementation.  I have no communication from or with them.

68.    I am friends with the local County Clerk and I regularly talk to him to share information and identify questions in new laws, policies, seminars, publications, and best practices.  I do not know the Sheriff, personally, but some of the Deputies call us or stop in and ask our opinions and share Department updates.

69.    There is a large, black hole between State and County government officials that directly impacts County employees and that directly impacts me and my business.  Essentially, the new State mandates are pass-throughs from the Defendants to County officials who actually process information and issue licenses and to my shop, which collects information for BATFE, while operating in conjunction with the County and individual customers with County-issued licenses.

70.    A significant difference from the ATF to the Defendants is the publication of "proposed rules."  The ATF publishes a draft of a rule with a meaningful comment period.  The ATF then compiles all comments, considers, potentially publishes an "amended, proposed rule," taking even more comments, and ultimately publishes a "final rule."  It's a transparent

---

[21] 28 CFR §25.11(b).

process that tends to generate a lot of paper that I can go back to if I have a related question. The Defendants do none of this.[22]

71.    The ATF is also prolific at publishing pamphlets, booklets, PowerPoint presentations, offering Webinars, building resources on its website, publishing statistics over the course of many years, even publishing the entire directory of every FFL in the U.S. All mandatory forms are available for free through their website. The website is set up well and runs well. The NICS background check functions in split seconds, and has a live person at the end of the "800" number who is a skilled operator. The Defendants do none of this.

**Impending Impact:**
**(2.) NY-NICS-POC**

72.    The Defendants are now insisting that they want to take over as lead on firearms background checks and to marginalize the ATF and the FBI and their role, systems, and technology. The new laws contain no data retention parameters.[23] The new laws allow up to 30 days to respond to a background check. The new laws allow for the construction of "databases" (undefined) and appear to allow the merger of unrelated databases to create a distorted permissive grant style of approval of a purchase.[24]

73.    If these new laws, in combination, are allowed to continue, the Defendants will have no restraints on their data amalgamation as it relates to existing and new gun owners in a very Orwellian sort of way. It appears that a request would go in to the Defendants from a

---

[22] Defendant NYS Police is exempted from New York State <u>Register</u> and the public rule-making process.

[23] See, e.g., 28 CFR §25.9, "Retention and destruction of records in the system."

[24] NY Exec §228.

dealer for a background check and it would trigger a Defendant NYS Police officer to run a database check of all records available of any type, respond at some point within thirty days, and then restrict the customer to an internal, administrative appeal. None of these systems are up and running. We're not only on hold as to when or whether it will happen, we're waiting to learn the pricetag. The Defendants gave themselves a blank check to explore the possibility of illegal and unconstitutional take-over of every gun and ammunition purchase in New York.

74. Congress was clear: records cannot be used to build a gun registry by any level or form of government under the domain of the Firearms Owners Protection Act. [25] The U.S. Supreme Court was clear: the Second Amendment is a fundamental right.

75. The Defendants must be stopped.

**Impending December 5, 2022 Federal Pre-Emption Issue:**
**(3.) FFL Shipping Requirements Necessitated TRO**

76. One phrase from the new laws is in direct conflict with federal law. It's not even a law. It's a phrase. An invitation to more than 1700 FFLs across New York to make something up as part of a "security plan."

77. Under federal law, the shipping FFL is liable for the firearms through the point of delivery. The shipper determines the shipping company, makes payment to the shipper, and bears responsibility for all reporting requirements to local and federal authorities in the event a shipment is lost or stolen, and bears responsibility to complete the ATF Form 3310.11. [26]

---

[25] See, 18 U.S.C. §926 and 28 CFR §25.11.
[26] See, 18 U.S.C. §923(g)(6) and 27 CFR §478.39(a). Form attached as an Exhibit to this Motion.

78. It's the shipping FFL who makes the physical examination of the firearm and records the book in his A&D Book. I do not record that firearm into my inventory until and unless I actually receive it and examine it, for myself.

79. Any theft or loss is required to be reported to the ATF by the FFL within 48-hours, including notification by the shipping FFL in the event of in-transit theft or loss.[27]

80. The new law vague reference to "shipping" adds nothing to a uniform system in place, functional, and governing nationwide inter-state commerce.

81. This is a direct conflict between federal and new state law. Federal law must prevail, particularly in the interest of inter-state commerce.

**Impending December 5, 2022 Federal Pre-Emption Issue:**
**(4.) Vendors with Criminal Records Requires a TRO**

82. The new laws require a third-party vendor be hired and paid for by the dealer in firearms. The "qualifications" of the alarm license company includes that the employee can have a criminal record.[28] An FFL is prohibited at federal law from hiring an employee with a criminal record.[29] Such a person is a "disqualified person" at federal law and is prohibited from ownership or possession of a firearm.[30]

83. The new law must yield to the federal prohibition. I am not willing to violate federal law to give a vendor, potentially with a criminal record, access to the daily security operations

---

[27] Again, reference to 18 U.S.C. §923(g)(6) and 27 CFR §478.39(a).

[28] NY Gen Bus §875-b(2), read with NY Gen Bus §69-o(2).

[29] 18 U.S.C. 922(h).

[30] 18 U.S.C. §922(g); sale prohibited 18 U.S.C. §922(t).

of my business.  I cannot be expected to screen every potential company employee the Defendants have given the right to operated under a "license."  The qualifications are insufficient to operated in the FFL environment.

### Impending December 5, 2022 Constitutional Regulatory Overburden:
### <u>The List is Long -</u>

84.   I say all of this, and there's still a long list of additional provisions, all of which I oppose and request be stopped.

85.   **<u>Opposition to No Employees Under Age 21.</u>**  Top of this list is not allowing any employees under age 21.

a)   My son,[31] who is 20-years old, is my best employee.  He has worked at Upstate Guns and Ammo since his high school graduation.  He's now not allowed by buy a semi-automatic refile, cannot get a permit, and isn't permitted to continue in his chosen profession.  And he is now facing unemployment – from me having to lay him off – as of December 5, 2022.  He does not turn 21 for more than half a year.

b)   My next eldest, my 15-year-old, loves the shop.  He loves hunting and shooting sports and firearms.  He thrives in the customer environment, and enjoys sharing his ow knowledge of firearms.  I can see where he might be the one to grow into the family business.

---

[31] Attorney note:  we are not including names of Plaintiff's children in public documents, including not including their dates of birth.  Counsel has queried Mr. Serafini.  The information is available to submit *in camera,* if requested.

c) Equally, I want my youngest, my middle school age daughter, to be at the shop with us. She may be younger, but family really matters to us. Both boys have participated in youth shooting sports activities. My middle son is currently involved with a high school-based group, and myself, my eldest, and extended family are all involved and helping with coaching.

d) I'm a first-generation US citizen of immigrant parents. I grew up a shop kid, and my two best friends were other shop kids. I want my children to have this opportunity.

86. **Opposition to Persons Under 18 From Entering Shop**. Under the new laws, the Defendants are literally banning middle and high school students from grabbing their tackle boxes, walking up to a neighborhood FFL shop to grab their license, and then walking over to the local stream or pond to go fishing. What else can I even say about that?

87. **Opposition to "security plan" provisions**. My business premises is my safe: it's a building with bars, alarms, cameras. There is no ability to import physical vaults into the shop. Not even a local bank could maintain a vault that large. I am a small store with a high value inventory. Handguns are displayed in locked cases. Long arms are racked.

88. My only affordable work-around for the 2-year video surveillance storage requirement is to take my existing high-resolution cameras and put in the cheapest drives to reduce the storage space and remove any excess cameras. The irony here is remarkable: a security company employee can be 18-years old. I can't have my own son work in our family business, but I am told to hire a stranger under the age of 21?

89.  **Opposition to Open-Ended Authority for the NYS Police**.  The Defendants are not meeting their currently-assigned responsibilities under the new laws.  No Executive Branch law enforcement agency should have open-ended discretion to self-publish its own rules, particularly as concerns a fundamental constitutional right.

90.  **Opposition to Open-Ended Right of Entry**.  Similarly, the new laws include another open-ended power that the Defendant NYS Police may come on site for unspecified purpose "no less than" once every three years.  This provision is a sharp contrast to the carefully-structured federal provision that governs ATF on-site firearms inventory reconciliation audits.  That provision limits (so a maximum, rather than a minimum) the on-site inspection to once every twelve months and for purposes of an inspection.  The exceptions are express and well-understood: a judicial warrant in a criminal case or a trace leading to the FFL.  The legislative purpose is defined and orderly.  The audit is carried out in that fashion.  The mutual expectations are defined, both parties are prepared, we meet, and get feedback.  We pass our inspections.

### The Out-of-Business Scenario

91.  I don't want to go out of business.  I'm excited about what I'm doing.  My customers are excited about the community spirit my employees and myself are creating.  I like to learn new things and share that with others.  I started this business after the "SAFE Act" was passed.  I've made it nine years.  And I especially don't want to be driven out of business because of the Defendants' politics.  Our Supreme Court has issued one ruling after another from *Heller* to *MacDonald* to, now, *NYSRPA v. Bruen,* and has done so under both Democrat and Republican Presidents and with Republican majorities and Democratic majorities in Congress.  I want to be part of that kind of steady-as-we-go.  Safety has no

political affiliation. It's an individual right. We, in America, should be able to transcend and respect at least this much about each other.

92. The Defendants' blatant disregard for the rule of law and demonstrated disrespect to the judicial branch of our government is contrary to everything I learned in school about our system of governance and why it has created the greatest country in the history of the world. I don't read or follow all of the court decisions issued and I'm not an attorney. But I know that we must come together in an organized manner, and use the processes available in each branch of government to work our way through this current crisis of laws. The first step begins right now in this Court. Thank you for your consideration of and involvement in our case.

Dated: November __5__, 2022

Craig Serafini, individually
and as the Owner of Upstate Guns and Ammo, LLC
an FFL-01, Dealer in Firearms