## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

_____

**Nadine Gazzola**, individually, and as co-owner, President, and as BATFE Federal Firearms Licensee Responsible Person for **Zero Tolerance Manufacturing, Inc.**;

**Seth Gazzola**, individually, and as co-owner, Vice President, and as BATFE FFL Responsible Person for **Zero Tolerance Manufacturing, Inc.**;

**John A. Hanusik**, individually, and as owner and as BATFE FFL Responsible Person for d/b/a **"AGA Sales"**;

**Jim Ingerick**, individually, and as owner and as BATFE FFL Responsible Person for **Ingerick's, LLC, d/b/a "Avon Gun & Hunting Supply"**;

**Christopher Martello**, individually, and as owner and as BATFE FFL Responsible Person for **Performance Paintball, Inc.**, d/b/a **"Ikkin Arms,"**;

**Michael Mastrogiovanni**, individually, and as owner and as BATFE FFL Responsible Person for **"Spur Shooters Supply"**;

**Robert Owens**, individually, and as owner and as BATFE FFL Responsible Person for **"Thousand Islands Armory"**;

**Craig Serafini**, individually, and as owner and as BATFE FFL Responsible Person for **Upstate Guns and Ammo, LLC**; and,

**Nick Affronti**, individually, and as BATFE FFL Responsible Person for **"East Side Traders LLC"**; and,

**Empire State Arms Collectors, Inc.**;

      **Plaintiffs**

  *v.*

**KATHLEEN HOCHUL**, in her Official Capacity as Governor of the State of New York;

**STEVEN A. NIGRELLI**, in his Official Capacity as the Acting Superintendent of the New York State Police;

**Civ. No.:  1:22-cv-1134 (BKS/DJS)**

**ROSSANA ROSADO**, in her Official Capacity as the
Commissioner of the Department of Criminal Justice
Services of the New York State Police; and,

**LETICIA JAMES**, in her Official Capacity as the
Attorney General of the State of New York,

      **Defendants**

_____

## MEMORANDUM OF LAW OF THE PLAINTIFFS

# TABLE OF CONTENTS

I.  Urgency of Achieving a TRO/PI Ahead of December 5, 2022 Against New State Laws Pre-Empted by Federal Law ~ *page 1*

    I.A.  Plaintiffs Cannot be Compelled to Transmit Copies of Their Federal Compliance Records to the NYS Police ~ *page 5*

    I.B.  All Offending Laws Must be Restrained and Enjoined Ahead of December 5, 2022 of Plaintiffs May Be Put Out of Business ~ *page 7*

II.  Urgency of Judicial Intervention to Correct Constitutional Violations Being Committed by the Defendants ~ *page 12*

    II.A.  Plaintiffs Must Not be Compelled by NYS Police to Waive Their Fifth Amendment Rights ~ *page 12*

    II.B.  Defendants are Violating Plaintiffs' Second, Fifth, and Fourteenth Amendment Rights Through Numerous Laws Affecting Concealed Carry Permitting, Semi-Automatic Rifle Licensing, and Ammunition Purchases ~ *page 14*

III.  Urgency of Judicial Intervention to Halt December 5, 2022 New Laws that Will Result in Constitutional-Regulatory Overburden and Cause Plaintiffs to Close Up Shop ~ *page 19*

IV.  Plaintiffs are Entitled to Extraordinary Relief Under *Winter v. Nat. Res. Def. Council* ~ *page 21*

**ARGUMENT**

**I.  Urgency of Achieving a TRO/PI Ahead of December 5, 2022**
   **Against New State Laws Pre-Empted by Federal Law.**

The Plaintiffs ask the Court to restrain and enjoin the thirty-one (31) statutes arising out of four New York Bills that impact, through illegal and unconstitutional means, some twenty areas of Plaintiffs' and business operations as Federal Firearms Licensees ("FFLs") in the lawful stream of commerce in firearms, as well as their individual rights.[1]  The inventory of the Bills and the offending statutes are laid out in the Complaint [1], Sec. IV, ¶¶27-32 (pp. 14 – 19).  The laws are again itemized on the face pages to this Motion.

The Plaintiffs are facing a hard deadline of December 5, 2022, the date on which all of the provisions from NY S.4970-A [Dkt. 1-3] become effective for NY-licensed FFLs.  In the interest of efficiency, perhaps the worst of the new laws for Plaintiff that goes live on December 5 is a mandate for Plaintiffs to certify to the NYS Police their compliance with all applicable New York laws, including all the new ones complained of in this litigation.[2] NY Gen Bus §875-g(b)(1).  Without immediate judicial relief in the form of a TRO ahead of December 5,

---

[1] *N.B.:*  there are several lawsuits already pending in New York federal courts, which are distinguished. [Dkt. pp, 37-38.]  Most recently, Preliminary Injunctions issued in two cases, as follows: *Antonyuk v. Nigrelli* (*"Antonyuk II"*), N.D.N.Y., case no. 1:22-cv-986, Hon. Glenn T. Suddaby; and, *Hardaway v. Nigrelli,* W.D.N.Y., case no. 1:22-cv-771, Hon. John L. Sinatra, Jr.  The Preliminary Injunctions issued following TRO decisions.

[2] See Plaintiffs' Complaint, pp. 15-19, n.11-27 for a best effort to set out effective dates and Defendant's deficiencies.  For purposes of this case, Counsel for the Plaintiffs sets out all arguments using the most conservative interpretation.  This approach is necessary because all mis-steps can be charged as crimes.  This is not a "regulatory" case.  Violations are not deterred through monetary fines of $50 for late filing, e.g.  The new laws treat NY-licensed dealers in firearms and gunsmiths as if they are "…a highly selective group inherently suspect of criminal activities." *Haynes v. U.S.,* 390 U.S. 85, 97 (1967).

Plaintiffs may well be out of business at the end of the day prior.  The Plaintiffs are unwilling to violate federal law to turn-over copies of their federal firearms compliance records to the Defendant NYS Police. NY Gen Bus §875-f; 18 U.S.C. §923.  This will result in the Plaintiffs falling out of compliance with new state laws in order to preserve their compliance with federal laws.  Plaintiffs will thus be faced with either the surrender of their NY license(s) as dealers in firearms and gunsmiths, or, the waiver of their Fifth Amendment rights.  Plaintiffs need immediate judicial intervention for a TRO and/or an injunction on this and all inter-connected laws complained of in this case.

Plaintiffs' rights are infringed in multiple capacities, giving them standing through several platforms.  All Plaintiffs are individuals, concealed carry permit holders, and gun owners.  Plaintiffs are business owners, operators, and employees, in the firearms industry.  Plaintiffs also hold Federal Firearms Licenses as the "Responsible Person" on such license, meaning they are accountable for compliance decisions and operations at their business.  Plaintiffs also hold related NY licenses for operation in this industry, under NY Pen §400.00.[3] [Declarations, *passim.*]

Plaintiffs should not have to sue as if they were split-personalities of "federal" versus "state" citizens, differentially as business owners and employees in the firearms industry.  The Plaintiffs are simultaneously federal and citizens in every sense of the Fourteenth Amendment: "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside."

---

[3] *N.B.:*  one Plaintiff is a gun show, "Empire State Arms Collectors," which hosts FFL vendors at an annual show in Rochester, New York.  No federal license is required for this purpose.

On June 23, 2022, when the U.S. Supreme Court released the Decision in *NYSRPA v. Bruen,* 597 U.S. _____ (2022) the final selective incorporation of a federal Civil Right achieved state-level maturity.  The individual with a New York primary residence should feel more whole and at peace, not less.  The federal and state rights of the Plaintiffs under the Second and Fourteen Amendments became one-and-the-same to defend themselves within and outside the home.  Any loss of Second Amendment freedoms "for even minimal periods of time" should now "unquestionably constitute irreparable injury," as it does for any loss of First Amendment freedoms. *Elrod v. Burns,* 427 U.S. 347, 373 (1976).  This status should also make protection of Second Amendment rights as *per se* "in the public interest" and the balance of hardships entirely one-sided because "the Government does not have any interest in enforcing an unconstitutional law." *Id; see, also, ACLU v. Reno,* 929 F.Supp. 824, 849 (1996).

But, for these Plaintiffs, there was no time to celebrate.  The Defendants were already underway in their plans to devastate the civil rights of any New Yorker with a concealed carry permit or wanting to purchase a semi-automatic rifle or ammunition... Or, having a federal and a state license to lawfully participate in the stream of commerce in firearms. [Dkt. 1, pp. 38-53.]

Because the Defendants' new laws are so extreme, Plaintiffs were forced, instead, to anticipate and make concrete decisions of non-compliance at the state rather than at the federal level.  The Plaintiffs would sooner surrender their state business license(s) than risk violating the responsibilities of their federal license(s).  [Declarations, *passim;* see, e.g., Fifth Amendment claims of Nadine Gazzola - ¶38; Seth Gazzola - ¶22; Serafini - ¶50; Mastrogiovanni - ¶35; Martello - ¶40; Affronti - ¶53; and Owens - ¶30.]

When challenging a law prior to its enforcement, "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a court of conduct arguably affected with

a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List,* 573 U.S. \_\_\_, 158-159, quoting *Babbitt v. United Farm Workers Natl Union,* 442 U.S. 289, 297 (1979).  *See, also, Hardaway, supra,* p. 7. The Supreme Court "generally [is] 'willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund.'" *Picard,* 42 F.4th 89, quoting *Cayuga Nation, supra,* at 331.

If judicial relief is not achieved, the Plaintiffs may be out-of-business as of end-of-day on December 4, 2022, a predicament detailed in the Declarations.  [See, e.g., Serafini - ¶22, "As each day after September 1, 2022 went by, the larger truth sunk in: *if I can't do something to stop these laws from going into effect, I am probably not going to make it much longer than December 31."*]

The Plaintiffs are true "New Yorkers."  Some born and raised here.  One the adult child of immigrant parents. [Serafini - ¶85(d)]  Others, raising their young families here. [Serafini - ¶85]  Staying because of grandchildren. [Hanusik - ¶30; Mastrogiovanni - ¶70.]  Veterans. [Martello - ¶6; Owens - ¶13.]  In the proverbial way that only a litigation attorney can express: the Defendants have my clients at a disadvantage for they will surrender before they will leave.

December 5 is only days away.  The danger of irreparable harm is imminent. *Reuters Ltd. v. United Press Intern, Inc.,* 903 F.2d 904 (2d Cir. 1990).  Already, the loss of ability of Plaintiffs to sell entire lines of merchandise, such as handguns and semi-automatic rifles, along with resulting injury to goodwill and reputation "as a dependable distributor," constitutes "irreparable injury." *John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.,* 588 F.2d 24, 29 (2d Cir. 1978).

That Plaintiffs may be forced to suspend or close their businesses, resulting in computational damages like lost wages and income, business valuation, and real property loss is of little consideration.  For a Plaintiff like John A. Hanusik of "AGA Sales," in business upwards to fifty years [¶6, ¶30], he will suffer an injury that "[could] never accurately be ascertained or compensated by money damages." *Dominion Bankshares Corp. v. Devon Holding Co.,* 690 F.Supp. 338, 348 (E.D.Pa. 1988).  For Plaintiff Nicholas Affronti, his small business, one of the last pawn shops in the entire State, "…is my dream." [¶87.]  How would the Court propose to calculate monetary compensation for that?

### I.A.  Plaintiffs Cannot Be Compelled to Transmit Copies of Their Federal Compliance Records to the NYS Police.

The collision of the new laws against core federal firearms industry values presents a go/no go decision for the Plaintiffs.  The new laws demand the Plaintiffs violate federal prohibitions against a state government grabbing federal compliance records from FFLs. NY Gen Bus §875-f.  Fortunately, Congress had the bi-partisan foresight fifty years ago, in 1968, to recognize the temptation the compliance records would elicit from those who, like the Defendants, would seek to misuse such records to quash such fundamental rights as those under the Second Amendment.  Congress knew federal firearms compliance records could be used to create a firearms and gun owner registry.  They passed the Gun Control Act ("GCA"), and followed it up in 1986 with the Firearm Owners Protection Act ("FOPA"). [Dkt. 1, pp. 27-30.]

Congress deemed the FFL to be the guardian of the records they create.  It is prohibited at federal law for Plaintiffs to surrender their records to the Defendants, including, but not limited to their "Book of Acquisitions and Dispositions" (referred to in industry as the "A&D Book", see

18 U.S.C. §923(g)(2)) and their ATF Form 4473 background check application forms. (See, "records" defined under 27 CFR §478.125(e) and §478.124, respectively.)

Congress prohibited all levels of government from accessing and amassing these records. 18 U.S.C. §926 and 28 CFR §25.11(b). Not even the U.S. Attorney General or BATFE are permitted to demand the records now demanded by the Defendants by turned over by Plaintiffs to the NYS Police.[4]

Congress wrote 18 U.S.C. §926 to prohibit the Defendants from seizing federal firearms compliance records from the Plaintiffs or any FFL, as follows:

> "**No** such rule or regulation prescribed after the date of the enactment of the Firearms Owners' Protection Act[5] may require that records required to be maintained under this chapter or any portion of the contents of such records, be recorded at or transferred to a facility owned, managed, or controlled by the United States or any State or any political subdivision thereof, **nor** that any system of registration of firearms, firearms owners, or firearms transactions or dispositions be established." (emphasis added)

The prohibition of Section 926 arises from the clear purpose and lasting intention of Congress that no firearms registry may ever be built by any level of government. This intention was captured in Gun Control Act ("GCA"), Sec. 101,[6] as follows:

> "The Congress hereby declares that the purpose of this title is to provide support to the Federal, State, and local law enforcement officials in their fight against crime and violence, and it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, personal protection, or any other lawful activity, and that this title is not intended to discourage or eliminate the private ownership or use of

---

[4] 18 U.S.C. §923(g).

[5] Firearm Owners' Protection Act, Pub.L. 99-308 (1986), amended GCA (1968).

[6] Gun Control Act, Pub.L. 90-618 (1968).

firearms by law-abiding citizens for lawful purposes, or provide for
the imposition by Federal regulations of any procedures or
requirements other than those reasonably necessary to implement
and effectuate the provisions of this title." (emphasis added)

The text of the statute is clear and pointed in its prohibition.  The purpose of the letter and

intention of the law is clear.  Federal law must pre-empt any state or local law to the contrary,

including those enumerated herein.

### I.B.  All Offending Laws Must be Restrained and Enjoined <u>Ahead of December 5, 2022 of Plaintiffs May Be Put Out of Business.</u>

As succinctly as possible, the following are the new laws requested to be restrained

and/or enjoined as a matter of federal pre-emption (herein "Group A – new laws").  Additional

details each new law is found throughout the Complaint and the Plaintiffs' "Declarations."

A.  Defendants' new law at **NY Gen Bus §875-f** – *effective December 5, 2022* – would

require the Plaintiffs to copy and transmit all entries from their federal A&D Book to the

Defendant NYS Police and must be enjoined and restrained down as pre-empted by federal law

at 18 U.S.C. §926.  The A&D Book is a federal firearms compliance tool and firearms tracing

tool.  It may be accessed only by the U.S. Attorney General or an ATF officer in two routine, yet,

specific circumstances: (1.) pursuant to a warrant in a criminal investigation of a person other

than the licensee; and, (2.) upon visual inspection during a routine inventory reconciliation

compliance check, where if any pages be copied by BATFE, the pages must also be furnished to

the FFL for their records. 18 U.S.C. §923(g)(1)(B) and 27 CFR §478.23.

There is, under 18 U.S.C. §923(g)(1)(A) and See, also, 27 CFR §478.23, one additional,

yet equally specific occasion, for the U.S. Attorney General or an ATF officer to access specified

records that being if there is reasonable cause to believe a violation of the law has been

committed by the FFL has occurred and "that evidence thereof may be found on such premises," such that, upon securing a federal search warrant, entry may be authorized during business hours for enumerated purposes.

The final instance that is different, but related, is a request for assistance with a trace of a stolen firearm, as made to the FFL by the U.S. Attorney General or an ATF Officer. 18 U.S.C. §923(g)(1)(B)(iii).  The FFL must respond to such request with "information contained in the records" within 24-hours. 18 U.S.C. §923(g)(7). See, also, 27 CFR §478.23.

B.  Defendants' new law at **NY Gen Bus §875-f(2)** – *effective December 5, 2022* – would require the Plaintiffs to create a variation of firearms inventory reconciliation report for the Defendant NYS Police, which would equally violate 18 U.S.C. §926 and must be restrained and/or enjoined as pre-empted by federal law.  The "inventory reconciliation" is a process to manually compare the physical firearm in inventory at the FFL to the open entries of the A&D Book. 18 U.S.C. §923(g)(1)(C)(i).  The audit is done during the ATF Field Officer on site inspection, as granted and defined by 18 U.S.C. §923(g)(1)(B)(ii) and (C).  In fact, even the U.S. Attorney General may not require an FFL-01 dealer in firearms to submit "…reports and information with respect to such records and the contents thereof, except as expressly required by this section." 18 U.S.C. §923(g)(1)(A).

C.  Defendants' new law at **NY Gen Bus §875-f(3)** – *effective December 5, 2022* – would allow forced access to inventory records "at any time" by "law enforcement agencies and to the manufacturer of the weapon or its designee."  This imperils all of Plaintiffs' federal firearms compliance records and must be restrained and/or enjoined as pre-empted by 18 U.S.C. §926. This new law suspends any right of Due Process afforded the Plaintiff FFL under the restricted right of access by the U.S. Attorney General or the ATF officer under 18 U.S.C. §923(g)(1)(A)-

(B) and 27 CFR §478.23 (above), where entry and review of records is conditioned either under a federal judicial warrant or a statutorily proscribed audit process.

There is absolutely no (zero) existing right of access at law to Plaintiffs' federal firearms compliance records for any third parties, even and including another Federal Firearms Licensee (assuming that is what is meant by Defendants' bald use of the words "manufacturer of the weapon").

D.  Defendants' new law at **NY Gen Bus §875-f** – *effective December 5, 2022* – would require Plaintiffs to create records "in a form and for such period as the superintendent shall require,"[7] which plagiarizes federal firearms compliance laws, in violation of 18 U.S.C. §926, and must be restrained and enjoined.  Without going line-by-line, the "records" mandated would require Plaintiffs to create a near duplicate set of records to submit to the Defendant NYS Police. The new law directs creation of "record of purchase, sale, inventory," which is the federal A&D Book described at 27 CFR §478.125(e) and illustrated at corresponding "Table 4: Firearms Acquisition and Disposition Record."  For a second example, NY Gen Bus §875-f(1) mandates the new record include "the make, model, caliber or gauge, manufacturer's name, and serial number," which is the "Description of firearm" section of the "Table 4 illustration," which derives from 27 CFR §478.125(e), which says the entry shall include "…the name of the manufacturer and importer (if any), the model, serial number, type, and the caliber or gauge of the firearm."  This new law must be struck down as pre-empted by federal law.

E.  Defendants' new law at **NY Gen Bus §875-b** – *effective December 5, 2022* – would allow the Plaintiffs to determine shipping liability, a matter of regulation comprehensively

---

[7] *N.B.:*  no such written materials have been published by the Defendant NYS Police as of the date of this Memorandum of Law.

covered by federal law to facilitate inter-state commerce between FFLs nationwide. 27 CFR §§§478.122, 478.123, 478.125.

F.  Defendants' new law at **NY Gen Bus §875-b(2)** – *effective December 5, 2022* – would require the Plaintiffs to hire a "security alarm operator" which is "licensed" by the Defendants to install and maintain a security alarm system, which would violate the federal prohibition at 18 U.S.C. §922(h) against an FFL hiring anyone with a criminal record.  The new section is from the new NY General Business Law, Article 39-BB, titled "Preventing the Unlawful Sale of Firearms, Rifles, and Shotguns to Individuals with a Criminal Record."  And yet: the new laws mandate hiring "security alarm operator" companies, which are permitted to hire employees with criminal records, including felony criminal records. NY Gen Bus §875-b(2), read with NY Gen Bus, art. 6-D at §69-o(2).  A "licensed" NY "security alarm operator" can have a misdemeanor conviction, felony charges pending, a conviction vacated and replaced by a youthful offender finding, a conviction expunged or sealed, a conviction for which a certificate of relief from disabilities or a certificate of good conduct has been issued, or for any other felony conviction not involving fraud, bribery, perjury, or theft.  A literal reading of the licensing criteria demonstrates that a person could be disqualified from the ownership, use, or possession of firearms, ammunition, and destructive devices under 18 U.S.C. §922(g), but could still get a license in NY as a "security alarm operator."

G.  The Defendants' new law at **NY Gen Bus §875-g(b)(1)** – *effective December 5, 2022* – as referred to above, would require the Plaintiffs to sign an annual certification of their compliance "with all of the requirements of this article," which is impossible due to pre-existing, express, federal prohibitions governing the business operations of the Plaintiffs, detailed throughout this record.  The new law directs the Defendant NYSP Superintendent to "…by

regulation determine the form and content of such annual certification." Putting aside that neither Defendant Nigrelli, nor his predecessor, former Superintendent Bruen, has issued this "form." It could ask no more than "Are you in compliance with NY Gen Bus §875-f and the other provisions of §875?" The answer from Plaintiffs will be "No." That response would amount to a waiver of the Plaintiffs' Fifth Amendment rights against self-incrimination. There is no alternative not to submit the form. A non-filing would constitute a violation. *Albertson v. Subversive Activities Control Board,* 382 U.S. 70 (1965), 75 ("specific orders requiring petitioners to register have been issued"), 77 ("full compliance is required" and "such an admission…may be used to prosecute the registrant…").

A violation of any provision of the new article is a class A misdemeanor – a crime. NY Gen Bus §875-i. A failure of filing or an admission or acknowledgement of non-compliance does not correspond to a regulatory penalty of $50 or even a suspension or revocation of a license with a corresponding right of administrative or judicial review of the determination. The Class A misdemeanor can result in a sentence not to exceed one year and is the highest level of misdemeanor. NY Pen §70.15.[8]

There is no legal pathway available to the Plaintiffs. To comply with the new laws results in a violation of federal laws. To *not* comply with the new state laws, results in criminal charges against the Plaintiffs. The new law must be enjoined and/or restrained as pre-empted by federal law and otherwise unconstitutional under the Fifth Amendment. *Spokeo, Inc. v. Robins,*

---

[8] Even if we hypothesize that the annual compliance certificate will not be required to be submitted until the conclusion of the first calendar year, or, December 31, 2023 (a point ambiguous under the Bill), the Plaintiffs will either miss the first monthly inventory reconciliation report (on December 31, 2022) or miss the first semi-annual A&D Book transmission (April 2023) or will fail an on-site inspection for "new" records (discretionary, effective December 5, 2022).

578 U.S. 330 (2016), 336 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555); *Cayuga Nation v. Tanner,* 824 F.3d 321, 331 (2d Cir. 2016).

      H.  The Defendants' new law at **NY Pen §400.02(2)** – *effective December 5, 2022* – represents that the Defendants are going to try to use the NICS background check system for ammunition purchase background checks in direct violation of the federal restrictions on the use of the NICS system under 28 CFR §25.1 and §25.6.  Violations are punishable under 28 CFR §25.11, including that "State or local agencies…purposefully using the system to perform a check for unauthorized purposes" shall be subject to a $10,000 fine and subject to cancellation of NICS inquiry privileges.  The new law must be restrained and/or enjoined.

### II. Urgency of Judicial Intervention to Correct Constitutional Violations Being Committed by the Defendants.

### II.A. Plaintiffs Must Not Be Compelled by NYS Police to Waive Their Fifth Amendment Rights.

      As detailed above, Plaintiffs ask several of the new laws be enjoined and/or restrained and ultimately struck down as pre-empted under federal law.  In their roles as "Responsible Persons" for FFLs conferred by the federal Bureau of Alcohol, Firearms, Tobacco, and Explosives ("BATFE"), Plaintiffs are responsible for making decisions that conform business operations to federal firearms law.[9]  In the hierarchy of federal firearms compliance, federal law is the pinnacle.  Decision-making by FFL Responsible Persons of any third-party record request that comes before the Plaintiffs in their business operations starts with the application of federal

---

[9] "Responsible Person" is defined by BATFE on Form 7, "Definitions," as "In addition to a Sole Proprietor, a Responsible Person is, in the case of a Corporation, Partnership, or Association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of the Corporation, Partnership, or Association, insofar as they pertain to firearms.

law.  If a request is a "fail" at federal law, it's the end of the request.  It can't (and won't) happen.

The Plaintiffs are natural compliance officers and cheerleaders of lawfulness.  They are good partners to the ATF and the FBI, as illustrated by their conversational fluency in federal firearms compliance law, regulations, ATF guidances and Rulings, use of websites, their name-basis relationship with across the years with their local ATF Field Officers, immediate participation in trace requests, and general praise for ATF "800" number employees for questions on a NICS background check or other compliance matters.  Plaintiffs have been through successful routine ATF on-site audits and take pride in disciplined daily compliance.

If Plaintiffs do not achieve an injunction/TRO ahead of December 5, 2022, they are considering shifting into self-regulated holds on any sales or gunsmithing to await a first ruling of Your Honor.  By December 31, 2022, the Plaintiffs' choice intensifies to a Fifth Amendment confrontation of signing a (as-yet unpublished) NYS Police form admitting they are in non-compliance or not signing the form and thus admitting non-compliance. NY Gen Bus §875-g(b)(1).  The new law thus violates Plaintiffs' federal rights in two ways: both as a matter of federal pre-emption and as a matter of the Fifth Amendment. Each violation of the "Group A" new laws, if allowed to go into effect, can be separately charged.  That's potentially eight Class A misdemeanor counts.

Plaintiffs will be compelled, "on pain of criminal prosecution," to provide the Defendant NYS Police with a formal certification of compliance (or lack thereof) that is "likely to facilitate their arrest and eventual conviction." *Haynes v. U.S.,* 390 U.S. 85, 97 (1967).  The new laws are not "an essentially non-criminal and regulatory area of inquiry," but "an area permeated with

criminal statutes." *Id.* (citation omitted).  The Plaintiffs have a privilege under the Fifth

Amendment to assert and the Defendants are violating it.

### II.B. Defendants are Violating Plaintiffs' Second, Fifth, and Fourteenth Amendment Rights Through Numerous Laws Affecting Concealed Carry Permitting, Semi-Automatic Rifle Licensing, and Ammunition Purchases

Plaintiffs request that a second list of new laws (herein "Group B") be struck under the

Second, Fifth, and/or Fourteenth Amendments.  There is a lack of historical precedent for these

new laws.  There is an immediate threat of criminal penalty, including Class E felonies, for

violation of each of these new laws.  These new laws are so vague as to be unintelligible and

highly likely to result in random and irregular prosecutions.  Counties, which were stalled-out

since September 1, 2022 over how to respond to the new laws, are now, individually, starting to

adopt individual approaches that appear at odds with a plain reading of the Group B new laws.

The provisions are simplistically clumped into "Group B" as follows:

1. The classroom and live-fire training course and test for new concealed carry handgun

   permits and for recertification of existing concealed carry handgun permits under

   NY Pen §400.00(1) and §400.00(19), to be read with NY Exec §837(23)(a) and

   NY Pen §265.20(3-a).

2. The semi-automatic rifle license under NY Pen §§§400.00(2), 400.00(3), 400.00(6)-

   (9), and 400.00(14), read with penalties at NY Pen §§265.65 and 265.66.

3. The ammunition background check under NY Pen §400.02.

Plaintiffs challenge to Defendants' new laws includes with the substantial failure of the Defendants NYS Police and DCJS to publish the curriculum and testing assigned to them. Without that curriculum and test, no "training course" exists – statewide.[10]

This has a direct impact on Plaintiffs' sales, both of handguns and of ancillary products, in addition to the loss of teaching revenue. The lack of curriculum and testing translates into a county-level suspension of new permits and recertifications of existing permits. Add in the lack of county-level semi-automatic rifle licenses, and the chaos across the State amounts to "…a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society that lawful purpose [of] self-defense." *Heller,* 554 U.S. 570, 628-629 (2008).

There are a handful of known counties which, as of October 24, 2022, have started publishing to their websites and intention to issue endorsements upon an existing concealed carry permit to facilitate the purchase of the semi-automatic rifle, namely, Monroe, Onondaga, Columbia, and Greene Counties. Their approaches, however, is inconsistent with Plaintiffs' reading of the statutes – which is all that is available for anyone to use to make personal and business-related decisions.

Plaintiffs assert that the Defendants' have published a total of two (2) publications under their new laws, as follows:

1. NYSP .pdf on the web dated August 23, 2022, titled "Minimum Standards for New York State Concealed Carry Firearm Safety Training."

2. NYSP .pdf on the web dated August 27, 2022 titled "Frequently asked Questions Regarding Recent Changes to New York State Firearm Laws."

---

[10] (*N.B.:* examples of the deficiencies in the Complaint, Declarations, and this Memorandum is not exhaustive.)

These informal pieces of Internet paper print-outs are not works that reflect or fulfill the Defendants' own legal responsibilities.  These Exhibits do not amount to rules or regulations in any administrative law sense of the words.

The statutes shouldn't even be considered to be effective, given the abnormal breadth of responsibility thrust by Defendant Governor Hochul upon her subservient offices and agencies under Bills she jammed through.  Just referencing the process through which NY Bill S.51001 was signed into law on July 1, 2022, the Defendant Governor called an "emergency" and directed the Legislature return to "Extraordinary Session."  Her Bill was passed in less than 24-hours.  The routine 3-day desk rule was suspended. [Dkt. 1, pp. 44-48.]

Since then?  Radio silence.  The Plaintiffs have even tried calling the NYS Police to get help interpreting the new laws and they're told the officers "we don't know."

The impact of these laws has been devastating to fundamental rights and to business operations and to the business bottom line.  County-level implementation devolved into stall-outs across the State for the first two months.  Now, in the past two weeks, several Counties have chosen a route of granting endorsements to existing concealed carry permits that appears to violate the new laws.  Several Counties are promoting private vendors claiming to offer "CCIA compliant" courses, which appears to violate the new laws.  And, in the past week, customers have started to walk into Plaintiffs' retail locations, holding out these endorsed concealed carry permits with an expectation to purchase semi-automatic rifles.

Plaintiffs as FFLs are charged at federal law to comply with complimentary state laws, as part of their federal licensing and license renewal processes.  A County Clerk or a County Sheriff effort at interpretation – even if well-intended to help New York residents to exercise their Second Amendment rights – puts Plaintiffs in the impossible position of desperately needing the

intervention of the Court to strike down these new laws to restore the pre-September 1, 2022 status.  Plaintiffs cannot yield federal compliance mandates to state laws, resulting in erroneous county-level implementation.

Prior to the NY S.51001 signing date of July 1, 2022, New York State did not require training to obtain a concealed carry permit.  New York State did not require a semi-automatic rifle ("SAR") permit.  And, New York State had no history of an ammunition background check. Simple as that.  For all of the shouting at the microphone by the Defendant Governor Hochul that the 100-year-old Sullivan Act defined New York's concealed carry permitting process, now the shoe is on the other foot.  Under *NYSRPA v. Bruen,* the question is whether there is a history of such restriction or regulation, and there is none.

What the Defendants have done through passage of these new laws is a spotlight on their utter failure to fulfill their requirements under the laws plus their total lack of support to NY-licensed dealers.  Defendants kicked the proverbial can down the road to the FFLs and Counties. Under a home rule approach, individual counties did or did not include a training requirement in their application process.  No County required any form of rifle license.  And there was no County ammunition background check.  The Defendants may want to claim that the concealed carry permit is a "state license," but it is administered and granted at the county level, including use of the County Clerk's Office, the Sheriff and local law enforcement officers, and the County Court Judges as licensing officers.  The County handles all amendments to concealed carry permits.  The County handles all suspension and revocation proceedings.  And, the County even administers the NY-license applications and grants for dealers in firearms and gunsmiths.

The Plaintiffs as individuals and the Plaintiffs as business owners and FFLs are intimately tied to their immediate and surrounding Counties.  Now, they are squeezed between

vague and confusing new laws at the State level and ever-changing and inconsistent positions of each individual County that may (or may not) be in conflict with a "best guess" at the state law.

These new laws were not thought through or part of a deliberative legislative process. The new laws were vindictive and discriminatory, and the Defendant Governor Hochul made speech after speech and including press conferences and media interviews where she attacked the U.S. Supreme Court, the rule of law, and Second Amendment supporters as a class.

Defendant Governor Hochul is a former Erie County Clerk and is a lawyer. She knew what she was doing when advancing the Bills and the desired chaos that would ensue. The months of September and October 2022 resulted in a near, if not a total, shut down of the concealed carry permitting process and the semi-automatic rifle license process, causing a near total halt in sales of these firearms. This equates to a near total denial of the Plaintiffs' and all New York residents' Second Amendment rights. NYS S.51001, the "CCIA," was a Bill that only an experienced county clerk could design. Defendant Hochul knew where to lay the charge to blow up the bridge between Albany and all 62 Counties with just one stroke of a pen.

The same is true of the impact of the new SAR license. The NYS Police issued PPB-5 form and did nothing more. Their "FAQ" was less than nothing. It led to confusion on the county level in the form of the work-around now being rolled out by counties like Onondaga, Columbia, and Greene, where an endorsement is being added to the concealed carry permit to walk into the FFL dealer to purchase a semi-automatic rifle. Columbia County may, as of this past week, be starting to accept new SAR license applications as a stand-alone license. It does not appear any other county is even offering the SAR license application.

Plaintiffs are thus exposed to being charged with a Class E felony for selling an SAR to someone without the proper license under NY Pen §265.66. Plaintiffs, as individuals, if they use

that now-available county route for a personal purchase of an SAR, could be charged with a

Class E felony under NY Pen Law §265.65.  A Class E felony can result in a sentence between

one and five years.  It can also result in a permanent loss of Second Amendment rights because

it's a disqualifying factor under 18 U.S.C. §922(g)__.  This would be a completely unjust

consequence for a law that is the definition of "vague."

### III. Urgency of Judicial Intervention to Halt December 5, 2022 New Laws that Will Result in Constitutional-Regulatory Overburden and Cause Plaintiffs to Close Up Shop

The third, and largest, group of new laws is headed as "Group C."  This group of new

laws is treated herein as a unit to allow a bit of space to set out the theory of law for their

restraint and enjoinder.  Each provision is discussed individually, in detail, in the Complaint and

the Declarations.  This grist is not repeated, herein.

The Second Amendment, applicable to the State through the Fourteenth Amendment,

protects an individual's right "to keep and bear arms for self defense." *NYSRPA I,* 142 S.Ct. at

2125 (citations omitted).  "[W]hen the Second Amendment's plain text covers an individual's

conduct, the Constitution presumptively protects that conduct." *Id.*  The Defendants must

demonstrate that a firearms regulation "…is consistent with this nation's historical tradition of

firearm regulation." *Id.* at 2126, 2130-2131.  "[T]his historical inquiry…will often involve

reasoning by analogy…" *Id.* at 2132.

The *Heller – McDonald – NYSRPA* trilogy involved individual plaintiffs.  This piece of

this case involves Plaintiff-owned corporations, single-member LLCs, and Sole Proprietorships,

and as Federal Firearms Licensees with Plaintiffs being "Responsible Persons" for such

businesses.  Whether through the ownership of a Sole Proprietorship or a "d/b/a" by an

individual, or, because a corporation is a person, the same analysis should be applied to burdens placed upon an FFL as to a person.

The first legal definition found in the Gun Control Act of 1968 is the "person," defined "[to] include any individual, corporation, company, association, firm, partnership, society, or joint stock company." 18 U.S.C. §921(a)(1). The nation's high court has recognized that First Amendment protection extends to corporations. *Citizens United v. FEC,* 558 U.S. 310 (2010); *First Natl Bank of Boston v. Bellotti,* 435 U.S. 765, 778, n. 14 (1978).

Given that the firearm is an indispensable part of the text of the Second Amendment, a fundamental right, the Plaintiffs' businesses should receive the same level of protection. *NYSRPA v. Bruen* benefited the individual right "to bear" arms. This should be extended to FFLs serving the unique core function of making available firearms to individuals that, through purchase, raffle, or other means, the individual can "keep."

"Constitutional regulatory overburden" is perhaps a catchy way of capturing the concept. Perhaps the most fascinating aspect of this case is the opportunity to consider what it means that the firearm is the only consumer product protected by the Bill of Rights.

The new laws operate to define the Laffer Curve of the firearms dealer, pawnbroker, and gun show industry in New York. The new laws, taken as a whole, which is how they are becoming effective, define the point at which a Plaintiff FFL or gun show says, "Why would I continue to turn the key and flip on the lights?" A person can be dedicated to the Second Amendment, but that passion for Civil Rights, alone, will not pay utility and property tax and medical insurance bills.

Plaintiffs submitted granular detail to support their conclusions that the Group C new laws are either unfeasible for technology or space considerations or too expensive to implement.

They also set out practical considerations, particularly as to new restrictions hitting even their own, young children.  There is only one new cost that Plaintiffs are unable to calculate and that is the impending cost of the Defendants' apparent determination to convert New York into a NICS-Point of Contact State.

### IV.  Plaintiffs are Entitled to Extraordinary Interim Relief under *Winter v. Nat. Res. Def. Council*

Injunctive relief under FRCP 65 is "an extraordinary remedy" to be awarded upon "a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  The Second Circuit interpreted the instruction from *Winter* as a three-part test that "[a]plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Also, N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.,* 883 F.3d 32, 37 (2d Cir. 2018).

An injunction would maintain the status quo and does not require the Defendants to take any action. *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.,* 60 F.3d 27, 33-34 (2d Cir. 1995).  "An injunction that enjoins a defendant from enforcing a regulation "clearly prohibits, rather than compels, government action by enjoining the future enforcement." *Hardaway,* p. 11, quoting *Mastrovincenzo,* 435 F.3d at 89.  "Moreover, the Constitution and the Bill of Rights are the status quo – not 2022 legislation on the books for nine weeks." *Hardaway, supra,* p. 12.

**(1) Likelihood of success on the merits.**

The Plaintiffs complain: (1.) Group A are illegal and/or expressly pre-empted under federal law; (2.) Group B are unconstitutional under the Second, Fifth, and Fourteenth

Amendments; and, (3.) Group C are unconstitutional regulatory overburden for the unique nature of businesses engaged in the lawful stream of commerce in firearms.

The Plaintiffs have a "better than fifty percent" chance of success. *Abdul Wali v. Coughlin,* 754 F.2d 1015, 1025 (2d Cir. 1985), *disapproved on other grounds, O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, n.2 (1987).

The Group A of new laws are a direct violation of the black letter of federal law, if not the black letter of expression of codified Congressional intent. At no time since the original enactment of the GCA in 1968 has a domestic government (at any level) made such a bold and illegal grab at federal compliance records from Federal Firearms Licensees, or, to otherwise tried to set up a shadow reporting system under a guise of "new" state-level reports.  The Defendants' behavior is why FOPA was passed (Sec. 101) and why 18 U.S.C. §923 was codified.  When the intention of Congress is clear, that is the end of the matter, for the court must "give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 842-843 (1984).

The Group B reflects the outcome of a group of laws that are shutting down the Second Amendment across

Group C, the constitutional regulatory overburden is the natural extension of the *Heller – McDonald – NYSRPA I* trilogy.  Plaintiffs will achieve judicial recognition that the firearm is the only consumer product enshrined in the Bill of Rights, that it is an indispensable part of the Second Amendment rights of the individual, and FFLs occupy a unique status for the judicial evaluation of the constitutionality of a regulation that is beyond rational basis, intermediate scrutiny, or even strict scrutiny.

The heart of the matter of *Zero Tolerance v. Hochul* is whether a state or, more particularly, a state's governor, has the authority to interfere with either or both the constitutional and/or the federal law protections of an individual's Second Amendment rights.  The answer, on both fronts, is simply "no."

**(2) The Plaintiffs will experience irreparable harm, if the TRO/preliminary injunction is not issued prior to December 5, 2022.**

The practical reality is that this case likely comes down to this Motion.  Plaintiffs are experiencing "a real hardship" and will be "driven out of business…before a trial could be held," if they do not achieve a TRO ahead of December 5, 2022. *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.,* 601 F.2d 48, 58 (2d Cir. 1979); *IBM v. Johnson,* 629 F.Supp.2d 321, 333-334 (S.D.N.Y. 2009).  The Second Circuit has called demonstration of irreparable harm has been called "the single most important prerequisite for the issuance of a preliminary injunction." *Reuters Ltd. v. United Press Int'l., Inc.,* 903 F.2d 904, 907 (2d Cir. 1990), quoting *Bell Howell: Mamiya Co. v. Masel Co. Corp.,* 719 F.2d 42, 45 (2d Cir. 1983).

Plaintiffs are under extreme constitutional and financial stress, becoming only more imminent as the days tick by to December 5, 2022 when the bulk of the regulations become effective.  There is nothing "remote or speculative" about the impending harm.  *Reuters, sura,* 907, citing *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 972 (2d Cr. 1989).

Plaintiffs' need to, first, remain in the position to fulfill their federal firearms compliance obligations.  Second, to achieve a legal pathway that stays the new laws complained of so that Plaintiffs can retain their federal and state licenses so as to continue to operate in the firearms industry, and their individual concealed carry permits, while this case is pending.  Third, to halt the December 5, 2022 effective date of an overwhelming onslaught of compliance mandates

which will otherwise drive them out of business as impossible to implement or impossible to afford.

Already, business at federally-licensed dealers dropped 90%, along with the 100% stoppage of firearms training courses, and along with a steep drop in all other inventory at shops, be it even a camo t-shirt.  What the "SAFE Act" did to drive manufacturing out of the State since 2013, resulting in the loss of thousands of good-paying, skilled jobs with benefits at legacy corporations filling the contract orders from the federal government to the New York State Police, the 2022 new laws threaten to do right down to the smallest, sole proprietor, Thousand Islands Armory.  Defendant Hochul falsely told the public "There are no gun shops here."

A monetary award will not adequately compensate these Plaintiffs. *Wisdom Import Sales Co. v. Labatt Brewing Co.,* 339 F.3d 101, 113 (2d Cir. 2003).

It is "necessary" to intervene to return to the last uncontested *status quo* between the parties.  The Second Circuit defines this point as "the last actual, peaceable uncontested status which preceded the pending controversy." *LaRouche v. Kezer,* 20 F.3d 68, 74, n.7 (2d Cir. 1994); *accord, Mastrio v. Sebelius,* 768 F.3d 116, 120 (2d Cir. 2014).

That date, for these Plaintiffs, is May 22, 2022, the last day before the first Bill complained of was signed by Defendant Gov. Hochul.  At least the three newest FFL businesses among the Plaintiffs described the first nine to ten years of business operations as home rule for their county of business operations and surrounding counties.  Arguably, the county-driven permitting system, the lack of statewide training mandates, the lack of any semi-automatic rifle license, and the lack of ammunition background check predates the oldest of the Plaintiff's business operations over fifty years ago.

**(3) There is no harm to the Defendants from enacting the TRO/PI,
particularly as compared to the terminal injuries on the doorstep of the
Plaintiffs.**

All new laws complained of herein take effect on December 5, 2022, excepting training

requirements for concealed carry permits, semi-automatic licenses, and ammunition background

checks.  The Defendants have failed, utterly, to perform even one of their own statutory

responsibilities.  At most, they need to pull down a couple website pages and a couple

hyperlinks, and make a graceful announcement respecting this Court's TRO/PI.

The Defendants do not need to be in this field, at all.  Every single law complained of

herein is either already a federal law or regulation, is already functioning well through the NICS

background check system, is already addressed by individual FFLs with the support and

assistance of ATF Field Agents and the FBI, or is already a stronger federal law restriction, such

as the disqualified person restrictions.  Just the "shipping" odd words in the new law threatens to

devolve FFL-to-FFL shipping under federal law into individual actors.

The Defendants refuse to contribute records to NICS.  They are not concerned with the

federal background check process.  They're only willing to submit records if they're paid for it.

**(4) The granting of the TRO/preliminary injunction will greatly serve the
public interest.**

The county-level situation has rapidly devolved into chaos and the FFL industry across

the State is in peril because of the new laws.  From September 1, 2022 to end of October, county

clerk permitting and licensing operations stalled out.  New concealed carry permits were not

being taken in some counties; others stopped processing them.  Defendant Governor Hochul

incorrectly stated at a press conference that the entire system of applications would have to

restart, even though the black letter of the Bill said new mandates would only apply to

applications submitted after the effective date of the new laws.  The Defendant NYS Police made matters worse through their failure to issue concealed carry training curriculum and testing, which they shrugged off with a casual waive of a memo that largely plagiarized the statute without meeting its legal responsibilities.  This same training applies under the new laws to concealed carry recertifications.  This first-time State requirement for training and through a non-existent course effectively deprived New Yorkers of their Second Amendment rights just days after *NYSRPA I* was issued.

Plaintiffs face immediate criminal charges if they sell an SAR to a person without a proper SAR license.  At first, there were no licenses being offered at the county level, and sales of SARs plummeted as a direct result of the Defendants' new laws.  Now, in the past two weeks, certain Counties are starting to endorse to existing concealed carry permits and those customers are starting to walk in the doors of the Plaintiffs' shops.  If Plaintiffs sell an SAR to a person presenting such an endorsement, they may be in violation of the new laws, which appear to require a stand-alone license that does not require the concealed carry training course and is renewable every five years.

Chaos and constitutional rights deprivation across the State is not in the public interest. Citizens have a right, as non-disqualified persons, to exercise their Second Amendment rights and that requires an FFL open for business.

Finally, no security should be required from any Plaintiffs for the grant of the restraining order. Fed.R.Civ.P 65(c).  Plaintiffs caused none of this, either as individuals, as business owners and employees, and as FFLs.  For the past ten to fifty years, Plaintiffs have participated in the industry as FFLs.  They are compliance-minded, passionate about Civil Rights, inclusive, and task-oriented.  They emulate the phrase "law-abiding."

The Defendants, by contrast, bluntly and repeatedly express an intention to put gun shops out of business.  Defendant Hochul used her working knowledge of the county-level to individual handgun permitting system, she crafted a Bill with outside partners, both named and unnamed, designed to cripple 62 Counties and, along with it, the Second Amendment rights of New Yorkers.  The Co-Defendants participated in this process, issuing their own threats to individuals, FFLs, and gun shows alike.  Defendant NYS Police is now poised to force all FFLs across the State, Plaintiffs included, that they either waive their Fifth Amendment rights and break federal law, or they surrender their NY-licenses, or they go to jail.  It is Defendants who are solely responsible for the bringing of this litigation.

No one, including the government, has an interest in the enforcement of an unconstitutional law. *ACLU v. Reno,* 929 F.Supp. 824, 849 (1996).

## Conclusion

An immediate TRO/PI against the new laws will restore the Plaintiffs back into their role of protecting the civil rights and the safety of Americans under the Second Amendment in partnership with the ATF and the FBI, and gets the Defendants out of the way of their interference with that constitutional and legal relationship.  It will also restore the Plaintiffs' individual rights under the Second, Fifth, and Fourteenth Amendments.

*Respectfully submitted this 8th day of November 2022,*

Attorney for the Plaintiffs

*Paloma A. Capanna*

Paloma A. Capanna, Attorney

N.D.N.Y. Bar Roll No.: 703996

106-B Professional Park Drive

Beaufort, North Carolina 28516

(315) 584-2929 mobile

(585) 377-7260

pcapanna@yahoo.com