# Understanding Recent Changes to New York's Gun Laws

*Background*

On June 23, 2022, in a 6-3 ruling, the U.S. Supreme Court struck down part of New York's concealed carry law, a provision requiring an applicant to show "proper cause" in order to obtain a license to carry a concealed handgun outside their home. (New York does not allow handguns to be carried openly at all, and that restriction was not challenged in the case.) The Court's decision in *New York State Rifle & Pistol Association v. Bruen* removed a key element of New York's gun laws, making it easier to obtain a license to carry a firearm in New York's public spaces. In its wake, on July 1, 2022, New York Governor Kathy Hochul signed into law new legislation strengthening the state's gun laws.

## What did the Supreme Court hold and why?

- The Court ruled that the 109-year-old provision violated the Second Amendment, holding that States may not require otherwise responsible and law-abiding citizens to show "a special need for self-defense" in order to qualify for a license to carry a handgun outside the home. (p. 30). A license to carry a handgun may be denied for other reasons specific to an applicant's background, character, or ability to use a firearm properly, but not for lack of a special need for self-defense.

- The Court's opinion focused primarily on history, relying on its view that there was no precedent for similarly restrictive laws limiting people's ability to carry handguns in public for the purpose of self-defense when the Second Amendment was ratified. Consequently, the Court ruled that New York's proper-cause requirement was not part of a "historical tradition" defining the "outer bounds of the right to keep and bear arms." (p. 10).

## What does the Supreme Court's decision do to gun safety in New York State?

- **The decision does not invalidate New York's handgun licensing requirement.** The proper-cause requirement the Court invalidated was just one requirement for obtaining a concealed carry license in New York. The rest of the licensing regime remains in force and is being updated to clarify the eligibility criteria for acquiring a license to carry a concealed handgun in public in this State.

- **The Supreme Court endorsed many of the licensing criteria common to New York and the less strict, "shall issue" jurisdictions.** (In a "shall issue" state, licensing authorities are required to issue a concealed carry license if an applicant satisfies certain threshold criteria defined by statute.) The Supreme Court made clear that States may continue to enforce requirements that ensure concealed carry licenses are issued only to law-abiding, responsible individuals. (p. 30). The majority opinion and concurring opinions specifically mention fingerprinting, background

checks, checks of mental-health records, and firearm training courses as a non-exhaustive list of preconditions that States may enforce for obtaining such a license.

## What kinds of restrictions on public carry remain presumptively permissible?

- **Carrying guns may be prohibited in "sensitive places" like schools and government buildings.** It remains "settled" that the Second Amendment allows restrictions on carrying guns in "sensitive places" like schools, government buildings, courthouses, and polling sites. (p. 21). The Supreme Court acknowledged that similar restrictions may be imposed for "new and analogous sensitive places." (p. 21). However, the Court warned that an entire geographic area, such as the whole "island of Manhattan," could not be declared a "sensitive place" solely on the ground that it is crowded and well-policed. (p. 22). Consistent with this, the state legislature and municipal authorities may expand the list of specific public spaces where carrying handguns and other weapons is prohibited.

- **Licenses may still be required for carrying handguns in public, and those licenses may be reserved only for responsible, law-abiding individuals.** Fingerprinting, background checks, mental-health checks, and training courses all remain presumptively permissible. (p. 30).

- **Dangerous or unusual weapons may be subject to further restrictions.** The Court did not define what a dangerous or unusual weapon may be, leaving some ambiguity on this point, but certain restrictions remain presumptively permissible. (p. 38).

- **Carrying guns with unlawful intent may be prohibited.** While the Court held that the Second Amendment protects a law-abiding citizen's right to carry a concealed handgun in public for lawful self-defense purposes, restrictions on carrying guns with unlawful intent remain presumptively permissible. (pp. 29, 62).

- **Financial incentives for responsible arms carrying may be devised.** (p. 51).

- **Private parties may restrict guns on their own property.** Nothing in *Bruen* requires private parties to allow guns into their own homes or businesses if they do not want them there.

### *Enhancing New York's Gun Laws in the Wake of Bruen*

In the wake of the Court's decision in *Bruen*, New York's lawmakers were called back to Albany for a special session to pass new legislation clarifying and enhancing New York's many public-safety-oriented protections for handgun licensing in a manner consistent with the Supreme Court's decision. On July 1, 2022, Governor Hochul signed landmark legislation expanding restrictions on access to guns in the state. **You can read the law here.**

- **Sensitive Places:** The new measures build on the constitutional carveout for protecting "sensitive places," barring the carrying of firearms in specific public settings, such as: colleges and universities, hospitals, houses of worship, public transportation, including subways, places where alcohol is consumed, homeless shelters and other public residential facilities, entertainment venues, such as stadiums, theaters, casinos, and polling places, and places where children gather, such as schools, daycare centers, playgrounds, libraries parks and zoos.

- **New Eligibility Requirements:** The new law adds requirements for New Yorkers applying for a concealed carry permit, including presenting a certificate of completion of a standardized firearm training and firing range training. Only applicants deemed to have "good moral character" and sufficient mental competence—a determination based on an in-person interview, a written exam and character references—will be eligible for a concealed carry permit. Applicants may be disqualified by past illicit behavior, including misdemeanor convictions for weapons possession and menacing (placing another person in fear of death or serious injury). Applicants who are denied a permit following this process may appeal.

- **Safe Storage, Background Checks and Body Armor:** The new law also imposes new safe storage requirements, for example, prohibiting gun owners from leaving a firearm in a car unless stored in a lockbox with ammunition removed, and requiring safe gun ownership in a home where someone under 18 resides. Additionally, New York's new law allows the State to conduct and exercise oversight over background checks for firearms, beyond those maintained by the FBI, which lack access to state- and local-owned databases. Finally, the law expands the scope of bullet-resistant protective equipment prohibited in New York, for example, the steel-plated vest worn by the shooter in the Buffalo, New York.

*Additional Resources*

**Governor Kathy Hochul:** Governor Hochul Signs Landmark Legislation to Strengthen Gun Laws and Bolster Restrictions on Concealed Carry Weapons

**Legislation S.51001/A.41001:** Restricts the Carrying of Concealed Weapons in List of Sensitive Locations

**New York State Office of the Attorney General:** Attorney General James Vows to Protect New Yorkers in Wake of Supreme Court Ruling

**Everytown For Gun Safety:** Here's what you need to know about NYSRPA v. Bruen