**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

NADINE GAZZOLA, individually, and as co-owner,
President, and Bureau of Alcohol, Tobacco, Firearms, and
Explosives Federal Firearms Licensee ("BATFE FFL")
Responsible Person for Zero Tolerance Manufacturing,
Inc., SETH GAZZOLA, individually, and as co-owner,
Vice President, and BATFE FFL Responsible Person for
Zero Tolerance Manufacturing, Inc., JOHN A. HANUSIK,
individually, and as owner and BATFE FFL Responsible
Person for AGA Sales, JIM INGERICK, individually, and
as owner and BATFE FFL Responsible Person for
Ingerick's, LLC, d/b/a Avon Gun & Hunting Supply,
CHRISTOPHER MARTELLO, individually, and as owner
and BATFE FFL Responsible Person for Performance
Paintball, Inc., d/b/a Ikkin Arms, MICHAEL
MASTROGIOVANNI, individually, and as owner and
BATFE FFL Responsible Person for Spur Shooters Supply,
ROBERT OWENS, individually, and as owner and BATFE
FFL Responsible Person for Thousand Islands Armory,
CRAIG SERAFINI, individually, and as owner and
BATFE FFL Responsible Person for Upstate Guns and
Ammo, LLC, NICK AFFRONTI, individually, and as
BATFE FFL Responsible Person for East Side Traders
LLC, and, EMPIRE STATE ARMS COLLECTORS, INC.,

1:22-cv-1134 (BKS/DJS)

                    Plaintiffs,

v.

KATHLEEN HOCHUL, in her official capacity as
Governor of the State of New York, STEVEN A.
NIGRELLI, in his official capacity as the Acting
Superintendent of the New York State Police, ROSSANA
ROSADO, in her official capacity as the Commissioner of
the Department of Criminal Justice Services of the New
York State Police, and LETITIA JAMES, in her official
capacity as the Attorney General of the State of New York,

                    Defendants.

---

**Appearances:**

*For Plaintiffs:*
Paloma A. Capanna
Law Office of Paloma A. Capanna, P.C.
106-B Professional Park Drive
Beaufort, North Carolina 28516

*For Defendants:*
Letitia James
Attorney General of the State of New York
Aimee Cowan
Timothy P. Mulvey
Assistant Attorneys General
300 South State Street, Suite 300
Syracuse, New York 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

On November 1, 2022, Plaintiffs initiated an action under 42 U.S.C. §§ 1983, 1985 against Defendants Kathleen Hochul, in her official capacity as Governor of the State of New York, Steven Nigrelli, in his official capacity as the Acting Superintendent of the New York State Police, Rosanna Rosado, in her official capacity as the Commissioner of the New York Department of Criminal Justice Services,[1] and Letitia James, in her official capacity as the Attorney General of the State of New York, alleging that certain provisions of New York firearms law deprive them of civil rights secured by the Second, Fifth, and Fourteenth Amendments. (Dkt. No. 1, ¶¶ 1, 306–25.) Plaintiffs further allege that certain challenged provisions are pre-empted by federal statutory and regulatory law, (*id.* ¶¶ 326–35), certain challenged provisions run afoul of the Second, Fifth, or Fourteenth Amendments, (*id.* ¶¶ 308–09,

---

[1] Defendants note that Plaintiffs have incorrectly characterized the Department of Criminal Justice Services as a division of the New York State Police when it is in fact a separate state agency. (Dkt. No. 29, at 7 n.1.)

322, 336–43), and certain challenged provisions are unconstitutional under an apparently novel theory of "constitutional-regulatory overburden," (*id.* ¶¶ 344–51). On November 8, 2022, Plaintiffs filed a motion for a temporary restraining order and a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure seeking an order enjoining enforcement of the challenged provisions. (Dkt. No. 13, at 2–5.) The motion is fully briefed, with an opposition from Defendants and a reply by Plaintiffs. (Dkt. Nos. 29, 33.) The Court held a hearing on December 1, 2022. After considering the parties' submissions and oral arguments, the Court orally denied Plaintiffs' motion for a temporary restraining order and preliminary injunction and indicated that a written decision would follow. (Dkt. No. 37.) This is that decision, including the Court's findings of fact and conclusions of law in accordance with Rule 52(a)(2).

## II.    FACTS[2]

### A.    Plaintiffs

Plaintiffs are nine individuals and one business organization.[3] At least eight[4] of the Plaintiffs are qualified under federal law as "Responsible Persons," (Dkt. No. 13-2, ¶ 11 n.1), associated with a federal firearms license ("FFL"). (*Id.* ¶ 11; Dkt. No. 13-3, ¶ 14; Dkt. No. 13-4, ¶ 6; Dkt. No. 13-5, ¶ 6; Dkt. No. 13-6, ¶ 13; Dkt. No. 13-7, ¶ 6; Dkt. No. 13-8, ¶ 6; Dkt. No. 13-

---

[2] The facts are taken from the affidavits and attached exhibits submitted in connection with this motion. *See J.S.G. ex rel. J.S.R. v. Sessions*, 330 F. Supp. 3d 731, 738 (D. Conn. 2018) ("In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence."); *Fisher v. Goord*, 981 F. Supp. 140, 173 n.38 (W.D.N.Y. 1997) (noting that a "court has discretion on a preliminary injunction motion to consider affidavits as well as live testimony, given the necessity of a prompt decision"). The "findings are provisional in the sense that they are not binding on a motion for summary judgment or at trial and are subject to change as the litigation progresses." *trueEX, LLC v. MarkitSERV Ltd.*, 266 F. Supp. 3d 705, 720 n.108 (S.D.N.Y. 2017); *see also Fair Hous. in Huntington Comm. Inc. v. Town of Huntington*, 316 F.3d 357, 364 (2d Cir. 2003).

[3] In the complaint, Plaintiffs initially suggest that the business organizations owned by Plaintiffs are also Plaintiffs themselves. (Dkt. No. 1, at 2.) However, the complaint lists only the individuals, plus Empire State Arms Collectors, Inc., under the "Parties" heading. (*Id.* ¶¶ 6–21.) Plaintiffs also describe this action as being filed "on behalf of 10 Plaintiffs." (Dkt. No. 33, at 5.) Accordingly, the group of Plaintiffs consists only of the nine named individuals and Empire State Arms Collectors, Inc.

[4] Plaintiff Jim Ingerick is listed as a Responsible Person in the case caption but did not submit an affidavit in connection with Plaintiffs' motion for a temporary restraining order and preliminary injunction.

9, ¶ 6.) At least seven[5] of the nine business organizations owned by Plaintiffs possess federal firearms licenses that allow them to serve as dealers in firearms. (Dkt. No. 13-2, ¶ 12; Dkt. No. 13-3, ¶ 13–14; Dkt. No. 13-4, ¶ 6; Dkt. No. 13-5, ¶ 6; Dkt. No. 13-6, ¶ 13; Dkt. No. 13-7, ¶ 6; Dkt. No. 13-8, ¶ 6; Dkt. No. 13-9, ¶ 6); *see also* 18 U.S.C. § 921(a)(11)(A). Two of these business organizations possess federal firearms licenses that allow them to serve as firearms manufacturers. (Dkt. No. 13-2, ¶ 12; Dkt. No. 13-3, ¶ 14; Dkt. No. 13-6, ¶ 13); *see also* 18 U.S.C. § 921(a)(10). One of the business organizations possesses a federal firearms license that allows it to serve as a firearms pawnbroker. (Dkt. No. 13-7, ¶ 6); *see also* 18 U.S.C. § 921(a)(12). At least six[6] of the nine business organizations also hold firearms licenses under New York law. (Dkt. No. 13-2, ¶ 15; Dkt. No. 13-4, ¶ 7; Dkt. No. 13-5, ¶ 6; Dkt. No. 13-6, ¶ 15; Dkt. No. 13-7, ¶ 7; Dkt. No. 13-9, ¶ 7.) Plaintiff Empire State Arms Collectors, Inc., holds neither a federal nor a New York firearms license. (Dkt. No. 1, ¶ 14.)[7]

### B.    Challenged Laws

Plaintiffs claim to be challenging thirty-one statutory firearms provisions. (Dkt. No. 1, ¶¶ 28, 32.) Their list of challenged provisions, however, appears to contain only twenty-four unique sections and subsections. (*Id.* ¶ 31.)[8] Each provision challenged in the complaint is set forth in the following table:

---

[5] There is no indication that the business organization associated with Plaintiff Jim Ingerick, "Avon Gun & Hunting Supply," has a federal firearms license.

[6] There is no indication that the business organization associated with Plaintiff Jim Ingerick, "Avon Gun & Hunting Supply," has a New York firearms license. And although Plaintiff Robert Owens submitted an affidavit in connection with Plaintiffs' motion for a temporary restraining order and preliminary injunction, there is no indication that the business associated with him, "Thousand Islands Armory," has a New York firearms license. (Dkt. No. 13-8.)

[7] According to the complaint, Plaintiff Jim Ingerick "serves as the President" of Empire State Arms Collectors Association, Inc., an organization whose "primary function" is hosting a gun show, and Ingerick is "authorized to participate on its behalf for purposes of this litigation." (*Id.* ¶ 14.)

[8] Plaintiffs' memorandum of law in support of their motion for a temporary restraining order and preliminary injunction appears to add two other provisions: N.Y. Penal §§ 265.65, 265.66. (Dkt. No. 13, at 4.)

| New York Penal Law | New York General Business Law | New York Executive Law |
|---|---|---|
| N.Y. Penal § 265.20(3-a) | N.Y. Gen. Bus. § 875-b(1) | N.Y. Exec. § 144-a |
| N.Y. Penal 270.22 | N.Y. Gen. Bus. § 875-b(2) | N.Y. Exec. § 228 |
| N.Y. Penal § 400.00(1) | N.Y. Gen. Bus. § 875-c | N.Y. Exec. § 837(23)(a) |
| N.Y. Penal § 400.00(2) | N.Y. Gen. Bus. § 875-e | |
| N.Y. Penal § 400.00(3) | N.Y. Gen. Bus. § 875-f | |
| N.Y. Penal § 400.00(6) | N.Y. Gen. Bus. § 875-g(1)(b)[9] | |
| N.Y. Penal § 400.00(7) | N.Y. Gen. Bus. § 875-g(2) | |
| N.Y. Penal § 400.00(8) | N.Y. Gen. Bus. § 875-h | |
| N.Y. Penal § 400.00(9) | | |
| N.Y. Penal § 400.00(14) | | |
| N.Y. Penal § 400.00(19) | | |
| N.Y. Penal § 400.02(2) | | |
| N.Y. Penal § 400.03(2) | | |

(*Id.*) In their memorandum of law in support of their motion for a temporary restraining order and preliminary injunction, Plaintiffs separate these laws into three groups[10] and challenge each group under a different theory,[11] as set forth below:

---

[9] Plaintiffs incorrectly identify this provision as N.Y. Gen. Bus. § 875-g(b)(1) throughout both the complaint and the motion for a temporary restraining order and preliminary injunction, (Dkt. Nos. 1, 13-11), with the exception of one correct reference in the complaint, (Dkt. No. 1, ¶ 286). The Court notes that N.Y. Gen. Bus. § 875-g(b)(1) does not exist. It is clear from Plaintiffs' description of the provision, however, that they are referring to N.Y. Gen. Bus. § 875-g(1)(b). (Dkt. No. 13-11, at 13 ("N[.]Y[.] Gen[.] Bus[.] § 875-g(b)(1) would require the Plaintiffs to sign an annual certification of their compliance 'with all of the requirements of this article.'" (quoting N.Y. Gen. Bus. § 875-g(1)(b))).)

[10] N.Y. Gen. Bus. § 875-h is not included in any of Plaintiffs' groups.

[11] These groups are not fully consonant with the allegations laid out in the complaint. In fact, each group differs from the lists of provisions challenged under each theory in the complaint. For instance, Plaintiffs include N.Y. Penal § 400.02(2) in Group A, (Dkt. 13, at 3), but Plaintiffs did not allege in their complaint that N.Y. Penal § 400.02(2) is pre-empted by federal law, (Dkt. No. 1). Group C has similarly been added to and subtracted from as compared to the portion of the complaint alleging Plaintiffs' theory of "constitutional regulatory overburden." (Dkt. No. 13, at 4–5; Dkt. No. 1, ¶ 181.) Plaintiffs also include N.Y. Penal §§ 265.65, 265.66 in Group B, (Dkt. No. 13, at 4), but these provisions are not mentioned at all in the complaint, (Dkt. No. 1). Nevertheless, the Court will "consider the entire record" and examine each law that Plaintiffs cite either in their complaint or in their memorandum of law in support of their motion for a temporary restraining order and preliminary injunction. *See J.S.G. ex rel. J.S.R.*, 330 F. Supp. 3d at 738.

| Group A:<br>"pre-empted by federal law"<br>(Dkt. No. 13, at 3) | Group B:<br>"unconstitutional under the Second,<br>Fifth, and Fourteenth Amendments"<br>(Dkt. No. 13, at 4) | Group C:<br>"unconstitutional regulatory<br>overburden in violation of the<br>Second and Fourteenth<br>Amendments"<br>(Dkt. No. 13, at 4–5) |
|---|---|---|
| N.Y. Gen. Bus. § 875-b(1) | N.Y. Gen. Bus. § 875-g(1)(b) | N.Y. Gen. Bus. § 875-b(1) |
| N.Y. Gen. Bus. § 875-b(2) | N.Y. Penal §§ 400.00(1), (19) | N.Y. Gen. Bus. § 875-b(2) |
| N.Y. Gen. Bus. § 875-f | N.Y. Exec. § 837(23)(a) | N.Y. Gen. Bus. § 875-c |
| N.Y. Gen. Bus. § 875-f(1)–(4) | N.Y. Penal § 265.20(3-a) | N.Y. Gen. Bus. § 875-e |
| N.Y. Gen. Bus. § 875-f(2) | N.Y. Penal §§ 400.00(2)–(3),<br>(6)–(9), (14) | N.Y. Gen. Bus. § 875-e(3) |
| N.Y. Gen. Bus. § 875-f(3) | N.Y. Penal § 265.65[12] | N.Y. Gen. Bus. § 875-f(2) |
| N.Y. Gen. Bus. § 875-g(1)(b) | N.Y. Penal § 265.66[12] | N.Y. Gen. Bus. § 875-g(2) |
| N.Y. Penal § 400.02(2) | N.Y. Penal § 400.02(2) | N.Y. Penal § 270.22 |
| N.Y. Exec. § 228 | | N.Y. Exec. § 144-a |
| | | N.Y. Penal § 400.03(2) |

Plaintiffs have stated their opposition to compliance with the New York laws. (Dkt. No. 13-2, ¶¶ 64, 66, 68, 69, 70; Dkt. No. 13-3, ¶ 22; Dkt. No. 13-4, ¶¶ 29, 66, 83; Dkt. No. 13-5, ¶ 65; Dkt. No. 13-6, ¶¶ 40, 79, 87, 88, 92, 95; Dkt. No. 13-7, ¶ 71; Dkt. No. 13-8, ¶ 30.) Plaintiffs have also stated that the laws already in effect have had adverse economic consequences, (Dkt. No. 13-2, ¶¶ 56–61; Dkt. No. 13-3, ¶ 42; Dkt. No. 13-4, ¶ 22; Dkt. No. 13-6, ¶¶ 53, 61, 69; Dkt. No. 13-7, ¶ 37; Dkt. No. 13-8, ¶¶ 52, 59; Dkt. No. 13-9, ¶¶ 13–14), and that there will be economic consequences when the remaining laws take effect, (Dkt. No. 13-4, ¶ 22; Dkt. No. 13-5, ¶¶ 25, 68; Dkt. No. 13-8, ¶¶ 29, 58, 60). Additionally, the Court notes that the knowing violation of N.Y. Gen. Bus. art. 39-BB is a class A misdemeanor and that violations of N.Y. Penal §§ 265.65, 265.66, 270.22, 400.00, 400.03 carry consequences under New York Penal Law. *See* N.Y. Gen. Bus. § 875-i; N.Y. Penal §§ 265.65, 265.66, 270.22, 400.00(15), 400.03(8).

---

[12] These provisions were not included in the list of challenged provisions in the complaint. (Dkt. No. 1, ¶ 31.)

## III.    STANDARD OF REVIEW

Rule 65 of the Federal Rules of Civil Procedure governs temporary restraining orders and preliminary injunctions. In the Second Circuit, the standard for the issuance of a temporary restraining order is the same as the standard for the issuance of a preliminary injunction. *Fairfield Cnty. Med. Ass'n v. United Healthcare of New Eng.*, 985 F. Supp. 2d 262, 270 (D. Conn. 2013), *aff'd*, 557 F. App'x 53 (2d Cir. 2014) (summary order); *AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010). To obtain a temporary restraining order or preliminary injunction that "will affect government action taken in the public interest pursuant to a statute or regulatory scheme," the moving party must demonstrate: (1) irreparable injury in the absence of an injunction; (2) a likelihood of success on the merits; and (3) that the public interest weighs in favor of and will not be disserved by the injunction. *See We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 279 (2d Cir. 2021), *cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022); *see also Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015); *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). Generally, "[t]he movant must also show that the balance of equities supports the issuance of an injunction." *See We The Patriots USA*, 17 F.4th at 280 (citing *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020)). This factor merges into the inquiry into the public interest when the government is a party to the suit. *Id.* at 295 (citing *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58–59 (2d Cir. 2020)).

Injunctive relief can be mandatory or prohibitory. *See Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010). When the injunctive relief sought is "'mandatory' [in that it would] 'alter[] the status quo by commanding some positive act,' as opposed to [being 'prohibitory' [by] seeking only to maintain the status quo," *id.* (quoting *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995)), the

movant "must meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'" *N. Am. Soccer League*, 883 F.3d at 37 (quoting *N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012)). The "status quo . . . is[] 'the last actual, peaceable uncontested status which preceded the pending controversy.'" *Id.* (quoting *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (per curiam)).

Here, the injunctive relief Plaintiffs request with regard to the laws not yet in effect would maintain "the last actual, peaceable uncontested status which preceded the pending controversy," *Hester ex rel. A.H. v. French*, 985 F.3d 165, 177 (2d Cir. 2021) (quoting *N. Am. Soccer League*, 883 F.3d at 37), by "stay[ing] 'government action taken in the public interest pursuant to a statutory or regulatory scheme,'" *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 181 (2d Cir. 2006) (quoting *Mastrovincenzo v. City of New York*, 435 F.3d 78, 88 (2d Cir. 2006)). Though all of the laws at issue have been enacted, Plaintiffs allege, and Defendants do not dispute, that certain challenged provisions did not take effect until December 5, 2022.[13] (Dkt. No. 13-2, ¶ 62; Dkt. No. 13-4, ¶ 49; Dkt. No. 13-5, ¶ 25.) The requested injunctive relief would not have compelled Defendants to take any action before that date and would not have disrupted an established state program, so the heightened mandatory injunction standard does not apply to the challenges to these provisions. *See Libertarian Party of Conn. v. Lamont*, 977 F.3d 173, 177 (2d Cir. 2020); *Hester*, 985 F.3d at 177. But Plaintiffs concede that some of the challenged provisions had already gone into effect. (Dkt. No. 33, at 4.) The injunctive relief Plaintiffs request with regard to these laws would not maintain "the last actual, peaceable uncontested

---

[13] The Court notes that these provisions appear to have taken effect on December 3, 2022, not December 5, 2022. *See* S.B. S4970A, 2020 Sen., 2021-22 Reg. Sess. (N.Y. 2022). In any event, the Court denied Plaintiffs' motion for a temporary restraining order and preliminary injunction on December 2, 2022. (Dkt. No. 37.) The Court further notes that some of the provisions Plaintiffs challenge had already taken effect (namely, N.Y. Penal §§ 270.22, 400.00(1)–(3), (6)–(9), (14), (19), 400.02(2), 400.03(2)).

status which preceded the pending controversy," *Hester*, 985 F.3d at 177 (quoting *N. Am. Soccer League*, 883 F.3d at 37), but would instead "alter the status quo by commanding some positive act," *Citigroup*, 598 F.3d at 35 n.4 (quoting *Tom Doherty Assocs.*, 60 F.3d at 34). Thus, for these provisions, the Plaintiffs "must meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'" *N. Am. Soccer League*, 883 F.3d at 37 (quoting *N.Y. Civ. Liberties Union.*, 684 F.3d at 294).

However, this distinction is immaterial for the case at hand because, as discussed below, Plaintiffs fail to meet even the lesser "likelihood of success" standard for any of their claims. Accordingly, the Court limits its discussion to an examination of whether Plaintiffs have demonstrated (1) irreparable injury in the absence of an injunction; (2) a likelihood of success on the merits; and (3) whether the balance of the equities supports the issuance of an injunction. S*ee We The Patriots USA*, 17 F.4th at 279–80.

## IV.    ANALYSIS

### A.    Standing

The parties did not fully raise the issue of standing.[14] However, the Court "bears an independent obligation to assure . . . that jurisdiction is proper before proceeding to the merits." *Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 324 (2008) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)). Therefore, the Court will consider whether Plaintiffs have standing.

The jurisdiction of federal courts is limited to "Cases" and "Controversies." U.S. Const., art. III, § 2; *see also In re Clinton Nurseries, Inc.*, 53 F.4th 15, 22 (2d Cir. 2022). The doctrine of standing "gives meaning to these constitutional limits by "identify[ing] those disputes which are

---

[14] Neither party has fully briefed the issue of standing, and Defendants do not dispute Plaintiffs' standing except for limited arguments involving Defendants Hochul and James, (Dkt. No. 29, at 13–15).

appropriately resolved through the judicial process." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) 'a likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List*, 573 U.S. at 157–58 (quoting *Lujan*, 504 U.S. at 560–61). An injury must be "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical." *Id.* at 158 (quoting *Lujan*, 504 U.S. at 560). "'The party invoking federal jurisdiction bears the burden of establishing' standing," *id.* at 158 (quoting *Amnesty Int'l USA*, 568 U.S. at 411–12), and the party must establish standing for each claim, *Davis v. FEC*, 554 U.S. 724, 734 (2008). "At least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017).

Where a law not yet in effect is challenged, standing can be satisfied by alleging "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). In such a circumstance, a plaintiff need not show it is "subject to . . . an actual arrest, prosecution, or other enforcement action," nor does the plaintiff need "to confess that [it] will in fact violate the law." *Id.* at 158, 163 (citing *United Farm Workers Nat'l Union*, 442 U.S. at 301).

To establish standing for a preliminary injunction, a party cannot rely on "mere allegations" but must "'set forth' by affidavit or other evidence 'specific facts' which for

purposes of [the] motion will be taken as true." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 907 n.8 (1990)).

### 1.    Standing as Owners of FFL Businesses

The Court finds, for the purpose of ruling on the motion for a temporary restraining order and preliminary injunction, that at least one Plaintiff has satisfied the standing requirements for each claim. Several Plaintiffs have alleged existing economic injuries arising from the challenged New York laws that are already in effect that could plausibly be redressed by enjoining those laws. (Dkt. No. 13-2, ¶¶ 56–61; Dkt. No. 13-3, ¶ 42; Dkt. No. 13-4, ¶ 22; Dkt. No. 13-6, ¶¶ 53, 61, 69; Dkt. No. 13-7, ¶ 37; Dkt. No. 13-8, ¶¶ 52, 59; Dkt. No. 13-9, ¶¶ 13–14); *see also SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020). Each of Plaintiffs' claims involves at least one of these laws that is already in effect. (Dkt. No. 13, at 3–5.) Furthermore, several Plaintiffs allege an intention to violate the remaining laws that have not yet taken effect. (Dkt. No. 13-2, ¶¶ 64, 66, 68, 69, 70; Dkt. No. 13-3, ¶ 22; Dkt. No. 13-4, ¶¶ 29, 66, 83; Dkt. No. 13-5, ¶ 65; Dkt. No. 13-6, ¶¶ 40, 79, 87, 88, 92, 95; Dkt. No. 13-7, ¶ 71; Dkt. No. 13-8, ¶ 30.) Given that "courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund," *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022) (internal quotation marks omitted), this is sufficient to establish an "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder." *See Susan B. Anthony List*, 573 U.S. at 159 (quoting *Farm Workers Nat'l Union*, 442 U.S. at 298). Thus, taking these allegations to be true at this stage, and considering the alleged existing injuries and the intentions to violate the New York statutes together, Plaintiffs have satisfied the standing requirements for seeking a temporary restraining order and preliminary injunction as owners of FFL businesses.

### 2.    Individual Standing to Pursue a Second Amendment Claim

While this action primarily concerns Plaintiffs as owners of FFL businesses, Plaintiffs did assert, in a cursory manner, that their individual rights under the Second Amendment were violated. (Dkt. No. 1; Dkt. No. 13-11, at 4).[15] Defendants argue that Plaintiffs "have no Second Amendment injuries as individuals." (Dkt. No. 29, at 23). In reply, Plaintiffs argue that they "have standing to assert infringement of their individual civil rights, such as the renewal of the permit, access to instructors to satisfy renewal requirements, the right to purchase a semi-automatic rifle[,] . . . and the right to purchase ammunition." (Dkt. No. 33, at 7.) Plaintiffs reiterated these claims at the December 1, 2022, hearing, arguing that their inability to purchase semi-automatic rifles or ammunition or renew existing concealed carry permits satisfies the standing requirements for an individual Second Amendment claim.

Although Plaintiffs did not adequately raise these arguments in their moving papers, the Court has considered the isolated allegations of injury to individual Second Amendment rights in the record and finds that no Plaintiff has provided sufficient allegations to establish individual standing to pursue a Second Amendment claim. Plaintiff Christopher Martello alleges that he "desire[s] to purchase additional semi-automatic rifles for personal self-defense and sporting purposes . . . [and that he is] unable to do so because Livingston County is not offering a semi-automatic license, which is required to be presented to an FFL to lawfully purchase such a rifle." (Dkt. No. 13-6, ¶ 11.) But there is no allegation that he took any steps to purchase a semi-automatic rifle. Thus, he has failed to establish a "concrete and particularized" and "actual and imminent" injury. *Susan B. Anthony List*, 573 U.S. at 158 (quoting *Lujan*, 504 U.S. at 560); *see*

---

[15] At the same time, Plaintiffs acknowledge that previously filed lawsuits involving individual plaintiffs "are distinguished." (Dkt. No. 13-11, at 4 n.1.)

*also Antonyuk v. Bruen*, No. 22-cv-0734, 2022 WL 3999791, at *15, 2022 U.S. Dist. LEXIS

157874, at *45 (N.D.N.Y. Aug. 31, 2022) ("'[S]ome day' intentions—without any description of

concrete plans, or indeed even any specification of *when* the some day will be—do not support a

finding of the 'actual or imminent' injury that our cases require." (quoting *Lujan*, 504 U.S. at

564)). Moreover, he has failed to establish how the non-defendant county's failure to issue semi-

automatic rifle licenses is "fairly traceable to the challenged action." *See Lexmark Int'l, Inc. v.*

*Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014); *see also Simon v. E. Ky. Welfare*

*Rts. Org.*, 426 U.S. 26, 41–42 (1976) (holding that, to establish standing, the challenged action

must have been taken by a defendant, not "some third party not before the court").

  Plaintiff Craig Serafini makes a similar assertion with regard to ammunition, stating:

"People don't want to give their name and personal information out every time they buy

[ammunition]. . . . I don't blame them. I, myself, haven't purchased any ammunition since the

new law went into effect. I'm leading in this section in my role as an FFL, but I also wish to

remind the Court that my individual rights are being violated, as well." (Dkt. No. 13-4, ¶¶ 54–

55). For the same reasons, these allegations are insufficient to demonstrate a concrete and

particularized and actual and imminent injury.

  Finally, with respect to the renewal of a concealed carry permit, Plaintiff Seth Gazzola

states: "I have a concealed carry permit that I want to timely renew, which will require a valid

training course." (Dkt. No. 13-3, ¶ 39.).[16] As with the claims of Plaintiffs Martello and Serafini,

---

[16] Plaintiffs' allegation regarding renewal appears to rely on the premise that concealed carry permits cannot be renewed without completing the training requirements of N.Y. Penal § 400.00 and that that law is unconstitutionally vague, rendering renewal impossible. This appears to misconstrue the law. Defendants argue that the relevant provisions do not require that concealed carry permits issued "[e]lsewhere than in the city of New York and the counties of Nassau, Suffolk and Westchester" be renewed. N.Y. Penal § 400.00(10). (Dkt. No. 29, at 25 n.10.) It appears that such permits must be recertified, N.Y. Penal § 400.00(10)(d), which requires a separate process that does not include the completion of the training course, N.Y. Penal § 400.00(1), (10), (19). Plaintiffs have not indicated how their interpretation of the statute is supported. Furthermore, the Court has concluded that Plaintiffs have not

Plaintiffs fail to demonstrate how this single sentence, evincing a desire to timely renew a permit, amounts to an actual, imminent, concrete, and particularized injury. *See Susan B. Anthony List*, 573 U.S. at 158. Accordingly, the Court limits its finding of standing to Plaintiffs as FFL businesses.

### B.    Injunctive Relief

#### 1.    Irreparable Harm

Plaintiffs contend that the New York laws create a danger of imminent irreparable harm in the absence of injunctive relief because the laws violate constitutional rights and disrupt or force the closure of Plaintiffs' businesses, causing economic and emotional harm. (Dkt. No. 13-11, at 6–8, 26–27.) Defendants argue that Plaintiffs have failed to convincingly show any constitutional injury and failed to show that any injury is concrete and imminent. (Dkt. No. 29, at 10–12.) Defendants also argue that injunctive relief should be denied because the losses alleged by Plaintiffs are monetary and quantifiable. (*Id.* at 12.) [17]

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)); *see also Doe*

---

demonstrated a likelihood of success on their claim that the training requirements of N.Y. Penal 400.00 are unconstitutionally vague. *See infra* section IV.B.2.c.ii.

[17] Defendants further argue that, even assuming Plaintiffs can establish irreparable harm, Plaintiffs' delay in seeking an injunction undermines any assertion of irreparable harm. (*Id.* at 10–11.) The challenged laws were passed between May 30, 2022, and July 1, 2022. (Dkt. No. 1, ¶ 1.) "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." *Citibank N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985); *see also Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144–45 (2d Cir. 2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction. By contrast, we have held that a short delay does not rebut the presumption where there is a good reason for it, as when a plaintiff is not certain of the infringing activity . . . ." (citations omitted)). Because Plaintiffs fail to demonstrate, for any of their claims, a likelihood of success on the merits, the Court need not consider whether the delay in seeking injunctive relief undermines Plaintiffs' contention that they will be irreparably harmed. *See Weight Watchers Int'l*, 423 F.3d at 145.

*v. Rensselaer Polytechnic Inst.*, No. 18-cv-1374, 2019 WL 181280, at \*2, 2019 U.S. Dist. LEXIS 5396, at \*4 (N.D.N.Y. Jan. 11, 2019). "Irreparable harm is 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015) (quoting *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999)). "The relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) (internal footnote omitted).

Generally, "[a] court will presume that a movant has established irreparable harm in the absence of injunctive relief if the movant's claim involves the alleged deprivation of a constitutional right." *J.S.G. ex rel. J.S.R*, 330 F. Supp. 3d at 738; *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 2948 (1973))). Courts have, however, found that "the mere allegation of a constitutional infringement itself does not constitute irreparable harm." *Lore v. City of Syracuse*, No. 00-cv-1833, 2001 WL 263051, at \*6, 2001 U.S. Dist. LEXIS 26942, at \*17 (N.D.N.Y. Mar. 9, 2001). Indeed, the presumption of irreparable harm is triggered only where the alleged constitutional deprivation "is convincingly shown and that violation carries noncompensable damages." *Donohue v. Mangano*, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012) (citing *Donohue v. Paterson*, 715 F. Supp. 2d 306, 315 (N.D.N.Y. 2010)). And "the Court cannot determine whether the constitutional deprivation is convincingly shown without assessing the likelihood of success on the merits." *Id.* at 150 (citing *Turley v. Giuliani*, 86 F. Supp. 2d 291, 295 (S.D.N.Y. 2000)).

As discussed below, Plaintiffs have failed to demonstrate a likelihood of success on the merits of any of their claims—that is, Plaintiffs have not convincingly shown a constitutional deprivation, *see Donohue*, 886 F. Supp. 2d at 150. Accordingly, the Court will not "presume that [Plaintiffs] ha[ve] established irreparable harm in the absence of injunctive relief." *See J.S.G. ex rel. J.S.R.*, 330 F. Supp. 3d at 738.

Plaintiffs assert that the "loss of ability to sell entire lines of merchandise, such as handguns and semi-automatic rifles" constitutes irreparable injury. (Dkt. No. 13-11, at 7.) This injury arises, Plaintiffs suggest, both from specific laws, such as those requiring a training course for new licenses, (Dkt. No. 13-2, ¶ 59; Dkt. No. 13-5, ¶ 30; Dkt. No. 13-7, ¶ 38; Dkt. No. 13-8, ¶ 52), those requiring a license for purchasing semi-automatic rifles, (Dkt. No. 13-2, ¶¶ 57, 59; Dkt. No. 13-4, ¶ 63; Dkt. No. 13-5, ¶¶ 29–30; Dkt. No. 13-6, ¶¶ 57–58; Dkt. No. 13-7, ¶¶ 34, 37), and those requiring the collection of customer information for ammunition sales, (Dkt. No. 13-2, ¶ 61; Dkt. No. 13-4, ¶ 54; Dkt. No. 13-6, ¶ 69; Dkt. No. 13-7, ¶ 37; Dkt. No. 13-8, ¶ 52; Dkt. No. 13-9, ¶ 14), and from the "chilling" effect on firearms sales that the new laws have created, (Dkt. No. 13-2, ¶¶ 25–26).

Plaintiffs Nadine Gazzola and John Hanusik provide the only quantified data related to the alleged irreparable injury: Plaintiff Nadine Gazzola claims that "September sales in the categories of handguns and semi-automatic rifles were down Ninety Percent (90%) and October continued to be depressed," (*id.* ¶ 57), and "[a]mmunition sales have been irregular, at best. There was a drop-off. Then for approximately two weeks there were no sales," (*id.* ¶ 61); Plaintiff John Hanusik similarly alleges that "[s]ales in firearms at A.G.A. Sales are down 40%–50%." (Dkt. No. 13-9, ¶ 13.) Other Plaintiffs allege losses without quantifying them. Plaintiff Nicholas Affronti claims that "sales are crashing for handguns and for semi-automatic rifles[]"

[and] [a]ncillary sales, like ammunition, are falling right alongside it." (Dkt. No. 13-7, ¶ 37.)
Plaintiff Christopher Martello states: "*What ammunition sales?* Is the easiest way I can convey to
the Court what is happening to business as a result of the new laws. . . . The retail side of
business has gone crickets." (Dkt. No. 13-6, ¶ 69.)

Plaintiffs also assert that absent judicial relief they "may be out-of-business as of end-of-
day on December 4, 2022." (Dkt. No. 13-11, at 7.) Plaintiffs Craig Serafini, Michael
Mastrogiovanni, and Robert Owens echo this sentiment in their affidavits without providing
sufficient support. (Dkt. No. 13-4, ¶ 22 (alleging, without meaningful additional detail, that he is
"probably not going to make it much longer than December 31" because he "won't be in
compliance," and "won't be able to sustain the daily losses" he is incurring by staying open);
Dkt. No. 13-5, ¶ 25 (alleging, without meaningful additional detail, that "[i]f we do not achieve
an immediate Temporary Restraining Order, I am going to have to seriously consider closing my
business as of December 5, 2022"); Dkt. No. 13-8, ¶ 29 (alleging, without meaningful additional
detail, that "[i]f we do not achieve an immediate Temporary Restraining Order, I will have to
close my business on or about December 5, 2022").)

A "company's loss of reputation, good will, and business opportunities" can constitute
irreparable harm, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004), "because
these damages 'are difficult to establish and measure.'" *Regeneron Pharms., Inc. v. U.S. Dep't of
Health & Hum. Servs.*, 510 F. Supp. 3d 29, 40 (S.D.N.Y. 2020) (quoting *Register.com*, 356 F.3d
at 404). But in general, decreased sales alone are insufficient to constitute irreparable harm
because such injuries can be adequately compensated with money damages. *See Tom Doherty
Assocs.*, 60 F.3d at 38 ("[W]e have found no irreparable harm . . . [when] lost profits stemming
from the inability to sell [certain products] could be compensated with money damages

determined on the basis of past sales of [those products] and of current and expected future market conditions."); *see also Kane v. De Blasio*, 19 F.4th 152, 171–72 (2d Cir. 2021) ("Plaintiffs . . . face economic harms, principally a loss of income, . . . [that] do not justify an injunction . . . ."); *Register.com, Inc.*, 356 F.3d at 404 ("If an injury can be appropriately compensated by an award of monetary damages, then an adequate remedy at law exists, and no irreparable injury may be found to justify specific relief."). And while being forced out of business entirely can constitute irreparable harm, *see Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 733 F.3d 393, 423 (2d Cir. 2013) (citing *Tom Doherty Assocs.*, 60 F.3d at 37), Plaintiffs do not present sufficient evidence to demonstrate such a danger by, for instance, describing how decreased sales in certain categories—namely, semi-automatic rifles, handguns, and ammunition—impact overall profitability and, consequently, the very viability of Plaintiffs' businesses. *See Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 622–23 (S.D.N.Y. 2010).[18] Nor do Plaintiffs' conclusory assertions that their businesses may close absent injunctive relief provide sufficient factual support to establish an actual and imminent irreparable injury. *See DeVivo Assocs., Inc. v. Nationwide Mut. Ins. Co.*, No. 19-cv-2593, 2020 WL 2797244, at *5, 2020 U.S. Dist. LEXIS 94511, at *14 (E.D.N.Y. May 29, 2020) ("[A]

---

[18] Plaintiff Nadine Gazzola comes closest to succeeding in this regard: After stating that "September sales in the categories of handguns and semi-automatic rifles were down Ninety Percent (90%) and October continued to be depressed," she alleges: "At least 50% of our firearms sales are handguns. Most of the remaining 50% are tactical rifles, including ARs and AKs. . . . We can't afford to keep the doors open with just sales of traditional hunting rifles during the fall hunting season." (Dkt. No. 13-2, ¶ 57.) But even these allegations fall short of providing a concrete showing that the viability of her business is threatened. As an initial matter, this Plaintiff does not quantify the sales decrease of "tactical rifles," as distinguished from semi-automatic rifles, (*id.*), making the effect of the decrease in semi-automatic rifle sales difficult to contextualize. More importantly, she does not quantify October sales beyond stating that they "continued to be depressed" despite having signed her affidavit on November 7, 2022, (*id.* at 22), when October sales data would have been available. As Plaintiffs acknowledge, some counties began issuing semi-automatic rifle licenses, or amendments or endorsements to existing licenses, in October 2022, (*id.* ¶ 51; Dkt. No. 13-3, ¶ 40; Dkt. No. 13-4, ¶ 63; Dkt. No. 13-5, ¶ 28; Dkt. No. 13-6, ¶¶ 55–56; Dkt. No. 13-8, ¶ 70), which suggests that semi-automatic rifle sales may well recover. Thus, even these comparatively specific allegations fall short of successfully demonstrating an irreparable injury. *See Tom Doherty Assocs.*, 60 F.3d at 38; *Rex Med. L.P.*, 754 F. Supp. 2d at 622–23.

preliminary injunction 'should not issue upon a plaintiff's imaginative, worst case scenario of the consequences flowing from the defendant's alleged wrong but upon a concrete showing of imminent, irreparable injury.'" (quoting *USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488, 491 (S.D.N.Y. 1989))); *see also Rossito-Canty v. Cuomo*, 86 F. Supp. 3d 175, 199 (E.D.N.Y. 2015) ("Irreparable harm may not be premised 'only on a possibility.'" (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008))).[19]

On this record, the Court finds that Plaintiffs have not established an actual and imminent injury that is irreparable in the absence of injunctive relief.[20]

### 2.    Likelihood of Success

"To establish a likelihood of success on the merits, a plaintiff must show that [it] is more likely than not to prevail on [its] claims, or, in other words, that the 'probability of prevailing is "better than fifty percent."'" *Doe v. Vassar Coll.*, No. 19-cv-0601, 2019 WL 6222918, at *7, 2019 U.S. Dist. LEXIS 203418, at *20–21 (S.D.N.Y. Nov. 21, 2019) (quoting *BigStar Ent., Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000). The Court will examine each

---

[19] In their declarations, Plaintiffs allege additional harms, such as the inability to hire their children who are under twenty-one years old, (Dkt. No. 13-2, ¶ 70; Dkt. No. 13-4, ¶ 85), an inability to offer training classes, (Dkt. No. 13-2, ¶ 56), and the costs of implementing new security measures, (Dkt. No. 13-2, ¶¶ 62–63; Dkt. No. 13-5, ¶ 65; Dkt. No. 13-6, ¶¶ 76, 86; Dkt. No. 13-7, ¶¶ 57, 65.) But in their moving papers, Plaintiffs premise their irreparable harm argument primarily on the loss of ability to sell certain merchandise and the danger of being forced out of business. (Dkt. No. 13-11, at 7, 26; Dkt. No. 33, at 9, 11–12.) Furthermore, the costs of compliance with government regulations are typically insufficient to constitute irreparable harm. *See Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005); *see also New York v. U.S. Dep't of Educ.*, 477 F. Supp. 3d 279, 303–04 (S.D.N.Y. 2020) (citing *Freedom Holdings*, 408 F.3d at 115; *Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980); *A.O. Smith Corp. v. FTC*, 530 F.2d 515, 527–28 (3d Cir. 1976)). These allegations are insufficient to constitute irreparable harm.

[20] Plaintiffs suggest in their reply brief that, if the Court were to hold an evidentiary hearing before ruling on the motion for a preliminary injunction, Plaintiffs would have "90[ ]days of available data" relevant to "allegations for damages." (Dkt. No. 33, at 15.) However, in light of Plaintiffs' failure to demonstrate a likelihood of success on the merits of their claims, *see infra* section IV.B.2, the Court, in its discretion, concludes that it may "dispose of the motion on the papers before it." *See Md. Cas. Co. v. Realty Advisory Bd. on Labor Rels.*, 107 F.3d 979, 984 (2d Cir. 1997) (quoting *Consol. Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 256 (2d Cir. 1989)); *see also Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) ("An evidentiary hearing is not required when the relevant facts . . . are not in dispute . . . .") (internal citations omitted).

of Plaintiffs' claims to determine whether Plaintiffs have demonstrated a likelihood of success on the merits.

a.        <strong>Defendants Hochul and James</strong>

Defendants argue that Plaintiffs have failed to show any likelihood of success on their claims against Defendants Hochul and James because claims against these Defendants are barred by the Eleventh Amendment, no injury is fairly traceable to these Defendants, and legislative immunity bars suit against Defendant Hochul. (Dkt. No. 29, at 13–15.)[21] Plaintiffs assert that the *Ex parte Young* exception applies to these Defendants. (Dkt. No. 33, at 18–19.)

The Eleventh Amendment generally prohibits lawsuits against a state without that state's consent. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). This prohibition extends to individuals sued for damages in their capacities as state officials. *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). However, under the Supreme Court's decision in *Ex parte Young*, "[a] plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that [the] complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). For this exception to apply, "the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of federal law." *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372–73 (2d Cir. 2005) (quoting *Ex parte Young*, 209 U.S. 123, 154, 157 (1908)). A state official's general duty to execute the laws is not sufficient to make [the official] a proper party." *Roberson v. Cuomo*, 524

---

[21] Defendants do not dispute the propriety of Defendants Nigrelli and Rosado. (*Id.*)

F. Supp. 3d 196, 223 (S.D.N.Y. 2021); *see also Warden v. Pataki*, 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999), *aff'd sub nom. Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999). Nor is a state attorney general a proper party absent a specific connection to the enforcement of the challenged laws. *See Chrysafis v. James*, 534 F. Supp. 3d 272, 290 (E.D.N.Y. 2021); *see also Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976). Plaintiffs assert that Defendants Hochul and James are "architects of the [challenged laws] . . . driving passage of the [laws], using public outlets to promote the cause . . . and a campaign of animus against those who support the Second Amendment and the U.S. Supreme Court." (Dkt. No. 33, at 19.) These vague connections, and other similarly tenuous connections Plaintiffs allege, are wholly insufficient to establish any connection between Defendants Hochul and James and the enforcement of the New York laws at issue. *See Roberson*, 524 F. Supp. 3d at 223; *Chrysafis*, 534 F. Supp. 3d at 290; *see also Antonyuk v. Hochul*, No. 22-cv-0986, 2022 WL 16744700, at *39–40, 2022 U.S. Dist. LEXIS 201944, at *114–19 (N.D.N.Y. Nov. 7, 2022) (dismissing Hochul as a defendant in an action challenging New York firearms provisions for violating the Second and Fifth Amendments because "Hochul would [not] be the individual who may provide [the plaintiffs] the (legal) relief they seek"). Accordingly, Plaintiffs have failed to show a likelihood of success as to their claims against Defendants Hochul and James.

### b.     Federal Pre-emption

Plaintiffs allege that certain provisions of the New York laws "are illegal and/or expressly pre-empted under federal law." (Dkt. No. 13-11, at 24.) Defendants argue that Plaintiffs show no likelihood of succeeding on their pre-emption claim because there is no conflict between the New York provisions at issue and the federal statutes and regulations cited by Plaintiffs. (Dkt. No. 29, at 15.)

The laws of the United States are the "supreme Law of the Land." U.S. Const. art. VI, cl. 2. Therefore, "state laws that conflict with federal law are 'without effect.'" *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 479–80 (2013) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). In other words, "state laws that require a private party to violate federal law are pre-empted." *Id.* at 475 (quoting *Maryland*, 451 U.S. at 746). A state law is pre-empted when (1) Congress has defined "explicitly the extent to which its enactments pre-empt state law . . . through explicit statutory language"; (2) the state law at issue "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively"; or (3) the state law at issue "actually conflicts with federal law . . . [so that] it is impossible for a private party to comply with both state and federal requirements." *See English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990).

Plaintiffs suggest that their pre-emption claim relies on one federal statute, 18 U.S.C. § 926, and one federal regulation, 28 C.F.R. § 25.11(b),[22] (Dkt. No. 1, at 118), although they cobble together other federal statutes and regulations when 18 U.S.C. § 926 and 28 C.F.R. § 25.11(b) are clearly not in conflict with a challenged provision, (Dkt. No. 13-11, at 10–15). Plaintiffs claim that certain New York laws "expressly [] violate federal prohibitions under 18 U.S.C. §§ 926 and 927" and that "[o]thers fail under implied pre-emption through conflict impossibility and obstacle." (Dkt. No. 1, ¶ 130.) But Congress has limited Plaintiffs to demonstrating pre-emption only where there is an actual conflict between state and federal law. *See* 18 U.S.C. § 927. Section 927 reads:

> No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the

---

[22] The federal regulations Plaintiffs cite in support of their pre-emption claim are contained in 28 C.F.R. subpart A, which derives its authority from the Brady Handgun Violence Prevention Act, codified at 18 U.S.C. § 921 *et seq.*

same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

"Given that Congress specifically preserved such authority for the States, it stands to reason that Congress did not intend to prevent the States from using appropriate tools to exercise that authority." *Chamber of Com. v. Whiting*, 563 U.S. 582, 600–01 (2011). Thus, Plaintiffs must demonstrate that there exists a "direct and positive conflict between [federal law] and the law of the State so that the two cannot be reconciled or consistently stand together." *See* 18 U.S.C. § 927; *see also English*, 496 U.S. at 79; *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963). They fail to do so.

The New York laws that Plaintiffs allege are pre-empted—"Group A"—deal generally with the security of firearms in the possession of firearms dealers, *see* N.Y. Gen. Bus. §§ 875-b(1), (2), and the maintenance and certification of firearms compliance records, *see* N.Y. Gen. Bus. §§ 875-f, 875-g(1)(b). These laws are contained in N.Y. Gen. Bus. art. 39-BB.[23]

The New York laws regulating the security of firearms in the possession of firearms dealers require that "[e]very dealer . . . implement a security plan for securing firearms, rifles and shotguns, including firearms, rifles and shotguns in shipment." N.Y. Gen. Bus. § 875-b(1). That plan must include storage of firearms outside of business hours "in a locked fireproof safe or vault on the dealer's business premises or in a secured and locked area on the dealer's business premises" and storing ammunition "separately from firearms . . . and out of reach of customers." *Id.* Plaintiffs contend that this would "allow the Plaintiffs to determine shipping liability, a matter of regulation comprehensively covered by federal law to facilitate inter-state commerce between

---

[23] Plaintiffs also challenge as pre-empted two other New York laws—N.Y. Exec. § 228 and N.Y. Penal § 400.02(2)—that are not contained in N.Y. Gen. Bus. art. 39-BB. (Dkt. No. 1, ¶ 131; Dkt. No. 13-11, at 15.) These provisions are discussed separately below.

FFLs nationwide," (Dkt. No. 13-11, at 12–13 (citing 27 C.F.R. §§ 478.122, 478.123, 478.125)), and that this "expressly contradicts federal firearms compliance law." (Dkt. No. 1, ¶ 137.) The regulations Plaintiffs cite prescribe the records to be recorded and kept by firearms dealers, licensed importers, and licensed collectors. *See* 27 C.F.R. §§ 478.122, 478.125. They plainly do not regulate the conduct described in N.Y. Gen. Bus. § 875-b(1) and are therefore not in conflict.

The New York laws regulating the security of firearms further require that a firearms dealer's "business premises . . . be secured by a security alarm system that is installed and maintained by a security alarm operator" that monitors "all accessible openings, and partial motion and sound detection at certain other areas of the premises" and "a video recording device at each point of sale and each entrance and exit to the premises, which shall be recorded from both the indoor and outdoor vantage point and shall maintain such recordings for a period of not less than two years." N.Y. Gen. Bus. § 875-b(2). Plaintiffs' chief pre-emption concern as regards this provision relies on the contention that it allows someone with a criminal record to be the operator of the security alarm system. (Dkt. No. 13-11, at 13.) That contention appears to be accurate, *see* N.Y. Gen. Bus. § 69-o, but it is also irrelevant. Plaintiffs assert that 18 U.S.C. § 922(h) prohibits firearms dealers from hiring anyone with a criminal record, (Dkt. No. 13-11, at 13), but it does not. Rather, § 922(h) prohibits any employee of a person who is disqualified from possessing firearms under 18 U.S.C. § 922(g), including someone "convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year," from "receiv[ing], possess[ing], or transport[ing] any firearm or ammunition in or affecting interstate or foreign commerce . . . [or] receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce" 18 U.S.C. § 922(h). That is, the employee of a disqualified person cannot possess firearms in the course of employment with the disqualified person. *Id.*; *see*

*also United States v. Lahey*, 967 F. Supp. 2d 731, 738–39 (S.D.N.Y. 2013). Thus, N.Y. Gen. Bus. § 875-b(2) and 18 U.S.C. § 922(h) are not in conflict.[24]

The New York laws regulating the maintenance and certification of compliance records require that "[e]very dealer . . . establish and maintain a book[] or [electronic] record of purchase, sale, inventory, and other records at the dealer's place of business in such form and for such period as the superintendent shall require, and shall submit a copy of such records to the New York state police every April and October." N.Y. Gen. Bus. § 875-f. Plaintiffs contend that this law "would require the Plaintiffs to copy and transmit all entries from their federal A&D Book to the Defendant NYS Police," or "would require Plaintiffs to create records . . . which plagiarize[] federal firearms compliance laws." (Dkt. No. 13-11, at 10–12.) Either requirement, Plaintiffs claim, necessitates Plaintiffs violating 18 U.S.C. § 926. (Dkt. No. 13-11, at 10–12.) Neither claim is accurate. The New York law plainly does not require transmitting any or all entries from a dealer's federal acquisition and disposition book.[25] *See* N.Y. Gen. Bus. § 875-f. It requires the creation of records as prescribed by New York law. *See id.* But if section 875-f did require transmitting federal records, Plaintiffs are incorrect in asserting that such conduct is prohibited by federal law. The federal statute on which Plaintiffs rely states (in relevant part):

> The Attorney General [of the United States] may prescribe only such rules and regulations as are necessary to carry out the provisions of this chapter . . . . No such rule or regulation prescribed after the date of the enactment of the Firearms Owners' Protection Act [of 1986] may require that records required to be maintained under this chapter or any portion of the contents of such records, be recorded at or transferred to a facility owned, managed, or controlled by the United States or any State or any political subdivision thereof, nor

---

[24] Plaintiffs' apparent belief that 18 U.S.C. § 922(h) prohibits a firearms dealer from hiring someone who has been convicted of a felony is incorrect. But even if that belief were correct, or if a separate federal law proscribed such conduct, there is no conflict between the state and federal provisions because there is no suggestion that the security alarm operator would ever receive, possess, or transport any firearm or ammunition. *See* N.Y. Gen. Bus. § 875-b(2).

[25] For relevant federal acquisition and disposition record-keeping requirements, *see* 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. § 478.125(e).

> that any system of registration of firearms, firearms owners, or
> firearms transactions or dispositions be established.

18 U.S.C. § 926(a). The "rule[s] or regulation[s]" controlled by this section are only those

prescribed by the Attorney General of the United States. *See id.* Thus, this statute may be read as

stating:

> The Attorney General [of the United States] may prescribe . . . [n]o
> . . . rule or regulation . . . [that] require[s] that records required to be
> maintained under this chapter . . . be recorded at or transferred to a
> facility owned, managed, or controlled by [New York], nor that any
> system of registration of firearms, firearms owners, or firearms
> transactions or dispositions be established.

*Id.* This does not conflict whatsoever with a New York official prescribing a regulation requiring

that records kept under federal law be transmitted to, for instance, the New York State Police.

*See id.*; 18 U.S.C. § 927. Nor does it conflict with a New York official creating a system of

registration for firearms or firearms transactions and dispositions even if the information

recorded is substantially similar to, or, as Plaintiffs put it, "plagiarizes," (Dkt. No. 13-11, at 12),

federal firearms registration information. *See* 18 U.S.C. § 926(a), 927; N.Y. Gen. Bus. § 875-f;

*see also* Haw. Rev. Stat. § 134-3 (creating a registration system for all firearms under the

supervision of the Attorney General of Hawaii); Cal. Penal §§ 11106, 28100, 28155 (creating a

database of information pertaining to the sale or transfer of certain firearms under the supervision

of the Attorney General of California). That the Attorney General of the United States is

prohibited from engaging in conduct that is specifically reserved to the states by federal law has

no bearing on the ability of state officials to engage in that conduct. *See* 18 U.S.C. §§ 926(a),

927. This is a hallmark of federalism. *See, e.g.*, *Gonzales v. Raich*, 545 U.S. 1, 74 (2005)

(Thomas, J., dissenting) ("Our federalist system, properly understood, allows [states] to decide

for themselves how to safeguard the health and welfare of their citizens."). Thus, Plaintiffs have failed to demonstrate any conflict between N.Y. Gen. Bus. § 875-f and 18 U.S.C. § 926.[26]

Plaintiffs further contend that N.Y. Gen. Bus. § 875-g(1)(b), which requires "[e]very dealer [to] . . . annually certify to the superintendent [of the New York State Police] that such dealer has complied with all of the requirements of this article," leaves Plaintiffs with "no legal pathway . . . [t]o comply with the [New York] laws [without] . . . violati[ng] . . . federal laws," (Dkt. No. 13-11, at 14). Plaintiffs do not suggest any specific federal law pre-empts N.Y. Gen. Bus. § 875-g(1)(b) except the Fifth Amendment. (Dkt. No. 13-11, at 13–14.) The Court addresses Plaintiffs' Fifth Amendment claim below outside the pre-emption context but finds that Plaintiffs have otherwise failed to demonstrate any positive and direct conflict between N.Y. Gen. Bus. § 875-g(1)(b) and federal law.

Finally, Plaintiffs tack on to their pre-emption claim two additional New York laws outside of N.Y. Gen. Bus. art. 39-BB. The first, N.Y. Exec. § 228,[27] makes New York "a state point of contact for implementation of 18 U.S.C. sec. 922(t), all federal regulations and applicable guidelines adopted pursuant thereto, and the national instant criminal background check system [("NICS")] for the purchase of firearms and ammunition." Plaintiffs do not address this claim in their memorandum of law in support of their motion for a temporary restraining order and preliminary injunction, but state in their complaint, without federal statutory support, that this provision is "a scheme to grab firearms background check information and to retain the records, share the records among Executive Branch offices and agencies, and to use the records

---

[26] Plaintiffs' specific pre-emption contentions about certain subsections of N.Y. Gen. Bus. § 875-f—namely N.Y. Gen. Bus. § 875-f(2), which requires a monthly "inventory check" of firearms not yet disposed of, and N.Y. Gen. Bus. § 875-f(3), which allows access of the records to government agencies and firearms manufacturers, (Dkt. No. 13-11, at 11–12)—are without merit for the same reasons.

[27] This provision does not take effect until July 15, 2023. *See* S.B. S51001, 2020 Sen., 2021-22 Extraordinary Leg. Sess. (N.Y. 2022); N.Y. Exec. § 228.

for purposes beyond the firearms purchase background check defined at federal law." (Dkt. No. 1, ¶ 136.) Plaintiffs provide no basis for these allegations. What is more, N.Y. Exec. § 228, which transfers the duty to complete a background check from the firearms dealer to the State, is a state law precisely contemplated by, not in conflict with, federal law. *See* 18 U.S.C. § 922(t)(3); 28 C.F.R. § 25.9(d)(1); *see also Abramski v. United States*, 573 U.S. 169, 172 n.1 (2014) ("The principal exception [to the requirement that a firearms dealer contact NICS] is for any buyer who has a state permit that has been 'issued only after an authorized government official has verified' the buyer's eligibility to own a gun under both federal and state law." (quoting 18 U.S.C. § 922(t)(3))).[28] Thus, Plaintiffs have failed to demonstrate any conflict between N.Y. Exec. § 228 and federal law.

Plaintiffs also suggest that N.Y. Penal § 400.02(2), which creates a "statewide license and record database specific for ammunition sales," is pre-empted by 28 C.F.R. §§ 25.1, 25.6. (Dkt. No. 13-11, at 15.)[29] But the regulations Plaintiffs rely on specifically state that "[a]ccess to the NICS Index for purposes unrelated to NICS background checks pursuant to 18 U.S.C. 922(t) shall be limited to uses for the purposes of . . . [p]roviding information to . . . state . . . criminal justice agencies in connection with the issuance of a firearm-related . . . permit or license." 28 C.F.R. § 25.6(j). Plaintiffs do not demonstrate that the purpose of N.Y. Penal § 400.02(2) is "unrelated to NICS background checks." *See* 28 C.F.R. § 25.6. Nor do they demonstrate that N.Y. Penal § 400.02(2) has a purpose other than "[p]roviding information to . . . state . . . criminal justice agencies in connection with the issuance of a firearm-related . . . permit or

---

[28] Indeed, as of November 2021, at least thirteen states serve as the point of contact for NICS for all firearms background checks. *See* Fed. Bureau of Investigation, National Instant Criminal Background Check System Participation Map, http://www.fbi.gov/about-us/cjis/nics/general-information/participation-map.

[29] Plaintiffs did not allege in their complaint that N.Y. Penal § 400.02(2) is pre-empted by federal law. (Dkt. No. 1.)

license." *See* 28 C.F.R. § 25.6. More importantly, N.Y. Penal § 400.02(2) does not require use of the NICS, but rather prescribes the creation of a "statewide . . . database." Thus, Plaintiffs have failed to demonstrate any conflict between N.Y. Penal § 400.02(2) and 28 CFR §§ 25.1, 25.6.

Plaintiffs have wholly failed to demonstrate that any of the challenged laws "actually conflict[] with federal law . . . [so that] it is impossible for [Plaintiffs] to comply with both state and federal requirements." *See English*, 496 U.S. at 79. Accordingly, Plaintiffs have not demonstrated a likelihood of success on the merits of their federal pre-emption claim.

<h3 style="text-align:center">c.    Constitutional Challenges</h3>

<h3 style="text-align:center">i.    Second Amendment</h3>

Plaintiffs allege that certain provisions of the New York laws amount to "near total denial of the Plaintiffs' and all New York residents' Second Amendment rights." (Dkt. No. 13-11, at 21.) Defendants argue that the Second Amendment does not apply to corporations, that even if the Second Amendment did apply to corporations, the laws at issue do not implicate the Second Amendment, and that even if the laws at issue did implicate the Second Amendment, they are historically justified. (Dkt. No. 29, at 15–25.)

The Second Amendment provides that, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has held that the Second Amendment protects an individual's right to keep and bear arms for self-defense. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2125 (2022).[30] To determine whether that right is implicated, a court must examine whether "the Second Amendment's plain text covers an individual's conduct." *See id.* at 2129–30. If it does, "the Constitution presumptively protects that conduct [and] [t]he

---

[30] "Strictly speaking, [states] [are] bound to respect the right to keep and bear arms because of the Fourteenth Amendment, not the Second." *Id.* at 2137.

government must then justify its regulation by demonstrating that it is consistent with the

Nation's historical tradition of firearm regulation." *Id.*

Plaintiffs fail to demonstrate that the Second Amendment's plain text covers the conduct

regulated by the statutory provisions at issue. Plaintiffs are "corporations, single-member LLCs,

[] [s]ole [p]roprietorships, and . . . Federal Firearms Licensees with [the individual] Plaintiffs

being 'Responsible Persons' for such businesses." (Dkt. No. 13-11, at 22.) Plaintiffs contend

that, since a federal statutory firearms law defines "person" "[to] include any individual,

corporation, company, association, firm, partnership, society, or joint stock company," 18 U.S.C.

§ 921(a)(1), and since the Supreme Court has recognized "that First Amendment protection

extends to corporations," (Dkt. No. 13-11, at 23 (citing *Citizens United v. FEC*, 558 U.S. 310

(2010); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 778 n.14 (1978))), "Plaintiffs'

businesses should receive the same level of protection," (*id.*). This argument is unavailing.

Justice Thomas explicitly stated the holding of *N.Y. State Rifle & Pistol Ass'n v. Bruen*

twice: "[W]hen the Second Amendment's plain text covers an individual's conduct, the

Constitution presumptively protects that conduct." 142 S. Ct. at 2126, 2129–30. Plaintiffs fail to

present any support for their contention that the individual right secured by the Second

Amendment applies to corporations or any other business organizations. It does not. *See District*

*of Columbia v. Heller*, 554 U.S. 570, 592 (2008) ("Nowhere else in the Constitution does a

'right' attributed to 'the people' refer to anything other than an individual right. . . . [W]e find

that [the Second Amendment] guarantee[s] the individual right to possess and carry weapons in

case of confrontation."). Moreover, the Second Amendment's "operative clause"—"the right of

the people to keep and bear Arms shall not be infringed"—makes no mention of buying, selling,

storing, shipping, or otherwise engaging in the business of firearms. *See N.Y. State Rifle & Pistol*

*Ass'n v. Bruen*, 142 S. Ct. at 2134. Indeed, none of the "trilogy" of cases cited by Plaintiffs—

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, *McDonald v. City of Chicago*, and *District of Columbia*

*v. Heller*—"cast[s] doubt on . . . laws imposing conditions and qualifications on the commercial

sale of arms." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J.,

concurring); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010); *Heller*, 554 U.S. at 626–

27. Plaintiffs have not cited any authority supporting a Second Amendment right for an

individual or a business organization to engage in the commercial sale of firearms. Thus,

Plaintiffs have not demonstrated a likelihood of success on the merits of their Second

Amendment claim.

### ii.      Fourteenth Amendment

Plaintiffs allege that certain provisions of the New York laws violate the Fourteenth

Amendment because they "are so vague as to be unintelligible and highly likely to result in

random and irregular prosecutions." (Dkt. No. 13-11, at 17.) Defendants contend that this

challenge "fails at the outset because 'it is obvious in this case that there exist numerous

conceivably valid applications of' the challenged statutes." (Dkt. No. 29, at 33 (quoting

*Richmond Boro Gun Club, Inc. v. City of New York*, 97 F.3d 681, 684 (2d Cir. 1996)).)

The Fourteenth Amendment prohibits any state from "depriv[ing] any person of life,

liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A state "violates

this guarantee by taking away someone's life, liberty, or property under a criminal law so vague

that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it

invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citing

*Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983)). Statutes that impose criminal penalties "are

subject to a 'more stringent' vagueness standard than are civil or economic regulations." *N.Y.*

*State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015) (quoting *Vill. of Hoffman*

*Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982)). But such statutes need not

contain "'meticulous specificity' . . . [since] 'language is necessarily marked by a degree of

imprecision.'" *Id.* (quoting *Thibodeau v. Portuondo*, 486 F.3d 61, 66 (2d Cir. 2007) (Sotomayor,

J.)).

      As an initial matter, the Court must consider the nature of the vagueness challenge. "A

statute may be challenged on vagueness grounds either as applied or on its face." *Thibodeau*, 486

F.3d at 67. Plaintiffs do not clearly indicate which type of challenge they are asserting, but they

do not suggest that they have been faced with any enforcement action. Therefore, "[b]ecause

[P]laintiffs pursue this pre-enforcement [challenge] before they have been charged with any

violation of law, it constitutes a facial, rather than as-applied[,] challenge." *Jacoby & Meyers,*

*LLP v. Presiding Justs. of the First, Second, Third & Fourth Dep'ts, App. Div. of the Sup. Ct. of*

*N.Y.*, 852 F.3d 178, 184 (2d Cir. 2017) (quoting *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804

F.3d at 265). To succeed on a facial challenge, Plaintiffs "must establish that no set of

circumstances exists under which the [challenged laws] would be valid." *N.Y. State Rifle &*

*Pistol Ass'n v. Cuomo*, 804 F.3d at 265 (quoting *United States v. Salerno*, 481 U.S. 739, 745

(1987)). This high bar makes "a facial challenge . . . 'the most difficult challenge to mount

successfully.'" *See id.* (quoting *Salerno*, 481 U.S. at 745).

      Plaintiffs challenge differing sets of laws as void for vagueness in their complaint and

memorandum of law in support of their motion for a temporary restraining order and preliminary

injunction.[31] The Court will examine each challenged provision.

---

[31] The Court notes that Plaintiffs appear to have inadvertently omitted the argument that their Group B claim is likely
to succeed on the merits from their memorandum of law in support of their motion for a temporary restraining order
and preliminary injunction. (Dkt. No. 13-11, at 25.)

Plaintiffs claim that several provisions of N.Y. Gen. Bus. art. 39-BB are unconstitutionally vague. Plaintiffs point to certain phrases in N.Y. Gen. Bus. § 875-b(2) to support their vagueness claim, asserting that the provision is unconstitutionally vague because the "'security alarm system' standards provision" requires "the Defendant NYS Police to 'establish' 'standards for such security alarm systems' and [] requires the Defendant NYS Police to 'approve' the 'security alarm systems.'" (Dkt. No. 1, ¶ 156 (quoting N.Y. Gen. Bus. § 875-b(2)).)[32] Plaintiffs similarly claim N.Y. Gen. Bus. § 875-e is unconstitutionally vague because "the 'employee training' program and documentation . . . is to be 'developed by the superintendent' and is to be '[made] available to each dealer,' in accordance with minimum topics set out in N.Y. Gen. Bus. §§ 875-e(2)(a)–(e) [sic] plus '(f) such other topics the superintendent deems necessary and appropriate.'" (Dkt. No. 1, ¶ 156 (quoting N.Y. Gen. Bus. §§ 875-e, 875-f).)[33] Plaintiffs also claim that N.Y. Gen. Bus. § 875-f is unconstitutionally vague because the "provision may confer authority for the Defendant NYS Police to pr[e]scribe a[n] [acquisition and disposition book] 'in such form and for such period as the superintendent shall require,' which may differ from federal regulation" and requires the "creation of a new monthly inventory reconciliation report for the NYS Police." (Dkt. No. 1, ¶ 156 (quoting N.Y. Gen. Bus. § 875-f).)[34] Plaintiffs further claim that N.Y. Gen. Bus. § 875-g is unconstitutionally vague because the "annual compliance certification['s] . . . 'form and content'" and "'regulations requiring periodic inspections' at 'the premises of every dealer to determine compliance by such

---

[32] Plaintiffs do not include N.Y. Gen. Bus. § 875-b(2) in Group B for their memorandum of law in support of their motion for a temporary restraining order and preliminary injunction. (Dkt. Nos. 13, 13-11.)

[33] Plaintiffs do not include N.Y. Gen. Bus. § 875-e in Group B for their memorandum of law in support of their motion for a temporary restraining order and preliminary injunction. (Dkt. Nos. 13, 13-11.)

[34] Plaintiffs do not include N.Y. Gen. Bus. § 875-f in Group B for their memorandum of law in support of their motion for a temporary restraining order and preliminary injunction. (Dkt. Nos. 13, 13-11.)

dealer with the requirements of [article 39-BB] [are to] be promulgated by the Defendant NYS Police." (Dkt. No. 1, ¶ 156 (quoting N.Y. Gen. Bus. § 875-g).)[35] Finally with regard to N.Y. Gen. Bus. art. 39-BB, Plaintiffs claim that N.Y. Gen. Bus. § 875-h is unconstitutionally vague because it allows "[t]he superintendent [of the New York State Police] [to] promulgate such additional rules and regulations as the superintendent shall deem necessary to prevent firearms, rifles, and shotguns from being diverted from the legal stream of commerce." (Dkt. No. 1, ¶ 156 (quoting N.Y. Gen. Bus. § 875-h).)[36]

　　　Plaintiffs provide no support for any of these claims and certainly fail to demonstrate, as they must, that the provisions "can never be validly applied," *Vt. Rt. to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 128 (2d Cir. 2014), either as a result of providing inadequate notice or inviting arbitrary enforcement, *see Johnson*, 576 U.S. at 596; *see also Salerno*, 481 U.S. at 745. Indeed, each of these claims centers on the ability of New York agencies, namely the New York State Police, to promulgate rules, regulations, or guidance, and with such rules, regulations, or guidance, there is no suggestion that the provisions will fail to provide adequate notice or invite arbitrary enforcement. *See Johnson*, 576 U.S. at 596; *see also Salerno*, 481 U.S. at 745.[37] Plaintiffs fail to advance any argument that this is improper in the vagueness context, and they fail to establish a likelihood of success on meeting the high bar that makes "a facial [vagueness]

---

[35] Plaintiffs do not include N.Y. Gen. Bus. § 875-g(2) in Group B for their memorandum of law in support of their motion for a temporary restraining order and preliminary injunction. (Dkt. Nos. 13, 13-11.)

[36] Plaintiffs do not include N.Y. Gen. Bus. § 875-h in Group B for their memorandum of law in support of their motion for a temporary restraining order and preliminary injunction. (Dkt. Nos. 13, 13-11.)

[37] For example, the superintendent of the New York State Police is required to provide firearms dealers with an employee training course that such dealers must provide to all employees. N.Y. Gen. Bus. § 875-e. There is no indication that such a course is currently available. However, Plaintiffs suggested at the December 1, 2022, hearing that, pursuant to N.Y. Gen. Bus. § 875-e, they will have to fire every employee the day the provision goes into effect. This is a misreading of the law. The statute provides that "all new employees [shall be provided the training] within thirty days of employment . . . [and] all existing employees [shall be provided the training] within ninety days of the effective date of this section." *Id.* So long as the employee training course is timely created, Plaintiffs have not demonstrated a likelihood of success on their vagueness claim.

challenge . . . 'the most difficult challenge to mount successfully.'" *See N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d at 265 (quoting *Salerno*, 481 U.S. at 745).[38]

Plaintiffs further challenge various provisions of N.Y. Penal §§ 400.00, 400.02, 400.03. Plaintiffs contend that the "classroom and live-fire training curriculum and certification scheme" created by N.Y. Penal § 400.00 is unconstitutionally vague, (Dkt. No. 1, ¶ 156; Dkt. No. 13-11, at 17), because "Defendants have failed to issue legally[] required curriculum, testing, and certification forms," (Dkt. No. 13-2, ¶ 48), or have otherwise failed to issue an adequate curriculum, (Dkt. No. 13-3, ¶ 26; Dkt. No. 13-4, ¶ 24; Dkt. No. 13-5, ¶¶ 32–33; Dkt. No. 13-7, ¶ 71; Dkt. No. 13-8, ¶ 50). Plaintiffs also suggest that the licensing scheme for purchase of a semi-automatic rifle created by N.Y. Penal §§ 400.00 is unconstitutionally vague, (Dkt. No. 1, ¶ 156; Dkt. No. 13-11, at 17),[39] because "[n]o semi-automatic license is known to have issued or to be available to request," (Dkt. No. 1, ¶ 160). Finally, Plaintiffs allege that ammunition sale record-keeping and background-check requirements created by N.Y. Penal §§ 400.02, 400.03 are unconstitutionally vague, (Dkt. No. 1, ¶ 156; Dkt. No. 13-11, at 17),[40] but provide no basis for this argument. Plaintiffs have failed to show a likelihood of success on any of these arguments.

---

[38] In the complaint, Plaintiffs raise a similar claim against N.Y. Penal § 270.22, which restricts the sale of body vests. (Dkt. No. 1, ¶ 156.) They do not provide any support for this claim in their memorandum of law in support of their motion for a temporary restraining order and preliminary injunction (and, in fact, exclude N.Y. Penal § 270.22 from Group B). (Dkt. Nos. 13, 13-11.) This claim is not likely to succeed for the same reasons that Plaintiffs' vagueness claims against provisions in N.Y. Gen. Bus. art. 39-BB are unlikely to succeed. Furthermore, no Plaintiff puts forth any allegations that he or she has attempted or otherwise intends to sell body armor. (Dkt. No. 13-4, ¶ 18; Dkt. No. 13-7, ¶ 24; Dkt. No. 13-9, ¶ 19.)

[39] The specific subsections of N.Y. Penal § 400.00 involving semi-automatic rifle licensing that Plaintiffs include in their complaint differ from those included in the memorandum of law in support of their motion for a temporary restraining order and preliminary injunction. (Dkt. No. 1, ¶ 156; Dkt. No. 13-11, at 17.)

[40] The specific sections involving ammunition record-keeping and background check requirements that Plaintiffs include in their complaint differ from those included in the memorandum of law in support of their motion for a temporary restraining order and preliminary injunction. (Dkt. No. 1, ¶ 156; Dkt. No. 13-11, at 17.)

Plaintiffs acknowledge that the Division of Criminal Justice Services published a document entitled "Minimum Standards for New York State Concealed Carry Firearm Safety Training." (Dkt. No. 15-2; Dkt. No. 13-3, ¶ 26; Dkt. No. 13-4, ¶ 25; Dkt. No. 13-5, ¶ 32; Dkt. No. 13-8, ¶ 50.) Plaintiffs variously contend that this is not a "curriculum" or is not "course materials." (Dkt. No. 13-3, ¶ 26; Dkt. No. 13-4, ¶ 25; Dkt. No. 13-5, ¶ 32; Dkt. No. 13-8, ¶ 50.) While Plaintiffs are correct that the document is not "course materials," they are clearly incorrect that it is not a curriculum: the document includes a section titled "Minimum Standards for Classroom Training Curriculum" that includes twelve separate topics and how much time should be devoted to each; a section titled "Minimum Standards for Written Proficiency Test" that describes standards for the proficiency test to be developed by instructors and states that instructors must retain records of such tests; a section titled "Minimum Standards for Live-Fire Training Curriculum" that lists six separate live-fire topics for instruction; and a section titled "Minimum Standards for Live-Fire Proficiency Assessment" that includes five separate live-fire ability assessments and states that instructors must retain records of such assessments. (Dkt. No. 15-2.)

Plaintiffs' own acknowledgements similarly undermine their claim that the semi-automatic rifle licensing scheme is unconstitutionally vague: the New York State Police published a semi-automatic rifle license amendment application, (Dkt. No. 1, ¶ 160; Dkt. No. 13-11, at 21; Dkt. No. 15-4), and the Division of Criminal Justice Services issued a "FAQ" about semi-automatic rifle licensing. (Dkt. No. 15-3.) Plaintiffs suggest that because the New York State Police form is an "amendment," it "add[s] to the confusion[] [instead of] clarifying the new laws." (Dkt. No. 1, ¶ 160.) But the existence of the semi-automatic rifle license amendment application apparently did not suggest to Plaintiffs that a separate semi-automatic rifle license

form exists. It does.[41] And Plaintiffs' apparent contention that the semi-automatic rifle licensing criteria cannot be described in the same section in which the concealed-carry licensing criteria are described, (Dkt. No. 1, ¶ 160), is entirely without merit.[42]

Having failed to put forth any argument about the ammunition sale record-keeping and background check requirements, Plaintiffs have failed to demonstrate a likelihood of success on the merits of their claim that the classroom and live-fire training curriculum and certification scheme created by N.Y. Penal §§ 400.00, the licensing scheme for purchase of a semi-automatic rifle created by N.Y. Penal §§ 400.00, or the ammunition sale record-keeping and background-check requirements created by N.Y. Penal §§ 400.02, 400.03 are unconstitutionally vague.

In sum, Plaintiffs have not shown a likelihood of success on the merits of their Fourteenth Amendment vagueness claim—that is, that any one of the challenged provisions is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement," *see Johnson*, 576 U.S. at 595 (citing *Kolender*, 461 U.S. at 357–58), especially under the stringent standard for facial challenges imposed by *Salerno*, which requires that Plaintiffs show that "no set of circumstances exists under which the [challenged laws] would be valid," *see N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d at 265 (quoting *Salerno*, 481 U.S. at 745).[43]

---

[41] *See* N.Y. State Police, State of New York Semi-Automatic Rifle License Application, Form PPB-3 (rev. 08/22), https://troopers.ny.gov/system/files/documents/2022/10/ppb-3-08-22.pdf.

[42] In their memorandum of law in support of their motion for a temporary restraining order and preliminary injunction, Plaintiffs add N.Y. Penal §§ 265.65, 265.66 to their claim that the semi-automatic rifle licensing scheme is unconstitutionally vague. (Dkt. No. 13, at 4; Dkt. No. 13-11, at 17, 21–22.) These sections provide the criminal penalties for failing to adhere to the semi-automatic rifle licensing requirements, either as the purchaser, N.Y. Penal § 265.65, or as the seller, N.Y. Penal § 265.66.

[43] At oral argument, Plaintiffs noted that, if the Court were to hold an evidentiary hearing before ruling on the motion for a preliminary injunction, Plaintiffs would call as witnesses a representative of the New York State Police and a county-level firearms licensing official. Plaintiffs have, however, "not shown that an evidentiary hearing would resolve any material factual issues" with respect to the likelihood of success on the merits. *Amaker v. Fischer*, 453 F. App'x 59, 64 (2d Cir. 2011). Accordingly, the Court, in its discretion, concludes that it may "dispose of the motion

### iii.      Fifth Amendment

Plaintiffs allege that N.Y. Gen. Bus. § 875-g(1)(b) compels them to certify compliance with New York laws that Plaintiffs contend will force them to violate federal law. (Dkt. No. 13-11, at 13–14.) This certification, Plaintiffs argue, will "amount to a waiver of the Plaintiffs' Fifth Amendment rights against self-incrimination" by compelling Plaintiffs "to provide the Defendant NYS Police with a formal certification of compliance (or lack thereof) that is 'likely to facilitate their arrest and eventual conviction.'" (*Id.* at 14–16 (quoting *Haynes v. United States*, 390 U.S. 85, 97 (1968))). Defendants argue that this claim is premised on a misreading of federal law and that Plaintiffs "run no risk of incriminating themselves by complying with the certification requirement under [New York law]." (Dkt. No. 29, at 20.)

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. X, cl. 3. "[T]he Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the States." *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). This protection "applies only when the accused is compelled to make a testimonial communication that is incriminating." *Balt. City Dep't of Soc. Servs. v. Bouknight*, 493 U.S. 549, 554 (1990) (quoting *Fisher v. United States*, 425 U.S. 391, 408 (1976)).

The provision at issue requires that "[e]very dealer . . . annually certify to the superintendent [of the New York State Police] that such dealer has complied with all of the requirements of [N.Y. Gen. Bus. art. 39-BB]." N.Y. Gen. Bus. § 875-g(1)(b). Plaintiffs contend that it is "impossible" to comply with N.Y. Gen. Bus. art. 39-BB "due to pre-existing, express[]

---

on the papers before it." *See Md. Cas. Co.*, 107 F.3d at 984 (quoting *Consol. Gold Fields,* 871 F.2d at 256); *see also Charette*, 159 F.3d at 755.

federal prohibitions governing the business operations of the Plaintiffs." (Dkt. No. 13-11, at 13.) But the Court has examined all of Plaintiffs' proffered "federal prohibitions" and found none. That is, the premise of Plaintiffs' Fifth Amendment claim—that "[t]o comply with the [New York] laws results in a violation of federal laws," (*id.* at 14)—is baseless.

Furthermore, Plaintiffs' reliance on *Haynes v. United States* is misguided. In *Haynes*, the Supreme Court held that a law requiring those who obtained firearms without complying with federal statutory requirements—that is, those who obtained firearms illegally—to register such firearms with the federal government violated the Fifth Amendment right against self-incrimination because those persons were "inherently suspect of criminal activities." *See* 390 U.S. at 96–98 (quoting *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 79 (1965)); *see also Marchetti v. United States*, 390 U.S. 39, 47 (1968) (applying the protections of the Fifth Amendment in the context of a federal tax on illegal wagering because "those engaged in wagering are a group 'inherently suspect of criminal activities'" (quoting *Albertson*, 382 U.S. at 79)); *Grosso v. United States*, 390 U.S. 62, 64 (1968) (same); *Albertson*, 382 U.S. at 77–79 (applying the protections of the Fifth Amendment in the context of a federal law requiring registration as an affiliate of a Communist organization because such affiliation was illegal). But Plaintiffs are not in a "highly selective group inherently suspect of criminal activities." *See Haynes,* 390 U.S. at 98 (quoting *Albertson*, 382 U.S. at 79). Rather, Plaintiffs have merely "assume[d] control over items that are the legitimate object of the government's noncriminal regulatory powers." *Bouknight*, 493 U.S. at 558. Having failed to establish a likelihood of success on their claim that the certification requirement of N.Y. Gen. Bus. § 875-g(1)(b) compels them to make a testimonial communication that is incriminating, Plaintiffs have failed to demonstrate a likelihood of success on the merits of their Fifth Amendment claim.

#### d.   "Constitutional Regulatory Overburden"

Plaintiffs finally raise a novel argument that they term "constitutional regulatory overburden." (Dkt. No. 13-11, at 23.)[44] This theory, Plaintiffs contend, is a "natural extension of the *Heller –McDonald – NYSRPA I* trilogy" that extends the protections of the Second Amendment to businesses engaged in the sale of firearms by establishing that "the firearm is the only consumer product enshrined in the Bill of Rights." (*Id.* at 23–25.) Defendants argue that "there is no such claim" and that Plaintiffs fail to cite any supporting legal authority. (Dkt. No. 29, at 31.)

It is unclear to the Court how Plaintiffs' theory of "constitutional regulatory overburden" differs from their Second Amendment claim, which the Court found insufficient. Indeed, in support of their "constitutional regulatory overburden" theory, Plaintiffs cite the very cases that explicitly refuse to "cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring); *McDonald*, 561 U.S. at 786; *Heller*, 554 U.S. at 626–27; (Dkt. No. 13, at 22). Since Plaintiffs have provided no basis for their novel theory, they have failed to demonstrate a likelihood of success on the merits of their "constitutional regulatory overburden" claim.

#### 3.   Public Interest and Balance of Equities

When the government is a party to an action, the Court's inquiry into the balance of equities merges into the evaluation of the public interest. *See We The Patriots USA*, 17 F.4th at 295 (citing *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d at 58–59); *see also Kane*, 19

---

[44] Plaintiffs suggest this claim applies to "Group C," (*id.* at 4–5), although they challenge a different set of laws under this theory in their complaint, (Dkt. No. 1, ¶ 181). The Court need not determine precisely which laws Plaintiffs challenge under this theory because they have failed to show a likelihood of success on this claim regardless of which challenged law it is applied to.

F.4th at 163. The Court must "ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger*, 607 F.3d at 80 (quoting *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006)). Even if Plaintiffs had shown that the public interest would not be disserved by the issuance of an injunction, Plaintiffs' failure to demonstrate either a likelihood of irreparable injury in the absence of an injunction or a likelihood of success on the merits is sufficient to deny injunctive relief. *See Salinger*, 607 F.3d at 75 n.5; *Faiveley*, 559 F.3d at 119. Accordingly, the Court need not consider the balance of equities and the public interest. *See Faiveley*, 559 F.3d at 119; *see also Conn. State Police Union v. Rovella*, 36 F.4th 54, 68 (2d Cir. 2022) ("Because the District Court did not err in concluding that the [plaintiff] could not succeed on the merits of its claim, we need not address the remaining prongs of the preliminary injunction test, including whether the [plaintiff] demonstrated irreparable harm or whether an injunction would be in the public interest."), *cert. denied*, No. 22-116, 2022 WL 4654636, 2022 U.S. LEXIS 4041 (U.S. Oct. 3, 2022).

V.      **CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Plaintiffs' motion for a temporary restraining order, (Dkt. No. 13), is **DENIED**; and it is further

**ORDERED** that Plaintiffs' motion for a preliminary injunction, (*id.*), is **DENIED**.

**IT IS SO ORDERED.**

Dated:  December 7, 2022
        Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge