UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Nadine Gazzola, individually, and as co-owner, President, and as BATFE Federal Firearms Licensee Responsible Person for Zero Tolerance Manufacturing, Inc., et al.<br><br>*Plaintiffs*,<br><br>-against-<br><br>KATHLEEN HOCHUL, in her official capacity as Governor of the State of New York; STEVEN A. NIGRELLI, in his Official Capacity as the Acting Superintendent of the New York State Police; ROSSANA ROSADO, in her Official Capacity as the Commissioner of the Department of Criminal Justice Services of the New York State Police; and LETITIA JAMES, in her official capacity as Attorney General of the State of New York.<br><br>*Defendants*. | 1:22-cv-1134<br>(BKS/DJS) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED R. CIV. P. 12(c)**

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS…………………………………………………………...…5

STANDARD OF REVIEW…………………………………………………………………8

**POINT I:**     **ALL CLAIMS AGAINST THE GOVERNOR AND THE COMMISSIONER ARE BARRED BY THE ELEVENTH AMENDMENT……………………..10**

**POINT II:**     **PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AGAINST THE GOVERNOR OR COMMISSIONER……………………………………………12**

**POINT III:**     **PLAINTIFFS' SECOND AMENDMENT CLAIM FAILS BECAUSE THEY CANNOT MEET THE SECOND CIRCUIT'S STANDARD FOR DERIVATIVE STANDING …………………………………………………...14**

    **A.**     **The Court Correctly Concluded That Plaintiffs Themselves Do Not Have Standing To Raise A Second Amendment Claim……………………………..14**

    **B.**     **Any Derivative Second Amendment Claim Pressed On Behalf Of Others Fails…………………………………………………………………………...16**

        **1.**     **The Second Circuit's Holding In *Gazzola II* Sets A Demanding Standard For Derivative Claims……………………………………16**

        **2.**     **Documents Subject To Judicial Notice Demonstrate That New Yorkers Continue To Purchase Guns Without Interference……………...18**

**POINT IV:**     **PLAINTIFFS' CAUSE OF ACTION UNDER 42 U.S.C. §1985(2) MUST BE DISMISSED…………………………………………………………………22**

**POINT V:**     **PLAINTIFFS' CLAIM THAT CERTAIN CHALLENGED STATUTES ARE PREEMPTED BY FEDERAL LAW SHOULD BE DISMISSED…………..26**

**POINT VI:**   **PLAINTIFFS' FIFTH AMENDMENT CLAIMS SHOULD BE DISMISSED…………………………………………………………………31**

**POINT VII:**   **PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM THAT ANY OF THE CHALLENGED STATUTES IS UNCONSTITUTIONALLY VAGUE…………………………………………………………………33**

**POINT VIII:** **PLAINTIFFS' CONSTITUTIONAL REGULATORY OVERBURDEN CLAIM SHOULD BE DISMISSED…………………………………………..36**

**POINT IX:** **PLAINTIFFS' CAUSE OF ACTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988 SHOULD BE DISMISSED……………………………..37**

CONCLUSION ........................................................................................................................ 38

## TABLE OF AUTHORITIES

**CASES**

*Allen v. Antal*, No. 12-cv-8024, 2014 WL 2526977 (S.D.N.Y. Mar. 13, 2014)…………………...24

*Antonyuk v. Hochul,* No. 22-cv-0986, 2022 WL 16744700 (N.D.N.Y. Nov. 7, 2022)…………..12

*Antonyuk v. James*, No. 22-2908, 2024 WL 11963034 (2d Cir. Oct. 24, 2024)…………………17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………………………………8

*Asherman v. Meachum,* 957 F.2d 978 (2d Cir. 1992)……………………………………………32

*Baur v. Veneman*, 352 F.3d 625 (2d Cir. 2003)………………………………………………...13

*Baxter v. Palmigiano,* 425 U.S. 308 (1976)……………………………………………………32

*Bazinett v. Pregis LLC*, No. 1:23-CV-790 (MAD/ML), 2024 WL 1116287 (N.D.N.Y. Mar. 14, 2024)……………………………………………………………………………………………..10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)………………………………………………..8

*Brown v. Reardon,* 770 F.2d 896 (10th Cir. 1985)……………………………………………..37

*Butler v. Hesch*, 286 F. Supp. 3d 337 (N.D.N.Y. 2018)………………………………………..23

*Caidor v. M&T Bank,* 2006 WL 839547 (N.D.N.Y. 2006)……………………………………..26

*Carris v. First Student, Inc.,* 132 F. Supp. 3d 321 (N.D.N.Y. 2015)……………………………37

*Carvel v. Ross*, No. 09-cv-0722, 2011 WL 856283 (S.D.N.Y. Feb. 16, 2011)……………………23

*Citizens Union of the City of N.Y. v. Attorney General of N.Y.,* No. 16-cv-9592, 2017 WL 2984167 (S.D.N.Y. 2017)………………………………………………………………………..12

*CONMED Corp. v. Fed. Ins. Co.*, 590 F. Supp. 3d 463 (N.D.N.Y. 2022)……………………..8, 9

*Cruz v. AAA Carting & Rubbish Removal, Inc.,* 116 F. Supp. 3d 232 (S.D.N.Y. 2015)…..……10

*Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482 (N.D.N.Y. 2020)………………………18

*Davis v. New York,* 316 F.3d 93 (2d Cir. 2002)…………………………………………………11

*Deadwiley v. New York State Office of Children & Family Servs.,* 97 F. Supp. 3d 110 (E.D.N.Y. 2015)……………………………………………………………………………………..10

*Desmarattes v. Equifax*, No. 22CV3330KAMTAM, 2023 WL 8473362 (E.D.N.Y. Dec. 7, 2023)...............................................................................................................................9

*District of Columbia v. Heller*, 554 U.S. 570 (2008)……………………………………..15, 17, 37

*Do No Harm v. Pfizer Inc.,* 96 F.4th 106 (2d Cir. 2024)…………………………………..12, 14

*Does 1-2 v. Hochul*, No. 21CV5067AMDTAM, 2022 WL 4637843 (E.D.N.Y. Sept. 30, 2022)…25

*English v. Gen. Elec. Co.,* 496 U.S. 72 (1990)………………………………………………27

*Ex parte Young,* 209 U.S. 123 (1908)……………………………………………………11, 12

*Fisher v. United States,* 425 U.S. 391 (1976)……………………………………………..31

*Gazzola v. Hochul*, 88 F.4th 186 (2d Cir. 2023)…1, 2, 3, 4, 5, 7, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 26, 27, 29, 31, 32, 36, 37

*Gazzola v. Hochul*, 645 F. Supp. 3d 37 (N.D.N.Y. 2022)………………………………5, 6, 12, 14, 15, 29, 30, 33, 34, 35, 36, 37

*Gleason v. McBride*, 869 F.2d 688 (2d Cir.1989)……………………………………...24

*Gonzales v. Raich*, 545 U.S. 1 (2005)……………………………………………………29

*Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010)……………………………………..8

*In re Dairy Mart Convenience Stores, Inc*., 411 F.3d 367 (2d Cir. 2005)…………………………11

*In re Deposit Ins. Agency*, 482 F.3d 612 (2d Cir. 2007)………………………………………11

*In re Two Subpoenas to Testify Before a Grand Jury Dated Dec. 1, 2016, Returnable Dec. 27, 2016,* 252 F. Supp. 3d 170 (E.D.N.Y. 2017)……………………………………………...31

*Johnson v. Baker*, 108 F.3d 10 (2d Cir. 1997)……………………………………………32

*Johnson v. Rowley*, 569 F.3d 40 (2d Cir. 2009)……………………………………………8

*Johnson v. United States,* 576 U.S. 591 (2015)…………………………………………………...34

*Jones v. Cuomo*, 542 F. Supp. 3d 207 (S.D.N.Y. 2021)…………………………………………20

*Jordan v. N.Y. City Bd. of Elections*, 816 F. App'x 599 (2d Cir. 2020)………………………..35

*J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107 (2d Cir. 2004)………………………………10

*Keating v. Carey,* 706 F.2d 377 (2d Cir. 1983)…………………………………………………...23

*Keitt v. Schun,* 2014 WL 347053 (W.D.N.Y. 2014)……………………………………………25

*Khan v. City of New York,* No. 14-cv-04665, 2016 WL 1128298 (E.D.N.Y. Feb. 1, 2016)……..24

*Knight v. City of New York*, No. 22 Civ. 3215, 2024 WL 1126309 (S.D.N.Y. Jan. 17, 2024)……17

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011)…………………………….9, 16

*Langton v. Town of Chester Library Bd.,* No. 14-cv-9474, 2020 WL 2850898 (S.D.N.Y. June 1, 2020)……………………………………………………………………………………………24

*Lee v. Finn*, No. 122CV1152BKSCFH, 2023 WL 6796425 (N.D.N.Y. Oct. 13, 2023)………….10

*Li v. Lorenzo,* 712 F. App'x 21 (2d Cir. 2017)……………………………………………………11

*Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020)…………………………13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)……………………………………………13

*Makarova v. United States,* 201 F.3d 110 (2d Cir.2000)…………………………………………10

*McDonald v. City of Chicago*, 561 U.S. 742 (2010)……………………………………...15, 17, 37

*Mihalitsas v. Howard,* 102 F. Supp. 3d 471 (W.D.N.Y. 2015)…………………………………...25

*Minto v. Molloy Coll.,* 2021 WL 1394329 (E.D.N.Y. 2021)……………………………………26

*Miranda v. S. Country Cent. Sch. Dist.,* 461 F. Supp. 3d 17 (E.D.N.Y. 2020)……………………26

*Murphy v. Onondaga Cnty.,* No. 18-cv-1218, 2022 WL 819281 (N.D.N.Y. Mar. 18, 2022)…….24

*N.Y.S. Motor Truck Ass'n v. Pataki*, No. 03-cv-2386, 2004 WL 2937803 (S.D.N.Y. Dec. 17, 2004)…………………………………………………………………………………………..12

*Nassau County Employee "L" v. County of Nassau,* 345 F.Supp.2d 293 (E.D.N.Y.2004)………26

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1 (2022)……………....13, 15, 17, 33

*N.Y. State Rifle & Pistol Ass'n v. Cuomo,* 804 F.3d 242 (2d Cir. 2015)……………………………4

*Oakland Tactical Supply, LLC v. Howell Township*, 103 F.4th 1186 (6th Cir. 2024)……………17

*Paskar v. City of New York*, 3 F. Supp. 3d 129 (S.D.N.Y. 2014)…………………………………21

*Raffaele v. City of New York,* No. 13-cv-4607, 2015 WL 6620620 (E.D.N.Y. Oct. 30, 2015)…..23

*Roberson v. Cuomo*, 524 F. Supp. 3d 196 (S.D.N.Y. 2021)…………………………………11, 12

*Roberts v. Babkiewicz*, 582 F.3d 418 (2d Cir. 2009)………………………………………………9

*Ruggiero v. City of Cortland*, No. 5:17-cv-790, 2018 WL 5983505 (N.D.N.Y. Nov. 14, 2018)….24

*Sabin v. Nelson,* No. 7:12-CV-1373, 2014 WL 2945770 (N.D.N.Y. June 30, 2014)……………..11

*Sazerac Co. v. Falk*, 861 F. Supp. 253 (S.D.N.Y. 1994)……………………………………...9

*Schachter v. U.S. Life Ins. Co. in City of New York*, 77 F. App'x 41 (2d Cir. 2003)………………13

*Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639 (2d Cir. 1988)…………………………………8

*Seminole Tribe of Florida v. Florida,* 517 U.S. 44 (1996)…………………………………………10

*Simeone v. T. Marzetti Co.,* No. 21-cv-9111, 2023 WL 2665444 (S.D.N.Y. Mar. 28, 2023)…..…9

*Simmons v. United States*, 390 U.S. 377 (1968)……………………………………………………32

*Simon v. City of New York,* 12-cv1596, 2012 WL 4863368 (E.D.N.Y. 2012)…………………..24

*Simpson ex rel. Simpson v. Uniondale Union Free School District,* 702 F. Supp. 2d 122 (E.D.N.Y.2010)……………………………………………………………………………………..23

*Singleton v. Fifth Generation, Inc.,* No. 15-cv-474, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ...9

*Solomon v. City of Rochester*, 449 F. Supp. 3d 104 (W.D.N.Y. 2020)……………………………37

*Teixeira v. County of Alameda,* 873 F.3d 670 (9th Cir. 2017)……………………….…2, 17, 18

*Toth v. New York City Dep't of Educ.*, No. 21-CV-4245, 2024 WL 703053 (E.D.N.Y. Feb. 21, 2024)………………………………………………………………………………………9

*Trombley v. O'Neill*, 929 F. Supp. 2d 81 (N.D.N.Y. 2013)……………………………………...26

*United States v. Rahimi*, 144 S.Ct. 1889 (2024)…………………………………….4, 15, 17, 33, 34

*United States v. Rosen*, 716 F.3d 691 (2d Cir. 2013)……………………………...…………33, 35

*United States v. Salerno*, 481 U.S. 739 (1987)…………………………………….…………4, 33

*United States v. Williams*, 553 U.S. 285 (2008)………………………………...…………33

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002)…………………………11

*Vt. Rt. to Life Comm., Inc. v. Sorrell*, 758 F.3d 118 (2d Cir. 2014)……………………………...34

*Walker v. O'Connor*, No. 22 Civ. 581, 2022 WL 2341420 (N.D.N.Y. June 29, 2022)…………25

*Warden v. Pataki*, 35 F. Supp.2d 354 (S.D.N.Y.1999)………………………………………11

*Webb v. Goord*, 340 F.3d 105 (2d Cir. 2003)……………………………………………25

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156 (S.D.N.Y. 2015)...9

*Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547 (7th Cir. 2012)……………………………27

*Williams v. County of Nassau*, 2017 WL 1216566 (E.D.N.Y. 2017)……………………………26

*Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471 (N.D.N.Y. 2019)……………………………21

*Wyeth v. Levine*, 555 U.S. 555 (2009)……………………………………………....27

**STATUTES**

9 N.Y.C.R.R. §§ 482-2.1 through 482-2.6……………………………………………………34

18 U.S.C. § 921, *et seq*……………………………………………………………...3, 26

18 U.S.C. § 923………………………………………………………………………27

18 U.S.C. § 923(g)……………………………………………………………28, 29

18 U.S.C. § 923(g)(1)(A)………………………………………………………………29

18 U.S.C. § 923(g)(6)………………………………………………………………28

18 U.S.C. § 926…………………………………………………………………………27

18 U.S.C. § 926(a)…………………………………………………………………28

18 U.S.C. § 927…………………………………………………………...27, 29, 31

27 C.F.R. § 478.39a…………………………………………………………………28

27 C.F.R. § 478.39a(a)(1)…………………………………………………………28

27 C.F.R. § 478.39a(a)(2)…………………………………………………………28

27 C.F.R. § 478.125(e)……………………………………………………………29

27 CFR, Chapter II, part 478………………………………………………...3, 26

28 C.F.R. § 25.2……………………………………………………………………30

28 C.F.R. § 25.6(d)-(h)……………………………………………………………30

28 C.F.R. § 25.6(e)…………………………………………………………………30

42 U.S.C. §1985(2)…………………………………………………...3, 22, 24

42 U.S.C. § 1988…………………………………………………………………5, 37

Fed. R. Civ. P. 12(b)(1)………………………………………………......1, 7, 10

Fed. R. Civ. P. 12(b)(6)……………………………………………………………8

Fed. R. Civ. P. 12(c)…………………………………………………, 7, 8, 9, 10, 16

Fed. R. Civ. P. 25(d)………………………………………………………………1

Fed. R. Evid. 201(b)……………………………………………………………20, 22

N.Y. Exec. § 144-a………………………………………………………………...6

N.Y. Exec. § 228………………………………………………………...6, 29, 30

N.Y. Exec. § 228(1)(a)……………………………………………………………29

N.Y. Exec. § 228(3)…………………………………………………………30

N.Y. Exec. § 837(23)(a)…………………………………………………...6

N.Y. Gen. Bus. L. § 875- b…………………………………………………..27

N.Y. Gen. Bus. L. § 875- b(1)…………………………………………….6, 28

N.Y. Gen. Bus. L. § 875- b(1)(a)…………………………………………...2

N.Y. Gen. Bus. L. § 875-b(2)………………………………………….2, 6, 34

N.Y. Gen. Bus. L. § 875-c………………………………………………2, 6

N.Y. Gen. Bus. § 875-e…………………………………………………...6, 34

N.Y. Gen. Bus. L. § 875-e(1)…………………………………………………2

N.Y. Gen. Bus. L. §  875-e(3)…………………………………………….2, 6

N.Y. Gen. Bus. L. § 875-f……………………………………….6, 28, 29, 34

N.Y. Gen. Bus. L. § 875-f(1)………………………………………………6

N.Y. Gen. Bus. L. § 875-f(2)…………………………………………….2, 6

N.Y. Gen. Bus. L. § 875-f(3)………………………………………………6

N.Y. Gen. Bus. L. § 875-f(4)………………………………………………6

N.Y. Gen. Bus. L. § 875-g………………………………………………...33

N.Y. Gen. Bus. L. § 875-g(1)(b)……………………………….4, 6, 31, 32

N.Y. Gen. Bus. L. § 875- g(2)…………………………………………...6

N.Y. Gen. Bus. L. § 875- g(2)(a)………………………………………….2

N.Y. Gen. Bus. § 875-h………………………………………………...6, 34

N.Y. Penal § 265.20(3-a)……………………………………………….6

N.Y. Penal § 270.21…………………………………………………....35

N.Y. Penal § 270.22……………………………………………………6, 35

N.Y. Penal § 400.00(1). ……………………………………………………………6, 35

N.Y. Penal § 400.00(1)(b)……………………………………………………………32

N.Y. Penal § 400.00(1)(o)……………………………………………………………32

N.Y. Penal § 400.00(2) ……………………………………………………………6, 35

N.Y. Penal § 400.00(3) …………………………………………...…………...6, 35

N.Y. Penal § 400.00(6) ……………………………………………………………6, 35

N.Y. Penal § 400.00(7) ……………………………………………………………6, 35

N.Y. Penal § 400.00(8) ……………………………………………………………6, 35

N.Y. Penal § 400.00(9) …………………………………………………...………6

N.Y. Penal § 400.00(10)(c)…………………………………………………………35

N.Y. Penal § 400.00(14) …………………………………………………….………6

N.Y. Penal § 400.00(19) …………………………………………………........6, 35

N.Y. Penal § 400.02…………………………………………………….…29, 36

N.Y. Penal § 400.02(2) …………………………………………………....6, 30, 35

N.Y. Pen. L. § 400.02(2)(a)…………………………………………….…….…30

N.Y. Penal § 400.03…………………………………………………………36

N.Y. Penal § 400.03(2) ……………………………………………………………6, 35

N.Y. Penal 400.03(3)…………………………………………………………35

U.S. Const. Amend. II……………………………………………………………15

U.S. Const. amend. V……………………………………………………………31

## PRELIMINARY STATEMENT

In this case, several New York-based gun dealers challenge a host of state laws pertaining to the sale and purchase of firearms, including, *inter alia*, requirements for background checks, safe storage, employee training, and record-keeping, as well as compliance certification requirements. Plaintiffs assert their claims against four individually named defendants: "KATHLEEN HOCHUL, in her official capacity as Governor of the State of New York, STEVEN A. NIGRELLI,[1] in his official capacity as the Acting Superintendent of the New York State Police, ROSSANA ROSADO, in her official capacity as the Commissioner of the Department of Criminal Justice Services of the New York State Police, and LETITIA JAMES, in her official capacity as the Attorney General of the State of New York." (ECF No. 1, generally). Defendants having interposed an Answer (ECF No. 79), move for judgment on the pleadings against Plaintiffs' Complaint in its entirety pursuant to Fed. R. Civ. P. 12(c), for failure to state a claim, and pursuant to Fed. R. Civ. P. 12(b)(1), based on lack of standing and Eleventh Amendment immunity.

First, Plaintiffs' claims are completely barred as against Governor Hochul and Commissioner Rosado because those defendants are entitled to sovereign immunity under the Eleventh Amendment and Plaintiffs lack standing.

Second, while the Second Circuit concluded in its review of this Court's preliminary injunction decision that Plaintiffs, as purveyors of firearms and ammunition, do have standing to bring a derivative claim under the Second Amendment, *see Gazzola v. Hochul*, 88 F.4th 186, 196 (2d Cir. 2023) ("*Gazzola II*"), *cert. denied,* 144 S. Ct. 2659 (2024), the Second Circuit further

---

[1] Acting Superintendent Nigrelli retired as of October 2023 and no longer holds this position. Fed. R. Civ. P. 25(d) provides that when a party in his or her official capacity "ceases to hold office while the action is pending [t]he officer's successor is automatically substituted as a party." See Fed. R. Civ. P. 25(d). Consequently, this defendant should be substituted with the current New York State Police Superintendent, Steven G. James.

concluded that Plaintiffs did not show that the New York law is so restrictive that it threatens a citizen's rights to acquire firearms. *Id*. In support of its holding, the Second Circuit adopted the Ninth Circuit's reasoning in *Teixeira v. County of Alameda,* 873 F.3d 670 (9th Cir. 2017) (en banc), agreeing that even though "the Second Amendment protects ancillary rights necessary to the realization of the core right to possesses a firearm for self defense" and that "the core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms" *id*. at 677, the prospective vendors still failed to state a claim. *Gazzola II*, 88 F.4th at 197, citing *Teixeria*, 873 F.3d at 678. Significantly, the Second Circuit found that "[t]here is even less evidence here than in *Teixeira* that New York citizens will be meaningfully constrained – or, for that matter, constrained at all – in acquiring firearms and ammunition." *Id*. Indeed, although Plaintiffs claim that "New York law will put them and other FFLs out of business by requiring them to secure firearms 'in a locked fireproof safe or vault' outside of business hours, *see* N.Y. Gen. Bus. L. § 875- b(1)(a); install security alarm systems at each point of exit, entrance, and sale, *see id*. § 875-b(2); provide State Police-developed training to their employees, *see id*. § 875-e(1); perform monthly inventory checks, *see id*. § 875-f(2); provide State Police with full access to their premises during periodic onsite inspections, *see id.* § 875- g(2)(a); prohibit minors from entering their stores without a parent or guardian, *see id*. § 875-c; and hire employees who are at least twenty-one years old, *see id*. § 875-e(3)", besides Plaintiffs' "say-so, there is no evidence that those regulations will impose such burdensome requirements on firearms dealers that they restrict protections conferred by the Second Amendment." *Id*.

Plaintiffs do not plausibly allege that the laws they challenge meet the high bar set by the Second Circuit. Moreover, Plaintiffs' claims are further contradicted by evidence that the regulations have *not* burdened firearms dealers in a manner that restricts the protections conferred

by the Second Amendment, as evidenced by exhibits attached to Defendants' Answer, and data compiled on state and federal firearms databases, for which the Court may take judicial notice. As the Second Circuit concluded upon review of this Court's preliminary injunction decision, so too should this Court conclude that "[o]n the record before us in this case, there is no evidence that New Yorkers currently lack, or will lack under the challenged statutes, relatively easy access to sellers of firearms." *Id.* at 198.

With respect to Plaintiffs' Second Amendment rights as *individuals*, this Court previously held that Plaintiffs lacked standing because the allegations in the Complaint were insufficient to demonstrate that any Plaintiff established a concrete, particularized, actual and imminent injury. (ECF No. 42 at 13-14). Based on the same Complaint and the same analysis, the Court should make that finding again.

Third, Plaintiffs cannot demonstrate that any of the challenged statutes violate 42 U.S.C. §1985(2) because they have not alleged that Defendants acted with "discriminatory intent" against them based on "class based animus;" they do not allege either that they are a member of a protected class or that the Defendants' alleged conspiratorial actions were motivated by their membership in that class; they do not provide a basis for a "meeting of the minds;" and their claims are barred by the intra-corporate conspiracy doctrine.

Fourth, Plaintiffs' Complaint alleges that there is a conflict between the eight statutes cited in Paragraph 131 of the Complaint and the federal statutes and regulations cited by Plaintiffs (18 U.S.C. § 921, *et seq.*, and 27 CFR, Chapter II, part 478). However, the Second Circuit held as a matter of law that Plaintiffs failed to satisfy their burden under a conflict preemption theory—the only theory under which Plaintiffs may rely. *See Gazzola II*, 88 F.4th at 198-201. The Second

Circuit's holding was correct and is binding precedent with respect to this Court's analysis regarding same. Consequently, Plaintiffs' claims alleging federal preemption should be dismissed.

Fifth, the Second Circuit held that this Court appropriately rejected Plaintiffs' Fifth Amendment self-incrimination claim. *See Id.* at 201. Because the Second Circuit's holding is binding precedent, dismissal of Plaintiffs' Fifth Amendment claims is appropriate here. Plaintiffs have fundamentally misread the law and run no risk of incriminating themselves by complying with the certification requirement under NY Gen Bus § 875-g(1)(b). Significantly, because their Fifth Amendment claims rest on their predicate claim that New York law conflicts with federal law, such that compliance with New York law would implicitly be a violation of federal law, because Plaintiffs failed to show that predicate, their self-incrimination claim necessarily fails.

Sixth, Plaintiffs fail to state a claim that any of the challenged statutes, or any provision thereof, is unconstitutionally vague in violation of the Fourteenth Amendment's Due Process Clause. Because Plaintiffs assert a facial vagueness challenge, they have a higher pleading burden. A plaintiff asserting a facial vagueness challenge must show that "no set of circumstances exists under which the [challenged laws] would be valid." *N.Y. State Rifle & Pistol Ass'n v. Cuomo,* 804 F.3d 242, 265 (2d Cir. 2015) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *see also United States v. Rahimi*, 144 S.Ct. 1889, 1898, 1903 (2024). This "prohibitively high bar" makes "a facial challenge . . . 'the most difficult challenge to mount successfully.'" *See N.Y. State Rifle & Pistol Ass'n*, 804 F.3d at 265 (quoting *Salerno*, 481 U.S. at 745). Plaintiffs do not come close to meeting their pleading burden for any of the statutes they assert are vague.

Seventh, Plaintiffs allege that the challenged statutes create a "constitutional-regulatory overburden that threatens to put them out of business." (ECF No. 1 ¶ 180). Plaintiffs cite no precedent or authority in their Complaint for their "Constitutional Overburden" claim as it relates

to commercial arm sales. In fact, "constitutional regulatory overburden" does not appear to be a cause of action that has been recognized by any federal court. As this Court has already observed, it is unclear how Plaintiffs' theory of "constitutional regulatory overburden" differs from their Second Amendment claim. *See Gazzola v. Hochul*, 645 F. Supp. 3d 37, 70-71 (N.D.N.Y. 2022) ("*Gazzola I*"). The Second Circuit, while concluding that there was a sufficient basis for the theory, did not conclude that it constituted a claim independent of Plaintiffs' Second Amendment claim. *Gazzola II*, 88 F.4th at 195.

Eighth, Plaintiffs allege that they are entitled to an award of attorney's fees and expert fees pursuant to 42 U.S.C. § 1988. (ECF No. 1 at 124). However, while § 1988 defines procedures under which remedies may be sought in civil rights actions, it does not create independent causes of action. Consequently, this claim cannot stand alone as an independent cause of action and it must be dismissed.

## STATEMENT OF FACTS[2]

Plaintiffs are nine individuals and one business organization. In the Complaint, Plaintiffs assert that they are challenging thirty-one New York statutory firearms provisions (ECF No. 1, ¶¶ 28, 32) based on a hodgepodge of statutory and constitutional theories. Their list of challenged provisions (below) appears to contain only twenty-nine unique sections and subsections (*Id.* ¶ 31).

---

[2] The Complaint's factual allegations are assumed to be true for the purposes of this motion only, except where the Complaint's factual allegations are contradicted by sources attached to defendants' Answer and/or sources subject to judicial notice.

| New York Penal Law | New York General Business Law | New York Executive Law |
|---|---|---|
| N.Y. Penal § 265.20(3-a) | N.Y. Gen. Bus. § 875-b(1) | N.Y. Exec. § 144-a |
| N.Y. Penal § 270.22 | N.Y. Gen. Bus. § 875-b(2) | N.Y. Exec. § 228 |
| N.Y. Penal § 400.00(1) | N.Y. Gen. Bus. § 875-c | N.Y. Exec. § 837(23)(a) |
| N.Y. Penal § 400.00(2) | N.Y. Gen. Bus. § 875-e | |
| N.Y. Penal § 400.00(3) | N.Y. Gen. Bus. §875-e(3) | |
| N.Y. Penal § 400.00(6) | N.Y. Gen. Bus. § 875-f | |
| N.Y. Penal § 400.00(7) | N.Y. Gen. Bus. §875-f(1), (2), (3) and (4) | |
| N.Y. Penal § 400.00(8) | N.Y. Gen. Bus. § 875-g(1)(b)[3] | |
| N.Y. Penal § 400.00(9) | N.Y. Gen. Bus. § 875-g(2) | |
| N.Y. Penal § 400.00(14) | N.Y. Gen. Bus. § 875-h | |
| N.Y. Penal § 400.00(19) | | |
| N.Y. Penal § 400.02(2) | | |
| N.Y. Penal § 400.03(2) | | |

In the Complaint, the individual Plaintiffs initially suggest that the business organizations they own are also Plaintiffs themselves (ECF No. 1, at 2). However, the Complaint lists only the nine individuals, plus Empire State Arms Collectors, Inc., under the "Parties" heading (*Id.* at ¶¶ 6–21). Plaintiffs also describe this action as being filed "on behalf of 10 Plaintiffs." (ECF No. 33, at 5). Accordingly, the entire group of Plaintiffs consists of only nine named individuals and one corporate entity, Empire State Arms Collectors, Inc.

At least eight of the Plaintiffs are qualified under federal law as "Responsible Persons," (ECF No. 13-2, at ¶ 11 n.1), associated with a federal firearms license ("FFL"). It appears that seven of the nine business organizations owned by the individual Plaintiffs possess federal firearms

---

[3] Plaintiffs incorrectly identify this provision as N.Y. Gen. Bus. §875-g(b)(1) throughout the Complaint, with the exception of one correct reference. (ECF No. 1, ¶ 286). As the Court has previously noted (*Gazzola I*, 645 F. Supp. 3d 645 at 48 n.9), N.Y. Gen. Bus. §875-g(b)(1) does not exist. However, the Court has recognized that Plaintiffs are referring to N.Y. Gen. Bus. §875-g(1)(b). (*Id.*).

licenses that allow them to serve as dealers in firearms. (ECF No. 13-2, at ¶ 12; ECF No. 13-3, at ¶ 13–14; ECF No. 13-4, at ¶ 6; ECF No. 13-5, at ¶ 6; ECF No. 13-6, at ¶ 13; ECF No. 13-7, at ¶ 6; ECF No. 13-8, at ¶ 6; ECF No. 13-9, at ¶ 6). Two of these business organizations possess federal firearms licenses that allow them to serve as firearms manufacturers. (ECF No. 13-2, at ¶ 12; ECF No. 13-3, at ¶ 14; ECF No. 13-6, at ¶ 13). One of the business organizations possesses a federal firearms license that allows it to serve as a firearms pawnbroker. (ECF No. 13-7, at ¶ 6). At least six of the nine business organizations also hold firearms licenses under New York law. (ECF No. 13-2, at ¶ 15; ECF No. 13-4, at ¶ 7; ECF No. 13-5, at ¶ 6; ECF No. 13-6, at ¶ 15; ECF No. 13-7, at ¶ 7; ECF No. 13-9, at ¶ 7).

On November 1, 2022, Plaintiffs filed their Complaint for the instant matter. (ECF No. 1). On November 8, 2022, Plaintiffs filed a motion seeking a preliminary injunction and/or temporary restraining order. (ECF No. 13). Defendants responded to Plaintiffs' motion (ECF No. 29), Plaintiffs filed a reply (ECF No. 33) and the Court held an evidentiary hearing on December 1, 2022. This Court ultimately denied Plaintiffs' motion. (ECF No. 42). Plaintiffs appealed the decision to the Second Circuit, and the Second Circuit affirmed this Court's decision on December 8, 2023. *See Gazzola II*, 88 F.4th 186.

Defendants answered Plaintiffs' Complaint on March 21, 2024 (ECF No. 79). Rule 26 Disclosures have been exchanged by the parties and while the parties exchanged discovery demands on October 4, 2024, they have not engaged in any further discovery. *See* ECF No. 101. Defendants now move for judgment on the pleadings against Plaintiffs' Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c) for lack of subject matter jurisdiction, lack of standing and judgment on the pleadings.

## STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." *CONMED Corp. v. Fed. Ins. Co.*, 590 F. Supp. 3d 463, 468 (N.D.N.Y. 2022), *reconsideration denied*, No. 621CV0083MADML, 2022 WL 3027093 (N.D.N.Y. Aug. 1, 2022), and *appeal withdrawn*, No. 22-2018, 2022 WL 19003650 (2d Cir. Dec. 27, 2022) (citing Fed. R. Civ. P. 12(c)). "Judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c) is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings." *Id.*, citing *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir. 1988). A motion for judgment on the pleadings is governed by "the same standard" as a motion to dismiss under Rule 12(b)(6). *CONMED Corp.,* 590 F. Supp. 3d at 468-69, citing *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-57). The pleading requirements under Rule 8 of the Federal Rules of Civil Procedure "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Where a plaintiff

has failed to "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Id. at 570.

When deciding a 12(c) motion, "the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *CONMED Corp.,* 621 F. Supp. 3d at 283 (citing *L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz,* 582 F.3d 418, 419 (2d Cir. 2009)). Significantly, if a pleading is contradicted by a document either attached to that pleading or otherwise "made a part thereof, the document controls and the court need not accept as true the allegations of the [pleading]." *Toth v. New York City Dep't of Educ.,* No. 21-CV-4245, 2024 WL 703053, at *3 (E.D.N.Y. Feb. 21, 2024*), report and recommendation adopted as modified,* No. 21-CV-4245 (AMD) (JAM), 2024 WL 3565219 (E.D.N.Y. July 26, 2024) (citing *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (alteration in original) (quoting *Sazerac Co. v. Falk,* 861 F. Supp. 253, 257 (S.D.N.Y. 1994)); *see also Desmarattes v. Equifax*, No. 22CV3330KAMTAM, 2023 WL 8473362, at *8 (E.D.N.Y. Dec. 7, 2023) ("If the allegations of a pleading are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the pleading.").

When considering a 12(c) motion, the court may take judicial notice of, and consider, "matters of public record," including agency decisions, documents issued by an agency, and other information and material retrieved from an agency's official website. *Singleton v. Fifth Generation, Inc.,* No. 15-cv-474, 2016 WL 406295, at *2-*3 (N.D.N.Y. Jan. 12, 2016) (collecting cases); *Simeone v. T. Marzetti Co.,* No. 21-cv-9111, 2023 WL 2665444, at *1-*2 (S.D.N.Y. Mar. 28, 2023).

"A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(c) "is governed by the same standard that applies to a Rule 12(b)(1) motion…" *Lee v. Finn*, No. 122CV1152BKSCFH, 2023 WL 6796425, at *2 (N.D.N.Y. Oct. 13, 2023) (citing *Cruz v. AAA Carting & Rubbish Removal, Inc.,* 116 F. Supp. 3d 232, 239 (S.D.N.Y. 2015)). A case is properly dismissed  for lack of subject matter jurisdiction under  Federal  Rule  of  Civil  Procedure  Rule 12(b)(1)  "when  the  district  court lacks  the  statutory  or  constitutional  power  to  adjudicate it." *Deadwiley v. New York State Office of Children & Family Servs.,* 97 F. Supp. 3d 110, 114 (E.D.N.Y. 2015) (citing *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)); Fed. R. Civ. P. 12(b)(1)). "Once challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction." *Id.* In reviewing a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material factual allegations  in  the  complaint,  but  [is]  not  to  draw  inferences  from  the  complaint  favorable  to plaintiffs." *Bazinett v. Pregis LLC*, No. 1:23-CV-790 (MAD/ML), 2024 WL 1116287, at *2 (N.D.N.Y. Mar. 14, 2024) (citing *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted).

**ARGUMENT**

**POINT I:    ALL CLAIMS AGAINST THE GOVERNOR AND THE COMMISSIONER ARE BARRED BY THE ELEVENTH AMENDMENT**

Plaintiffs' claims against Governor Hochul and Commissioner Rosado, who are sued in their official capacities only, *see* ECF 1 at 1-2, are barred by the Eleventh Amendment to the United States Constitution, which prohibits  lawsuits  against  a  state  without  the unambiguous consent of the state or abrogation by Congress. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54-55 (1996). This immunity "includes suits against state officials in their official

capacities." *Li v. Lorenzo,* 712 F. App'x 21, 22 (2d Cir. 2017) (citing *Davis v. New York,* 316 F.3d 93, 101-02 (2d Cir. 2002)). Plaintiffs' lawsuit as against Governor Hochul and Commissioner Rosado is a "suit[] against state officials in their official capacities," *id.*, and is therefore barred.

A narrow exception to Eleventh Amendment immunity, set forth in *Ex parte Young*, 209 U.S. 123 (1908), applies where a "complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Critically, and fatal to Plaintiffs' claims against Governor Hochul and Commissioner Rosado, for the *Ex Parte Young* exception to apply, "the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of federal law." *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372-73 (2d Cir. 2005) (quoting *Young*, 209 U.S. at 154, 157). A state official's general duty to execute the laws is not sufficient to make the official a proper party to a suit challenging a state statute. *Sabin v. Nelson,* No. 7:12-CV-1373, 2014 WL 2945770, at *3 (N.D.N.Y. June 30, 2014); *Warden v. Pataki,* 35 F. Supp.2d 354, 359 (S.D.N.Y.1999). Instead, there must be some "particular duty" to enforce the law at issue. *Roberson v. Cuomo*, 524 F. Supp. 3d 196, 223 (S.D.N.Y. 2021).

As an initial matter, with respect to Commissioner Rosado, Plaintiffs' Complaint simply alleges that she "has designated responsibility for the promulgation of rules and regulations complained of herein, including those necessary to the lawful operation of the Plaintiffs' businesses." ECF No. 1 ¶ 24. No further allegations against Commissioner Rosado are made *anywhere* else in the Complaint. The Complaint is devoid of any allegation that Commissioner Rosado has any "particular duty" to enforce the statutes at issue.

11

Plaintiffs further allege only that Governor Hochul has "general powers and duties" to enforce state laws, ECF No.1 at ¶ 24. Plaintiffs do not allege, nor could they plausibly allege, that Governor Hochul has any specific enforcement powers with respect to the challenged statutes. In any event, it is well settled that "Governor [Hochul]'s general duty to execute the laws is not sufficient to make [her] a proper party." *Roberson*, 524 F. Supp. 3d at 223; *see also Antonyuk v. Hochul,* No. 22-cv-0986, 2022 WL 16744700, at *40 (N.D.N.Y. Nov. 7, 2022); *Citizens Union of the City of N.Y. v. Attorney General of N.Y.,* No. 16-cv-9592, 2017 WL 2984167, at *4 (S.D.N.Y. 2017); *N.Y.S. Motor Truck Ass'n v. Pataki*, No. 03-cv-2386, 2004 WL 2937803, at *12 (S.D.N.Y. Dec. 17, 2004) ("Since the complaint fails to allege that the Governor has any connection with the enforcement of the statute, other than [her] general duty to ensure the laws are faithfully executed, [s]he is immune from suit even though the remedy sought here is only injunctive and declaratory relief.").

In keeping with this settled precedent, this Court held, in its Memorandum-Decision and Order denying Plaintiffs' motion for a preliminary injunction, that the "vague connections, and other similarly tenuous connections Plaintiffs allege, are wholly insufficient to establish any connection between Defendant[] Hochul . . . and the enforcement of the New York laws at issue." *Gazzola I*, 645 F. Supp. 3d at 59. [4] For the reasons stated above, the Court should grant Defendants' motion to dismiss all claims asserted against Governor Hochul and Commissioner Rosado.[5]

**POINT II:    PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AGAINST THE GOVERNOR OR COMMISSIONER**

---

[4] Subsequent to this Court's decision denying Plaintiffs' motion for a preliminary injunction, the Second Circuit established that a defendant must be dismissed from an action when a plaintiff moves for a preliminary injunction but fails to establish subject matter jurisdiction. *See Do No Harm v. Pfizer Inc.,* 96 F.4th 106, 121 (2d Cir. 2024).

[5] Notably, in its decision on appeal, the Second Circuit acknowledged that Plaintiffs raised for the first time in their reply brief this Court's conclusion that Governor Hochul and Attorney General James were entitled to sovereign immunity. *See Gazzola II*, 88 F.4th at 194, fn. 5. Consequently, those arguments were deemed forfeited by the Second Circuit. *Id.*

The "'case or controversy' requirement of Article III "imposes what the Supreme Court has described as the 'irreducible constitutional minimum of standing,'—injury-in-fact, causation, and redressability." *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Accordingly, a plaintiff seeking to establish standing to assert claims must show that:

(1) the claimant suffered an injury in fact—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) there is the likelihood that the injury will be redressed by a favorable decision.

*Schachter v. U.S. Life Ins. Co. in City of New York*, 77 F. App'x 41, 42 (2d Cir. 2003).

Plaintiffs lack standing to assert any of their claims against Governor Hochul or Commissioner Rosado because they have not alleged that they suffered any concrete, imminent injury in fact that is fairly traceable to any action by either defendant. They also fail to allege that any ongoing injury could be redressed by an injunction against either defendant. *See Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 122 (2d Cir. 2020), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1 (2022). Plaintiffs lack standing against Governor Hochul and Commissioner Rosado for the same reasons that their claims against those Defendants are barred by the Eleventh Amendment—neither the Governor nor the Commissioner has any particular authority to enforce the challenged statutes. *See supra*, Point I. Indeed, nowhere in the Complaint do Plaintiffs allege threatened enforcement against them by Governor Hochul or Commissioner Rosado. Absent any such allegation, Plaintiffs fail to demonstrate standing.

Accordingly, the Court should dismiss all claims as against Governor Hochul and Commissioner Rosado for the additional reason that Plaintiffs lack standing to assert their claims against those Defendants.

**POINT III:   PLAINTIFFS' SECOND AMENDMENT CLAIM FAILS BECAUSE THEY CANNOT MEET THE SECOND CIRCUIT'S STANDARD FOR DERIVATIVE STANDING**

**A.   The Court Correctly Concluded That Plaintiffs Themselves Do Not Have Standing To Raise A Second Amendment Claim**

Plaintiffs' attempt to bring Second Amendment challenges to vindicate their own alleged rights necessarily fails because they do not allege any Second Amendment injury.  In ruling on Plaintiffs' preliminary injunction motion, the Court concluded that the Plaintiff business entities had no Second Amendment rights of their own, *Gazzola I*, 645 F. Supp. 3d at 64, and that "no [individual] Plaintiff has provided sufficient allegations to establish individual standing to pursue a Second Amendment claim."  *Id.* at 53.  The Second Circuit substantially affirmed the Court's standing analysis, *see Gazzola II*, 88 F.4th at 194 ("we conclude that the district court correctly assessed the merits and standing"), a decision that is binding precedent for this subsequent motion.  Plaintiffs' failure to allege standing in their Complaint (and then subsequently establish standing to the higher standard required of a preliminary injunction movant) requires dismissal of any Second Amendment claim Plaintiffs raise on their own behalf.  *See Do No Harm*, 96 F.4th at 121 ("Once the court concluded that [plaintiff] lacked standing, dismissal, not further proceedings, was the logical next step here").

Any claim brought on behalf of the Plaintiff business organizations would fail because the Court correctly held that the Second Amendment does not apply to corporate entities.  *See Gazzola I*, 645 F. Supp. 3d at 64 ("Plaintiffs fail to present any support for their contention that the individual right secured by the Second Amendment applies to corporations or any other business

organizations. It does not."). That understanding is confirmed by the text of the Second Amendment itself, the relevant part of which speaks to "the right of the people to keep and bear Arms," U.S. Const. Amend. II, and by the Supreme Court's jurisprudence, which specifically and repeatedly describes the right as one belonging to natural persons. *See, e.g., Rahimi*, 144 S.Ct. at 1903 (discussing "the class of ordinary citizens who undoubtedly enjoy the Second Amendment right"); *NYSRPA v. Bruen*, 597 U.S. at 17 ("when the Second Amendment's plain text covers *an individual's* conduct, the Constitution presumptively protects that conduct" (emphasis added)); *see also District of Columbia v. Heller*, 554 U.S. 570, 580 (2008) ("Nowhere else in the Constitution does a "right" attributed to "the people" refer to anything other than an individual right."). As Justice Thomas noted in *Bruen*, "*Heller* [] confirmed that the right to 'bear arms' refers to the right to 'wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." 597 U.S. at 32 (quoting *Heller*, 554 U.S. at 584). Business organizations have no physical form, bear no risk of physical confrontation, cannot carry things "upon the person," cannot wear clothing, do not have pockets, and cannot in themselves take "offensive or defensive action." *Cf. Bruen*, 597 U.S. at 29 ("As we stated in *Heller* and repeated in *McDonald*, "individual self-defense is 'the *central component*' of the Second Amendment right." (emphasis in the original)). Plaintiffs cannot raise a Second Amendment claim as business organizations because the right applies only to "the people."

And while Plaintiffs as individuals may be part of "the people," no Plaintiff has standing to prosecute a Second Amendment claim on his or her own behalf because no Plaintiff has alleged any infringement of their Second Amendment rights. *See Gazzola I*, 645 F. Supp. 3d at 53; *Gazzola II*, 88 F.4th at 202 ("The district court held that Appellants lacked Article III standing to

challenge each law, and we agree." (quotation omitted)). Each Plaintiff has previously acknowledged that he or she already owns firearms, *see, e.g.,* ECF No. 13-3 ¶ 8 ("I, too, own various personal firearms."); ECF No. 13-4 ¶ 9 ("In addition to my business inventory, I also own personal firearms of all types."); ECF No. 13-8 ¶ 9 ("In addition to my business inventory, I also own personal firearms of the types shotgun and rifle."), and no Plaintiff alleges that any of the challenged laws prevents him or her from keeping or bearing those weapons. To the extent that Plaintiffs argue that they themselves would be subject to any of the licensing or background check laws they challenge, both this Court, *Gazzola I*, 645 F. Supp. 3d at 53-54, and the Second Circuit, *Gazzola II*, 88 F.4th at 202-04, have found that they failed to allege any actual or imminent injury that would support Article III standing.

**B.    Any Derivative Second Amendment Claim Pressed On Behalf Of Others Fails**

Because Plaintiffs cannot raise Second Amendment claims as business organizations and have not alleged any Second Amendment injuries as individuals, they could only pursue a derivative Second Amendment theory on behalf of their unspecified customers. But the Second Circuit has set a demanding standard for such a claim to be cognizable, and Plaintiffs' claim fails because they have not plausibly alleged "that they would suffer the type of burden that is required for their derivative claim to succeed." *Gazzola II*, 88 F.4th at 195. And even if the allegations of the Complaint were viewed as sufficient standing alone, they are flatly contradicted by sources attached to the Answer and subject to judicial notice. *Cf. L-7 Designs, Inc.*, 647 F.3d at 422 ("On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." (quotation omitted)).

**1.    The Second Circuit's Holding In *Gazzola II* Sets A Demanding Standard For Derivative Claims.**

The Second Circuit's decision in *Gazzola II* sets an extraordinarily high bar for a seller to raise a derivative claim on a buyer's behalf: such a claim can only succeed if the challenged regulations "have the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms." 88 F.4th at 196; *see also id.* (plaintiffs must show that a law is "so restrictive that it threatens a citizen's right to acquire firearms").

As a threshold matter, both the Second Circuit's holding in *Gazzola II*, 88 F.4th at 195, and the Supreme Court's decision in *Heller*, 554 U.S. at 626-27 & n.26, establish that "laws imposing conditions and qualifications on the commercial sale of arms," such as the ones at issue in this case, are "presumptively lawful." The Justices have repeatedly re-emphasized the point in subsequent Second Amendment decisions, including Justice Kavanaugh repeating last summer in *United States v. Rahimi* that commercial regulations on the firearms trade are "presumptively constitutional." 144 S.Ct. at 1923 (Kavanaugh, J., concurring); *see also McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010); *NYSRPA v. Bruen*, 597 U.S. at 81 (Kavanaugh, J., joined by Roberts, C.J., concurring). *Gazzola II* makes clear that this framework functions like any other legal presumption: "the presumption of legality can be overcome," but only if the plaintiffs can make the required showing. 88 F.4th at 195, 196.[6]

In explaining the standard necessary to overcome the presumption, the Second Circuit adopted the framework laid out in *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017), which has been broadly adopted as the standard for derivative Second Amendment claims by federal courts both before and after *Bruen*. *See, e.g., Oakland Tactical Supply, LLC v. Howell Township*, 103 F.4th 1186, 1194 n.4 (6th Cir. 2024); *Knight v. City of New York*, No. 22 Civ. 3215,

---

[6] Nothing in the Second Circuit's revised opinion in *Antonyuk v. James*, No. 22-2908, 2024 WL 11963034 (2d Cir. Oct. 24, 2024), which was released the day before this motion was filed, undermines the *Gazzola II* analysis in any way. Indeed, the Circuit repeatedly cited to the Supreme Court's language about the categories of longstanding laws that are viewed as "presumptively lawful," *id.* at *8, 13.

2024 WL 1126309, at *7 (S.D.N.Y. Jan. 17, 2024); *Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 493, 498, 504 n.15 (N.D.N.Y. 2020). This framework recognizes that "the core Second Amendment right to keep and bear arms for self-defense wouldn't mean much without the ability to acquire arms," *Gazzola II*, 88 F.4th at 196-97 (quoting *Teixeira*, 873 F.3d at 688), but that since it is this right to acquire that is at issue, a derivative claim can only succeed if "the [] law is so restrictive that it threatens a citizen's right to acquire firearms." *Id.* at 196. It follows that "'gun buyers have no right to have a gun store in a particular location, at least so long as their access is not meaningfully constrained.' Nor do they have a right to 'travel' only short 'distances' or receive 'a certain type of retail experience.'" *Id.* at 197 (quoting *Teixeira*, 873 F.3d at 679-80 & n.13).

Plaintiffs failed at the preliminary injunction stage because "besides [their] say-so, there is no evidence that [New York's] regulations will impose such burdensome requirements on firearms dealers that they restrict protections conferred by the Second Amendment." *Gazzola II*, 88 F.4th at 197. And now that the pleadings are in, sources subject to judicial notice establish that, despite the dire predictions in Plaintiffs' complaint, their customers have not been deprived of the right to acquire firearms. *Cf. id.* at 197 (discussing *Teixeira* and how, "whatever the scope of the right to acquire firearms, the prospective vendors failed to state a claim.").

## 2. Documents Subject To Judicial Notice Demonstrate That New Yorkers Continue To Purchase Guns Without Interference.

Despite Plaintiffs' prophesies of doom, documents subject to judicial notice establish that New Yorkers have not been "meaningfully constrained – or, for that matter, constrained at all – in acquiring firearms and ammunition." *Gazzola II*, 88 F.4th at 197. The Complaint is full of conclusory and hyperbolic allegations about the effect of the challenged laws on the gun industry, alleging that New York will "shut[] down the Plaintiffs and other FFLs across the State," meaning

that "none (zero) of New York State's 20 million residents will be able . . . to purchase any firearm requiring a license."  ECF No. 1 ¶ 57; *see also id.* ¶ 123 (alleging a "focused march of the Defendants to shut [Plaintiffs] down and take Second Amendment rights away with it."); *id.* ¶ 128 (alleging a "singular determination to crush fundamental those who support the Second Amendment into something *lower than* 'a second class citizen.'").  Technically, Plaintiffs do not actually allege that they (or any other specific business) will be or has been shut down, only that "the new laws, if allowed to stand, *could* prove a fatal blow to Plaintiffs, specifically and to lawful commerce in firearms in New York, in general."  *Id.* ¶ 78 (emphasis added); *see also id.* ¶ 349 (alleging only that the laws "*may* result in closing their businesses" (emphasis added)).  But the new laws have been on the books for over two years now, and none of this has happened.

Plaintiffs accuse the defendant State officials of having "the intended outcome of forcing businesses to close in order to diminish the ability of law-abiding gun owners from accessing firearms and ammunition in the normal stream of commerce."  *Id.* ¶ 350.  But two years of the challenged laws simply have not led to any significant change in the number of gun stores in New York State.  To the contrary, as evidenced by Exhibit A of Defendants' Answer to Plaintiffs' Complaint, the New York State Federal Firearms Listings as of February 2024 show 2,090 businesses in the state with active Federal Firearms Licenses. *See* ECF No. 79-1.[7]  More granular figures demonstrate how the Plaintiffs' dire predictions have not come true: the Complaint contends that "[a]cross the State of New York, for the past ten years, on average, approximately 1,700 FFL-01s have operated as dealers in firearms, ECF No. 1 ¶ 73, and that as of December 2021, there were 1,782 FFL-01s (dealers and gunsmiths) in New York, nine FFl-02s

---

[7] https://www.atf.gov/firearms/listing-federal-firearms-licensees/state?field_ffl_date_value%5Bvalue%5D%5Byear%5D=2024&ffl_date_month%5Bvalue%5D%5Bmonth%5D=2&field_state_value=NY

(pawnbrokers) and 329 FFL-07s (manufacturing firearms). *Id.* The challenged laws have done nothing to change this number in any meaningful way: in June 2024, ATF statistics showed that there are <u>still</u> 1,558 FFL-01s, eight FFL-02s and 363 FFL-07s.[8] These statistics, which can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, Fed. R. Evid. 201(b), show that there is no reason to believe that "*any* New York firearms dealers – let alone a critical mass of the more than 1,700 such dealers – [have] close[d] due to the challenged regulations." *Gazzola II*, 88 F.4th at 197.

And these federally-licensed gun stores are continuing to do strong business. The FBI publishes monthly figures detailing the number of background checks performed in connection with firearm purchases[9] in each state. These statistics show that the New York firearms market is in strong health, with 447,567 firearm transactions in 2022, 395,277 in 2023, and 251,579 in the first nine months of 2024. *See* Federal Bureau of Investigation, *NICS Firearm Background Checks: Month/Year by State*, available at https://www.fbi.gov/file-repository/nics_firearm_checks_-_month_year_by_state.pdf (last visited October 2, 2024). These federal statistics establish that the challenged laws simply have not had "the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms." *Gazzola II*, 88 F.4th at 196; *cf. Jones v. Cuomo*, 542 F. Supp. 3d 207, 211 n.1 (S.D.N.Y. 2021) ("the Court may take judicial

---

[8] https://www.atf.gov/firearms/listing-federal-firearms-licensees/state?field_ffl_date_value%5D%5Byear%5D=2024&ffl_date_month%5Bvalue%5D%5Bmonth%5D=6&field_state_value=NY. These statistics are subject to judicial notice because they are public records "whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2).

[9] Although the number of background checks is not the same as the number of completed purchases, the figures should substantially track one another. The Department of Justice estimates that only about 1.4% of applications are denied. *See* DOJ Bureau of Justice Statistics, *Background Checks for Firearm Transfers, 2016-2017*, at 4, available at https://bjs.ojp.gov/content/pub/pdf/bcft1617.pdf. Indeed, the number of actual firearms sold may be higher, as NICS background checks are conducted per transaction rather than per firearm, meaning that transactions involving more than one firearm would involve only a single NICS background check.

notice of documents retrieved from official government websites, or other relevant matters of public record" (quotations omitted)).

Plaintiffs' conclusory allegations regarding semiautomatic rifle licensing have also been contradicted by events. Their attack on New York's licensing requirement for semiautomatic rifles is based in significant part on conclusory allegations that New York's counties are refusing to grant licenses. *See, e.g.,* ECF No. 1 ¶ 160 ("No semi-automatic license is known to have issued or to be available to request, resulting in a near total stoppage of the sale of all semi-automatic rifles in New York."). But here again, the statistics show that this simply is not the case: as of March 2024, the New York State Police licensing database reflected the issuance of 9,615 new firearm licenses including the authority to purchase semiautomatic rifles, to go along with approximately 2,533 pre-existing licenses that have been amended to allow semiautomatic rifle purchases.[10] ECF No. 79-3, ¶ 5; *cf. Paskar v. City of New York*, 3 F. Supp. 3d 129, 134 (S.D.N.Y. 2014) ("Official government reports and other types of government records are appropriate for judicial notice.").

Even the Plaintiffs' allegations about the effects of the challenged laws on their own businesses have not come to pass. They allege that "the new laws will fatally burden the Plaintiffs to shut down their businesses in firearms" and force them "to suffer the loss of their incomes and livelihoods," ECF No. 1 ¶ 55, but judicially noticeable documents establish that the businesses with which the Plaintiffs are associated have remained open. As of June 2024, except for Thousand Islands Armory, all Plaintiffs appear to still be in business as FFLs, over two years since the passage of the statutes in question.[11] And as of October 2024, each of the Plaintiffs' businesses

---

[10] Moreover, even if "[i]ndividuals [we]re unable to obtain new semi-automatic rifle licenses," ECF No. 1 ¶ 20, the Second Circuit has already found that any such challenge would fail as against the State defendants in this action, since the hypothetical unavailability would stem from the actions of non-defendant counties, and would therefore not be "fairly traceable to the challenged action of the *named defendants*." *Gazzola II*, 88 F.4th at 202-03 (emphasis in the original).

[11] https://www.atf.gov/firearms/listing-federal-firearms-

that report such information[12] are still listed as "active" with the Division of Corporations at the New York Department of State. *See* Attorney Aimee Cowan Declaration Exhibits A through E; *cf. Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471, 484 (N.D.N.Y. 2019) (noticing corporate filings with Secretaries of State and declaring that "[c]ourts routinely take judicial notice of such government records.").

Although the Second Circuit recognized the existence of a potential derivative Second Amendment claim brought by gun retailers on behalf of their buyers, it set a high standard that a plaintiff would need to meet: to be actionable in a derivative suit, a commercial firearm regulation would need to "have the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms" or be "so restrictive that it threatens a citizen's right to acquire firearms." *Gazzola II*, 88 F.4th at 196. Plaintiffs here have not plausibly alleged that the laws they are challenging actually meet this standard, and their dire (and conclusory) predictions about the effect of the laws have been contradicted by two years of data in "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court should find that Plaintiffs have failed to state a derivative Second Amendment claim and dismiss that claim accordingly.

**POINT IV:    PLAINTIFFS' CAUSE OF ACTION UNDER 42 U.S.C. §1985(2) MUST BE DISMISSED**

Plaintiffs' second cause of action alleges that pursuant to 42 U.S.C. §1985(2), Defendants conspired to violate Plaintiffs' constitutional rights under the Second and Fourteenth Amendments by drafting and enforcing the legislation that is the subject of this action. (ECF No. 1 at 115-118).

---

licensees/state?field_ffl_date_value%5Bvalue%5D%5Byear%5D=2024&ffl_date_month%5Bvalue%5D %5Bmonth%5D=6&field_state_value=NY. These statistics are also subject to judicial notice because they are public records "whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2).
[12] Three of the businesses associated with Plaintiffs, AGA Sales, Spur Shooters Supply, and Thousand Islands Armory, are alleged to be sole proprietorships, ECF No. 1 ¶¶ 7, 10, 11, which do not register with the Secretary of State.

Section 1985(2) contains two clauses that prohibit certain distinct conspiratorial actions. *See* 42 U.S.C. §1985(2). The first clause prohibits interference with federal court proceedings, while the second clause prohibits interference with state court proceedings, with the intent to deny an individual equal protection of the laws. *Butler v. Hesch*, 286 F. Supp. 3d 337, 364 (N.D.N.Y. 2018) (citing 42 U.S.C. § 1985(2)).

Plaintiffs cannot apply the first clause to the instant matter, given that Plaintiffs have not alleged interference with any federal court proceeding. With respect to claims brought under the second clause, plaintiffs must allege that (1) s/he is a member of a protected class, (2) the defendants conspired to deprive him/her of their constitutional rights, (3) the defendants "acted with class-based, invidiously discriminatory animus," and (4) the plaintiff suffered damage. *Carvel v. Ross,* No. 09-cv-0722, 2011 WL 856283, at \*30 (S.D.N.Y. Feb. 16, 2011), *report and recommendation adopted,* 2011 WL 867568 (S.D.N.Y. Mar. 11, 2011) (citing *Simpson ex rel. Simpson v. Uniondale Union Free School District,* 702 F. Supp. 2d 122, 133 (E.D.N.Y.2010)).

Significantly, the requirement that the conspirators' actions are motivated by an "'intent to deprive their victims of equal protection of the laws'" has been "interpreted to mean that plaintiff must allege discriminatory 'racial, ethnic, or class-based animus' motivating the conspirators' action." *Khan v. City of New York,* No. 14-cv-04665, 2016 WL 1128298, at \*7 (E.D.N.Y. Feb. 1, 2016)*, report and recommendation adopted,* 2016 WL 1192667 (E.D.N.Y. Mar. 21, 2016) (citing *Simon v. City of New York,* 12-cv1596, 2012 WL 4863368, at \*4 (E.D.N.Y. 2012); *see also Keating v. Carey,* 706 F.2d 377, 385 (2d Cir. 1983) (suggesting that the "equal protection" language in the second clause of § 1985(2) requires a showing of race or other class-based discrimination); *Raffaele v. City of New York,* No. 13-cv-4607, 2015 WL 6620620, at \*8

23

(E.D.N.Y. Oct. 30, 2015) (discussing the race or other class-based discrimination requirements of a § 1985(2) claim). Consequently, in order to advance a claim under section 1985(2), a plaintiff must allege "discriminatory intent," *Khan*, 2016 WL 1128298, at \*7 (citing *Simon,* 2012 WL 4863368, at \*5), and "a showing of class-based invidiously discriminatory animus on the part of the conspiring parties," *Murphy v. Onondaga Cnty.,* No. 18-cv-1218, 2022 WL 819281, at \*12 (N.D.N.Y. Mar. 18, 2022) (citing *Langton v. Town of Chester Library Bd.,* No. 14-cv-9474, 2020 WL 2850898, at \*4 (S.D.N.Y. June 1, 2020) (internal quotation marks and citation omitted).

Here, Plaintiffs have not alleged that Defendants acted with "discriminatory intent" against them based on "class based animus." *See Murphy,* 2022 WL at \*12 (plaintiff failed to allege that damages were caused as a result of racial discrimination or other discriminatory means). Nowhere in their Complaint do Plaintiffs allege either that they are a member of a protected class or that the Defendants' alleged conspiratorial actions were motivated by their membership in that class.

Certainly, Plaintiffs as individual gun owners or as FFLs do not qualify as a protected class for purposes of Section 1985(2). *See Ruggiero v. City of Cortland*, No. 5:17-cv-790, 2018 WL 5983505, at \*8 (N.D.N.Y. Nov. 14, 2018) (dismissing a conspiracy claim brought under the second clause of § 1985(2) where, plaintiff "failed to plausibly allege that any of th[e] conspiratorial misconduct stem[ed] from the kind of racial or other class-based animus required by controlling federal law") (internal quotation marks and citation omitted)); *Allen v. Antal*, No. 12-cv-8024, 2014 WL 2526977, at \*9 (S.D.N.Y. Mar. 13, 2014), *aff'd,* 665 F. App'x 9 (2d Cir. 2016) (citing *Gleason v. McBride*, 869 F.2d 688, 694–95 (2d Cir.1989) (to state a Section 1985 claim, plaintiff must "allege that he was a member of a protected class, that the defendants conspired to deprive him of his constitutional rights, that the defendants acted with class-based, invidiously discriminatory animus, and that he suffered damages as a result of the defendant's actions").

24

Furthermore, "[i]n order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks and citations omitted). Indeed, "[t]o survive a motion to dismiss, plaintiff must include some facts in his complaint tending to show that defendants acted in a willful manner, culminating in an agreement, understanding or meeting of the minds, that violated his rights, privileges, or immunities secured by the Constitution or federal courts.'" *Mihalitsas v. Howard,* 102 F. Supp. 3d 471, 476 (W.D.N.Y. 2015) (citing *Keitt v. Schun,* 2014 WL 347053, at *4 (W.D.N.Y. 2014)). "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights must be dismissed." *Does 1-2 v. Hochul*, No. 21CV5067AMDTAM, 2022 WL 4637843, at *18 (E.D.N.Y. Sept. 30, 2022).

Here, Plaintiffs' Complaint provides no factual allegations supporting a "meeting of the minds." While Plaintiffs summarily allege that "Defendant Gov. Hochul . . . did act in concert with one or more of the defendants," ECF No. 1 ¶ 319, or that she "did act in concert with one or more persons in positions of law enforcement authority," *id.* ¶ 320, a "general allegation that [a defendant] acted in concert with others, without more, does not give rise to the inference that she agreed to engage in *unlawful conduct* against Plaintiff." *Walker v. O'Connor*, No. 22 Civ. 581, 2022 WL 2341420, at *5 (N.D.N.Y. June 29, 2022). Further, Plaintiffs have not shown that any rights, privileges or immunities secured by the Constitution or federal courts have been violated.

But even if Plaintiffs *had* properly pled a Section 1985 claim, their claim would fail under the intra-corporate conspiracy doctrine. Pursuant to this doctrine, "there is no conspiracy if the conspiratorial conduct challenged is essentially a 'single act by a single corporation acting

exclusively through its own directors, officers, and employees, each acting within the scope of his employment.'" *Minto v. Molloy Coll.,* 2021 WL 1394329, at \*11–12 (E.D.N.Y. 2021), *report and recommendation adopted,* 2021 WL 804386 (E.D.N.Y. 2021) (citing *Miranda v. S. Country Cent. Sch. Dist.,* 461 F. Supp. 3d 17, 27-28 (E.D.N.Y. 2020), *reconsideration denied,* 2020 WL 4287165 (E.D.N.Y. 2020); *Williams v. County of Nassau,* 2017 WL 1216566, at \*6 (E.D.N.Y. 2017).

Where all alleged co-conspirators are employed by the same government entity, the intra-corporate conspiracy doctrine precludes a conspiracy claim. *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 97 (N.D.N.Y. 2013). This doctrine applies when the officers and employees are alleged to have been acting within the scope of their employment. *See Nassau County Employee "L" v. County of Nassau,* 345 F.Supp.2d 293, 304 (E.D.N.Y.2004); *Caidor v. M&T Bank,* 2006 WL 839547, at \*12 (N.D.N.Y. 2006). Even if Plaintiffs had properly pled their Section 1985 claim, Plaintiffs would essentially be contending that the State of New York (via its employees) conspired with itself, which is prohibited under the intra-corporate conspiracy doctrine.

For the reasons stated above, this claim must be dismissed.

## POINT V:    PLAINTIFFS' CLAIM THAT CERTAIN CHALLENGED STATUTES ARE PREEMPTED BY FEDERAL LAW SHOULD BE DISMISSED

Plaintiffs' Complaint alleges that there is a conflict between the eight statutes cited in Paragraph 131 of the Complaint and the federal statutes and regulations cited by Plaintiffs (18 U.S.C. § 921, *et seq*., and 27 CFR, Chapter II, part 478). However, the Second Circuit held that Plaintiffs failed to satisfy their burden under a conflict preemption theory—the only theory under which Plaintiffs may rely. *See Gazzola II*, 88 F.4th at 198-201. The Second Circuit's holding was correct and is binding precedent with respect to this Court's analysis regarding same. Consequently, Plaintiffs' claims alleging federal preemption should be dismissed.

As the Supreme Court explained, there are "two cornerstones of our preemption jurisprudence": (1) "the purpose of Congress is the ultimate touchstone in every pre-emption case"; and (2) "[i]n all pre-emption cases . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citation omitted). There are three general types of preemption: express preemption, field preemption, and conflict preemption. *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 576 (7th Cir. 2012). For express preemption, "Congress can define explicitly the extent to which its enactments pre-empt state law." *English v. Gen. Elec. Co.,* 496 U.S. 72, 78-79 (1990). For field preemption, "state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively." *Id.* at 79. For conflict preemption, a state law is preempted "to the extent that it actually conflicts with federal law." *Id.* Conflict preemption exists where "it is impossible for a private party to comply with both state and federal requirements," or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citations omitted).

Plaintiffs do not appear to contend Congress expressly preempted state regulation of firearm sales, and if they did, any such claim would be frivolous. Regarding field preemption, the Second Circuit acknowledged that Plaintiffs, in relying on 18 U.S.C. §§ 923 and 926 to argue that federal law preempts state law, ignored that Congress expressly disclaimed field preemption in 18 U.S.C. § 927. *Gazzola II*, 88 F.4th at 198. Thus, the Second Circuit held, Plaintiffs can *only* rely on a conflict preemption theory with respect to their preemption claims. *Id.*

Ultimately, the Second Circuit held that Plaintiffs failed to satisfy their burden under a conflict preemption theory. With respect to N.Y. Gen. Bus § 875-b, Plaintiffs assert that § 875-

b(1) conflicts with federal law "because, when an FFL ships a firearm to another FFL, § 875-b(1) makes *both* FFLs responsible for maintaining a security plan while those firearms are "in shipment," *id.*, whereas federal law makes only the *transferring FFL* responsible for firearms that are in shipment." *Id.* at 198-199. In support of their theory, Plaintiffs cite 18 U.S.C. § 923(g)(6) and 27 C.F.R. § 478.39a. However, the Second Circuit held that *neither* statute supports Plaintiffs theory. *Id.*

Indeed, both provisions require FFLs to report firearms that were lost or stolen from their "inventory" or "collection" to the Attorney General and appropriate local authorities within forty-eight hours, *see* 18 U.S.C. § 923(g)(6); 27 C.F.R. § 478.39a(a)(1), and the federal regulation provides that, "[w]hen a firearm is stolen or lost in transit on a common or contract carrier (which for purposes of this paragraph includes the U.S. Postal Service), it is considered stolen or lost from the transferor/sender licensee's inventory *for reporting purposes*. Therefore, the transferor/sender of the stolen or lost firearm shall *report* the theft or loss of the firearm within 48 hours after the transferor/sender discovers the theft or loss." *Id.*, citing 27 C.F.R. § 478.39a(a)(2) (emphases added). In other words, the Second Circuit found, "under federal law, it is the transferring FFL who must *report* a lost or stolen firearm. Nothing about New York law alters that duty, poses an obstacle to FFLs fulfilling that duty, or allocates responsibility in a way that conflicts with federal law. To the extent that New York law imposes *additional* duties on the transferee FFL, there is no conflict between federal and state law." *Id.*

The Second Circuit next analyzed whether N.Y. Gen. Bus. L. § 875-f is preempted by 18 U.S.C. §§ 923(g) and 926(a), as Plaintiffs contend. New York General Business Law § 875-f requires firearms dealers to "establish and maintain a book" or "electronic-based record of purchase, sale, inventory, and other records at the dealer's place of business in such form and for

such period as the superintendent shall require." N.Y. Gen. Bus. L. § 875-f. While 18 U.S.C. § 923(g)(1)(A) and its implementing regulation require FFLs to maintain similar records, *see* 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. § 478.125(e), the Second Circuit recognized that "Congress expressly declined to 'occupy the field,' [of regulating firearms] and instructed courts that state law is preempted only where 'there is a direct and positive conflict between' federal and state law such 'that the two cannot be reconciled or consistently stand together.'" *Gazzola II*, 88 F.4th at 199–200, citing 18 U.S.C. § 927. The Second Circuit confirmed that "[n]othing in federal law expressly prohibits States from requiring firearms dealers to routinely report their sale and inventory records to State Police. And, simply put, a limitation on the *Attorney General*'s regulatory authority is not in direct and positive conflict with the power of *New York* to exercise broader regulatory authority." *Id*. Echoing this Court's observation in its preliminary injunction decision, the Second Circuit stated it "'is a hallmark of federalism' that a State may presumptively exercise regulatory authority in areas over which the federal government may not or does not." *Id*., citing *Gazzola I*, 645 F. Supp. 3d at 62, citing *Gonzales v. Raich*, 545 U.S. 1, 74 (2005) (Thomas, J., dissenting) ("Our federalist system, properly understood, allows ... States to decide ... how to safeguard the health and welfare of their citizens.").

Lastly, the Second Circuit examined whether, as Plaintiffs contend, N.Y. Exec. Law § 228 and N.Y. Penal Law § 400.02 are preempted on the grounds that compliance with the statutes will result in a "misuse" of the federal background check system—NICS. In its decision, the Second Circuit pointed out that Plaintiffs failed to explain *how* N.Y. Exec. Law § 228 and N.Y. Penal Law § 400.02 would result in the misuse of the NICS. *Gazzola II*, 88 F.4th at 201. Indeed, as the Second Circuit pointed out, New York Executive Law § 228 designates the State Police as a point of contact for NICS background checks, N.Y. Exec. L. § 228(1)(a), as federal regulations expressly

contemplate, 28 C.F.R. §§ 25.2, 25.6(d)-(h). New York Executive Law § 228 also directs the State Police to create a "statewide firearms license and records database" containing records provided by various other state-level agencies, including "the division of criminal justice services, office of court administration, New York state department of health, New York state office of mental health, and other local entities." *Gazzola II*, 88 F.4th at 201, citing N.Y. Exec. L. § 228(3). "The State Police are directed to use that database when conducting NICS background checks upon an FFL's request, *id.*, and its doing so, again, is expressly authorized by federal regulations." *Id.*, citing 28 C.F.R. § 25.6(e) ("Upon receiving a request for a NICS background check, POCs may also conduct a search of available files in state and local law enforcement and other relevant record systems....").

Further, Plaintiffs appear to take issue with New York law directing FFLs to initiate background checks through the State Police for ammunition sales. The Second Circuit discounted Plaintiffs' argument, noting that Plaintiffs "speculate that, when conducting background checks for ammunition sales, the State Police will use the NICS Index, checks that are not expressly authorized by federal law and thus, they claim, unlawful. But even if such use would be unlawful, New York law authorizes no such thing. New York law requires firearms and ammunition dealers to initiate background checks for ammunition sales through a '*statewide* license and record database' maintained by the State Police – not through the NICS Index – before transferring ammunition to a non-dealer." *Id.*, citing N.Y. Pen. L. § 400.02(2)(a) (emphasis added); *see also id.* § 400.02(2) (directing the State Police to create and maintain a "statewide license and record database specific for ammunition sales"); N.Y. Exec. L. § 228(3) (directing the State Police to consult the "statewide firearms license and records database" for purposes of "firearm permit[ ]" certification and recertification, "assault weapon registration," and "ammunition sales"). Further, the Second Circuit highlighted, Plaintiffs failed to provide any authority that prohibits a State from

conducting background checks for ammunition sales. *Id*. As the Second Circuit opined, "Congress expressly chose not to occupy the field of regulating firearms." *Id*., citing 18 U.S.C. § 927. "So, the fact that federal law does not require background checks for ammunition sales does not mean that New York cannot require such checks. New York's residual authority to do so is, as the district court aptly put it, 'a hallmark of federalism.'" *Id*., citing *Gazzola I*, 645 F. Supp. 3d at 62.

Ultimately the Second Circuit decided that Plaintiffs' preemption theories completely "lack[ed] merit." *Id*. The Second Circuit's holding is binding on this Court. Consequently, Plaintiffs' preemption claims should be dismissed.

**POINT VI:   PLAINTIFFS' FIFTH AMENDMENT CLAIMS SHOULD BE DISMISSED**

The Second Circuit held that this Court appropriately rejected Plaintiffs' Fifth Amendment self-incrimination claim. *See Gazzola II*, 88 F.4th at 201. Because the Second Circuit's holding is binding precedent with respect to this Court's analysis, dismissal of Plaintiffs' Fifth Amendment claims is appropriate here.

Indeed, Plaintiffs have fundamentally misread the law and run no risk of incriminating themselves by complying with the certification requirement under NY Gen Bus Law § 875-g(1)(b). The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. This privilege applies "when the accused is compelled to make a testimonial communication that is incriminating." *In re Two Subpoenas to Testify Before a Grand Jury Dated Dec. 1, 2016, Returnable Dec. 27, 2016,* 252 F. Supp. 3d 170, 175 (E.D.N.Y. 2017) (citing *Fisher v. United States,* 425 U.S. 391, 408 (1976)). Like their preemption claims, Plaintiffs' Fifth Amendment claims are premised on a misreading of the law. *See Gazzola II*, 88 F.4th at 201 n.8.  Plaintiffs assert that N.Y. Gen Bus Law § 875-g(1)(b)[13] will

---

[13] Again, Plaintiffs incorrectly cite this statute as NY Gen Bus Law § 875-g(b)(1).

compel them to provide the New York State Police with a formal certification of compliance that will be a confession of having broken federal law (ECF No. 1, at ¶ 145).

However, as discussed above under Point V, there *is no conflict* between the challenged New York statutes and federal law. Therefore, Plaintiffs run no risk of incriminating themselves by complying with the certification requirement under NY Gen Bus § 875-g(1)(b). In fact, the Second Circuit held that "[i]t follows that the district court appropriately rejected [Plaintiffs'] self-incrimination claim. [Plaintiffs] claim that New York law violates their right to be free from self-incrimination by compelling them to annually certify their compliance with New York law. *See* N.Y. Gen. Bus. L. § 875-g(1)(b). That claim rests on their predicate claim that New York law conflicts with federal law, such that compliance with New York law would implicitly be a violation of federal law. Because [Plaintiffs] failed to show that predicate, their self-incrimination claim necessarily fails." *See Gazzola II*, 88 F.4th at 201.

In any event, whether or not a *criminal* defendant should have to surrender "'one constitutional right . . . in order to assert another,'" 2022 WL 399979, at *31 (quoting *Simmons v. United States*, 390 U.S. 377, 393-94 (1968)), "state officials are permitted to take adverse *administrative* action for failure to respond to inquiries, even where the answers might tend to incriminate, so long as the adverse 'consequence is imposed for failure to answer a relevant inquiry and not for refusal to give up a constitutional right,'" *Johnson v. Baker*, 108 F.3d 10, 11 (2d Cir. 1997) (emphasis supplied) (quoting *Asherman v. Meachum,* 957 F.2d 978, 982 (2d Cir. 1992)). As relevant here, a handgun licensing application implicates "important state interests other than conviction for crime," *Baxter v. Palmigiano,* 425 U.S. 308, 319 (1976)—namely to assess whether the applicant is a law-abiding and responsible individual who may be entrusted with a deadly weapon, *see* Penal Law § 400.00(1)(b), (1)(o).

Thus, for the reasons stated above, Plaintiffs' Fifth Amendment claims should be dismissed.

## POINT VII:   PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM THAT ANY OF THE CHALLENGED STATUTES IS UNCONSTITUTIONALLY VAGUE

Plaintiffs fail to state a claim that any of the challenged statutes, or any provision thereof, is unconstitutionally vague in violation of the Fourteenth Amendment's Due Process Clause. A statute is unconstitutionally vague only if it either fails to provide a person of ordinary intelligence fair notice as to the prohibited conduct or is so standardless that it encourages discriminatory enforcement. *United States v. Williams*, 553 U.S. 285, 304 (2008). Due process requires only that a statute provide "minimal guidelines" as to the conduct it proscribes when understood through common sense and ordinary practice; the Constitution does not demand "meticulous specificity…at the cost of flexibility and reasonable breadth." *United States v. Rosen*, 716 F.3d 691, 699 (2d Cir. 2013). Plaintiffs fail to plausibly allege that any of the challenged statutes fails to meet these "minimal guidelines" as to fair notice of proscribed conduct.

In addition, because Plaintiffs assert a facial vagueness challenge, *see N.Y. State Rifle & Pistol Ass'n*, 804 F.3d at 265 (vagueness challenge by plaintiff who has not been charged with any violation is a facial challenge); *Gazzola I*, 645 F. Supp. 3d at 65 (recognizing that Plaintiffs assert a facial vagueness challenge), they have a higher pleading burden. A plaintiff asserting a facial vagueness challenge must show that "no set of circumstances exists under which the [challenged laws] would be valid." *N.Y. State Rifle & Pistol Ass'n*, 804 F.3d at 265 (quoting *Salerno*, 481 U.S. at 745); *see also Rahimi*, 144 S.Ct. at 1898, 1903. This "prohibitively high bar" makes "a facial challenge . . . 'the most difficult challenge to mount successfully.'" *See N.Y. State Rifle & Pistol Ass'n*, 804 F.3d at 265 (quoting *Salerno*, 481 U.S. at 745). Plaintiffs do not come close to meeting their pleading burden for any of the statutes they assert are vague.

Plaintiffs allege that N.Y. Gen. Bus. Law § 875-b(2), which requires the New York State Police to establish standards for security alarm systems and to approve such systems, is vague. ECF No. 1 at ¶ 157(a). But Plaintiffs do not identify anything in that statute that fails to put them on sufficient notice of prohibited conduct or encourages arbitrary enforcement. The same is true for Plaintiff's allegations regarding: Gen. Bus. Law § 875-e's provisions regarding employee training, *see id*. ¶ 157(b), (c); Gen. Bus. Law § 875-f's provisions regarding records of inventory, *id*. § 157(d), (e); Gen. Bus. Law § 875-g's provisions regarding annual compliance certifications, *id*. ¶ 157(f), (g); and Gen. Bus. Law § 875-h, which permits the NYSP superintendent to promulgate rules and regulations, *id*. ¶ 157(h). Notably, the NYSP has promulgated regulations implementing the aforementioned statutes, further clarifying the statutes and mitigating any vagueness concerns. *See* 9 N.Y.C.R.R. §§ 482-2.1 through 482-2.6.

As the Court recognized in its decision denying Plaintiffs' motion for a preliminary injunction, "Plaintiffs provide no support for any of these claims and certainly fail to demonstrate, as they must, that the provisions 'can never be validly applied . . . .'" *Gazzola I*, 645 F. Supp. 3d at 66-67 (quoting *Vt. Rt. to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 128 (2d Cir. 2014)); *cf. Rahimi*, 144 S.Ct. at 1898. In its decision denying Plaintiffs' motion for a preliminary injunction the Court explained that each of Plaintiffs' vagueness claims "centers on the ability of New York agencies, namely the New York State Police, to promulgate rules, regulations, or guidance, and with such rules, regulations, or guidance, there is no suggestion that the provisions will fail to provide adequate notice or invite arbitrary enforcement." *Id*. (citing *Johnson v. United States*, 576 U.S. 591, 596 (2015); *Salerno*, 481 U.S. at 745. Although in the context of Plaintiffs' motion for a preliminary injunction the Court was faced with the specific question of whether Plaintiffs would be likely to succeed on the merits of their claims, the Court's analysis nevertheless demonstrates

34

that Plaintiffs' claims are fatally deficient at the pleading stage. *See Jordan v. N.Y. City Bd. of Elections*, 816 F. App'x 599, 602 (2d Cir. 2020) (affirming denial of preliminary injunction based on failure to show likelihood of success and further concluding that plaintiff failed to state a claim).

Plaintiffs also allege that Penal Law § 270.22, which restricts the sale of body armor, is vague, but Plaintiffs again fail to identify any provision thereof that fails to put them on notice of prohibited conduct or encourages arbitrary enforcement. ECF No. 1 at ¶ 157(i). The same is true for Plaintiffs' allegations regarding: Penal Law § 400.00(1), (19), which set forth requirements for classroom and live-fire training, *id.* at ¶ 157(j); Penal Law § 400.00(2), (3), (6), (7), (8), and (10)(c), the provisions for licensing of a semi-automatic rifle, *id.* ¶ 157(k); and Penal Law § 400.02(2), 400.03(2), and (3), the provisions for ammunition sales, *id.* ¶ 157(l). The Court held that Plaintiffs provided "no basis" for these claims. *Gazzola I*, 645 F. Supp. 3d at 67-68.

The Court is right. For example, Penal Law § 270.22 restricts sales of body armor to those in designated professions, many, but not all, of which are identified in Penal Law § 270.21; the fact that there may be additional professions whose members may purchase body armor does not make § 270.22 unenforceable. The statute plainly provides the required "minimal guidelines." *Rosen*, 716 F.3d at 699. Plaintiffs equally fail to allege that the provisions addressing training requirements in Penal Law § 400.00(1) and (19) are too vague to be enforced. Plaintiffs' claim comes down to a complaint that the training curriculum published by NYSP, which Plaintiffs acknowledge has been published, is not voluminous or detailed enough. *See* ECF No. 1 at ¶ 159. The curriculum plainly provides at least "minimal guidelines." *Rosen*, 716 F.3d at 699. The Court has expressed its agreement that Plaintiffs' vagueness challenge to the training requirement provisions is meritless. *See Gazzola I*, 645 F. Supp. 3d at 68. Regarding the semi-automatic rifle licensing provisions in Penal Law § 400.00(2), Plaintiffs' failure to understand that there are two

distinct application forms for semi-automatic licenses—a license application form and an amendment application form—does not render the statute unconstitutionally vague. *See* ECF No. 1 at ¶ 160. And, as the Court has explained, Plaintiffs provided "no basis" for their claims that the ammunition sale and record-keeping and the background-check requirements in Penal Law §§ 400.02 and 400.03 are unconstitutionally vague. *See Gazzola I*, 645 F. Supp. 3d at 67-68.

Plaintiffs fall far short of plausibly pleading that any of the challenged statutes are so vague that no set of circumstances exists under which they could validly be enforced. Notably, Plaintiffs did <u>not</u> pursue appealing this Court's preliminary injunction decision with respect to these claims, and the Second Circuit declined to consider those claims. *Gazzola II*, 88 F.4th at 194, fn. 5. Consequently, the Court should grant Defendants' motion to dismiss Plaintiffs' void-for-vagueness claims.

## POINT VIII: PLAINTIFFS' CONSTITUTIONAL REGULATORY OVERBURDEN CLAIM SHOULD BE DISMISSED

Plaintiffs allege that the challenged statutes create a "constitutional-regulatory overburden that threatens to put them out of business." ECF No. 1 ¶ 180. Plaintiffs are apparently claiming that the newly enacted conditions and qualifications on the commercial sale of arms will operate as an effective financial prohibition of sales.

Plaintiffs cite no precedent or authority in their Complaint for their "Constitutional Overburden" claim as it relates to commercial arm sales. In fact, "constitutional regulatory overburden" does not appear to be an independent cause of action that has been recognized by <u>any</u> federal court. As this Court has already observed, it is unclear how Plaintiffs' theory of "constitutional regulatory overburden" differs from their Second Amendment claim. *See Gazzola I*, 645 F. Supp 3d at 70-71. Further, it should be noted that in their brief requesting injunctive relief, Plaintiffs cited the very cases that explicitly refuse to "cast doubt on . . . laws imposing conditions

and qualifications on the commercial sale of arms." *McDonald*, 561 U.S. at 786; *Heller*, 554 U.S. at 626–27; ECF No. 13, at 22.

The Second Circuit, while concluding that there was a sufficient basis for the overburden theory, did not conclude that it constituted a claim independent of Plaintiffs' Second Amendment claim. *Gazzola II*, 88 F.4th at 195. Since Plaintiffs' Complaint cites no basis for their apparent assertion that they may pursue a "constitutional regulatory overburden" claim separate and apart from their Second Amendment claim, it should be dismissed. *See Gazzola I*, 645 F. Supp. 3d at 71; *Gazzola II*, 88 F.4th at 195.[14]

**POINT IX:    PLAINTIFFS' CAUSE OF ACTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988 SHOULD BE DISMISSED**

Plaintiffs' sixth cause of action alleges that they are entitled to an award of attorney's fees and expert fees pursuant to 42 U.S.C. § 1988. (ECF No. 1 at 124). However, "§ 1988 defines procedures under which remedies may be sought in civil rights actions, but it does not create independent causes of action." *Carris v. First Student, Inc.,* 132 F. Supp. 3d 321, 362 (N.D.N.Y. 2015), *aff'd in part, vacated in part, remanded*, 682 F. App'x 30 (2d Cir. 2017) (citing *Brown v. Reardon,* 770 F.2d 896, 907 (10th Cir. 1985)); *see also, Solomon v. City of Rochester*, 449 F. Supp. 3d 104, 113 (W.D.N.Y. 2020). Consequently, Plaintiffs' Sixth cause of action cannot stand alone as an independent cause of action and it must be dismissed.

---

[14] Significantly, Plaintiffs have not plausibly alleged *any* "mass closure" of gun stores that would prevent anyone in their geographic region, or in New York State generally, from purchasing firearms. In fact, any suggestion that such a bald assertion is true is belied by the data supplied by the FBI's NICS, which is subject to judicial notice as discussed above. *See*, fn. 1, *supra*. *See also* Point III, *supra*, which demonstrates that Plaintiffs cannot demonstrate that they have closed their business as a result of the subject statutes or that the number of FFLs has significantly declined since the statutes took effect.

## CONCLUSION

Defendants respectfully request that the Court dismiss Plaintiffs' Complaint in its entirety

and with prejudice, and grant such other and further relief as it deems just and equitable.

Dated: Syracuse, New York
        October 25, 2024

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants*
300 S. State Street, Ste. 300
Syracuse, New York 13202

By: **_s/Aimee Cowan_____**
Aimee Cowan
Assistant Attorney General, of Counsel
Bar Roll No. 516178
Telephone: (315) 448-4800
Fax: (315) 448-4853
Email: aimee.cowan@ag.ny.gov

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 25, 2024, she filed Defendants' Motion for Judgment on the Pleadings by electronically filing with the Clerk of the Court herein, using the CM/ECF system, which is understood to have sent notification of such filing electronically to the following:

> Paloma A. Capanna, Esq.
> Attorney for Plaintiffs
> 106-B Professional Park Drive
> Beaufort, North Carolina 28516

Dated:  Syracuse, New York
       October 25, 2024

> LETITIA JAMES
> Attorney General of the State of New York
> Attorney for Defendants
> 300 S. State Street, Suite 300
> Syracuse, New York 13202
> By: **_s/Aimee Cowan_____**
> Aimee Cowan, Esq.
> Assistant Attorney General
> Bar Roll No. 516178
> Telephone:     (315) 448-4800
> Fax: (315) 448-4853
> Email: aimee.cowan@ag.ny.gov