IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

**Nadine Gazzola**, individually, and as co-owner, President, and as BATFE Federal Firearms Licensee Responsible Person for **Zero Tolerance Manufacturing, Inc.**;

**Seth Gazzola**, individually, and as co-owner, Vice President, and as BATFE FFL Responsible Person for **Zero Tolerance Manufacturing, Inc.**;

**John A. Hanusik**, individually, and as owner and as BATFE FFL Responsible Person for d/b/a **"AGA Sales"**;

**Jim Ingerick**, individually, and as owner and as BATFE FFL Responsible Person for **Ingerick's, LLC**, d/b/a **"Avon Gun & Hunting Supply"**;

**Christopher Martello**, individually, and as owner and as BATFE FFL Responsible Person for **Performance Paintball, Inc.**, d/b/a **"Ikkin Arms,"**;

**Michael Mastrogiovanni**, individually, and as owner and as BATFE FFL Responsible Person for **"Spur Shooters Supply"**;

**Robert Owens**, individually, and as owner and as BATFE FFL Responsible Person for **"Thousand Islands Armory"**;

**Craig Serafini**, individually, and as owner and as BATFE FFL Responsible Person for **Upstate Guns and Ammo, LLC**; and,

**Nick Affronti**, individually, and as BATFE FFL Responsible Person for "East Side Traders LLC"; and,

**Empire State Arms Collectors, Inc.**;

    Plaintiffs

v.

**KATHLEEN HOCHUL**, in her Official Capacity as Governor of the State of New York;

Civ. No.: <u>1:22-cv-1134 (BKS/DJS)</u>

**STEVEN A. NIGRELLI**, in his Official Capacity as the Acting Superintendent of the New York State Police;

**ROSSANA ROSADO**, in her Official Capacity as the Commissioner of the Department of Criminal Justice Services of the New York State Police; and,

**LETICIA JAMES**, in her Official Capacity as the Attorney General of the State of New York,

      **Defendants**

---

### FIRST DEMAND FOR RECORDS
### PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 34:
### TO THE DEFENDANT NEW YORK STATE POLICE

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, the Plaintiffs hereby request that Defendant NEW YORK STATE POLICE respond to the following demand for documents on or before thirty days (30-days) from the date of service of this Demand.

### INSTRUCTIONS

(A.) The records demanded are requested to be produced in hard copy on paper. Where a record has need to be electronically produced to support legibility, particularly due to colored ink in professionally-produced materials, such record shall be produced in Adobe PDF format.

(B.) The records demanded are requested by preference to be organized and labeled to correspond to the categories of this request, or, in the alternative, as such records are kept in the usual course of business.

(C.) Plaintiffs request Defendants make a good faith effort to produce the requested records.

(D.) The answers to these demands should be promptly supplemented and amended as required by Fed R Civ P 26(e).

(E.) If claim is made against providing a record due to privilege, the privilege claimed and in relationship to what record should be stated with sufficiency to allow analysis of the claimed privilege and a discussion whether an accommodation can be agreed.

(F.) If objection is made to any demand (in whole or part), the reason for the objection shall be stated with sufficiency to allow analysis of the objection and a discussion whether an accommodation can be agreed. Please be welcomed to contact the undersigned, on-going, for any clarification or response to question with these demands.

(G.) If a demand cannot be complied with in full, please answer the demand to the extent possible and provide a written explanation of why full compliance cannot be achieved.

(H.) If claim is made for a record that was destroyed, disposed of, or is otherwise incapable of being located, identify that record as completely as possible, including its author, persons with whom the record was or may have been shared, date, subject matter, date of disposal, reason for disposal, person authorizing or requesting the disposal, and the person disposing of the document. Please also state whether the record may be obtainable from a different source.

## **DEFINITIONS**

(A.) "Any" and "all" shall be read in the conjunctive and not in the disjunctive. Neither word should be interpreted to limit the scope of a request. Further, the use of a verb in any tense shall be construed as the use of the verb in all other tenses. Similarly, the singular form of a noun shall be construed in the plural and vice-versa.

(B.) "Communication" means communication across all formats, whether oral or written, whether in-person or across devises such as telephones, conversations, discussions, conferences, negotiations, agreements, meetings, interviews, letters, correspondence, notes,

      telegrams, facsimiles, electronic mail, texting, social media or application messaging, memoranda, documents, writings, or other forms of communications.

(C.)   "Governor Hochul" refers to NY Governor Kathleen Hochul and the personnel of the Governor's Office, as well as any third-parties working at, under, or for the Governor.

      i.   At times, there is use of "Ms. Hochul," where a response may concern her in her individual capacity, such as when, as an individual, seeking an endorsement during the political campaign for office, or in asking whether she has a concealed carry permit. This is intended to allow her to distinguish among roles. No disrespect should be inferred from this minor use of language used to distinguish roles or capacities to achieve an appropriate response to the demand.

      ii.   It may also refer to her in a prior office, such as NY Lieutenant Governor. Effort has been made to distinguish between offices held.

(D.)   "Including" and "including, but not limited to" should be read interchangeably, and should serve a signaling function, in the manner of giving an example. These words should in no way limit the response to the example provided, to the reference in the pleading provided, and/or to the BATES document referenced.

(E.)   "Laws complained of" and "2022 laws complained of" are those statutes and provisions thereof challenged within this pending lawsuit and which are requested to be struck down by permanent injunction or otherwise.

(F.)   "Personnel," "employees," and "staff" may be used inter-changeably, herein, and should be read in the broadest sense of the common, English language use of these words, including persons who are directly employed by, whether full-time or lesser hours, whether independently contracted, whether out-sourced, and whether under contract. If a record request is housed with or otherwise under the dominant record retention policy of a third-party contractor, please respond with the documents within defendants' control and indicate who or what entity it is believed is the primary source of a given record(s).

(G.) "Records" and "documents" are intended to convey broad, common, English language use of the words, including papers, notes, writings, transcriptions, drawings, diagrams, audio and digital recordings of oral communications by whatever means, all drafts prepared in connection with a writing; minutes; diaries; calendars; desk pads; notes; notebooks; telegrams; correspondence; letters; memoranda; bulletins; electronic mail, whether contained within single or related or networked servers as "intra-office" or "inter-office" or exchanged through external or supported platforms or applications; microfilm; facsimiles; publications; circulars; forms; pamphlets; notices; statements; journals; maps; drawings; diagrams; sketches; and Electronically Stored Information ("ESI").

    i. "Electronically Stored Information," in relation to "records" or "documents," means any information reasonably expected to be housed, stored, or found on operational systems, such as accounting or financial data in Microsoft Excel; internal office messaging; website pages and downloadable data; government or business phone cellular data and text messages.

## DEMANDS

**NYSP and NYS Standard Operating Procedures ("SOP")**

1. Records of the Standard Operating Procedure used within or otherwise governing the NYSP in its production process of drafting and publishing written documents and other written materials such as websites, including the use of version dates and numbering.

2. Records of the Standard Operating Procedure used within or otherwise governing the NYSP to "proliferate" a regulation, including in the first instance and in any subsequent amendment, modification, and repeal or recission.

3. Records of the Standard Operating Procedure used within or otherwise governing the NYSP for document retention and destruction, generally, and for (a.) document retention, safekeeping, and destruction relating to individual FFLs and "Dealers in Firearms" believed to be subject to the requirements of NY Gen Bus L §875 as of December 5, 2022,

specifically; and, (b.) document creation, retention, safekeeping and destruction relating to requests to purchase firearms (including handguns, rifles, shotguns, and antiques) or transfer such firearms through a process that includes a state-run background check as of September 13, 2023, specifically; and, (c.) document creation, retention, safekeeping, and destruction relating to requests to purchase ammunition through a process that includes a state-run background check as of September 13, 2023, specifically. If any such SOP is not in place since on the above dates to the present, then please include records of drafts of such SOPs and communication relating to the same.

4. Records of the Standard Operating Procedure used within or otherwise governing the NYSP for information obtained during a "periodic premises inspection" under NY Gen Bus L §875, including, but not limited to, where such information will be stored, who and/or which position of personnel will have access to such information, the period of retention for the information, and the record destruction process to be employed.

**NY "Dealers in Firearms"**

5. Records of the complete database or other document listing of all New York "Dealers in Firearms" with a state license. [Refer, as an example, to Plaintiffs' BATES: U.S. – BATFE – 00452 through 000479 and corresponding full Excel files via jump drive.]

6. Records of the total number of "Dealers in Firearms" with such a state license and any additional or other aggregate measure employed by the NYSP to track, analyze, or otherwise understand such data.

7. Records of changes in the "Dealers in Firearms" within the state database since May 31, 2022 through whatever means is employed by the NYSP to track, analyze, or otherwise understand such data.

8. Records of "Dealers in Firearms" providing notification to and communicating with the NYSP of an intention to terminate or otherwise not renew their state license since May 31, 2022.

**Statewide Communication with "Dealers in Firearms"**

9. Records of statewide communication initiated by the NYSP to FFLs and/or "Dealers in Firearms" with a state license since the state license was codified, including documentation such communication included the Plaintiffs. [N.B.: This request is made with the belief that no such statewide notification has ever been made since the state license came to be required. This request is made thus to confirm a lack of records. If such records exist, please at least provide such records since January 1, 2022. If not unduly burdensome and such records exist, please do provide such records since inception of the state license.]

10. Records of statewide communication made by the NYSP to FFLs and/or "Dealers in Firearms" with a state license since the state license was codified in order to notify that a renewal of a license is approaching, including documentation such communication included the Plaintiffs. [*N.B.*: This request is made with the belief that no such statewide notification system is in place or has ever been made since inception of the state license. If such records exist, please provide the templates or forms used to make such notification and documentation of such notifications being transmitted to the Plaintiffs.]

**Communication with County Clerks**

11. Records of training and instruction to county clerks on the administration and oversight of the "Dealer in Firearms" license, including, but not limited to, the initial license application, the renewal of the license, the required application data transmissions between the counties and the state during these processes, and the required data transmissions between the counties and the state of approvals, denials, and modifications of such licenses. [See examples in Plaintiffs' BATES: NYS – POLICE – 000026 through 000030.]

12. Records of communication, training, instructions, and other resources for and with county clerks on the initiation and on-going administration of the "Semi-Automatic Rifle License" requirement, including any uniform license template, any guidance on creating such license in physical form at the county level, and any instructions on differentiating the design and

production of such license from the predecessor concealed carry license. [See examples in Plaintiffs' BATES: NYS – POLICE – 000020 through 000024.]

13. Records of communication, training, instructions, and other resources for and with county clerks on the initiation and on-going administration of the proof of completion of the <u>16-hour classroom training requirement</u> to obtain an individual concealed carry permit as administered at the county level, including, but not limited to, any standardized completion of training certificate to be used by instructors for submission by the individual to the county, and any standardized written test with scored results for submission by the individual to the county.

14. Records of NYSP communication and other resources for and with county clerks of training on the state-level approval of the 16-hour classroom training requirement necessary to obtain an individual concealed carry permit.

15. Records of NYSP communication and other resources for and with county clerks of state-level approved instructors for the 16-hour classroom training requirement necessary to obtain an individual concealed carry permit.

16. Records of NYSP communication and other resources for and with county clerks to differentiate between "renewal" and "recertification" of an individual concealed carry permit.

**Certification of the Ammunition Background Check System**

17. Records of the Superintendent of NYSP issuing a certification of the operability of an ammunition background check system, at any time after January 1, 2013 through September 12, 2023 at 11:59 p.m., including, but not limited to, the dissemination of the certification to FFLs, specifically, and the public, generally.

**Conversion to a New York Point of Contact System Under Exec §228**

- **Notification to the Federal Government**

18. Records of the NYSP, which may include by and between the NY Governor, the NY Attorney General, the NY DCJS, the U.S. ATF, and the FBI, for the notification <u>to the federal government</u> of the state government intention to take-over the NICS background check system from the ATF/FBI to become a "Partial Point of Contact State" or a "Point of Contact State."

19. Records of the NYSP of communication by and between the NYS Police, the NY Governor, the NY Attorney General, and/or the NY DCJS concerning the take-over of the NICS background check system from the ATF/FBI to become a Point of Contact State or Partial Point of Contact State, including, but not limited to, the decision-making process and implementation of a system for background checks of handguns, rifles, shotguns, and antique firearms (as those terms are defined at federal law).

20. Records of communication between the NYS Police, the NY Governor, the NY Attorney General, and/or the NY DCJS concerning the initiation, operation of, and relationship to, the take-over of the NICS background check system from the ATF/FBI to become a Point of Contact State or Partial Point of Contact State.

- **Notification to FFLs**

21. Records of the communications from the NYSP to FFLs concerning the intended state take-over of the NICS background check system from the ATF/FBI to become a Point of Contact State, including records demonstrating how and to whom such communication was made, whether in whole or in part, and whether successfully delivered to the intended recipients or not, including any electronic system error messages particularly those with date and time information. [See, for example, Plaintiffs' BATES: NYS – POLICE – 000119 through 000120.]

22. Records of communication between the NYSP, the Governor, the Attorney General, the DCJS, the ATF, and the FBI for notification of FFLs to originate from the FBI to FFLs on behalf of the NYSP and/or the Governor, concerning the date of the intended state take-over of the ATF/FBI NICS background check system to become a Point of Contact State. [For example, see Plaintiffs' BATES: NYS POLICE – 000123 through 000124 and 000127 through 000129.]

23. Records demonstrating, interpreting, or otherwise indicating any authority for the NYSP to operate as a full POC state for the background check, specifically on the requested purchase of a "shotgun" or "rifle," as those terms are defined as a matter of federal law.

24. Records demonstrating, interpreting, or otherwise indicating any authority for the NYSP to operate as a POC for the background check on the requested purchase of an "antique firearm," as that term is defined as a matter of federal law.

25. Records of communication between federal and state personnel, including the NYSP, using the word "firearm" in connection with the anticipation of and run-up to the September 13, 2023 take-over of the NICS background check system direct interface with FFLs in New York, including, but not limited to, any records that identify, alert, discuss, or claim to reconcile differences and distinctions between the two definitions.

26. Records of training and instructions provided to the NYSP <u>from the federal government</u> on the operation of and interface with the federal ATF/FBI NICS system.

27. Records of training and instructions developed for use <u>within the NYSP</u> on the operation of and interface of the state background check system with the federal ATF/FBI NICS system.

28. Records of communication from the NYSP <u>to FFLs</u> prior to September 13, 2023, including, but not limited to, from "Angie," which records should include, but not be limited to, the templates of communication, the target of the communications, and the responses to the communication. [For example, see Plaintiffs' BATES: NYS – POLICE – 000125.]

29. Records of communication from the NYSP <u>to FFLs</u> prior to September 13, 2023, including, but not limited to, a "phased rollout program," which records should include, but not be limited to, the templates of communication, the target list to whom the communication was attempted or made, and the responses received to the communication. [For example, see Plaintiffs' BATES: NYS – POLICE – 000126.]

30. Records of training and instructions provided by the NYSP <u>to FFLs</u> on the operation of and interface with the state "NY NICS" system. The response to this demand should include, but not be limited to, all versions of the on-line booklet available for download, and should include wherever possible the dates of each specific revision. [For example, see Plaintiffs' BATES: NYS – POLICE – 000033 through 000053.]

**"Periodic Premises Inspections"**

31. Records of whether and when "periodic premises inspections" were or will be commenced under NY Gen Bus L §875, as the term is used in NY Gen Bus L §875-g(2).

32. Records of who at the NYSP is involved in the decision-making process on whether and when to commence periodic premises inspections of "Dealers in Firearms."

33. Records of any communication to initiate, pause, cease, or terminate the initiation, development, and/or completion of NYSP "periodic premises inspections" to fulfill responsibilities under NY Gen Bus L §875, along with any other format in which the on-site visits by the NYSP is designated to occur.

34. Records by and between the Defendants and the NYSP, including, but not limited to, in 2023, regarding the commencement of periodic premises inspections.

35. Records of how the NYSP has been, does, or will make selections of a "Dealer in Firearms" for periodic premises inspections.

36. Records of any metric, criteria, or systematic approach within the NYSP to analyze information collected from personnel going to a "Dealer in Firearms" for period premises

    inspections, and how that analysis corresponds to a decision whether and when to charge a "Dealer in Firearms" under NY Gen Bus L §875-i.

37. Records of any alternatives to NY Gen Bus L §875-i as identified, considered, selected, or otherwise to proceed following a "periodic premises inspection" through a lesser charge, a violation, or an alternative administrative course.

38. Records of whether the selection of a business for a periodic premises inspection is limited to one which holds a current "Dealer in Firearms" license, or, whether it also includes FFLs with New York business premises that do not have a current "Dealer in Firearms" license. If such periodic premises inspection have been, are, or will be conducted at FFLs with no state license, please include in responses to all records demands of this section such FFLs, in addition to "Dealers in Firearms."

39. If the selection of the business originates from or includes FFLs not known to concurrently have a current "Dealer in Firearms" license, records of the personnel and the decision-making process to perform a periodic premises inspection of such business.

- **Training and Assignment to Conduct the "Periodic Premises Inspection"**

40. Records of who, within the NYSP, is assigned to conduct periodic premises inspections, by which request it is asked which level, group, troop, or other designation of personnel, including, but not limited to, the "Joint Terrorism Task Force" or the "Counter-Terrorism Task Force" is designated to conduct periodic premises inspections.

41. Records of who and when the assignment designation was made within the NYSP of those who would conduct the periodic premises inspections.

42. Records of what training is designed, administered, and/or provided to the NYSP personnel who carry out the periodic premises inspections. This response should include all versions of training materials, including, whenever possible, records of the date that any modification(s) were made to such training materials since release to NYSP personnel for the intended purpose.

43. Records of who prepares, administers, and oversees training of NYSP personnel prior to and during periodic premises inspections, including any external or third-parties.

44. Records of the credentials of who prepares, administers, and oversees training of NYSP personnel prior to and during periodic premises inspections.

45. Records of training of NYSP personnel performed by the ATF and/or the FBI, including, but not limited to, the dates of the trainings and the training materials.

46. Records of what information the NYSP directs, trains, or otherwise requests its personnel obtain during the periodic premises inspections.

- **Use of Information Collected During the "Periodic Premises Inspection"**

47. Records of how information obtained during a periodic premises inspection is to be memorialized for on-going access as a state government record. This request is intended to learn whether records will be maintained, e.g., under the direction of the NYSP individual who conducts the premises inspection such as in a paper file or whether it is entered into a centralized computer system with multiple access portals, and whether those access portals exceed the NYSP.

48. Records of which personnel by name and position have and/or will have access to information obtained during a periodic premises inspection, and for what purpose or objective, whether strictly within the NYSP or extending outwards to others within the state government and/or beyond, including, but not limited to, third party contractors and consultants.

49. Records by and between the DCJS and the NYSP, including, but not limited to, in 2023, a list of items to inspect for during a periodic premises inspection.

50. Records by and between the NYSP and the NY Attorney General, including, but not limited to, subpoenas for records and/or sworn testimony transmitted to FFLs and/or "Dealers in Firearms."

- **Conduct of and at FFLs and/or "Dealers in Firearms"**

51. Records regarding what is designated or titled as a "Checklist," including, but not limited to, its author, drafts, versions, revisions, and modifications. Whenever possible, the record response should include all persons who contributed to the drafts of said document and any changes made to the document. The record response should also include the dates of drafts, final versions, versions published to personnel, and revisions and modifications. [Please refer, for example, to Plaintiffs' BATES: NYS – POLICE – 000130 through 000143.]

52. Records of NYSP personnel training or instructions on how to use a "Checklist," or other similar documents or metrics, including authority of personnel to make revisions, amendments, or modifications to such forms or templates.

53. Records of training and/or instructions on how NYSP personnel are to input the "checklist" data into a centralized computer system, which may or may not be connected to either the DCJS and/or the NYS OAG, or, to both.

54. Records of communication by and between the NYSP and the NYS OAG on the collection and sharing of information solicited from FFLs for a "survey" or other, similar event, intended to be something less than or other than a formal, periodic premises inspection.

55. Records of all data transmitted from the NYSP to the NYS OAG in relation to on-site visits to FFLs for any event less than or other than a formal, periodic premises inspection.

56. Records of all FFLs visited by the NYSP for a periodic premises inspection.

57. Records of all FFLs visited by the NYSP for any event less than or other than a formal, periodic premises inspection.

- **Communication with FFLs and/or "Dealers in Firearms"**

58. Records of written instructions, training, explanations, or other materials from the NYSP designed to assist FFLs with the successful completion of a periodic premises inspection.

59. Records of written or other materials from the NYSP designed to notify an FFL of an upcoming periodic premises inspection.

60. Records of written or other materials designed by the NYSP to notify an FFL of the results of a periodic premises inspection.

61. Records of the responses given by FFLs to NYSP personnel during on-site visits, whether formal periodic premises inspections, or otherwise, including, but not limited to those transmitted through individual NYSP personnel to a "white board" or other, collective, shared communication within the NYSP or among the Defendants or third-parties.

62. Records of any on-site visit or other communication with each of the Plaintiffs and any named witness in the Rule 26 response of the Plaintiffs.

**NYSP Regulations Under NY Gen Bus L §875**

63. Records of publication of regulations of the NYSP in accordance with NY Gen Bus L §875.

64. Records of assignment, delegation, or request within the NYSP and/or third-parties for preparation of regulations in accordance with NY Gen Bus L §875, including dates of assignment, scope of work to be performed, contract for work to be performed (if third-party).

65. Records of communication about NYSP responsibility for "regulations" (whether required, anticipated, in progress, or actual) to accord with NY Gen Bus L §875.

66. Records of the initiation, development, and any completion of NYSP "regulations" (whether completed or not) to fulfill responsibilities under NY Gen Bus L §875.

67. Records of any communication to initiate, pause, cease, or terminate the initiation, development, and/or completion of NYSP "regulations" to fulfill responsibilities under NY Gen Bus L §875.

68. Records of notification to FFLs and/or "Dealers in Firearms" of each regulation(s) published in accordance with NY Gen Bus L §875. [*N.B.*: This request is made with the belief that no such notifications exist. If such notifications exist, please provide such notification letters, e-mails, texts, or other forms of notification including proof of notification of Plaintiffs.]

69. Records relating to NY Gen Bus L §875-b(1) mandate of a "<u>security plan</u>," including, but not limited to, how that term is defined and the standards for compliance.

70. Records relating to NY Gen Bus L §875-b(1)(a) mandate of a "<u>secured…in a locked fireproof safe or vault on the dealer's business premises</u>" including, but not limited to, how that term or phrase is defined and the standards for compliance.

71. Records relating to NY Gen Bus L §875-b(1)(a) mandate of a "<u>secured…*or* in a secured and locked area on the dealer's business premises</u>" including, but not limited to, how that term or phrase is defined and the standards for compliance. (emphasis added)

72. Records relating to NY Gen Bus L §875-b(1)(b) mandate of an ammunition shall be "stored" separately from firearms, including, but not limited to, how that term or phrase is defined and the standards for compliance.

73. Records relating to NY Gen Bus L §875-b(1)(b) mandate of ammunition shall be "stored…*and* out of reach of customers," including, but not limited to, how that term or phrase is defined and the standards for compliance.

74. Records of regulations of the NYSP for NY Gen Bus L §875-b(2) relating to <u>standards for security alarm systems</u>. [*N.B.*: This request is made with the belief that no such regulations exist. If such regulations exist, please provide such regulations along with the date and place of publication, all versions, and all dates of modifications.]

75. Records relating to NY Gen Bus L §875-b(2) mandate that alarm systems shall provide "complete protection" and "partial motion and sound detection" whether an "accessible opening" or "at certain other areas of the premises, including, but not limited to, how that term or phrase is defined and the standards for compliance.

76. Records relating to NY Gen Bus L §875-b(2) mandate of video recordings to be maintained for a period of not less than two years, including, but not limited to, how this phrase is defined and the standards for compliance, including, but not limited to, technical specifications for the cameras, camera settings, video recording devices, and clarity of image as measured by frames per second.

77. Records of publication under NYSP for NY Gen Bus L §875-e(1), (2), and (3) relating to <u>employee training</u>, including the date of publication of such training materials, amendments, modifications, and versions of such training materials. [For example, Plaintiff's BATES – NYS - POLICE – 000063 through 000091.]

78. Records of publication by the NYSP of instructions, directions, or guidance on the disposition of monthly reports to the NYSP under NY Gen Bus L §875-f(2).

79. Records of publication under NYSP for NY Gen Bus L §875-g(1)(b), relating to the "<u>annual certification of compliance</u>," including the date of publication of such certification form, amendments, modifications, and versions of such certification form.

80. Records of communication within the NYSP, the Defendants, and any third-parties, to define and establish an "annual certification of compliance" and the date for it to be required of FFLs or "Dealers in Firearms."

81. Records of publication through the NYSP website for changes to language around the "annual certification of compliance," from the date of initial posting through the present, including the dates of website changes.

82. Records of publication by the NYSP of instructions, directions, or guidance on the disposition of ammunition sale records created prior to September 13, 2023 under NY Pen §400.03(2).

### Charges Against FFLs and/or "Dealers in Firearms"

83. Records of charges filed against any FFL or "Dealer in Firearms" under NY Gen Bus L §875-i, including, but not limited to any charging instrument, indictment, and complaint, as well as the caption, index number, court, and venue.

### Analysis of Cost of NY Gen Bus L §875

84. Records of **cost analysis**, cost estimates, or other, similar standard government and business analytic relative to performance of mandates under NY Gen Bus L §875 by the FFL or "Dealer in Firearms."

85. Records of any cost-benefit analysis for performance of mandates under NY Gen Bus L §875 by the FFL or "Dealer in Firearms."

86. Independently of earlier-requested records from on-site visits or periodic premises inspections, records of communication to and/or from the NYSP to FFLs or "Dealers in Firearms" from June 2022 through the present relating to the mandates under NY Gen Bus L §875.

### Third-Party Communication

87. Records of communication between the NYSP and "Everytown for Gun Safety," "Everytown for Gun Safety Action Fund, Inc.," "Everytown for Gun Safety Support Fund, Inc.," "Moms Demand Action," "Giffords Law Center," and any of its affiliates, derivatives, former, or related groups, concerning the laws challenged, including, but not limited to, drafts and other communications on the topics contained within such challenged laws.

88. Records of communication between the NYSP and the "National Shooting Sports Foundation" ("NSSF"), including, but not limited to Larry Keane, from January 2021 through the present.

**Relating to the NY Legislature and Governor**

89. Records of communication to and from the NYSP and Assembly and/or Senate officials and personnel prior to the vote taken on the bills that contain the 2022 challenged provisions, including, but not limited to, the bills, bill drafts, bill memorandum, bill jackets, and other, associated legislative materials from draft to passage.

90. Records of communication to and from the NY Governor and personnel prior to the signing of the bills that contain the 2022 challenged provisions, including, but not limited to, the bills, bill drafts, bill memorandum, bill jackets, and other, associated legislative materials from draft to passage.

91. Records of testimony given before the NY Senate and/or Assembly concerning the 2022 challenged provisions, specifically, and FFLs and/or "Dealers in Firearms," generally.

92. Records of testimony given before the NY Senate and/or Assembly concerning the 2022 challenged provisions, including, but not limited to, corresponding charges, arrests, and dispositions of individuals, businesses, and business owners or employees.

93. Records of the annual reports required to be provided to the Governor, Senate Majority Leader, and the Assembly Speaker under NY Gen Bus L §875-b(2)(b).

94. Records of reports from the NYS Police, the NY Attorney General, the NY DCJS or other federal or state government entity on performance statistics for the state background check system for firearms and ammunition.

95. Records from the NYS Police, the NY Attorney General, the NY DCJS, or other federal or state government entity on the database created through the state operation of the background check system for firearms and ammunition, including the number of transactions, the number of records amassed, the number of distinct person records, and the number of denied transactions.

Dated: October 4, 2024
       Keene Valley, New York

                                            *Paloma A. Capanna*
                                        Paloma A. Capanna, Attorney
                                        Counsel of Record for the Plaintiffs
                                        106-B Professional Park Drive
                                        Beaufort, North Carolina 28516
                                        (315) 584-2929 mobile
                                        (252) 515-6737 business