IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

**Nadine Gazzola**, individually, and as co-owner,
President, and as BATFE Federal Firearms Licensee
Responsible Person for **Zero Tolerance
Manufacturing, Inc.**; *et al.*

    **Plaintiffs**

*v.*

**KATHLEEN HOCHUL**, in her Official Capacity as
Governor of the State of New York; *et al.*

    **Defendants**

---

### DECLARATION OF PALOMA A. CAPANNA,
### ATTORNEY FOR THE PLAINTIFFS
### IN PARTIAL OPPOSITION TO DEFENDANTS' MOTION FOR A STAY

1. This attorney affirmation on behalf of the Plaintiffs responds to the Defendants' "Notice of Motion [for Stay]" (dated November 1, 2024). CM/ECF doc. 105. It serves two purposes: (1.) it offers a compromise for document demands pending the terminal order to the Defendants' Motion to Dismiss (dated October 25, 2024) (doc. 104); and, (2.) it gives the Court an accurate review and discussion of the case record, so as to correct misrepresentations in the Defendants' Attorney Declaration (sworn November 1, 2024) (doc. 105-1, ¶4 and ¶5).

2. My assessment, without analysis on the merits of any individual claim of Plaintiffs, is that, practically and logistically speaking, in equal measure, there should and should not be a

blanket stay of the case at this point. Where it made sense, earlier, to stay the proceedings, this case is now well underway into discovery with a unique, signed Discovery Stipulation (doc. 99) and is moving towards relief no less necessary today as when we filed the motion for emergency relief. My sense, basis the motions submitted (docs. 104 and 105) is that the State is willing to say anything to avoid responding to even the first document demands served (docs. 105-2 and 105-3), and that they will fight the motion to dismiss (doc. 104) as long as it serves to delay response to discovery.

3. Plaintiffs propose the following resolution of the motion for a stay, below. This specific proposal was made via e-mail to Counsel for the Defendants on November 13, 2024. Ms. Cowan declined, being in favor of a judicial order.

4. Ms. Cowan did not request, nor did we participate, in a court conference as a prerequisite to her filing of the specific motions how and when filed. N.D.N.Y. R. 7.1(a)(2).

5. This recommended outcome to this motion takes advantage of the Discovery Stipulation (doc. 99), which defines the "Tiers," referenced below in paragraphs 5 through 9.

6. An order <u>granting</u> a stay of **Tier 1** discovery responses, pending the terminal order on the Defendants' pending Motion to Dismiss (doc. 105-1) and any cross-motion by Plaintiffs made by January 10, 2025 (text order 107). This would place a hold on documents of the highest degree of sensitivity, such as individual plaintiff retail and home business premise security systems, in the unlikely event claims against state compliance mandates are dismissed.

7. An order <u>denying</u> a stay of **Tier 2** and **Tier 3** discovery responses and directing that records be exchanged by January 10, 2025 to fulfill discovery demands of October 4, 2025, including

Plaintiffs' demands at docs. 105-2 and 105-3. Many of the responsive records are freedom of information or comparable grade.

8. An order denying a stay of document demands would allow that to move forward.

9. An order granting a stay of party depositions, all third-party discovery, and all expert discovery. Document exchange of Tier 1 documents should occur prior to the balance of discovery.

10. An order directing submission by Counsel of a revised Case Management Plan within fourteen days (14 days) of entry of the terminal order of Defendants' Motion to Dismiss (doc. 104) and any Plaintiffs' cross-motion.

### I. THE STATE SHOULD NOT BE REWARDED FOR OBSTRUCTING DISCOVERY.

11. Ms. Cowan persistently misrepresented the past three months of active discovery, where she wrote that between August 23, 2024 and October 4, 2024 the only discovery activity was demands served. Doc. 105-1, ¶5, first sentence; again, Memorandum, doc. 105-6, p. 6, fourth paragraph. That is false. The *Defendants* transmitted nothing. The *Plaintiffs* sent four mailings to Ms. Cowan during that period containing over two hundred Bates-numbered documents, including an Index updated to each mailing, and two jump drives with large-scale raw ATF data and other government and NGO publications.

12. On April 5, 2024, Ms. Cowan filed the first "Civil Case Management Plan." Docs. 82, 83. She was and remained on lead for this jointly-agreed document, including its amendments filed June 26, 2024. Doc. 89.

13. This Court made clear in teleconferences that discovery should progress, unless ordered otherwise after formal motion by the State. See, e.g., text minute entries 04/09/2024 and 07/02/2024.

14. On July 2, 2024, a "Uniform Pretrial Scheduling Order" issued. Entry 90.

15. Since then, each Counsel has requested and been granted/denied fairly-limited requested calendar revisions, such requests being largely jointly submitted.

16. On August 23, 2024, Counsel jointly signed off on a Discovery Stipulation negotiated over a course of weeks. This 11-page document tackled the complex topic of how to exchange documents in support of Plaintiffs' claims, taking into consideration, especially, (a.) the highly proprietary nature of security operations and equipment at Plaintiffs' business premises; and, (b.) the genuine fear that documents in support of claims made will trigger the arrest of Plaintiff(s) under NY Gen Bus §875-i, which is a class A misdemeanor for non-compliance, actual or perceived, for any/all of the new state compliance mandates.

17. On August 23, 2024 (the same day the Discovery Stipulation was filed to the Court), Counsel exchanged Fed. R. Civ. P. Rule 26 responses.

18. There were points over the past summer that things could have broken down. One critical idea was conceived by Ms. Cowan. One extra push by me brought us though. There was an exchange that substantively progressed the case.

19. Using that launch point of August 23, 2024, I began steadily and systematically transmitting BATES-numbered documents to Ms. Cowan. I created an Index of documents, which, though not required under federal rules, I transmitted to her, as updated, with each shipment

of documents. The Index includes references to any document previously filed in this case, including to all appellate courts.

20. Between August 23, 2024 and October 4, 2024, I transmitted approximately two hundred (200) documents to Ms. Cowan at her Syracuse office. Each mailing went out with a cover letter, referencing the starting and stopping BATES numbers of enclosures, and with an updated index. For each, I prepared a certification of mailing, and attached the receipt. Two boxes included jump drives, particularly for the ATF large, monthly raw data sets of active Federally-Licensed Dealers in Firearms (FFLs) in New York, and for government and non-governmental organization professionally-printed (full color) PDF publications that did not print particularly well in black-and-white due to colors and fonts. This is part of what you see reflected in Ms. Cowan's attachments of my correspondence/e-mail at docs. 105-4 105-5.

21. My letters with documents/jumps transmitted to Ms. Cowan on September 10, 2024, September 13, 2024, September 27, 2024, and October 4, 2024.

22. The State, by contrast, did not serve any documents (zero) after August 23, 2024.

23. One key to demonstrating the misrepresentations by Ms. Cowan was filed by her as attachments to her own affidavit. Docs. 105-4 and 105-5. First, my e-mail to her, dated October 3, 2024, which says,

> "The prior three boxes + this fourth box are an expression of the front half of our pleading/motion. It puts us in a position to thus respond to your anticipate[d] document demands, which, from our perspective, relate to the balance of the pleading/motion."
> Doc. 105-5, p. 1, fourth paragraph.

24. Second, my letter, dated October 4, 2024, which says,

> "Into today's mail went box #4 of documents from the Plaintiffs, primarily concerning Gov. Hochul. You will need those materials to

> work with the BATES in her Demand. Most of the NYSP
> documents were transmitted in earlier boxes." Doc. 105-4, p. 1,
> second paragraph.

25. Plaintiffs were on track and on point to answer Defendants' Fed. R. Civ. P. 33/34 demands, as received by e-mail October 4, 2024. We planned also to serve our next bundle of BATES-numbered documents (box 5) with an updated Index. Ms. Cowan's demands, if answered only as phrased, would not grasp either the available Plaintiffs' documents, nor put the State on notice of records intended to be offered in support of Plaintiffs' claims made. Plaintiffs' response would have been organized both as to what Ms. Cowan requested and what Ms. Cowan missed.

26. Plaintiffs' profession is a highly-regulated federal industry. It is our intention to state Plaintiffs' case and the details necessary to make a *prima facie* case. As I stated, and have repetitively stated throughout this case, as recently as my e-mail of October 3, 2024, attached by Ms. Cowan to her application:

> "We are conscious that ours is a technically-driven industry, and it's
> our objective to provide the information to assist our conversation
> about the case. I wish to assure – and at the same time suggest –
> that you are always welcomed to contact me with any question about
> a demand I serve that may be unclear or objectionable. Similarly, if
> we provide a document that doesn't make sense or may not seem
> responsive based upon what you anticipated, please contact me."
> Doc. 105-5, p. 1, last paragraph.

27. Instead, Ms. Cowan timed her eventual filing of the motion to dismiss for maximum disruption. She filed the motion to dismiss on Friday, October 25, 2024 (doc. 104).

28. The Motion to Dismiss was also a surprise for containing grave errors and departures far afield of the legal standard claimed. Those problems, I will address in Plaintiffs' opposition to the motion to dismiss. Suffice to say that, because Ms. Cowan declines to speak by

telephone, on Wednesday, October 30, 2024, I e-mailed her to say, "The Motion you filed not serving as an automatic stay, what are you going to propose relative to Monday's discovery responses due date, specifically, and the CMP, generally?" Ms. Cowan responded by e-mail later that day, saying she planned to file a motion to stay "this week."

29. On Thursday, the next day, I wrote a lengthy e-mail, touching on some of the content of the motion to dismiss, including that I couldn't make sense of it as a motion in proper form. Taking that, with consideration of the prior motion to dismiss filed and withdrawn by Ms. Cowan (doc. 51; see text order 66), I asked she withdraw this second motion to dismiss and move forward with discovery. I made a proposal concerning the immediate deadline we were facing.

30. The next surprise was Ms. Cowan's e-mail response that "…there is no possible way for me to respond to your demands in 30 days." The responses being due in four days' time of that October 31, 2024 e-mail, I was startled that Ms. Cowan had not contacted me since the October 4, 2024 demand exchange via e-mail for this or any other concern with the demands.

31. The next afternoon, Friday, Ms. Cowan filed the motion for stay.

32. Ms. Cowan knew her motion did not function as an automatic stay. This language showed up in her latent motion for stay. Doc. 105-6, Memorandum, p. 7, first paragraph, "The pendency of a dispositive motion is not, in itself, an automatic ground for a stay." (citation omitted)

33. Ms. Cowan's request for a stay – disconnected from and after her filing of the motion to dismiss – was only a *notice* of motion (doc. 105). This additional motion also had no inherent stay.

34. I spent the weekend trying to figure out a sensible solution to the mess created by the two motions essentially filed the last business day before the first Rule 33/34 document deadline. The result was my letter motion of November 4, 2024 (doc. 106), with proposed calendaring of Ms. Cowan's two motions with an immediate stay on her approval that Monday morning. This did become text orders 107 and 108.

35. How Ms. Cowan approached these two motions vis-à-vis discovery is more than just bad form. It amounts to bad faith when you consider the content misrepresentations, the lack of substantive communication going into the filings, and the months of threatening to file the motions. Ms. Cowan made not one objection to me about the demands served, but then uploaded them (doc. 105-2 and 105-3), so as to snipe. She did not make effort to coordinate her motion filing, nor did she do so as an order to show cause to reflect the impending disclosure deadlines. She filed affirmative misrepresentations to the Court about the verifiable record of the case. She did so in a manner designed to cause maximum disruption to Plaintiffs' disclosure momentum. Plus, all of this was done after she had already filed her first motion to dismiss (doc. 51, 02/28/2023) – a motion to dismiss she spontaneously and without explanation withdrew months later (text order, 12/15/2023).

36. The State should not be rewarded with the grant of a comprehensive stay of discovery following such blatant litigation tactics designed to avoid disclosure.

## II. DISCOVERY CAN READILY PROGRESS USING THE DISCOVERY STIPULATION AND, AT LEAST, TIER 2 AND TIER 3 DEMANDS.

37. The Defendants' motions do not formally request relief as against itemized demands, but sidewinds into protesting against them. Ms. Cowan's objections or questions, if any, were not discussed or made known to me prior to the filing of the motions.

38. The Discovery Stipulation made upon consent of Counsel and approved by this Court establishes three tiers of discovery documents. Doc. 99, p. 6, ¶9, "Designation and Use of Confidential Material." It is a natural solution to rebalancing discovery.

39. The "Tier 3" documents are non-confidential records, which may be thought of as being in the public domain (e.g., the Governor's press conferences and releases; PDF downloads from NYS Police website) or otherwise belonging to a sort of an "*E Publius*" discussion. The "Tier 3" documents can also be thought of as those that would be available through freedom of information request. Doc. 99, p. 6, ¶9(c) and subparts.

40. The "Tier 2" documents are sensitive records, which may be thought of as not necessarily confidential on their own, but posing some risk of breach of security if readily amalgamated. For example, each Plaintiff holds multiple licenses relating to individual concealed carry permits through to the highest federal license clearance of the ATF SOT-2, in addition to their county-issued "state" business licenses. It would take a bad actor some time to track all of these licenses down to defraud any one dealer. Compiling them in one place is best handled with extra care, including redaction of each license number, with the originals available for Counsel to inspect, including at deposition. Doc. 99, p. 6, ¶9(b).

41. The practical solution is to deny Defendants' request for a blanket stay in favor of resuming discovery as to Tiers 2 and 3 documents.

42. Allowing withholding of the "Tier 1" documents simply makes sense, in case there is a dismissal of a claim relating to the new compliance mandate(s). Doc. 99, p. 6, ¶9(a), with reference to definition of "Confidential Material" at ¶6 with all subparts. "Confidential Material" is sufficiently sensitive as to warrant Attorney General office restrictions within the Discovery Stipulation to limit accessibility to these documents. The documents may contain information that could be used against one or more Plaintiffs concerning the state compliance mandates, which carry class A misdemeanor punishment, in addition to the legal cascade that would then terminate all individual and business licenses.

43. We have no objection, and will in any event plan, to add document identification to our index as we BATES number the documents. We would simply concur that service of Tier 1 documents does not make sense pending the motion to dismiss – in balance for which we believe what we propose then has everyone ready to move forward efficiently when Plaintiffs defeat that motion.

### III. DISCOVERY DEMANDS ARE DESIGNED TO SPEAK TO STATE RECORD CUSTODIANS

44. A moment is warranted to defend against the unjust allegation that our demands are blithely onerous. The demands were carefully constructed in tight configuration to claims made and to facilitate timely and thorough retrieval of records.

45. The Plaintiffs' first discovery demands under Fed. R. Civ. P. 34 correspond, directly, to allegations in the Complaint. Docs. 1, 105-2, 105-3. I used the Complaint, correlated with the Answer (doc. 79), to write the demands. Beginning with demand #19, I made the effort

to signal the paragraph of the Complaint to which the demand relates. Beginning with demand #20, I included the corresponding admissions-made paragraphs of the Answer. Also, beginning with demand #8, I included Plaintiffs' Bates-numbered documents.

46. Here is an example of a demand from doc. 105-2 that includes all three points of reference:

> 20. Records of communication and documents with persons and/or entities referenced by Gov. Hochul at the podium on June 23, 2022 at her press conference as "a team of experts, legal experts from all over this county and organizations like Everytown, true leaders." [For example, 1:22-cv-1134, doc. 1, ¶91 and n.54; statement as made admitted in doc. 79, Answer ¶91; also, PL BATES: HOCHUL – 000655 through 000658.]

47. The discovery demands are relevant, specific, broken into clear and identifiable pieces, and go beyond that which is required or typically done. My point in so doing was to facilitate state records custodians to identify, preserve, and transmit documents to Counsel for the Defendants for her analysis and transmission to me.

48. I also wrote each demand as a separately numbered item to assist records custodians to focus on any distinctions from one demand to the next where the topics or subject matters were finely distinguished. I also used this structure because the defendant Governor's manner of speaking in public includes run-ons, embedded remarks, incomplete sentences, and so forth. To create demands that could be researched by state records custodians, I separated into pleading-like, single requests, using visual cues to assist the state records custodian.

49. For example, here are demands #21 and #22 from doc. 105-2, used here to illustrate how much space on the physical page it takes to accomplish the level of clarity that was my objective. The two attorneys work for Everytown (see demand #20, above) and each was referenced by the Governor in her public media conference June 23, 2022.

> "21. Records of communication and documents received and/or exchanged between Gov. Hochul and the Governor's Office personnel with <u>Samuel Levy</u>, Attorney, including, but not limited to drafts and other communications on the topics contained within such challenged laws, schedules of meetings, lobbying disclosures, and notes from such contacts. [For example, 1:22-cv-1134, doc. 1, Complaint, ¶91 and n.54; PL BATES: HOCHUL – 000730.]"
>
> "22. Records of communication and documents received and/or exchanged between Gov. Hochul and the Governor's Office personnel with <u>Dave Pucino</u>, Attorney, including, but not limited to drafts and other communications on the topics contained within such challenged laws, schedules of meetings, lobbying disclosures, and notes from such contacts. [For example, 1:22-cv-1134, doc. 1, Complaint, ¶91 and n.54; PL BATES: HOCHUL – 000730.]"

50. This demand structure allows any remarks from Counsel to the Defendants be made in an organized manner, as well. And, if there is an objection that cannot be resolved, it becomes an individual item request for judicial intervention, as opposed to uploading masses of pages. I would like to try to avoid a repeat of Defendants' choice on this motion to fully upload documents 105-2 and 105-3 even though there is no pending request for content review.

### IV. DISCOVERY WILL RESULT IN A SUPERIOR ADJUDICATION OF THE PENDING AND UPCOMING MOTIONS BY DEVELOPING THE ARGUMENTS.

51. For better or worse, Defendants' motion to dismiss contains significant errors. The responses to those errors are in discovery documents already served and in documents that were to be served November 4, 2024. It simply makes sense that the Court and Counsel will have the consistency of BATES numbering, which then nicely coincides with moving discovery forward.

52. Plaintiffs are more than 800 pages of BATES-numbered documents into discovery. I am using specific headers, organized by document source, and Discovery Stipulation Tier number.

53. Once Plaintiffs are through the responses to the pending Defendants' Demands, plus our additional disclosures, we will be in good order with respect to putting the State on notice of the types, sources, and specificities of Plaintiffs' claims.

54. After thirty years of litigation, and in response to Ms. Cowan's seeming exasperation that I would suggest there will be additional rounds of document demands, upon examination of documents exchanged, both sides will end up with additional document demands. That's just part-and-parcel of litigation. It's a narrowing of questions. As to demands at deposition, both sides will have requests to examine originals, such as, in this case, unredacted copies of licenses.

55. This is a big case. It involves multiple Plaintiffs in a highly-regulated federal industry and new compliance mandates from the State, but the federal side is easy enough to teach and to comprehend. The state side is likely to involve as much confirmation that documents *don't* exist, as anything else. See, e.g., doc. 105-3, #68, where I expressly included "[*N.B.:* This request is made with the belief that no such notifications exist. If such notifications exist, please provide notification letters, e-mails, texts, or other forms of notification, including proof of notification of Plaintiffs.]

### V. PLAINTIFFS' APPELLATE RECORD ON THE MOTION FOR TRO/PI IS DISTINGUISHABLE FROM THE PENDING MOTION TO DISMISS.

56. Beginning November 8, 2022 (doc. 13), Plaintiffs pursued an emergency motion for TRO/PI through to a terminal point of denial of the petition for writ of certiorari at SCOTUS on June 17, 2024. Case 23-995. Plaintiffs submitted a 9,000-word Petition for Writ of Certiorari, extensively analyzing the Second Circuit decision. Much of those arguments will

flow forward into Plaintiffs' opposition to the motion to dismiss. Cert was denied by SCOTUS without remark. *En toto,* Plaintiffs lost a motion for *pendente lite* relief. And that? Is all.

57. Defense Counsel acknowledges in her submission that this Court made "…[a] decision to deny plaintiffs' motion for a preliminary injunction." Doc. 105-6, p. 8, second paragraph.

58. Neither the district nor the appellate court adjudicated Plaintiffs' claims to be "insufficient as a matter of law" on other than a request for preliminary injunctive relief under the standard presented in *Winter v. Nat'l Res. Def. Council,* 555 U.S. 7 (2008). Any words beyond the core ruling are *obiter dicta* and do not prevent Plaintiffs from advancing their case.

59. Similarly, no court has "confirmed that several of Plaintiffs' claims are insufficient." Doc. 105-6, p. 5, third paragraph, no citation within either the district or appellate court decision on the TRO/PI.

60. Nor were "many of Plaintiffs' claims have already been rejected by the Second Circuit." Doc. 105-6, p. 6, first paragraph, no citation to the appellate decision.

61. The Second Circuit Court of Appeals commented a few different ways in their decision that a merits decision on the Plaintiffs' novel "unconstitutional regulatory overburden" claim, in particular, they would prefer to do in a dispositive format, because a standard will have to be established to evaluate the eventual evidence at trial. The Second Circuit agreed that we have a new claim that will have to be heard to be thoroughly evaluated and established as a matter of new law. This quote, in particular, expresses the interest of the appellate court in this case:

> "We have no present occasion to set out specific guidance as to how a trial court must assess evidence that a commercial regulation is stifling the individual right of access to firearms (assuming a plaintiff one day produces it). *But whatever the standard is*, <u>a State cannot impose a regulation on commercial firearms dealers as a class that has the effect of prohibiting law-abiding responsible citizens from possessing common-use weapons.</u>" *Gazzola v. Hochul,* 88 F.4th 186, 196, n.6 (2d Cir. 2023), *cert denied* June 17, 2024 (emphasis added).

62. Defendants made no cross-motion during the seventeen months and eleven decisions that constituted the litigation on Plaintiffs' motion for TRO/PI. In all that time and in all those opportunities, there was no affidavit by or in support of Defendants. There was not a single piece of admissible evidence submitted.

63. *Gazzola v. Hochul* is the first case of its kind since the federal license for FFLs was created through an act of Congress in 1968.

64. We have been clear from the Complaint, straight through every filing, that this case represents the natural progression of *Heller, McDonald,* and *NYSRPA v. Bruen.*

65. No court – not this Court, not the Second Circuit Court of Appeals, nor the nation's high court – found precedent that contradicted our claims.

66. And, among that which has happened since that Second Circuit decision on the motion for temporary relief: the State finally served an Answer (doc. 79) and it admitted every allegation of what the Governor said as claimed, excepting one sentence in which there was a one-word typo. Plaintiffs will not exclusively rely upon a presumption of validity of allegations. Plaintiffs will benefit in their case against Governor Hochul of the weight of the admission of her statements. Document demands concerning those statements and more are pending, as illustrated above.

67. The closest case to one of Plaintiffs' claims is the single-issue case of *Rhodes v. Bonta,* which includes co-plaintiff FFLs successfully defeating the California ammunition background check system, in one pre-*Bruen* trial and, again, after appellate remand for a second trial consistent with *Bruen*. *Rhode v. Bonta*, Case 3:18-cv-802, ECF-105 at 3 (S.D. Cal. Jan. 30, 2024), stayed pending appeal (Case 24-542, dkt. 8.1 (Feb. 5, 2024)) ("Rhode II"). Plaintiffs prevailed in both trials. Simply put, the trial court found "The Attorney General has not identified a single historical law that required a citizen to pass a background check in order to purchase ammunition. Citizens were free in every state to buy ammunition at any time and without qualification." *Id.,* at 19. Plaintiffs have the same arguments, made since the first responsive document from Ms. Cowan, that the State has failed to produce a single historic analogue to satisfy their burden under *Bruen*. The four historic statutes filed by Ms. Cowan were docs. 29-1 through 29-4. Now that *Bruen* is resulting in rulings like that of *Rhode v. Bonta* and, in the Western District of New York, the very recent decision of permanent injunction in *Christian v. James,* Plaintiffs are *more* (not less) likely to prevail upon their requested relief. *Christian v. James,* case 1:22-cv-695, doc. 98, Decision and Order, Sinatra, J., October 10, 2024 ("The State fails to show any relevant tradition." P. 35.)

68. It is true that we carry the burden of proof, but the State has never taken us on concerning our interpretation of the details of NY Gen Bus §875 that is at the heart of this case. The Defendants flounder with implementation of it to this very day.

69. The NY Pen §400.02(2) says:

> "No later than thirty days after the superintendent of the state police certifies that the statewide license and record database established pursuant to this section and that the statewide license and record database established for ammunition sales are operational for the purposes of this section, a dealer in firearms licensed pursuant to

section 400.00 of this article…shall not transfer **any** ammunition **to any person** who is not a dealer in firearms…or a seller of ammunition…unless [background check detailed at (a), (b), and (c) is successful]."

70. Today, when Plaintiffs signed on to the 2023 New York State Police created background check system, they were greeted with the following <u>new</u> computer screen message:

    "You can now update Ammo Details:

    - When Ammo Check is set to 'Proceed' or 'Proceed on Appeal' status, the Dealership will now be able to use 'Update' action for the 'Ammunition Information' section on an application.

    - This update action will allow a dealership to change any information in the Ammunition Information section, including changing the 'Number of Ammunition' field.

    - This update feature is to be allowed for up to 30 days from the date the status was set to Proceed/Proceed on Appeal.

    - Each transaction can only be updated once, after an initial update the update function will no longer appear as an option."

    (Attached hereto.)

71. Someone, somewhere inside the NYS Police made up – out of thin air – and changed the statewide ammunition background check system operations – to allow dealers to break the law by changing a background check from a prior transaction to piggy-back a second ammunition purchase within a thirty-day period, at least once. This change circumvents statutory requirements. Without question.

72. There has been no change in the law at NY Pen §400.02(2) since it was codified in 2022.

73. There has been no NYSP-issued regulation issued concerning it. And, even if there was, it wouldn't be sufficient authority to supersede the statute.

74. These are the kinds of problems Plaintiffs are continuing to try to grapple with daily in furtherance of individual and customer derivative rights under the Second and Fourteenth Amendments. Plaintiffs deserve answers to the documents demanded, particularly from the NYS Police, to make determinations – two years later – on how to approach transactions for which they can face criminal penalty.

75. For example, we still cannot find anywhere on the NYS Police website or the Internet any evidence to support the "certification" of the system operations ever having been made prior to the September 13, 2023 ammunition background check going live.

76. And that's why record exchange needs to continue. We asked for that certification that is supposed to underly the entire system launch. Doc. 105-4, #17.

77. This is just one example of what Plaintiffs are trying to navigate while pursuing their claims.

78. Ms. Cowan tossed the two motions into PACER, separately, to trigger duplicitous coverage of the formal motion to dismiss within a response to this motion for a stay. The requests should have been filed as one motion, in order to show cause format, requesting a stay pending the return on the motion. Such a format would have maximized efficiency for bench and bar, alike.

79. The State did not satisfy its burden for a blanket stay by affirmatively misrepresenting the actual record of discovery activity since June 17, 2024, the litigation record of Plaintiffs' motion for TRO/PI, and the quality of Plaintiffs' pending discovery demands. The solution to rebalance competing interests is to use the Discovery Stipulation tiered document system to move this case forward to a decision in favor of the Plaintiffs on the merits.

Dated: November 22, 2024
Keene Valley, New York

*Paloma A. Capanna*
Paloma A. Capanna, Attorney
Attorney for the Plaintiffs
N.D.N.Y. Bar Roll No.: 703996
106-B Professional Park Drive
Beaufort, North Carolina 28516
(252) 515-6737
(315) 584-2929 mobile
pcapanna@yahoo.com