# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

---

**Nadine Gazzola**, individually, and as co-owner,
President, and as BATFE Federal Firearms Licensee
Responsible Person for **Zero Tolerance
Manufacturing, Inc.**; *et al.,*

           Plaintiffs

   *v.*

**Kathleen Hochul**, in her Official Capacity as
Governor of the State of New York; *et al.,*

           Defendants.

---

Civ. No.: 1:22-cv-1134

Hon. Brenda K. Sannes

## ATTORNEY AFFIRMATION BY PALOMA A. CAPANNA
## ATTORNEY FOR PLAINTIFFS

1. I am Paloma A. Capanna, Attorney, and I represent the Plaintiffs in the above-captioned civil
   right case.  I make this Attorney Affirmation under penalties of perjury.  These statements
   are true to the best of my knowledge, and are based upon my personal knowledge and
   experience unless otherwise specified.

2. This affirmation is submitted in opposition to Defendants' "Motion to Dismiss" (ECF-104)
   and in support of Plaintiffs' Cross-Motion for Partial Summary Judgment and additional
   relief.

# I.   I.  RECORD OF THE CASE.

3. **Pleadings.**  The case was commenced November 1, 2022 through the filing of a Complaint for Declaratory and Injunctive Relief. ECF-1.

4. Defendants filed their Answer on March 21, 2024. ECF-79.

5. **Plaintiffs' Motion for TRO/PI** – Plaintiffs filed a Motion for Temporary Restraining Order/Preliminary Injunction on November 8, 2022. ECF-13.  Plaintiffs submitted Declarations. ECF 13-2 through 13-9.  Plaintiffs also filed thirty-three curated Exhibits.

6. The State responded with only an "Opposition Memorandum" and four historic laws. ECF 29-2 through 29-4.

7. The State did not cross-motion.

8. The State did not file any party affidavits, witness affidavits, or additional exhibits.

9. The State offered no defense of the Defendant NYSP and DCJS failure to perform their assigned responsibilities under the new laws, challenged herein.

10. The Motion for TRO/PI reached its terminal order when the U.S. Supreme Court denied cert. The governing appellate decision is thus cited as *Gazzola v. Hochul,* 88 4th 186 (2d Cir 2023), *cert denied.*

11. The Plaintiffs' Memorandum of Law in support of this submission discusses to the *Gazzola* appellate decision on the TRO/PI.  As relevant to the round, the Second Circuit found Plaintiffs to have standing to pursue derivative Second Amendment claims on behalf of their customers.  The panel left open what the *standard* will be when there is data to work.

12. **Defendants' First Motion (withdrawn).**  Defendants did file a prior motion to dismiss under Fed. R. Civ. P. 12(b)(1) that was timely as it was prior to the filing of their responsive pleading (ECF-51, filed Feb. 28, 2023).  The State spontaneously withdrew their 12(b)(1) motion ten months later (ECF-64, Dec. 13, 2023).  The Defendants chose to file their responsive pleading, rather than pursue their earlier timely motion under 12(b)(1).

13. **Discovery on the Record.**  Following joinder of issue and the terminal order in Plaintiffs' motion, Counsel for the Parties completed:

    a.  The joint "Case Management Plan (rev.)" (ECF-89, filed Jun. 26, 2024);

    b.  The joint Fed. R. Civ. P. 16 teleconference (held July 2, 2024);

    c.  The Fed. R. Civ. P. 26(a)(1) scheduling order (ECF 90, filed Jul 2, 2024); and

    d.  A voluntary, joint "Discovery Stipulation" (ECF 99, Sep 5, 2024).

14. On August 23, 2024, Counsel jointly signed off on a "Discovery Stipulation" negotiated over a course of weeks.  This 11-page document tackled the complex topic of how to exchange documents in support of Plaintiffs' claims, expressly taking into consideration, especially, (a.) the highly proprietary nature of security operations and equipment at Plaintiffs' business premises; and, (b.) the genuine fear that documents in support of claims made against NY Gen Bus §875-b through §875-h will trigger the arrest of or one or more Plaintiff(s) under NY Gen Bus §875-i, which is a class A misdemeanor for non-compliance, actual or perceived, for any/all of the new state compliance mandates.

15. **Discovery Progress (not on PACER).**  Not filed to PACER, but conducted between Counsel for the Parties, further discovery progress was made.  Between August 23, 2024 and October 4, 2024, I transmitted approximately two hundred (200) documents to Ms. Cowan at

her Syracuse office.  Each mailing went out with a cover letter, referencing the starting and
stopping BATES numbers of enclosures, and with an updated index that included cross-
referencing to documents already part of the record.  Two boxes included also jump drives,
particularly for the ATF large, monthly raw data sets of active Federally-Licensed Dealers in
Firearms (FFLs) in New York, and for government and non-governmental organization
professionally-printed (full color) PDF publications that did not print particularly well in
black-and-white due to colors and fonts.

16. My letters with documents/jumps transmitted to Ms. Cowan on September 10, 2024,
September 13, 2024, September 27, 2024, and October 4, 2024 (ECF 105-4).

17. All transmitted documents were BATES numbered.  Documents already transmitted were
numbered 000001-000833.

18. The first written document demands, in accordance with the CMP, were served by each
Counsel upon the other on October 4, 2024. *See,* ECF 105-3, ECF 105-2, "First Demand for
Records Pursuant to Fed. R. Civ. P. 34: NY Governor Hochul" and "First Demand for
Records Pursuant to Fed. R. Civ. P. 34: New York State Police".

19. Defendants served a second Motion to Dismiss (ECF-104) and, a few days later, a Motion for
Stay (ECF-106).  The State was granted a blanket stay of discovery, pending the ruling on
this motion. ECF-111.

20. The "Discovery Stipulation" and its tiered disclosure is mentioned several times in Plaintiffs'
affidavits in response to the motion.  It contains at #6, a 2-page definition of "Confidential
Material, and item #6a states "…including, as expressed herein, compliance with government
mandates." ECF-99, p. 4-5.  At #9, the highest level of confidentiality is assigned and limits

access to such documents as "exclusively for County of Record due to the highly-proprietary or sensitive nature of the documents, which could, e.g., add risk to public safety if such document(s) becomes available outside the litigation, such as those documents that could enhance the ability of a third party to commit a crime(s) against a Plaintiff(s) or a member(s) of law enforcement in the performance of their duties." ECF-99, p. 6. The thoughtfulness of the document included third-party non-disclosure agreement form for each office. ECF-99, p. 10-11.

21. **The Timing of Defendants' Motion.** Defendants' current motion interrupted a productive discovery process a business day or two away from the first Plaintiff transmission of "Tier 1" and "Tier 2" documents to the State. The motion forced Plaintiffs, instead, to submit this response through a public PACER filing. This case was designed going into the Complaint as a trial case due to the complexity of the legal issues and the scope of data; the expertise of the Plaintiffs and the probability of expert witness testimony; the volume of business records to establish groundwork and context; and the novel theory of law being advanced, specifically, "unconstitutional regulatory overburden," as a distinct Second Amendment claim brought by licensed dealers in firearms.

22. **Plaintiffs' Cross-**Motion. The Plaintiffs' cross-motion is supported by a methodical L.R. 56.1 Statement of Material Fact, attached.

23. Consistently throughout the seventeen months of pursuit of the TRO/PI, Plaintiffs documented the NYSP Superintendent and the DCJS Commissioner were not performing their regulatory responsibilities. The Plaintiffs' argument was not a sleeper, plead in a complaint and lying dormant.

24. Here is a brief selection of such arguments.  The list is not exhaustive.

    a. **ECF 33-1** (filed Nov 25, 2022) – the six-page chart detailing Defendant regulatory responsibilities (bill and statutory references included) and Plaintiff compliance obligations.  The chart was introduced in district court and was discussed at appellate courts.  It remains an invaluable tool to identification of Defendant statutory and regulatory responsibilities under the new laws.

    b. Second Circuit, **case 22-3068**, Appellants' Motion (TRO), **doc. 12** (filed 12/06/2022), p. 25, quoting NY S.4970-A, §5, including laws were delayed 90-days to five months, not issued, cite to ECF 33-1, characterizing situation as Defendants having "abandoned the laws upon passage," in spite of Plaintiffs' exposure to criminal charges, loss of licenses and businesses, and individual Second Amendment rights; and, **doc. 39**, Appellants' Reply (TRO) (filed 12/22/2022), p. 12, again quoting NY S.4970-A, §5, highlighting persistent failure to publish the standardized curriculum, testing, and certificate (p. 13) and characterizing the expiration of legislatively-conferred authority as laws now "gutted by operation of law" (p. 21).

    c. *Gazzola v. Hochul,* U.S. Sup. Ct. App. **22A591**, Application for writ of injunction (filed Dec 29 2022), p. 20 (legislatively-conferred regulatory authority expired on effective date).

    d. *Gazzola v. Hochul,* U.S. Sup. Ct. 22A591, Emergency Application, p. 19, "Respondent agencies have failed to perform 32 of the 34 administrative responsibilities under the new laws.  That's a 94% <u>failure</u> rate." Reference made to ECF 33-1. (emphasis in original)

e. *Gazzola v. Hochul,* U.S. Sup. Ct. **22-622**, Petition for Writ of Certiorari Before Judgment (filed January 4, 2023),

    i. p. 4, "The strangest impediment to analysis and attempted compliance is Respondent agencies failing (now 6-months post-enactment) to produce 32 of 34 regulations and other publications delegates by the new laws to him." Referencing to Doc 33-1;"

    ii. p. 5, failure of the NYSP to issue the required [concealed carry course] teaching materials; and,

    iii. p. 6, failure of the NYSP to issue the SAR license format, referencing 33-1.

f. *Gazzola v. Hochul,* U.S. Sup. Ct. **22-622** (filed 04/03/2023), Reply Brief in support of Petition for Writ of Certiorari Before Judgment, that Respondent agencies refuse to perform their own statutory obligations (referencing again 33-1) and that the authority to do so expired December 5, 2022.

g. *Gazzola v. Hochul,* 2d Cir., **22-3068**, Brief (filed Jan. 31, 2023), p. 68, opposing persistent failure of Appellees since September 1, 2022 to publish the standardized curriculum, written testing, and certificate for concealed carry training.

h. *Gazzola v. Hochul,* 2d Cir., 22-3068, Reply Brief (filed Mar. 10, 2023), p. 41, failure of NYSP and DCJS to meet their responsibilities.

i. *Gazzola v. Hochul,* U.S. Sup. Ct., **23-995**, Petition for Writ of Certiorari (filed Mar. 07, 2024), Petition for Writ of Certiorari, that respondent agencies have failed to perform 32 of 34 administrative responsibilities under the new laws, representing a 94% failure rate.

    j.   *Gazzola v. Hochul,* U.S. Sup. Ct., 23-995, Reply to Brief in Opposition (filed May 24, 2024), Petition for Writ of Certiorari.

## II.  THE COURT IS LIMITED IN WHAT NOTICE IT CAN TAKE FROM THE NY DIVISION OF CORPORATION "ACTIVE" LISTINGS

25. The Attorney Declaration submitted by Ms. Cowan (ECF 104-1) seeks judicial notice of New York Department of State, Division of Corporations website pages for Zero Tolerance Manufacturing, Inc. (Nadine and Seth Gazzola), Ingerick's LLC (Jim Ingerick), Upstate Guns and Ammo, LLC (Craig Serafini), and East Side Traders, LLC (Nicholas Affronti).[1],[2] ECF 104-1, ¶5a-¶5e with n.1.

26. As the owner of more than one business in New York and as an attorney in the scope of my practice, I am familiar with the website to which she refers.

27. The NYS Division of Corporation website listing reflects that a corporate owner or officer of a certain type of business filed a form and paid a $9 fee.

28. The NYS Division of Corporation website listing bears no relationship to the financial health of a business or even whether a business is open to the public.  It is not probative of when a business was founded, if the original business was a sole proprietorship that eventually became an LLC, such as in the case of Ingerick's, LLC, listed as "date of initial DOS filing" as 01/29/2002.  And a late remittance of the biennial fee is not indicative a required filer is no longer in business, such as in the case of Ingerick's LLC, showing "next statement due date:

---

[1] N.B.: Ms. Cowan makes no reference to Performance Paintball, Inc., d/b/a "IKKIN Arms" (Christopher Martello), which is a corporation searchable on the same website.

[2] Empire State Arms Collectors Association, Inc. was subsequently discontinued from this case on stipulation of the parties, and so-ordered. ECF-116.

01/31/2016."  Similarly, if Mr. Ingerick pays the overdue fee, it would not be indicative that he had been out of business and was now back in business.

29. The NYS Division of Corporations searchable database, from which the pages submitted by the State originate, reflects the twelve types of businesses required to file a "Biennial Statement" with a $9 fee, as explained on https://dos.ny.gov/existing-corporations-and-businesses (accessed Oct. 22, 2024).

30. Instructions on that page under "File Your Biennial Statement," specifically refers to "domestic/foreign business corporations and domestic and foreign limited liability companies." *Id.*

31. Sole proprietorships, with or without a "doing business as," are not required to file a Biennial Statement with payment of fee to the NYS Division of Corporations, including Plaintiffs Mike Mastrogiovanni and John A. Hanusik.

32. Defendants' Demand under Fed. R. Civ. P. 34 asked each Plaintiff whether their businesses are currently operating and considered to be "active" with the NYS Division of Corporations. The response to this demand was due November 4, 2024.  In response to the demand, as part of an attorney response to blanket the Plaintiff responses, I prepared a complete set of all pages[3] of each corporate entry from the state agency website.

33. The financial health of the Plaintiffs' businesses will be a triable matter of fact.  Plaintiffs' affidavits submitted herewith provide specific examples of bookkeeping, business income tax entries, customer activity and inactivity, changes to inventory offerings to try to stay in

---

[3] *N.B.:*  Attorney Declaration (ECF 104-1) at "Exhibit A" through "Exhibit E" is only the first of several pages of website entry *per* Plaintiff corporation.

business, specific product offerings that crashed in sales that are related to direct changes in statutory treatment and failures in regulatory delivery by NYSP and DCJS, particularly the semi-automatic rifle and ammunition items, and more. These will require admission of evidence and interpretation of fact and law.

34. For example, two Plaintiffs define single year losses at between $90,000 and $100,000 in lost sales. Affronti, Decl., ¶67; Gazzola, N., Dec., ¶40. One witness quantified ammunition sale losses since September 13, 2023 (when the NYSP background check system went live) at over Two Hundred Thousand Dollars ($200,000). Liuni, J., Decl., ¶59. Plaintiffs Nadine and Seth Gazzola quantified their lost revenue of over $35,000 because of their inability to teach firearms courses. Gazzola, N., Decl., ¶51.

35. A decision to dismiss this case should not be made on the basis of the filing or non-requirement to file a "Biennial Statement" and pay a $9.00 fee.

### III. ATF-PUBLISHED DATABASE NUMBERS SUGGEST THE NUMBER OF FFL-01/02 IN NEW YORK HAS SIGNIFICANTLY DECLINED SINCE MAY 2022, PRIOR TO THE DATE THE NEW LAWS COMPLAINED OF WENT INTO EFFECT.

36. I prepared and mailed to Ms. Cowan Plaintiff's disclosure of ATF large-scale data sets of active licensees, sorted by state to New York, published on a monthly basis in Microsoft Excel format. I prepared a single printed page as a placeholder for a clipping of the partial columns of the first rows of each dataset, using the initial so many entries copied and pasted into Microsoft Word. I download the datasets into my computer, as a matter of routine. I then created jump drives to provide the raw datasets to Ms. Cowan. I provided the months May 2022 through August 2024. BATES: U.S. – BATFE – 000452-479, noting that the July

2024 data is not available on their website.  It remains unavailable as of this date.  I have checked several times in between.

37. Based upon the cover letters for the four boxes of discovery I sent to Ms. Cowan, I believe this information was sent to her on or about September 13, 2024.

38. Attached hereto is a simple chart I created to track the raw data of the number of New York based FFL-01/02s since May 2022.  I did not previously send this chart to Ms. Cowan.

39. One reason I sent the ATF monthly data sets to Ms. Cowan is because I anticipate introducing a considerable number of ATF and FBI documents into the record and Plaintiffs may hire an expert witness on point.

40. I do public policy work, including government publication collection and analysis.  The ATF licensee file is an interesting file to watch.

41. To my look at the numbers, in May 2022 (month prior to the new laws) there were 1,788 FFL Type-01 and 9 FFL Type-02 with valid licenses in New York.  May 2022 was the month prior to the first of the ten-bill gun package initiated by Defendant Governor Hochul.

42. From May 2022 to June 2024, there appears to be a steady fall-off of active Type-01/02 licenses at a rate of Thirteen Percent (13%).

43. There is no July 2024 data available on the website.

44. If you continue through the January 2025 file, the steady fall-off continues until the figures appear to be depressed by 17%.

45. There is an abnormality in the December 2024 data, appearing as an abrupt jump in licenses.  Because I am sufficiently familiar with these and other ATF licensing files, I can look at the

raw data and have some idea in which might be going on.  However, I would have to contact

someone at ATF to both ask for the July 2024 data file and what is unusual about the

December 2024 data.

46. What's more interesting, however, is to start to do some actual analysis with the raw

numbers.  If you use the May 2022 data file and call that the "original" data, it is possible to

go through, month-by-month to isolate the "original" data and eliminate the new licensees.

The first few months for which I started this analysis, it shows a drop-off rate of over

Twenty-Five Percent (25%), or, one in four.

47. I would suggest that if the Court wants to think about the data sets through to present as

demonstrating a possible fall-off rate of 17% <u>net</u> it would not be a bad work-against as a

minimum for further analysis.  I would ask that a possible 25% or greater actual fall-off rate

be considered.

48. Some of those FFLs that State's Counsel suggests are insignificant are men and women who

we expect to call as witnesses in our case so that they can provide testimony and documents

on why they made the decision to close with respect to the 2022 laws complained of herein,

the impact of those laws on their customers, the impact of those laws on changes they were

unable to make to their business operations, and so forth.

49. The Second Circuit decision in *Gazzola* does not set the <u>standard</u> for evaluation.  The

appellate judges essentially play ideas in a manner that neither this court nor the appellate

division will ultimately use.  No civil right is measured by counting up from zero or down

from 100%.  The Second Circuit expressly invites us to come back up to see them, when and

if our claims progress to the point that there is evidence in the record – and *then* we'll have the question about the standard.

50. What I would suggest is that the Complaint, by virtue of it using specific estimates arrived at by our team of Plaintiffs, is the first test. How well did they do? This second round of affidavits contains some numbers. The discovery we've prepared contains the deeper analysis, which we anticipate under the "Discovery Stipulation."

51. In case this Court ends up considering the 17%-25% range, I will put one more number in front of you, which is that for the five-year period prior to May 2022, the number of FFL-01/02s held steady, +/- 40 up or down. That's the number you need for the fall-off to become eye-catching.

52. Beyond that, where the factual analysis will also become interesting is the demographic of the fall-off. What was the average age of the licensee? What was the type of business premises (e.g., house or commercial retail)?

### IV. THE NYSP INSTRUCTIONS TO DEALERS AND QUESTIONS ON SYSTEM USE CAUSE THE NICS NUMBERS TO BE JUNK DATA AS OF SEPTEMBER 2023.

53. The NYSP have ruined any value the FBI NICS data may have held. It should be considered junk data as of September 2023 and not be used for analysis.

54. The FBI NICS volume data is not admissible for purposes of talking about or analyzing firearms purchasing.

55. First, the FBI cautions – non-stop – that NICS data does not equate to firearms purchase data. It is background checks initiated. I attend and have lectured at national firearms compliance

seminars, including at programs involving the ATF and the FBI.  Most recently, last year, I

attended a federal firearms compliance seminar and had the opportunity to meet and speak

with the gentleman who is in charge of the FBI NICS Indicies data files.

56. Second, our record already includes one witness who submitted a Declaration to the appellate

division that he had a conversation with an employee of the NY NICS office who discussed

with him that they were having technical problems porting ammunition background check

over into the federal NICS background check system. Falkner, Decl., ¶6 to U.S. Supreme

Court, September 15, 2023.  That would be improper use of the NICS system.

57. Third, in the past several weeks, NY-based dealers, including our Plaintiffs and witnesses,

relate that the NYSP help line is instructing they repeat background checks for the same

customer with the same firearm after a 30-day "delay" or "hold."  That would be improper

use of the NICS system.

58. Fourth, since the NYSP system went live, including our Plaintiffs and witnesses, relate that

the NYSP help line was telling dealers to keep rerunning the same background on a person +

the same firearm *until it cleared*.  Dealers were rerunning checks month after month.

59. Federal NICS is opening for FFL employee background checks to guard against disqualified

persons from getting a job in a firearms store.  This program was announced last September,

and is or has recently launched.  I am not aware (haven't had the opportunity to look into)

how those checks against data will be tabulated (or not).

60. It would be important to speak with the appropriate person(s) at NICS to debrief on the New

York situation, learn what they're aware of, and understand whatever caveats may now apply

to looking at New York data post September 13, 2023 in comparison to pre-September 13, 2023.

61. I would only add about this point and the preceding point that this is the purpose of discovery. Counsel exchanging information and discussing what it could mean in all ways admissible and inadmissible. I respectfully submit Plaintiffs are ready to have that conversation. I would anticipate, at least basis my experience in private practice, that much of the government exhibits will be able to be worked through with Counsel to where exhibits get stipulated and for specific purposes.

### V.    ASKING THE COURT TO TAKE JUDICIAL NOTICE OF SUBPOENAS ISSUED BY NY OAG AGAINST THREE STATE-LICENSED DEALERS IN FIREARMS IN NEW RELATED CASES PENDING IN STATE COURT.

62. The Court is asked to take judicial notice of three exhibits from recently-filed cases in NYS court involving the Defendant NY Attorney General and three state-licensed/FFL dealers in firearms.

63. I am Counsel of Record for the three petitioners

64. Petitioners request the state Supreme Court judges in Franklin and in St. Lawrence Counties quash extra-judicial subpoenas issued to them by the NY Attorney General. The cases were commenced within the past sixty days. The two cases are:

   a. *Blue Line Sports LLC and Woods & Waters v. Letitia James, Attorney General of the State of New York,* Franklin County, Index No. E2024-789; and,

   b. *Bowman's Gun Shop v. Letitia James, Attorney General of the State of New York,* St. Lawrence County, Index No. EFCV-24-167057.

65. Request is made that judicial notice be taken of these two cases, specifically, the record exhibits of the extra-judicial subpoenas served by the NY Office of the Attorney General against the petitioner state-licensed Dealers in Firearms, demanding records pertaining to NY Gen Bus §875-b(1) (security plan) and §875-b(2) (security alarm and video recording system requirements).

66. Attached hereto are three extra-judicial subpoenas from the NY OAG that are part of the public-facing record of these cases.

67. Both cases are currently awaiting decisions from the NY Supreme Court Justices so assigned. The immediate question is the State's motions to dismiss both special proceedings. The Petitioners' challenge the legal authority of the NY OAG to issue extra-judicial subpoenas pertaining to NY Gen Bus §875 when exclusive authority vests with the NYSP.

68. These subpoenas are offered as evidence that the NY Attorney General is taking concrete enforcement efforts against state-licensed dealers in firearms.

Dated:  January 16, 2025
         Keene Valley, New York


                              *Paloma A. Capanna*
                              Paloma A. Capanna, Attorney
                              Attorney for the Plaintiffs

**TABLE ###.  DECLINING NUMBERS OF FEDERALLY-
LICENSED DEALERS AND PAWNBROKERS IN NEW
YORK MAY 2022 – JANUARY 2025.**

May 31, 2022        1,788 FFL-01 + 9 FFL-02 = 1,797 dealers in New York

June 2022        1,792 FFL-01 + 9 FFL-02 = 1,801 dealers in New York

July 2022        1,786 FFL-01 + 9 FFL-02 = 1,795 dealers in New York

August 2022        1,782 FFL-01 + 9 FFL-02 = **1,791 dealers in New York**

September 2022        1,776 FFL-01 + 9 FFL-02 = 1,785 dealers in New York

October 2022        1,769 FFL-01 + 9 FFL-02 = 1,778 dealers in New York

November 2022        1,770 FFL-01 + 9 FFL-02 = 1,779 dealers in New York

December 31, 2022        1,764 FFL-01 + 9 FFL-02 = 1,773 dealers in New York

January 31, 2023        1,752 FFL-01 + 9 FFL-02 = 1,761 dealers in New York

February 2023        1,753 FFL-01 + 9 FFL-02 = 1,762 dealers in New York

March 2023        1,747 FFL-01 + 9 FFL-02 = 1,756 dealers in New York

April 2023        1,744 FFL-01 + 9 FFL-02 = 1,753 dealers in New York

May 2023        1,734 FFL-01 + 9 FFL-02 = 1,743 dealers in New York

June 2023        1,727 FFL-01 + 9 FFL-02 = 1,736 dealers in New York

July 2023        1,715 FFL-01 + 9 FFL-02 = 1,724 dealers in New York

August 2023        1,712 FFL-01 + 9 FFL-02 = 1,721 dealers in New York

September 2023        1,705 FFL-01 + 9 FFL-02 = 1,714 dealers in New York

October 2023        1,682 FFL-01 + 9 FFL-02 = 1,691 dealers in New York

November 2023        1,664 FFL-01 + 9 FFL-02 = 1,673 dealers in New York

December 2023        1,646 FFL-01 + 9 FFL-02 = 1,655 dealers in New York

January 31, 2024          1,636 FFL-01 + 9 FFL-02 = 1,645 dealers (down 8.5%)

February 2024            1,622 FFL-01 + 9 FFL-02 = 1,631 dealers in NY (down 8.9%)

March 2024               1,605 FFL-01 + 9 FFL-02 = 1,614 dealers in NY (down 10%)

April 2024               1,593 FFL-01 + 9 FFL-02 = 1,602 dealers in NY (down 11%)

May 2024                 1,576 FFL-01 + 9 FFL-02 = 1,585 dealers in NY (down 12%)

June 2024                1,560 FFL-01 + 8 FFL-02 = 1,568 dealers in NY (down 13%)

| July 2024 | (data not posted to ATF website a/o 09.13.2024) |
|---|---|

August 2024              1,538 FFL-01 + 8 FFL-02 = 1,546 dealers in NY

September 2024           1,514 FFL-01 + 8 FFL-02 = <span style="color:red">1,522 dealers in NY</span> (down 15%)

October 2024             1,511 FFL-01 + 7 FFL-02 = 1,518 dealers in NY

November 2024            1,511 FFL-01 + 7 FFL-02 = 1,518 dealers in NY

| December 2024 | 1,646 FFL-01  + 9 FFL-02 = 1,654 (?) |
|---|---|

January 2025             1,491 FFL-01 + 7 FFL-02 = 1,493 dealers in NY (down 17%)

***When we hit 1525 dealers = 15% loss.***



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

EXECUTIVE OFFICE

June 26, 2024

Blue Line Sports
81 Main St.
Saranac Lake, NY 12983

Dear President or Chief Executive Officer:

If you have any questions about the enclosed subpoena, please do not hesitate to reach out to me. My cell phone number is 917-572-6115.

Sincerely,
Martha Grieco



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

## SUBPOENA DUCES TECUM
## THE PEOPLE OF THE STATE OF NEW YORK

TO:

Matthew Rothamel
Blue Line Sports
81 Main St.
Saranac Lake, NY 12983

**YOU ARE HEREBY COMMANDED**, pursuant to New York Executive Law § 63(12), New York General Business Law § 349(f), and § 2302(a) of the New York Civil Practice Law and Rules, to deliver and turn over to Letitia James, the Attorney General of the State of New York, or a designated Assistant Attorney General, on ***the 17th day of July, 2024, by 5:00 p.m.***, or any agreed-upon adjourned date or time, at 28 Liberty Street, New York, New York 10005, all documents and information requested in the attached Schedule in accordance with the instructions and definitions contained therein.

**PLEASE TAKE NOTICE** that the Attorney General deems the documents and information requested by this Subpoena to be relevant and material to an investigation and inquiry undertaken in the public interest.

**PLEASE TAKE FURTHER NOTICE** that Your disobedience of this Subpoena, by failing to deliver the documents and information requested in the attached Schedule on the date, time and place stated above or on any agreed upon adjourned date or time, may subject You to penalties and other lawful punishment under § 2308 of the New York Civil Practice Law and Rules, and/or other statutes.

**WITNESS, The Honorable Letitia James,** Attorney General of the State of New York, this 26th day of June, 2024.

By: _____

Martha Grieco
Assistant Attorney General
Executive Division
28 Liberty Street
New York, New York 10005
(212) 416-8843
martha.grieco@ag.ny.gov

## SCHEDULE

### A. General Definitions and Rules of Construction

1.    "All" means each and every.

2.    "Any" means any and all.

3.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Subpoena all information or Documents that might otherwise be construed to be outside of its scope.

4.    "Communication" means any conversation, discussion, letter, email, memorandum, meeting, note or other transmittal of information or message, whether transmitted in writing, orally, electronically or by any other means, and shall include any Document that abstracts, digests, transcribes, records or reflects any of the foregoing.

5.    "Concerning" means, directly or indirectly, in whole or in part, relating to, referring to, describing, evidencing or constituting.

6.    "Custodian" means any Person or Entity that, as of the date of this Subpoena, maintained, possessed, or otherwise kept or controlled such Document.

7.    "Document" is used herein in the broadest sense of the term and means all records and other tangible media of expression of whatever nature however and wherever created, produced or stored (manually, mechanically, electronically or otherwise), including without limitation all versions whether draft or final, all annotated or nonconforming or other copies, electronic mail ("e-mail"), instant messages, Slack messages, Teams messages, text messages, iMessages or other wireless device messages, voicemail, calendars, date books, appointment books, diaries, books, papers, files, notes, confirmations, accounts statements, correspondence, memoranda, reports, records, journals, registers, analyses, code (e.g., C/C++/C#, R, SQL, Python, Java, JavaScript, Visual Basic, .NET, Swift ), algorithms, code repositories (e.g. GitHub), commit messages, audit logs, data or databases (e.g., Oracle, SQL-based, MongoDB, IMB DB2, Access, Cassandra, Redis), plans, manuals, policies, telegrams, faxes, telexes, wires, telephone logs, telephone messages, message slips, minutes, notes or records or transcriptions of conversations or Communications or meetings, tape recordings, videotapes, disks, and other electronic media, microfilm, microfiche, storage devices, press releases, contracts, agreements, notices and summaries. Any non-identical version of a Document constitutes a separate Document within this definition, including without limitation drafts or copies bearing any notation, edit, comment, marginalia, underscoring, highlighting, marking, or any other alteration of any kind resulting in any difference between two or more otherwise identical Documents. In the case of Documents bearing any notation or other marking made by highlighting ink, the term Document means the original version bearing the highlighting ink, which

1

original must be produced as opposed to any copy thereof.

8. "Entity" means without limitation any corporation, company, limited liability company or corporation, partnership, limited partnership, association, or other firm or similar body, or any unit, division, agency, department, or similar subdivision thereof.

9. "Identify" or "Identity," as applied to any Document means the provision in writing of information sufficiently particular to enable the Attorney General to request the Document's production through subpoena or otherwise, including but not limited to: (a) Document type (letter, memo, etc.); (b) Document subject matter; (c) Document date; and (d) Document author(s), addressee(s) and recipient(s). In lieu of identifying a Document, the Attorney General will accept production of the Document, together with designation of the Document's Custodian, and identification of each Person You believe to have received a copy of the Document.

10. "Identify" or "Identity," as applied to any Entity, means the provision in writing of such Entity's legal name, any d/b/a, former, or other names, any parent, subsidiary, officers, employees, or agents thereof, and any address(es) and any telephone number(s) thereof.

11. "Identify" or "Identity," as applied to any natural person, means and includes the provision in writing of the natural person's name, title(s), any aliases, place(s) of employment, telephone number(s), e-mail address(es), mailing addresses and physical address(es).

12. "Include" means include without limitation, as in "includes but is not limited to."

13. "Person" means any natural person, or any Entity.

14. "Sent" or "received" as used herein means, in addition to their usual meanings, the transmittal or reception of a Document by physical, electronic or other delivery, whether by direct or indirect means.

15. "Subpoena" means this subpoena and any schedules or attachments thereto.

16. The use of the singular form of any word used herein shall include the plural and vice versa. The use of any tense of any verb includes all other tenses of the verb.

## B. Particular Definitions

1. "Respondent," "You," "Your," or "Blue Line Sports" means Blue Line Sports and any of its predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect; and all directors, officers, partners, employees, agents, contractors, consultants, representatives, and attorneys of the foregoing, or any other Persons associated with or acting on behalf of the foregoing, or acting on behalf of any predecessors, successors, or affiliates of the foregoing.

2

2.      "Security Plan" means the requirement of a security plan under N.Y. Gen. Bus. Law § 875-B indicating that all of Your firearms, rifles and shotguns are secured, other than during business hours, in a locked fireproof safe or vault on Your business premises or in a secured and locked area on Your business premises.

3.      "Security Alarm and Video Recording System" means the requirement of N.Y. Gen. Bus. Law § 875-B that Your business premises are secured by a security alarm system that is installed and maintained by a properly licensed security alarm operator, and that Your business premises are equipped with a video recording device at each point of sale and each entrance and exit to the premises, which records from both the indoor and outdoor vantage point and maintain recordings for a period of not less than two years.

## C. Documents to be Produced

1.      Documents sufficient to show compliance with the Security Plan requirement of all licensed firearm dealers.

2.      Documents sufficient to show compliance with the Security Alarm and Video Recording System requirement of all licensed firearm dealers.

3.      Most recent NY Annual Firearm Dealer Compliance Certification.

4.      Most recent NY Dealer Certification/Compliance Checklist.

## D. Instructions

1.      <u>Preservation of Relevant Documents and Information; Spoliation.</u>   You are reminded of Your obligations under law to preserve Documents and information relevant or potentially relevant to this Subpoena from destruction or loss, and of the consequences of, and penalties available for, spoliation of evidence.  No agreement, written or otherwise, purporting to modify, limit or otherwise vary the terms of this Subpoena, shall be construed in any way to narrow, qualify, eliminate or otherwise diminish Your aforementioned preservation obligations.  Nor shall You act, in reliance upon any such agreement or otherwise, in any manner inconsistent with Your preservation obligations under law.  No agreement purporting to modify, limit or otherwise vary Your preservation obligations under law shall be construed as in any way narrowing, qualifying, eliminating or otherwise diminishing such aforementioned preservation obligations, nor shall You act in reliance upon any such agreement, unless an Assistant Attorney General confirms or acknowledges such agreement in writing, or makes such agreement a matter of record in open court.

2.      <u>Possession, Custody, and Control.</u>   The Subpoena calls for all responsive Documents or information in Your possession, custody or control.  This includes, without limitation, Documents or information possessed or held by any of Your

3

officers, directors, employees, agents, representatives, divisions, affiliates, subsidiaries or Persons from whom You could request Documents or information. If Documents or information responsive to a request in this Subpoena are in Your control, but not in Your possession or custody, You shall promptly Identify the Person with possession or custody.

3.  <u>Documents No Longer in Your Possession.</u>  If any Document requested herein was formerly in Your possession, custody or control but is no longer available, or no longer exists, You shall submit a statement in writing under oath that: (a) describes in detail the nature of such Document and its contents; (b) Identifies the Person(s) who prepared such Document and its contents; (c) Identifies all Persons who have seen or had possession of such Document; (d) specifies the date(s) on which such Document was prepared, transmitted or received; (e) specifies the date(s) on which such Document became unavailable; (f) specifies the reason why such Document is unavailable, including without limitation whether it was misplaced, lost, destroyed or transferred; and if such Document has been destroyed or transferred, the conditions of and reasons for such destruction or transfer and the Identity of the Person(s) requesting and performing such destruction or transfer; and (g) Identifies all Persons with knowledge of any portion of the contents of the Document.

4.  <u>No Documents Responsive to Subpoena Requests.</u>  If there are no Documents responsive to any particular Subpoena request, You shall so state in writing under oath in the Affidavit of Compliance attached hereto, identifying the paragraph number(s) of the Subpoena request concerned.

5.  <u>Format of Production.</u>  You shall produce Documents and information responsive to this Subpoena in the format requested by the Office of the New York State Attorney General (see Attachment I).

6.  <u>Existing Organization of Documents to be Preserved.</u>  Regardless of whether a production is in electronic or paper format, each Document shall be produced in the same form, sequence, organization or other order or layout in which it was maintained before production, including but not limited to production of any Document or other material indicating filing or other organization.  Such production shall include without limitation any file folder, file jacket, cover or similar organizational material, as well as any folder bearing any title or legend that contains no Document.  Likewise, all Documents that are physically attached to each other in Your files shall remain so attached in any production; or if such production is electronic, shall be accompanied by notation or information sufficient to indicate clearly such physical attachment.

7.  <u>Manner of Compliance – Custodians/Search Terms/Technology-Assisted Review.</u>  Prior consultation with the Office of the Attorney General is required concerning selection of custodians for document searches (whether electronic or otherwise) or for use of search term filters, predictive coding or other forms of technology-assisted review.  The Office of the Attorney General reserves the right to approve, disapprove, modify or supplement any proposed list of custodians, search terms,

4

and/or review methodology. The selection or use of custodians, search term filters, and/or technology-assisted review in no way relieves You of Your obligation to fully respond to these requests for Documents or information.

8. <u>Document Numbering.</u> All Documents responsive to this Subpoena, regardless of whether produced or withheld on ground of privilege or other legal doctrine, and regardless of whether production is in electronic or paper format, shall be numbered in the lower right corner of each page of such Document, without disrupting or altering the form, sequence, organization or other order or layout in which such Documents were maintained before production. Such number shall comprise a prefix containing the producing Person's name or an abbreviation thereof, followed by a unique, sequential, identifying document control number.

9. <u>Privilege Placeholders.</u> For each Document withheld from production on ground of privilege or other legal doctrine, regardless of whether a production is electronic or in hard copy, You shall insert one or more placeholder page(s) in the production bearing the same document control number(s) borne by the Document withheld, in the sequential place(s) originally occupied by the Document before it was removed from the production.

10. <u>Privilege.</u> If You withhold or redact any Document responsive to this Subpoena on ground of privilege or other legal doctrine, You shall submit with the Documents produced a statement in writing under oath, stating: (a) the document control number(s) of the Document withheld or redacted; (b) the type of Document; (c) the date of the Document; (d) the author(s) and recipient(s) of the Document; (e) the general subject matter of the Document; and (f) the legal ground for withholding or redacting the Document. If the legal ground for withholding or redacting the Document is attorney-client privilege, You shall indicate the name of the attorney(s) whose legal advice is sought or provided in the Document.

11. <u>Your Production Instructions to be Produced.</u> You shall produce a copy of all written or otherwise recorded instructions prepared by You concerning the steps taken to respond to this Subpoena. For any unrecorded instructions given, You shall provide a written statement under oath from the Person(s) who gave such instructions that details the specific content of the instructions and any Person(s) to whom the instructions were given.

12. <u>Cover Letter, Index, and Identifying Information.</u> Accompanying any production(s) made pursuant to this Subpoena, You shall include a cover letter that shall at a minimum provide an index containing the following: (a) a description of the type and content of each Document produced therewith; (b) the paragraph number(s) of the Subpoena request(s) to which each such Document is responsive; (c) the Identity of the Custodian(s) of each such Document; and (d) the document control number(s) of each such Document. As further set forth in Attachment 2, information must also be included in the metadata and load files of each production concerning the identity of each Document's custodian, as well as information

5

identifying the particular Document requests and/or information to which each document is responsive.

13. **Affidavit of Compliance.** A copy of the Affidavit of Compliance provided herewith shall be completed and executed by all natural persons supervising or participating in compliance with this Subpoena, and You shall submit such executed Affidavit(s) of Compliance with Your response to this Subpoena.

14. **Identification of Persons Preparing Production.** In a schedule attached to the Affidavit of Compliance provided herewith, You shall Identify the natural person(s) who prepared or assembled any productions or responses to this Subpoena. You shall further Identify the natural person(s) under whose personal supervision the preparation and assembly of productions and responses to this Subpoena occurred. You shall further Identify all other natural person(s) able competently to testify: (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be.

15. **Continuing Obligation to Produce.** This Subpoena imposes a continuing obligation to produce the Documents and information requested. Documents located or created. and information learned, acquired or created, at any time after Your response is due shall be promptly produced at the place specified in this Subpoena.

16. **No Oral Modifications.** No agreement purporting to modify, limit or otherwise vary this Subpoena shall be valid or binding, and You shall not act in reliance upon any such agreement, unless an Assistant Attorney General confirms or acknowledges such agreement in writing, or makes such agreement a matter of record in open court.

17. **Time Period.** Unless otherwise specified, the time period covered by this Subpoena shall be from **December 3, 2022** through the present.

6

## ATTACHMENT 2

### Required Fields for Metadata Load File

| FIELD NAME | FIELD DESCRIPTION | FIELD VALUE EXAMPLE[1] |
|---|---|---|
| BEGDOC | Bates number assigned to the first page of the document. | ABC0001 |
| ENDDOC | Bates number assigned to the last page of the document. | ABC0002 |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (*i.e.*, should be the same as BEGDOC of the parent document, or PARENTDOC). | ABC0001 |
| ENDATTACH | Bates number assigned to the last page of the last child document in a family (*i.e.*, should be the same as ENDDOC of the last child document). | ABC0008 |
| PARENTDOC | BEGDOC of parent document. | ABC0001 |
| CHILDDOCS | List of BEGDOCs of all child documents, delimited by ";" when field has multiple values. | ABC0002; ABC0003; ABC0004... |
| COMMENTS | Additional document comments, such as passwords for encrypted files. | |
| NATIVEFILE | Relative file path of the native file on the production media. | .\Native_File\Folder\...\BEGDOC.ext |
| TEXTFILE | Relative file path of the plain text file on the production media. | .\Text_Folder\Folder\...\BEGDOC.txt |
| SOURCE | For scanned paper records this should be a description of the physical location of the original paper record. For loose electronic files this should be the name of the file server or workstation where the files were gathered. | Company Name, Department Name, Location, Box Number... |
| CUSTODIAN | Owner of the document or file. | Firstname Lastname, Lastname, Firstname, User Name; Company Name, Department Name... |

[1] Examples represent possible values and not required format unless the field format is specified in Attachment 1.

8

| FROM | Sender of the email. | Firstname Lastname < FLastname @domain > |
|---|---|---|
| TO | All to: members or recipients, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| CC | All cc: members, delimited by ";" when field has multiple values. | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| BCC | All bcc: members, delimited by ";" when field has multiple values | Firstname Lastname < FLastname @domain >; Firstname Lastname < FLastname @domain >; ... |
| SUBJECT | Subject line of the email. | |
| DATERCVD | Date and time that an email was received. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| DATESENT | Date and time that an email was sent. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| CALBEGDATE | Date that a meeting begins. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| CALENDDATE | Date that a meeting ends. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| ATTACHMENTS | List of filenames of all attachments, delimited by ";" when field has multiple values. | AttachmentFileName.; AttachmentFileName.docx; AttachmentFileName.pdf;... |
| NUMATTACH | Number of attachments. | |
| RECORDTYPE | General type of record. | IMAGE; LOOSE E-MAIL; E-MAIL; E-DOC; IMAGE ATTACHMENT; LOOSE E-MAIL ATTACHMENT; E-MAIL ATTACHMENT; E-DOC ATTACHMENT |
| FOLDERLOC | Original folder, source, and file path of the produced document. | Drive:\Folder\...\...\ |
| FILENAME | Original filename of the produced document. | Filename.ext |
| DOCEXT | Original file extension. | html, xls, pdf |
| DOCTYPE | Name of the program that created the produced document. | Adobe Acrobat, Microsoft Word, Microsoft Excel, Corel WordPerfect... |

9

## AFFIDAVIT OF COMPLIANCE WITH SUBPOENA

State of _____ ⎫
County of _____ ⎭

I, _____, being duly sworn, state as follows:

1.    I am employed by Respondent in the position of _____
_____;

2.    Respondent's productions and responses to the Subpoena of the Attorney General of the State of New York, dated _____, 20_____ (the      "Subpoena") were prepared and assembled under my personal supervision;

3.    I made or caused to be made a diligent, complete and comprehensive search for all Documents and information requested by the Subpoena, in full accordance with the instructions and definitions set forth in the Subpoena;

4.    Respondent's productions and responses to the Subpoena are complete and correct to the best of my knowledge and belief;

5.    No Documents or information responsive to the Subpoena have been withheld from Respondent's production and response, other than responsive Documents or information withheld on the basis of a legal privilege or doctrine;

6.    All responsive Documents or information withheld on the basis of a legal privilege or doctrine have been identified on a privilege log composed and produced in accordance with the instructions in the Subpoena;

7.    The Documents contained in Respondent's productions and responses to the Subpoena are authentic, genuine and what they purport to be;

8.    Attached is a true and accurate record of all persons who prepared and assembled any productions and responses to the Subpoena, all persons under whose personal supervision the preparation and assembly of productions and responses to the Subpoena occurred, and all persons able competently to testify:  (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be; and

1

9.    Attached is a true and accurate statement of those requests under the Subpoena as to which no responsive Documents were located in the course of the aforementioned search.

_____    _____
Signature of Affiant    Date

_____
Printed Name of Affiant

\*    \*    \*

Subscribed and sworn to before me this _____ day of _____, 20___.

_____, Notary Public

My commission expires: _____

2

## ATTACHMENT 1

### Electronic Document Production Specifications

Unless otherwise specified and agreed to by the Office of the Attorney General, all responsive documents must be produced in LexisNexis® Concordance® format in accordance with the following instructions. Any questions regarding electronic document production should be directed to the Assistant Attorney General whose telephone number appears on the subpoena.

1.  <u>Concordance Production Components</u>. A Concordance production consists of the following component files, which must be produced in accordance with the specifications set forth below in Section 7.

  A.  ***Native Files.*** Native format versions of produced documents that are not redacted, named by their first Bates number.

  B.  ***Single-Page Image Files.*** Individual petrified page images of the produced documents in tagged image format ("TIF"), with page-level Bates number endorsements.

  C.  ***Extracted or OCR Text Files.*** Document-level extracted text for each produced document or document-level optical character recognition ("OCR") text where extracted text is not available.

  D.  ***Metadata Load File.*** A delimited text file that lists in columnar format the required metadata for each produced document.

  E.  ***Opticon Load File.*** A delimited text file that lists the single-page TIF files for each produced document and defines (i) the relative location of the TIF files on the production media and (ii) each document break.

2.  <u>Production Folder Structure</u>. The production must be organized according to the following standard folder structure:
  •  data\ (contains production load files)
  •  images\ (contains single-page TIF files, with subfolder organization)
      \0001, \0002, \0003…
  •  natives\ (contains native files, with subfolder organization)
      \0001, \0002, \0003…
  •  text\ (contains text files, with subfolder organization)
      \0001, \0002, \0003…

3.  <u>De-Duplication</u>. You must perform de-duplication of stand-alone documents and email families against any prior productions pursuant to this or

3

previously related subpoenas only within each custodian (not across all custodians).

4.      Paper or Scanned Documents.  Documents that exist only in paper format must be scanned to TIF files and OCR'd.  The resulting electronic files should be pursued in Concordance format pursuant to these instructions.  You must contact the Assistant Attorney General whose telephone number appears on the subpoena to discuss (i) any documents that cannot be scanned, and (ii) how information for scanned documents should be represented in the metadata load file.

5.      Structured Data.  Structured data includes but is not limited to relational databases, transactional data, and xml pages. Spreadsheets are not considered structured data. You must first speak to the Assistant Attorney General whose telephone number appears on the subpoena.

        A.      Relational Databases

                1.      Database tables should be provided in comma-separated or other machine-readable, non-proprietary format, with each table in a separate data file.  Each data file must have an accompanying data dictionary that explains the meaning of each column name and explains the values of any codes used.

                2.      Dates and numbers must be clearly and consistently formatted and, where relevant, units of measure should be explained in the data dictionary.

                3.      Records must contain clear, unique identifiers, and the data dictionary must include explanations of how the files and records relate to one another.

6.      Media and Encryption.  All document sets over 15 GB must be produced on CD, DVD, or hard-drive media.  All production media must be encrypted with a strong password, which must be delivered independently from the production media.  Document sets under 2 GB may be delivered electronically.  The OAG offers a secure cloud storage option that can be set up to receive media on a one-time basis, or the OAG will download media from the providing parties server.

7.      Use of Search Terms or Predictive Coding.  Before using software or technology (including search terms, predictive coding, de-duplication, or similar technologies) to identify or eliminate documents, data, or information potentially responsive to this Request, You must submit a written description of the method(s) proposed to conduct any part of Your search and obtain the prior consent of the NYOAG to the use of such methods.
        A.      For any process that relies on search terms to identify or eliminate documents, the Company must submit: (a) a list of proposed terms; (b) a

4

tally of all the terms that appear in the collection and the frequency of each term that includes (1) how many documents have 'hit' or have come up responsive to each term, (2) for documents that have hit on a term the associated number of so-called documents, and (3) the number of unique documents that have hit on each term (documents that are responsive to that term but not others); (c) a list of stop words and operators for the platform being used; and, (d) a glossary of industry and company terminology, acronyms, or jargon used.

B.    If you employ any process that relies upon technology assisted review, computer learning, analytics, or predictive coding to identify or eliminate documents, you must disclose the technology and process to be employed in advance and also include (a) the selection method and total size of the initial review universe; (b) the selection method employed for training documents, confirmation that subject-matter experts will be reviewing the seed set and training rounds; (c) the criteria upon which you will determine that you will stop the process (e.g. if based on stability, the recall, precision, and confidence-level (or equivalent) statistics); and, (c) a validation process that allows NYOAG representatives to review statistically-significant random or selected samples of documents categorized as non-responsive documents by the algorithm.

8.    Production File Requirements.

A.    *Native Files*
- Documents that do not contain redacted information must be produced in their native format.
- The filename of each native file must match the document's beginning Bates number (BEGDOC) in the metadata load file and retain the original file extension.
- For documents produced only in native format, and not additionally as singlepage image files, you must assign a single document-level Bates number and optionally provide an image file placeholder that states "Document produced only in native format."
- The relative paths to all native files on the production media must be listed in the NATIVEFILE field of the metadata load file.
- Native files that are password-protected must be decrypted prior to conversion and produced in decrypted form.
- You may be required to supply a software license for proprietary documents produced only in native format.

B.    *Single-Page Image Files (Petrified Page Images)*
- Where possible, all produced documents must be converted into single-page tagged image format ("TIF") files.

5

• Image documents that exist only in non-TIF formats must be converted into TIF files.
• For documents produced only in native format, you may provide a single, TIF placeholder that states "Document produced only in native format."
• Each single-page TIF file must be endorsed with a unique Bates number.
• The filename for each single-page TIF file must match the unique page-level Bates number (or document-level Bates number for documents produced only in native format).
• Required image file format: o CCITT Group 4 compression o 2-Bit black and white o 300 dpi o Either .tif or .tiff file extension.
• TIF files must be divided into subfolders containing no more than 5000 files.  Documents should not span multiple subfolders, a document with more than 5000 pages should be kept in a single folder.

C.  *Extracted or OCR Text Files*
• You must produce individual document-level text files containing the full extracted text for each produced document.
• When extracted text is not available (for instance, for image-only documents) you must provide individual document-level text files containing the document's full OCR text.
• The filename for each text file must match the document's beginning Bates number (BEGDOC) listed in the metadata load file.
• Text files must be divided into subfolders containing no more than 5000 files.

D.  *Metadata Load File*
• Required file format:
  o UTF-8
  o .dat file extension
  o Field delimiter:      (ASCII decimal character 20)
  o Text Qualifier: þ (ASCII decimal character 254).  Multiple value field delimiter: ; (ASCII decimal character 59)
• The first line of the metadata load file must list all included fields. All required fields are listed in Attachment 2.
• Fields with no values must be represented by empty columns maintaining delimiters and qualifiers.
• *Note:* All documents must have page-level Bates numbering (except documents produced only in native format, which must be assigned a document-level Bates number).  The metadata load file must list the beginning and ending Bates numbers (BEGDOC and ENDDOC) for each document.

6

- Accepted date formats: ○ mm/dd/yyyy ○ yyyy/mm/dd ○ yyyymmdd
- Accepted time formats:
    - ○ hh:mm:ss (if not in 24-hour format, you must indicate am/pm)
        - ○ hh:mm:ss:mmm

E.    ***Opticon Load File***

- Required file format:
    - ○    Field delimiter: , (ASCII decimal character 44)
        - ▪ No Text Qualifier
    - ○    .opt file extension
- The comma-delimited Opticon load file must contain the following seven fields (as indicated below, values for certain fields may be left blank):
    - ○ ALIAS or IMAGEKEY – the unique Bates number assigned to each page of the production.
    - ○ VOLUME – this value is optional and may be left blank.
    - ○ RELATIVE PATH – the file path to each single-page image file on the production media.
    - ○ DOCUMENT BREAK – defines the first page of a document. The only possible values for this field are "Y" or blank.
    - ○ FOLDER BREAK – defines the first page of a folder. The only possible values for this field are "Y" or blank.
    - ○ BOX BREAK – defines the first page of a box. The only possible values for this field are "Y" or blank.
    - ○ PAGE COUNT – this value is optional and may be left blank.
- ***Example***:

ABC00001,,IMAGES\0001\ABC00001.tif,Y,,,2
ABC00002,,IMAGES\0001\ABC00002.tif,,,,
ABC00003,,IMAGES\0002\ABC00003.tif,Y,,,1
ABC00004,,IMAGES\0002\ABC00004.tif,Y,,,1

7

| TITLE | Document title (if entered). | |
|---|---|---|
| AUTHOR | Name of the document author. | |
| REVISION | Number of revisions to a document. | 18 |
| LAST MODIFIED BY | The last user/person to modify the document | |
| DATECREATED | Date and time that a document was created. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| DATEMOD | Date and time that a document was last modified. | mm/dd/yyyy, yyyy/mm/dd, or yyyymmdd; hh:mm:ss AM/PM or hh:mm:ss |
| FILESIZE | Original file size in bytes. | |
| PGCOUNT | Number of pages per document. | |
| IMPORTANCE | Email priority level if set. | Low, Normal, High |
| MD5HASH | MD5 hash value computed from native file (a/k/a file fingerprint). | |
| SHA1HASH | SHA1 hash value | |
| MSGINDEX | Email message ID | |
| CONVERSATIONINDEX | Email Conversation Index | |
| HIDDEN CONTENT | Any track changes, mark-ups, or other notes | |

FILED: ST. LAWRENCE COUNTY CLERK 11/12/2024 09:21 PM INDEX NO. EFCV-24-167057
NYSCEF DOC. NO. 6                                                              RECEIVED NYSCEF: 11/12/2024

Case 1:22-cv-01134-BKS-DJS   Document 122-1   Filed 01/16/25   Page 37 of 46



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

EXECUTIVE OFFICE

March 21, 2024

Bowman's Gun Shop LLC
337 County Rte 11
Gouverneur, NY 13642


Dear President or Chief Executive Officer:

If you have any questions about the enclosed subpoena, please do not hesitate to reach out to me. My cell phone number is 917-572-6115.


Sincerely,
Martha Grieco



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

**SUBPOENA DUCES TECUM**

**THE PEOPLE OF THE STATE OF NEW YORK**

**TO:**

Bowman's Gun Shop LLC
337 County Rte 11
Gouverneur, NY 13642

**YOU ARE HEREBY COMMANDED,** pursuant to New York Executive Law § 63(12), New York General Business Law § 349(f), and § 2302(a) of the New York Civil Practice Law and Rules, to deliver and turn over to Letitia James, the Attorney General of the State of New York, or a designated Assistant Attorney General, on ***the 15th day of April, 2024, by 5:00 p.m.***, or any agreed-upon adjourned date or time, at 28 Liberty Street, New York, New York 10005, all documents and information requested in the attached Schedule in accordance with the instructions and definitions contained therein.

**PLEASE TAKE NOTICE** that the Attorney General deems the documents and information requested by this Subpoena to be relevant and material to an investigation and inquiry undertaken in the public interest.

**PLEASE TAKE FURTHER NOTICE** that Your disobedience of this Subpoena, by failing to deliver the documents and information requested in the attached Schedule on the date, time and place stated above or on any agreed upon adjourned date or time, may subject You to penalties and other lawful punishment under § 2308 of the New York Civil Practice Law and Rules, and/or other statutes.

**WITNESS, The Honorable Letitia James,** Attorney General of the State of New York, this 21st day of March, 2024.

By: _____

Martha Grieco
Assistant Attorney General
Executive Division
28 Liberty Street
New York, New York 10005
(212) 416-8843
martha.grieco@ag.ny.gov

## SCHEDULE

### A. General Definitions and Rules of Construction

1.    "All" means each and every.

2.    "Any" means any and all.

3.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Subpoena all information or Documents that might otherwise be construed to be outside of its scope.

4.    "Communication" means any conversation, discussion, letter, email, memorandum, meeting, note or other transmittal of information or message, whether transmitted in writing, orally, electronically or by any other means, and shall include any Document that abstracts, digests, transcribes, records or reflects any of the foregoing.

5.    "Concerning" means, directly or indirectly, in whole or in part, relating to, referring to, describing, evidencing or constituting.

6.    "Custodian" means any Person or Entity that, as of the date of this Subpoena, maintained, possessed, or otherwise kept or controlled such Document.

7.    "Document" is used herein in the broadest sense of the term and means all records and other tangible media of expression of whatever nature however and wherever created, produced or stored (manually, mechanically, electronically or otherwise), including without limitation all versions whether draft or final, all annotated or nonconforming or other copies, electronic mail ("e-mail"), instant messages, Slack messages, Teams messages, text messages, iMessages or other wireless device messages, voicemail, calendars, date books, appointment books, diaries, books, papers, files, notes, confirmations, accounts statements, correspondence, memoranda, reports, records, journals, registers, analyses, code (e.g., C/C++/C#, R, SQL, Python, Java, JavaScript, Visual Basic, .NET, Swift ), algorithms, code repositories (e.g. GitHub), commit messages, audit logs, data or databases (e.g., Oracle, SQL-based, MongoDB, IMB DB2, Access, Cassandra, Redis), plans, manuals, policies, telegrams, faxes, telexes, wires, telephone logs, telephone messages, message slips, minutes, notes or records or transcriptions of conversations or Communications or meetings, tape recordings, videotapes, disks, and other electronic media, microfilm, microfiche, storage devices, press releases, contracts, agreements, notices and summaries. Any non-identical version of a Document constitutes a separate Document within this definition, including without limitation drafts or copies bearing any notation, edit, comment, marginalia, underscoring, highlighting, marking, or any other alteration of any kind resulting in any difference between two or more otherwise identical Documents. In the case of Documents bearing any notation or other marking made by highlighting ink, the term Document means the original version bearing the highlighting ink, which

original must be produced as opposed to any copy thereof.

8. "Entity" means without limitation any corporation, company, limited liability company or corporation, partnership, limited partnership, association, or other firm or similar body, or any unit, division, agency, department, or similar subdivision thereof.

9. "Identify" or "Identity," as applied to any Document means the provision in writing of information sufficiently particular to enable the Attorney General to request the Document's production through subpoena or otherwise, including but not limited to: (a) Document type (letter, memo, etc.); (b) Document subject matter; (c) Document date; and (d) Document author(s), addressee(s) and recipient(s). In lieu of identifying a Document, the Attorney General will accept production of the Document, together with designation of the Document's Custodian, and identification of each Person You believe to have received a copy of the Document.

10. "Identify" or "Identity," as applied to any Entity, means the provision in writing of such Entity's legal name, any d/b/a, former, or other names, any parent, subsidiary, officers, employees, or agents thereof, and any address(es) and any telephone number(s) thereof.

11. "Identify" or "Identity," as applied to any natural person, means and includes the provision in writing of the natural person's name, title(s), any aliases, place(s) of employment, telephone number(s), e-mail address(es), mailing addresses and physical address(es).

12. "Include" means include without limitation, as in "includes but is not limited to."

13. "Person" means any natural person, or any Entity.

14. "Sent" or "received" as used herein means, in addition to their usual meanings, the transmittal or reception of a Document by physical, electronic or other delivery, whether by direct or indirect means.

15. "Subpoena" means this subpoena and any schedules or attachments thereto.

16. The use of the singular form of any word used herein shall include the plural and vice versa. The use of any tense of any verb includes all other tenses of the verb.

## B. Particular Definitions

1. "Respondent," "You," "Your," or "Bowman's Gun Shop LLC" means Bowman's Gun Shop and any of its predecessors, successors, present or former parents, subsidiaries, or affiliates, whether direct or indirect; and all directors, officers, partners, employees, agents, contractors, consultants, representatives, and attorneys of the foregoing, or any other Persons associated with or acting on behalf of the foregoing, or acting on behalf of any predecessors, successors, or affiliates of the foregoing.

2.  "Security Plan" means the requirement of a security plan under N.Y. Gen. Bus. Law § 875-B indicating that all of Your firearms, rifles and shotguns are secured, other than during business hours, in a locked fireproof safe or vault on Your business premises or in a secured and locked area on Your business premises.

3.  "Security Alarm and Video Recording System" means the requirement of N.Y. Gen. Bus. Law § 875-B that Your business premises are secured by a security alarm system that is installed and maintained by a properly licensed security alarm operator, and that Your business premises are equipped with a video recording device at each point of sale and each entrance and exit to the premises, which records from both the indoor and outdoor vantage point and maintain recordings for a period of not less than two years.

## C. Documents to be Produced

1.  Documents sufficient to show compliance with the Security Plan requirement of all licensed firearm dealers.

2.  Documents sufficient to show compliance with the Security Alarm and Video Recording System requirement of all licensed firearm dealers.

## D. Instructions

1.  <u>Preservation of Relevant Documents and Information; Spoliation.</u>  You are reminded of Your obligations under law to preserve Documents and information relevant or potentially relevant to this Subpoena from destruction or loss, and of the consequences of, and penalties available for, spoliation of evidence.  No agreement, written or otherwise, purporting to modify, limit or otherwise vary the terms of this Subpoena, shall be construed in any way to narrow, qualify, eliminate or otherwise diminish Your aforementioned preservation obligations.  Nor shall You act, in reliance upon any such agreement or otherwise, in any manner inconsistent with Your preservation obligations under law.  No agreement purporting to modify, limit or otherwise vary Your preservation obligations under law shall be construed as in any way narrowing, qualifying, eliminating or otherwise diminishing such aforementioned preservation obligations, nor shall You act in reliance upon any such agreement, unless an Assistant Attorney General confirms or acknowledges such agreement in writing, or makes such agreement a matter of record in open court.

2.  <u>Possession, Custody, and Control.</u>  The Subpoena calls for all responsive Documents or information in Your possession, custody or control.  This includes, without limitation, Documents or information possessed or held by any of Your officers, directors, employees, agents, representatives, divisions, affiliates, subsidiaries or Persons from whom You could request Documents or information. If Documents or information responsive to a request in this Subpoena are in Your

FILED: ST. LAWRENCE COUNTY CLERK 11/12/2024 09:21 PM INDEX NO. EFCV-24-167057
NYSCEF DOC. NO. 6                                                          RECEIVED NYSCEF: 11/12/2024

Case 1:22-cv-01134-BKS-DJS    Document 122-1    Filed 01/16/25    Page 42 of 46

control, but not in Your possession or custody, You shall promptly Identify the Person with possession or custody.

3. <u>Documents No Longer in Your Possession.</u> If any Document requested herein was formerly in Your possession, custody or control but is no longer available, or no longer exists, You shall submit a statement in writing under oath that: (a) describes in detail the nature of such Document and its contents; (b) Identifies the Person(s) who prepared such Document and its contents; (c) Identifies all Persons who have seen or had possession of such Document; (d) specifies the date(s) on which such Document was prepared, transmitted or received; (e) specifies the date(s) on which such Document became unavailable; (f) specifies the reason why such Document is unavailable, including without limitation whether it was misplaced, lost, destroyed or transferred; and if such Document has been destroyed or transferred, the conditions of and reasons for such destruction or transfer and the Identity of the Person(s) requesting and performing such destruction or transfer; and (g) Identifies all Persons with knowledge of any portion of the contents of the Document.

4. <u>No Documents Responsive to Subpoena Requests.</u> If there are no Documents responsive to any particular Subpoena request, You shall so state in writing under oath in the Affidavit of Compliance attached hereto, identifying the paragraph number(s) of the Subpoena request concerned.

5. <u>Format of Production.</u> You shall produce Documents and information responsive to this Subpoena in the format requested by the Office of the New York State Attorney General (see Attachment 1).

6. <u>Existing Organization of Documents to be Preserved.</u> Regardless of whether a production is in electronic or paper format, each Document shall be produced in the same form, sequence, organization or other order or layout in which it was maintained before production, including but not limited to production of any Document or other material indicating filing or other organization. Such production shall include without limitation any file folder, file jacket, cover or similar organizational material, as well as any folder bearing any title or legend that contains no Document. Likewise, all Documents that are physically attached to each other in Your files shall remain so attached in any production; or if such production is electronic, shall be accompanied by notation or information sufficient to indicate clearly such physical attachment.

7. <u>Manner of Compliance – Custodians/Search Terms/Technology-Assisted Review.</u> Prior consultation with the Office of the Attorney General is required concerning selection of custodians for document searches (whether electronic or otherwise) or for use of search term filters, predictive coding or other forms of technology-assisted review. The Office of the Attorney General reserves the right to approve, disapprove, modify or supplement any proposed list of custodians, search terms, and/or review methodology. The selection or use of custodians, search term filters, and/or technology-assisted review in no way relieves You of Your obligation to fully respond to these requests for Documents or information.

FILED: ST. LAWRENCE COUNTY CLERK 11/12/2024 09:21 PM INDEX NO. EFCV-24-167057
NYSCEF DOC. NO. 6                                                    RECEIVED NYSCEF: 11/12/2024

Case 1:22-cv-01134-BKS-DJS    Document 122-1    Filed 01/16/25    Page 43 of 46

8.  <u>Document Numbering.</u>  All Documents responsive to this Subpoena, regardless of whether produced or withheld on ground of privilege or other legal doctrine, and regardless of whether production is in electronic or paper format, shall be numbered in the lower right corner of each page of such Document, without disrupting or altering the form, sequence, organization or other order or layout in which such Documents were maintained before production.  Such number shall comprise a prefix containing the producing Person's name or an abbreviation thereof, followed by a unique, sequential, identifying document control number.

9.  <u>Privilege Placeholders.</u>  For each Document withheld from production on ground of privilege or other legal doctrine, regardless of whether a production is electronic or in hard copy, You shall insert one or more placeholder page(s) in the production bearing the same document control number(s) borne by the Document withheld, in the sequential place(s) originally occupied by the Document before it was removed from the production.

10.  <u>Privilege.</u>  If You withhold or redact any Document responsive to this Subpoena on ground of privilege or other legal doctrine, You shall submit with the Documents produced a statement in writing under oath, stating:  (a) the document control number(s) of the Document withheld or redacted; (b) the type of Document; (c) the date of the Document; (d) the author(s) and recipient(s) of the Document; (e) the general subject matter of the Document; and (f) the legal ground for withholding or redacting the Document.  If the legal ground for withholding or redacting the Document is attorney-client privilege, You shall indicate the name of the attorney(s) whose legal advice is sought or provided in the Document.

11.  <u>Your Production Instructions to be Produced.</u>  You shall produce a copy of all written or otherwise recorded instructions prepared by You concerning the steps taken to respond to this Subpoena.  For any unrecorded instructions given, You shall provide a written statement under oath from the Person(s) who gave such instructions that details the specific content of the instructions and any Person(s) to whom the instructions were given.

12.  <u>Cover Letter, Index, and Identifying Information.</u>  Accompanying any production(s) made pursuant to this Subpoena, You shall include a cover letter that shall at a minimum provide an index containing the following: (a) a description of the type and content of each Document produced therewith; (b) the paragraph number(s) of the Subpoena request(s) to which each such Document is responsive; (c) the Identity of the Custodian(s) of each such Document; and (d) the document control number(s) of each such Document.  As further set forth in Attachment 2, information must also be included in the metadata and load files of each production concerning the identity of each Document's custodian, as well as information identifying the particular Document requests and/or information to which each document is responsive.

13.  <u>Affidavit of Compliance.</u>  A copy of the Affidavit of Compliance provided herewith shall be completed and executed by all natural persons supervising or participating

Case 1:22-cv-01134-BKS-DJS   Document 122-1   Filed 01/16/25   Page 44 of 46

in compliance with this Subpoena, and You shall submit such executed Affidavit(s) of Compliance with Your response to this Subpoena.

14. <u>Identification of Persons Preparing Production.</u>  In a schedule attached to the Affidavit of Compliance provided herewith, You shall Identify the natural person(s) who prepared or assembled any productions or responses to this Subpoena.  You shall further Identify the natural person(s) under whose personal supervision the preparation and assembly of productions and responses to this Subpoena occurred.  You shall further Identify all other natural person(s) able competently to testify:  (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be.

15. <u>Continuing Obligation to Produce.</u>  This Subpoena imposes a continuing obligation to produce the Documents and information requested.  Documents located or created, and information learned, acquired or created, at any time after Your response is due shall be promptly produced at the place specified in this Subpoena.

16. <u>No Oral Modifications.</u>  No agreement purporting to modify, limit or otherwise vary this Subpoena shall be valid or binding, and You shall not act in reliance upon any such agreement, unless an Assistant Attorney General confirms or acknowledges such agreement in writing, or makes such agreement a matter of record in open court.

17. <u>Time Period.</u>  Unless otherwise specified, the time period covered by this Subpoena shall be from **December 3, 2022** through the present.

Case 1:22-cv-01134-BKS-DJS    Document 122-1    Filed 01/16/25    Page 45 of 46



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

## SUBPOENA AD TESTIFICANDUM
## THE PEOPLE OF THE STATE OF NEW YORK
## <u>GREETINGS</u>

**TO**:

Timothy Bowman
Bowman's Gun Shop LLC
337 County Rte 11
Gouverneur, NY 13642

**YOU ARE HEREBY COMMANDED**, pursuant to New York Executive Law § 63(12), New York General Business Law § 349(f), and § 2308 of the New York Civil Practice Law and Rules, to appear and attend before Letitia James, the Attorney General of the State of New York, or a designated Assistant Attorney General, on ***the 10th day of June, 2024, by 10:00 a.m***., or any agreed upon adjourned date or time, at the Robert Abrams Building 4th Floor Conference Room, Albany, New York, 12224 to testify in connection with an investigation concerning firearms regulations pursuant to General Business Law § 898 and § 875-B or any matter which the Attorney General deems pertinent thereto.

**TAKE NOTICE** that the Attorney General deems the testimony commanded by this Subpoena to be relevant and material to an investigation and inquiry undertaken in the public interest.

**TAKE NOTICE** that the examination may be recorded by stenographic, videographic and/or audio means.

**TAKE FURTHER NOTICE** that Your disobedience of this Subpoena, by failing to appear and attend and testify on the date, time and place stated above or on any agreed upon adjourned date or time, may subject You to prosecution for a misdemeanor or civil remedies or penalties and other lawful punishment under General Business Law § 343 and § 2308 of the New York Civil Practice Law and Rules.

**TAKE FURTHER NOTICE** that You are requested not to disclose the existence of this subpoena, its contents, or any subsequent communications with the Office of the Attorney General while this investigation is pending. Disclosure of this subpoena may impede a confidential investigation being conducted by the Attorney General. In the event You believe that You are required to disclose the existence of this Subpoena or any information related thereto, You should notify the Assistant Attorney General listed below immediately and well in advance of Your disclosure of same.

**WITNESS, The Honorable Letitia James,** Attorney General of the State of New York, this 14th day of May, 2024.

Case 1:22-cv-01134-BKS-DJS   Document 122-1   Filed 01/16/25   Page 46 of 46

By: _____

Martha Grieco
Assistant Attorney General
Executive Division
28 Liberty St., 18th Floor
New York, New York 10005
(212) 416-8843