UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

NADINE GAZZOLA, individually, and as co-owner,
President, and as BATFE Federal Firearms Licensee
Responsible Person for ZERO TOLERANCE
MANUFACTURING, INC., *et al.*,

           Plaintiffs,

-against-

KATHLEEN HOCHUL, in her Official Capacity as
Governor of the State of New York, *et al.*,

           Defendants.

------------------------------------------------------------------X

**Declaration of Michael W. Deyo**

**Case No.: 1:22-CV-01134**

Hon. Brenda K. Sannes

MICHAEL W. DEYO, pursuant to § 1746 of Title 28 of the United States Code, declares the following to be true and correct under penalty of perjury under the laws of the United States of America:

1. I am Counsel for the New York State Police ("NYSP"). This Declaration is based upon my personal knowledge and my review of documents and databases maintained by the NYSP in the normal course of business.

2. It is my understanding that the plaintiffs in this case challenge a host of state laws pertaining to the sale and purchase of firearms, including, *inter alia*, requirements for background checks, safe storage, employee training, and record-keeping, as well as compliance certification requirements. It is also my understanding that plaintiffs' have cross-moved for partial summary judgment in this case, requesting that the Court grant them pre-discovery summary judgment "in the form of a permanent injunction against a list of statutory provisions, containing direction the NYSP and/or the DCJS publish regulations or otherwise perform regulatory functions." ECF No. 125 at 64-67.

1

3. I have reviewed the plaintiffs' Statement of Material Facts in Support of their Partial Motion for Summary Judgment, dated January 16, 2025 (referred to herein as "Plaintiffs' SMF"), and provide the following responses to certain assertions made by the plaintiffs.

4. With respect to Paragraphs 6, 8, 9, and 21 of Plaintiffs' SMF, the referenced legislative provisions are mischaracterized. The legislative language speaks for itself; however, there was no mandatory deadline by which rules and regulations were to be issued. There was legislative authorization to begin agency rulemaking before the statutory effective date, but this establishes a beginning timeframe for regulatory pronouncements and not a deadline. Similarly, the laws contained within S.4970-A "are" the enabling statutes, and the plaintiffs' characterization that they "were" the enabling statues is inaccurate.

5. As to Paragraphs 11-12, 37, 44, 46, 61, 63, 71-77, 86, 91, 106-108, 123-124, 135-138, 140-143, 158-160, 170-171, and 175-185 of Plaintiffs' SMF, the plaintiffs assert various purported facts for which I do not have adequate knowledge or information to form a belief about the truth thereof.

6. Paragraphs 13, 64-65, 67-68, 81-84, 87-88, 92-93, 95, 99-103, 114, 120-121, 139, 145-148, 165-166, 169, and 173 of Plaintiffs' SMF mischaracterize various legislative provisions. I respectfully submit to this Court that the statutory text of the laws of the State of New York speaks for itself.

7. Paragraphs 15-20, 24, 48-50, and 62 of Plaintiffs' SMF incorrectly allege that the NYSP has not promulgated any regulations pursuant to New York General Business Law ("GBL") Article 39-BB. Indeed, the NYSP *has* published Subpart 482-2 of Subtitle K of Title 9 of the New York Codes, Rules, and Regulations ("NYCRR"), consisting of sections 482-2.1 through 482-2.6, which are attached as **Exhibit "A."**

8. Paragraphs 22, 89-90, 97-98, 104-105, 144, and 189 of Plaintiffs' SMF assert legal conclusions alleging that plaintiffs are entitled to various legal remedies. Not only are these not factual assertions, but plaintiffs are not entitled to such remedies.

9. Paragraph 35 of Plaintiffs' SMF mischaracterizes a legislative provision by asserting that dealer inspections authorized by NY GBL § 875-g(2)(a) are contingent upon the NYSP promulgating regulations. There is no such contingency specified in the statute, and I respectfully submit to this Court that the statutory text of the laws of the State of New York speaks for itself.

10. Paragraphs 36-39, 43, and 60 of Plaintiffs' SMF mischaracterize the "checklist" used to conduct dealer inspections pursuant to NY GBL § 875-g(2)(a). The NYSP has adopted a standard form, numbered "GENL-122", as the "NY Dealer Certification/Compliance Checklist" that is to be used by NYSP personnel while conducting these firearm dealer inspections. A copy is attached as **Exhibit "B."**

11. Paragraph 42 of Plaintiffs' SMF mischaracterizes the NYSP personnel who are assigned to conduct dealer inspections pursuant to NY GBL § 875-g(2)(a). Members of the Joint Terrorism Task Force ("JTTF") are not assigned to conduct these inspections. Members of a wholly separate unit – the Counter Terrorism Intelligence Unit ("CTIU") – are assigned to conduct dealer inspections.

12. Paragraph 55 of Plaintiffs' SMF is not contested; however, the 2024 annual report will be published soon.

13. Paragraphs 56-58 of Plaintiffs' SMF mischaracterize the NYSP Annual Gun Dealer Inspection Report for 2023. The report is three pages, not one page, and I respectfully submit to this Court that the text of the report speaks for itself. A copy is attached as **Exhibit "C."**

14. Paragraph 69 of Plaintiffs' SMF mischaracterizes the NYSP's "enforcement" activities. NYSP is conducting firearm dealer inspections pursuant to NY GBL § 875-g(2)(a), using the GENL-122 checklist, a copy of which is attached as Exhibit "B" and the text thereof speaks for itself.

15. Paragraph 80 of Plaintiffs' SMF misstates when the referenced legislation was signed by Governor Hochul. It was signed June 6, 2022, not May 30, 2022.

16. Paragraph 85 of Plaintiffs' SMF mischaracterizes various legislative provisions, as well as the steps taken by NYSP to notify firearm dealers and ammunition sellers that the firearm and ammunition background check system required by NY Executive Law § 228 was operational. In August 2023, NYSP provided advance written notice to firearm dealers and ammunition sellers that the background check system would be operational beginning on September 13, 2023. A copy of the notice is attached as **Exhibit "D."**

17. Paragraph 96 of Plaintiffs' SMF mischaracterizes the referenced legislative provision, which speaks for itself, as well as the steps taken by NYSP to implement the ammunition background check system. The NYS NICS electronic system, which is utilized by ammunition sellers to process ammunition background checks, does contain the required data elements that must be entered to document an ammunition transaction. Additionally, NYSP did issue the following general guidance as part of the Resources for Gun Dealers FAQs published at https://gunsafety.ny.gov/resources-gun-dealers:

> Q. What records are dealers required to maintain with regards to ammunition sales?
>
> A. Effective 9/1/2022, dealers are required to maintain an electronic record with the following information for all ammunition transactions, including ammunition coming into the business:
> - Date of transaction;
> - Customer name, age, address, and occupation; and
> - Ammunition manufacturer, caliber, quantity (number of rounds) and any other distinguishing number or identification mark on the ammunition (lot number)

18. Paragraphs 109-110 of Plaintiffs' SMF misstates when the referenced legislation became effective. The effective date was September 4, 2022, not September 1, 2022.

19. Paragraph 111 of Plaintiffs' SMF misstates the law by referring to the incorrect subdivision of NY Penal Law § 400.00. The correct subdivision corresponding to the cited language is subdivision six, not subdivision seven.

20. Paragraph 113 of Plaintiffs' SMF mischaracterizes the referenced legislative provision, which speaks for itself. Additionally, the NYSP has published the "PPB-3" as the statewide form to be used for pistol permit and semi-automatic rifle license applications and license approvals. A copy of the PPB-3 is attached as **Exhibit "E."**

21. Paragraph 119 of Plaintiffs' SMF mischaracterizes how the NYS NICS system operates. The system does include a required field for whether the purchaser has a driver's license. If the purchaser does have a license, the license number must be entered. If the purchaser does not have a license, an alternate government identification must be input.

22. Paragraphs 127 and 133-134 of Plaintiffs' SMF mischaracterizes the referenced legislative provision, which speaks for itself. Additionally, the NYSP has published the "PPB-3" as the statewide form to be used for pistol permit and semi-automatic rifle license applications and license approvals, a copy of which is attached as Exhibit "E." Moreover, plaintiffs' assertion that New York residents cannot obtain a semi-automatic rifle license is fundamentally inaccurate and disproven by the fact that, as of March 18, 2025, approximately 26,117 new firearm licenses issued throughout the State have included the authority to purchase/possess semiautomatic rifles and approximately 47,875 firearm license amendment transactions have occurred throughout the State that involve licenses which include the authority to purchase/possess semiautomatic rifles. The numbers reported above are based upon a search that I directed to be done by the New York State Office of Information Technology Services ("ITS") of the statewide license database that contains information reported by firearm licensing officers throughout

the state regarding individuals who have been issued licenses for the possession of pistols, revolvers, and/or semiautomatic rifles pursuant to NY Penal Law § 400.00.

23. Paragraphs 150-152, 167, and 188 of Plaintiffs' SMF mischaracterize legislative provisions, and I respectfully submit to this Court that the statutory text of the laws of the State of New York speaks for itself. Additionally, the NYSP and the New York Division of Criminal Justice Services have jointly published "Minimum Standards for New York State Concealed Carry Firearms Safety Training" to fulfill the legislative requirement that these agencies promulgate procedures to standardize firearms safety training. A copy of these minimum standards is attached as **Exhibit "F."**

24. Paragraphs 154-155, 164, and 168 of Plaintiffs' SMF mischaracterize the "Minimum Standards for New York State Concealed Carry Firearms Safety Training" document. I respectfully submit to this Court that the text of the document speaks for itself, a copy of which is attached as Exhibit "F."

25. Paragraphs 172 and 174 of Plaintiffs' SMF misstate the law. The text of NY Penal Law § 400.00(19) clearly requires that the required concealed carry firearm safety training be completed "prior to the issuance or renewal of a license," not prior to submitting an application for licensure. Additionally, firearm licensing determinations are not within the authority of the Superintendent, except for applications submitted by retired members of the NYSP.

26. I declare under penalty of perjury that to the best of my knowledge the foregoing is true and correct.

Dated: Albany, New York
       March 20, 2025

                                                    Michael W. Deyo