UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Nadine Gazzola, individually, and as co-owner, President, and as BATFE Federal Firearms Licensee Responsible Person for Zero Tolerance Manufacturing, Inc., et al.

*Plaintiffs*,

-against-

KATHLEEN HOCHUL, in her official capacity as Governor of the State of New York; STEVEN A. NIGRELLI, in his Official Capacity as the Acting Superintendent of the New York State Police; ROSSANA ROSADO, in her Official Capacity as the Commissioner of the Department of Criminal Justice Services of the New York State Police; and LETITIA JAMES, in her official capacity as Attorney General of the State of New York.

*Defendants.*

1:22-cv-1134
(BKS/DJS)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED R. CIV. P. 12(c), IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND/SUPPLEMENT THE COMPLAINT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

LETITIA JAMES
Attorney General of the State of New York
*ATTORNEY FOR DEFENDANTS*
300 S. State Street, Suite 300
Syracuse, New York 13202
Aimee Cowan
Assistant Attorney General

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT...........................................................................................................5

POINT I:      DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON LACK OF SUBJECT MATTER JURISDICTION IS TIMELY.......................................................................................5

POINT II:     ALL CLAIMS AGAINST THE GOVERNOR AND THE COMMISSIONER ARE BARRED BY THE ELEVENTH AMENDMENT..........................6

POINT III:    PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AGAINST THE GOVERNOR OR COMMISSIONER.................................................9

POINT IV:    PLAINTIFFS' SECOND AMENDMENT CLAIM FAILS BECAUSE THEY CANNOT MEET THE SECOND CIRCUIT'S STANDARD FOR DERIVATIVE STANDING ..............................................................10

     A.    The Court Correctly Concluded That Plaintiffs Themselves Do Not Have Standing To Raise A Second Amendment Claim.............................10

     B.    Any Derivative Second Amendment Claim Pressed On Behalf Of Others Fails.....................................................................................12

         1.    The Second Circuit's Holding In *Gazzola II* Sets A Demanding Standard For Derivative Claims.................................12

         2.    Documents Subject To Judicial Notice and Plaintiffs' Own Submissions Demonstrate That New Yorkers Continue To Purchase Guns Without Interference...........................................................13

     C.    There Is Nothing Unconstitutional About A Background Check With Ammunition Purchases.............................................................17

POINT V:     PLAINTIFFS' "CONSTITUTIONAL REGULATORY OVERBURDEN" CLAIM SHOULD BE DISMISSED..............................................19

POINT VI:    PLAINTIFFS' CONSPIRACY CAUSE OF ACTION MUST BE DISMISSED.............................................................................20

**POINT VII: PLAINTIFFS' CLAIM THAT CERTAIN CHALLENGED STATUTES ARE PREEMPTED BY FEDERAL LAW SHOULD BE DISMISSED**..............21

**POINT VIII: PLAINTIFFS' FIFTH AMENDMENT CLAIMS SHOULD BE DISMISSED**.................................................................................23

**POINT IX: PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM THAT ANY OF THE CHALLENGED STATUTES IS UNCONSTITUTIONALLY VAGUE**.......................................................................................23

**POINT X: PLAINTIFFS' CAUSE OF ACTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988 SHOULD BE DISMISSED**...................................23

**POINT XI: PLAINTIFFS' MOTION FOR LEAVE TO AMEND OR SUPPLEMENT THEIR COMPLAINT SHOULD BE DENIED**...................................23

**POINT XII: PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD BE DENIED**.................................................................25

**A. Plaintiffs Did Not Plead The Claim Or Seek The Relief That Is The Subject Of Their Summary Judgment Motion**..........................................................26

**B. The *Pennhurst* Doctrine Bars Plaintiff's Summary Judgment Motion**..............27

**C. Plaintiffs Have Not Shown An Absence of Disputed Material Fact Or Their Entitlement to Summary Judgment**.......................................................28

**D. Plaintiffs' Motion for Partial Summary Judgment Should be Denied Because They Cannot Satisfy the Requirements of a Permanent Injunction**..................30

CONCLUSION.................................................................................................... 31

# TABLE OF AUTHORITIES

## CASES

*Antonyuk v. Hochul*, No. 22-cv-0986, 639 F.Supp.3d 232 (N.D.N.Y. Nov. 7, 2022)...............8

*Antonyuk v. James*, 120 F.4th 941 (2d Cir. 2024)…………………………………………..18

*Barzee v. Abdulla*, 2024 WL 4836870 (S.D.N.Y. 2024)………………………………….....25

*Blount v. Rastani*, No. 921CV0147DNHCFH, 2021 WL 1903865 (N.D.N.Y. May 12, 2021)…..24

*Capricorn Mgmt. Sys., Inc. v. GEICO*, No. 15 Civ. 2926, 2024 WL 1242616

(E.D.N.Y. Mar. 16, 2020)……………………………………………….……………28

*Checksfield v. IRS*, No. 21 Civ. 1180, 2024 WL 21549 (N.D.N.Y. Jan. 2, 2024)………………28

*Cinema Village Cinemart, Inc. v. Regal Entertainment Group,* 2016 WL 5719790

(S.D.N.Y. 2016)…………………………………………………………………………25

*Cusamano v. Sobek,* 604 F.Supp.2d 416 (N.D.N.Y. 2009)………………………………………24

*Davis v. New York,* 316 F.3d 93 (2d Cir. 2002)…………………………………………………27

*Dean v. Annucci,* No. 22 Civ. 0746, 2023 WL 2325074 (N.D.N.Y. Mar. 2, 2023)………………24

*Do No Harm v. Pfizer Inc.*, 96 F.4th 106 (2d Cir. 2024)…………………………………………..5

*Do No Harm v. Pfizer, Inc.*, 126 F.4th 109, 123 (2d Cir. 2025)…………………………………5

*Donohue v. Hochul*, No. 21-CV-8463 (JPO), 2022 WL 673636 (S.D.N.Y. Mar. 7, 2022)………..7

*Elliott v. Cartagena*, 84 F.4th 481 (2d Cir. 2023)…………………………………………………29

*Felix v. City of New York*, 344 F. Supp. 3d 644 (S.D.N.Y. 2018)…………………………………21

*Gazzola v. Hochul,* 645 F. Supp. 3d 37, 58–59 (N.D.N.Y. 2022)…………...7, 8, 11, 12, 20, 22, 30

*Gazzola v. Hochul*, 88 F.4th 186 (2d Cir. 2023)…………………………1, 3, 4, 10, 11, 12, 13, 14,

16, 17, 18, 19, 20, 22, 23

*Gazzola v. Hochul*, 144 S.Ct. 2659 (U.S. June 17, 2024)…………………………………………..5

*Goldstein v. Hochul*, 680 F. Supp. 3d 370 (S.D.N.Y. 2023)……………………………………….6

*Grant v. Lamont*, No. 22-cv-1223, 2023 WL 5435941 (D. Conn. Aug. 23, 2023)…………………7

*Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)…………………………………………21

*Jeannot v. New York State*, No. 24-CV-05896 (HG), 2025 WL 80689

(E.D.N.Y. Jan. 13, 2025)………………………………………………………………..7, 8

*Lewis v. Cuomo*, 575 F. Supp. 3d 386 (W.D.N.Y. 2021)…………………………………………8

*Li v. Lorenzo,* 712 F. App'x 21 (2d Cir. 2017)……………………………………………………27

*Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020)…………………………..9

*Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737 (1976)……………………………………………6

*Lighthall on behalf of E.A.S. v. Oswego City Sch. Dist.*, No. 5:24-CV-0283 (GTS/TWD),

2024 WL 4241948 (N.D.N.Y. Sept. 19, 2024)……………………………………………………5

*Maryland Shall Issue, Inc., v. Moore*, 116 F.4th 211 (4th Cir. 2024)……………………………18

*McRorey v. Garland*, 99 F.4th 831 (5th Cir. 2024)………………………………………………17

*Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. New York*, 336 F. Supp. 3d 50

(E.D.N.Y. 2018)……………………………………………………………………………...8

*New York State Firearms Association v. James*, 2024 WL 1932050, at *6, *7

(W.D.N.Y. July 2, 2024)………………………………………………………………...…………18

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1 (2022)………………..9, 17, 18, 20

*Ognibene v. Parkes*, 671 F.3d 174 (2d Cir. 2011)……………………………………….…………30

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)……………………...…………27, 28

*Penn. Central Transp. Co. v. City of New York*, 438 U.S. 104 (1978)…………………..……15

*Penn. Manufacturers' Ass'n Ins. Co. v. Riccelli Enters., Inc.,* No. 11 Civ. 1539,

2016 WL 6876109 (N.D.N.Y. May 6, 2016)……………………………………………………22

*Renaissance Search Partners v. Renaissance Ltd., L.L.C.,* No. 12CV05638DLCSN, 2014 WL 12770400 (S.D.N.Y. July 3, 2014)……………………………………………………………..27

*Rocky Mtn. Gun Owners v. Polis*, 121 F.4th 96 (10th Cir. 2024)…………………………..…18

*Roku, Inc. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A to the Complaint*, No. 22-CV-2168 (PKC), 2023 WL 137747 (S.D.N.Y. Jan. 9, 2023)………………………………………………………..30

*Santiago v. City of Rome*, No. 6:24-CV-00704 (BKS/MJK), 2025 WL 553347 (N.D.N.Y. Feb. 19, 2025)………………………………………………………………….27, 28

*Seminole Tribe of Florida v. Florida,* 517 U.S. 44 (1996)………………………………….….27

*Syfert v. City of Rome*, No. 19 Civ. 0775, 2020 WL 7053542 (N.D.N.Y. Dec. 2, 2020)…..……24

*Teixeira v. County of Alameda,* 873 F.3d 670 (9th Cir. 2017)……………………………..…10, 11, 13

*United States v. Austin*, 729 F. Supp. 3d 396 (S.D.N.Y. 2024)………………………………10, 20

*United States ex rel. Sisselman v. Zocdoc, Inc.,* 2024 WL 4305667 (S.D.N.Y. 2024)……………25

*Vega v. Semple*, 963 F.3d 259 (2d Cir. 2020)……………….……………………………………28

*Warden v. Pataki*, 35 F. Supp. 2d 354 (S.D.N.Y.), *aff'd sub nom. Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999)………………………………………………………………………………...8

*Weilburg v. Koss*, No. 22 Civ. 435, 2023 WL 197462 (N.D.N.Y. Jan. 17, 2023)……………29, 30

*White v. Clark*, No. 12-CV-986(NAM/RFT), 2012 WL 5877160 (N.D.N.Y. Nov. 20, 2012)…...24

*We The Patriots USA, Inc. v. Hochul,* 17 F.4th 266 (2d Cir. 2021)………………………………..7

*Woods v. Kasztl Walsh, LLC*, No. 622CV525BKSATB, 2023 WL 6442064 (N.D.N.Y. Oct. 3, 2023)……………………………………………………….…………………..6

**STATUTES**

9 NYCRR § 482-2.6……………………………………………………………………...29

18 U.S.C. § 922(h)……………………………………………………………………..22

18 U.S.C. § 923(g)……………………………………………………………….……..22

18 U.S.C. § 926(a)……………………………………………………………………...22

42 U.S.C. §1985(2)………………………………………………………………...20, 21

42 U.S.C. § 1988……………………………………………………………………….23

Fed. R. Civ. P. 12(c)…………………………………………………………………..2, 5

Fed. R. Civ. P. 12(h)(3)………………………………………………………………..2, 6

Fed. R. Civ. P. 56(d)…………………………………………………………………..30

N.D.N.Y.L.R. 7.1(a)(4)………………………………………………………….....4, 24, 25

N.Y. Exec. Law § 228………………………………………………………………...17, 22

N.Y. Gen. Bus Law § 875-b(2)………………………………………………………..22

N.Y. Gen. Bus. Law § 875-f………………………………………………………...22

N.Y. General Business Law § 875-g(2)……………………………………………...29

Defendants respectfully submit this memorandum of law in further support of their motion for judgment on the pleadings, in opposition to Plaintiffs' request for leave to amend/supplement the Complaint, and in opposition to Plaintiffs' cross-motion for partial summary judgment.

## PRELIMINARY STATEMENT

Plaintiffs' opposition papers admit what the pleadings and sources subject to judicial notice have already established: they cannot meet the high standard for derivative standing that the Second Circuit announced in their prior appeal. In order for the Plaintiffs to be able to bring a derivative claim on behalf of their customers (and thus to be able to bring a Second Amendment claim at all), they must "show[] that the New York law is so restrictive that it threatens a citizen's right to acquire firearms." *Gazzola v. Hochul*, 88 F.4th 186, 196 (2d Cir. 2023) ("*Gazzola II*"); *see also id.* (the law "cannot have the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms"). Throughout their opposition brief and its supporting papers, Plaintiffs repeatedly admit that this standard has not been met: the private market for firearms in New York State continues, and Plaintiffs in their own words "continue to engage in the business of commerce in firearms." ECF No. 125 at 14; *see also, e.g.,* ECF No. 122-1 at 17-18; ECF No. 122-3 ¶¶ 14-15, 20, 23, 33; ECF No. 122-4 ¶¶ 40-41, 44, 46, 60; ECF No. 122-5 ¶¶ 39, 42; ECF No. 122-7 ¶¶ 18-19; ECF No. 122-9 ¶¶ 9, 11; ECF No. 122-10 ¶¶ 5-6, 8-9. It is undisputed that licensed, law-abiding persons in New York State can continue to purchase firearms, with approximately 29,000 such purchases happening every month in 2024.[1] And that means that it is undisputed that Plaintiffs' case fails the *Gazzola II* test.

Plaintiffs' remaining arguments fail for a host of grounds, some identified by the Second Circuit in *Gazzola II* and others apparent on the face of the pleadings. Individually and in total,

---

[1] *See* Federal Bureau of Investigation, NICS Firearm Background Checks: Month/Year by State, available at https://www.fbi.gov/file-repository/nics_firearm_checks_-_month_year_by_state.pdf (last visited Mar. 11, 2025).

they do nothing to undermine the conclusion that the Complaint fails to state a claim for which relief can be granted, and the Court should enter judgment on the pleadings pursuant to Federal Rule of Procedure 12(c).

First, the motion for judgment on the pleadings, which asserts in part that the Court lacks subject matter jurisdiction, is timely pursuant to both Fed. R. Civ. P. 12(c) and 12(h)(3). And to the extent that there is concern about delay, as Magistrate Judge Stewart previously noted, "the delay that has been incurred to date can be attributed, primarily, to the Plaintiffs' failed request for a preliminary injunction, and the subsequent appeal of that denial to the United States Supreme Court." ECF No. 111 at 4. Second, Plaintiffs' claims are completely barred as against Governor Hochul and Commissioner Rosado because those defendants are entitled to sovereign immunity under the Eleventh Amendment and Plaintiffs lack standing. Plaintiffs have not alleged any injury traceable to either the Governor or Commissioner and have not alleged that either has the special duty to enforce the challenged law necessary for application of the *Ex parte Young* exception.

Third, Plaintiffs' Second Amendment claim fails as a matter of law. With respect to Plaintiffs' Second Amendment rights as *individuals*, this Court previously held that Plaintiffs lacked standing because the allegations in the Complaint were insufficient to demonstrate that any Plaintiff established a concrete, particularized, actual and imminent injury, and indeed the Plaintiffs have now averred that they continue to be able to purchase firearms for their own use. With respect to their Second Amendment *derivative* claim, Plaintiffs do not plausibly allege that the laws they challenge meet the high bar previously set by the Second Circuit, and their claims are further contradicted by evidence that the regulations have *not* burdened firearms dealers in a manner that restricts the protections conferred by the Second Amendment. This conclusion is clear

from exhibits attached to Defendants' Answer, data compiled on state and federal firearms databases subject to judicial notice, and Plaintiffs' own submissions in opposition to this motion.

Fourth, to the extent that Plaintiffs contend in their Opposition that the Second Circuit's opinion expressly agrees that they may pursue a "constitutional regulatory overburden" claim separate and apart from their Second Amendment claim (ECF No. 125 at 18-20), this interpretation of the Second Circuit's decision does not accurately reflect the opinion. *Gazzola II*, 88 F.4th at 195. The Second Circuit never endorsed their novel claim, which fails both on its own merit and as a restatement of their Second Amendment cause of action.

Fifth, because Plaintiffs' Opposition fails to mention any Defendant other than Governor Hochul with respect to their claim, their conspiracy claims against the other named Defendants should be deemed abandoned and dismissed. Plaintiffs' Opposition fails to address Defendants' legal argument regarding dismissal pursuant to the intra-corporate conspiracy doctrine, meaning that their conspiracy claims should be deemed abandoned and dismissed for that reason as well. To the extent Plaintiffs' Opposition makes clear that their alleged conspiratorial actions are limited to the enactment of the challenged legislation, Governor Hochul is entitled to legislative immunity and the remaining Defendants play no role in the legislative process. Finally, Plaintiffs' Opposition fails to address—or even mention—Defendants' contention that the Complaint failed to properly plead Plaintiffs are members of a protected class, which is fatal to their claim.

Sixth, the Second Circuit held as a matter of law that Plaintiffs failed to satisfy their burden under a conflict preemption theory—the only preemption theory that could potentially support Plaintiffs' case. *See Gazzola II*, 88 F.4th at 198-201. Plaintiffs Opposition does not address or contradict this conclusion. The Second Circuit's holding was correct and is binding precedent with respect to this Court's analysis. Seventh, Plaintiffs' Opposition fails to substantively address that

the Second Circuit has already held that this Court appropriately rejected Plaintiffs' Fifth Amendment self-incrimination claim. *See Gazzola II*, 88 F.4th at 201. Consequently, Plaintiffs' Fifth Amendment claims should be deemed abandoned and dismissed.

Eighth, Plaintiffs' only mention in their Opposition of claims brought pursuant to a void-for-vagueness theory is to argue that if they prevail on their cross-motion for partial summary judgment, "this claim becomes of less importance." ECF No. 125 at 69. Plaintiffs' cross-motion for partial summary judgment should be denied for the reasons set forth *infra* under Point XII. Further, for the reasons set forth in Defendants' Memorandum of Law in support of their Motion for Summary Judgment ("Defendants' Brief") (ECF No. 104-7 at 44-47), and based on Plaintiffs' failure to address Defendants' legal arguments pertaining to their void- for-vagueness claims, these claims should be deemed abandoned and dismissed.

Finally, Defendants oppose Plaintiffs' request for leave to amend their complaint. The Local Rules of Practice of the Northern District of New York require that a motion to amend or supplement be supported by a proposed pleading. N.D.N.Y.L.R. 7.1(a)(4). Plaintiffs failed to submit a red-lined version of the original pleading or other equivalent means, which is a well-established basis to deny the motion. *See gen.,* ECF No. 122-125; N.D.N.Y.L.R. 7.1(a)(4). Further, Plaintiffs' amended pleadings deadline was calendared for October 20, 2024, and they failed to file an amended complaint prior to that deadline. ECF No. 90. Neither the State Defendants nor the Court know what additional facts Plaintiffs believe would save their claims. Regardless, any amendment would be futile because the Second Circuit has already ruled that most of the Plaintiffs' causes of action fail to state a claim and both sources subject to judicial notice and Plaintiffs' own submissions in opposition to this motion show that the gun industry in New York continues to function, and that no individual person has been denied their right to keep and bear arms.

# ARGUMENT

**POINT I:** **DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON LACK OF SUBJECT MATTER JURISDICTION IS TIMELY**

Plaintiffs contend that Defendants' motion for judgment on the pleadings is untimely because (to the extent it contends that the Court lacks subject matter jurisdiction), Defendants should have filed that motion prior to filing a responsive pleading. *See* ECF No. 125 at 15-16.[2] As an initial matter, pursuant to Fed. R. Civ. P. 12(c), a motion for judgment on the pleadings is proper at any time "after the pleadings are closed, but early enough not to delay trial." Here, Defendants filed a responsive pleading on March 21, 2024, and asserted as their Third Affirmative defense that the Court lacked subject matter jurisdiction over this matter. *See* ECF No. 79 ¶ 365. Defendants then filed a motion pursuant to Fed. R. Civ. P. 12(c) on October 25, 2024, approximately two months after the Supreme Court denied Plaintiff's fourth attempt to seek review. ECF No. 104; *cf. Gazzola v. Hochul*, 144 S.Ct. 2659 (U.S. June 17, 2024); *see also* ECF No. 111 at 4 (Magistrate Judge Stewart "not[ing] that the delay that has been incurred to date can be attributed, primarily, to the Plaintiffs' failed request for a preliminary injunction, and the subsequent appeal of that denial to the United States Supreme Court."). This motion was timely, given that it was filed after the pleadings were closed but early enough not to delay trial.

Further, "[a] lack of subject matter jurisdiction cannot be waived, and may be raised by motion or *sua sponte* **at any time**."[3] *Lighthall on behalf of E.A.S. v. Oswego City Sch. Dist.*, 2024 WL 4241948, at *3 (N.D.N.Y. Sept. 19, 2024) (citation omitted) (emphasis added)); *see also* Fed.

---

[2] Page numbers refer to docket page numbers.

[3] The Second Circuit's rehearing and vacatur of *Do No Harm v. Pfizer Inc.*, 96 F.4th 106 (2d Cir. 2024), cited in the State Defendants' moving brief, further underscores the appropriateness of the motion. While the original *Do No Harm* opinion contemplated that courts should dismiss claims or cases *sua sponte* when denying a preliminary injunction on standing grounds, the opinion on rehearing contemplates that litigants will file dispositive motions after the conclusion of a preliminary injunction appeal, as the Defendants have done here. *See Do No Harm v. Pfizer, Inc.*, 126 F.4th 109, 123 (2d Cir. 2025).

R. Civ. P. 12(h)(3). Indeed, "[i]f a court perceives at **any stage of the proceedings** that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action." *Woods v. Kasztl Walsh, LLC*, No. 622CV525BKSATB, 2023 WL 6442064, at *2 (N.D.N.Y. Oct. 3, 2023) (emphasis added) (citing *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 740 (1976)). Plaintiffs' contention that Defendants were required to raise subject matter jurisdiction as a defense prior to filing a responsive pleading is simply incorrect.

**POINT II:  ALL CLAIMS AGAINST THE GOVERNOR AND THE COMMISSIONER ARE BARRED BY THE ELEVENTH AMENDMENT**

As more fully discussed in Defendants' Brief, Plaintiffs' claims against Governor Hochul and Commissioner Rosado, who are sued in their official capacities only, *see* ECF 1 at 1-2, are barred by the Eleventh Amendment to the United States Constitution. *See* ECF No. 104-7 at 21-23. Plaintiffs' Opposition argues that the *Ex Parte Young* exception applies, and that both Governor Hochul and Commissioner Rosado are properly before this Court. ECF No. 125 at 40-45. Plaintiffs' application of *Ex Parte Young* is wrong.

First, Plaintiffs' attempts to show a connection between Governor Hochul and the enforcement of the subject statutes are nothing more than allegations as to the Governor's general authority to enforce the law or request that the Attorney General enforce the law. Nowhere in Plaintiffs' Complaint or Opposition do Plaintiffs identify any particular duty Governor Hochul holds with respect to the challenged statutes. *See Goldstein v. Hochul*, 680 F. Supp. 3d 370, 384 (S.D.N.Y. 2023) ("The Governor's general duty to execute the laws is not sufficient to make her a proper party in a suit challenging a state statute."). And Plaintiffs' example that Governor Hochul "directed" Attorney General James to "investigate online platforms relative to specific crimes

committed using firearms," ECF No. 125 at 43-44, bears no relation to this matter; instead, it refers to an investigation involving the tragic 2022 mass shooting in Buffalo, New York.[4]

Second, Plaintiffs contend that Governor Hochul made public statements "with animus against those who seek to exercise their Second Amendment rights." ECF No. 125 at 42, 62-63. Even if that were true, which it is not, general statements made by the Governor expressing support for the statutes Plaintiffs challenge do not constitute a sufficient connection under *Ex Parte Young* to show that she has a "particular duty" to enforce the statutes. *Jeannot v. New York State*, 2025 WL 80689, at *11 (E.D.N.Y. Jan. 13, 2025) (citing *Grant v. Lamont*, 2023 WL 5435941, at *2 (D. Conn. Aug. 23, 2023) (holding the governor's "expressed support" for challenged regulation did "not constitute a sufficient connection under *Ex parte Young* to show that the Governor has a ***particular duty to enforce*** the laws in question") (emphasis in original)); *see also Donohue v. Hochul*, 2022 WL 673636, at *7 (S.D.N.Y. Mar. 7, 2022) (Second Circuit has already held the Governor's "expression of her own religious belief as a moral imperative to become vaccinated" …"cannot reasonably be understood to imply an intent on the part of the State to target those with religious beliefs contrary to hers.") (citing *We The Patriots USA, Inc. v. Hochul,* 17 F.4th 266, 283 (2d Cir. 2021), *opinion clarified,* 17 F.4th 368 (2d Cir. 2021)).

Notably, the Court previously held in *Gazzola I* that although "Plaintiffs assert that Defendants Hochul and James[5] are 'architects of the [challenged laws] ... driving passage of the [laws], using public outlets to promote the cause ... and a campaign of animus against those who support the Second Amendment and the U.S. Supreme Court,' "[t]hese vague connections, and

---

[4] Plaintiffs admit in their Opposition that the investigation resulted only in a report and a press release. ECF No. 125 at 43-44.

[5] Defendants acknowledge that Attorney General James has taken steps since *Gazzola I* to enforce certain of the laws at issue in this case. Accordingly, the Eleventh Amendment and sovereign immunity defenses discussed in this section pertain to Governor Hochul and Commissioner Rosado only.

other similarly tenuous connections Plaintiffs allege, are wholly insufficient to establish any connection between Defendants Hochul and James and the enforcement of the New York laws at issue." *Gazzola v. Hochul,* 645 F. Supp. 3d 37, 58–59 (N.D.N.Y. 2022), *aff'd*, 88 F.4th 186 (2d Cir. 2023) ("*Gazzola I*"); *see also Antonyuk v. Hochul*, No. 22-cv-0986, 639 F. Supp. 3d 232, 293-96 (N.D.N.Y. Nov. 7, 2022) (dismissing Governor Hochul as defendant in action challenging New York firearms provisions for violating Second and Fifth Amendments because "Hochul would [not] be the individual who may provide [the plaintiffs] the (legal) relief they seek").

Third, Plaintiffs' argument that Governor Hochul signed an Executive Order reconvening the New York State Legislature, "put the draft bill in front of them" and "kept them in session until they voted in favor of the bill" (ECF No. 125 at 42-43)—even if presumed to be true—does not provide the basis for an exception to *Ex Parte Young*. Indeed, the exception under *Ex parte Young* only applies where the official sued has some connection with the *enforcement* of the act that allegedly violates federal law. *Jeannot*, 2025 WL 80689 at *11 (citing *Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. New York*, 336 F. Supp. 3d 50, 68 (E.D.N.Y. 2018)). Further, if the Court were to accept Plaintiffs' allegations regarding Governor Hochul's role in "designing" the statutes, such actions are protected pursuant to legislative immunity. *See e.g. Lewis v. Cuomo*, 575 F. Supp. 3d 386, 400 (W.D.N.Y. 2021); *Warden v. Pataki*, 35 F. Supp. 2d 354, 358 (S.D.N.Y.), *aff'd sub nom. Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999) (collecting cases).

With respect to Commissioner Rosado, Plaintiffs' Opposition offers no discussion regarding an exception pursuant to *Ex parte Young,* except to note that the Complaint makes allegations regarding "regulatory responsibility" and "funding" in which "DCJS" is referenced, to include the Commissioner herself. ECF No. 125 at 40. Plaintiffs' "regulatory responsibility" allegations in the Complaint note their perceived inadequacies with the statutes and DCJS'

perceived noncompliance with them. *See e.g.* ECF No. 1 ¶ 163. However, the Complaint fails to detail any "particular duty" of Commissioner Rosado to enforce the statutes at issue. Plaintiffs' Complaint fails to even mention Commissioner Rosado by name or title except to allege that she "has designated responsibility for the promulgation of rules and regulations complained of herein, including those necessary to the lawful operation of the Plaintiffs' businesses." ECF No. 1 ¶ 24. Further, Plaintiffs' Complaint fails to allege that DCJS has taken any specific responsibility for enforcement of the subject statutes. The Complaint makes no allegations that DCJS has taken any of the actions that would demonstrate a "particular duty," such as conducting arrests, pursuing criminal charges or civil actions, or conducting investigations or inspections.

**POINT III:   PLAINTIFFS LACK STANDING TO ASSERT CLAIMS AGAINST THE GOVERNOR OR COMMISSIONER**

Plaintiffs lack standing to assert any of their claims against Governor Hochul or Commissioner Rosado because they have not alleged that they suffered any concrete, imminent injury in fact that is fairly traceable to any action by either defendant. They also fail to allege that any ongoing injury could be redressed by an injunction against either defendant. *See Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 122 (2d Cir. 2020), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1 (2022). Plaintiffs' Opposition neglects to address this argument specifically with respect to either Governor Hochul or Commissioner Rosado. ECF No. 125 at 20-39. Indeed, Plaintiffs lack standing against Governor Hochul and Commissioner Rosado for the same reasons that their claims against those Defendants are barred by the Eleventh Amendment as discussed in Point II, *supra*—neither the Governor nor the Commissioner has any particular authority to enforce the challenged statutes, providing a separate and sufficient ground for dismissing all claims against both defendants.

**POINT IV:    PLAINTIFFS' SECOND AMENDMENT CLAIM FAILS BECAUSE THEY CANNOT MEET THE SECOND CIRCUIT'S STANDARD FOR DERIVATIVE STANDING**

**A.    The Court Correctly Concluded That Plaintiffs Themselves Do Not Have Standing To Raise A Second Amendment Claim**

Plaintiffs' Opposition appears to contend that the Second Circuit previously held that Plaintiffs have standing to raise a Second Amendment claim *on behalf of their customers*. *See* ECF No. 125 at 18-20. In support of this contention, Plaintiffs argue that the Second Circuit "expressly applied U.S. Supreme Court rulings to endorse Plaintiff's argument that what cannot be done *to* the law-abiding individual seeking to exercise fundamental civil rights cannot be done *through* the licensed dealer in firearms." ECF No. 125 at 20 (emphasis in original). This is critically incorrect— if the Second Circuit *had* endorsed Plaintiffs' argument, a preliminary injunction would have been issued. Plaintiffs either misread or ignore the Second Circuit's actual decision in *Gazzola II*, which does not protect *Plaintiffs'* right to *sell* firearms—it protects the *public's* right to *buy* firearms. *Gazzola II*, 88 F.4th at 194-198; *see also United States v. Austin*, 729 F. Supp. 3d 396, 406 (S.D.N.Y. 2024) (surveying the Constitution and case law to reject argument for a "constitutional right  to turn a profit on firearms dealing without condition or qualification," as "[t]here is no such unqualified right protected by the Second Amendment, either by its plain text or by implication.").

Even if Plaintiffs' services as firearms dealers *in general* are "necessary to a citizen's effective exercise of Second Amendment rights," it does not follow that the services of the *Plaintiffs specifically* are necessary or constitutionally required under the Second Amendment. The Second Circuit highlighted the Ninth Circuit's decision in *Teixeira*, specifically quoting from that decision: "…the core Second Amendment right to keep and bear arms for self-defense wouldn't mean much without the ability to acquire arms," *Gazzola II*, 88 F.4th at 196-97 (quoting *Teixeira v. County of Alameda,* 873 F.3d 670, 688 (9th Cir. 2017)), but that since it is only this

right to *acquire* that is protected, a derivative claim can only succeed if "the [] law is so restrictive that it threatens a citizen's right to acquire firearms." *Id.* at 196. It follows that "'gun buyers have no right to have a gun store in a particular location, at least so long as their access is not meaningfully constrained.' Nor do they have a right to 'travel' only short 'distances' or receive 'a certain type of retail experience.'" *Id.* at 197 (quoting *Teixeira*, 873 F.3d at 679-80 & n.13).

As discussed in Defendants' Brief (ECF No. 104-7 at 25), in ruling on Plaintiffs' preliminary injunction motion, this Court concluded that the Plaintiff business entities had no Second Amendment rights of their own, *Gazzola I*, 645 F. Supp. 3d at 64, and that "no [individual] Plaintiff has provided sufficient allegations to establish individual standing to pursue a Second Amendment claim." *Id.* at 53. The Second Circuit substantially affirmed the Court's standing analysis, *see Gazzola II*, 88 F.4th at 194 ("we conclude that the district court correctly assessed the merits and standing"), a decision that is binding precedent for this motion.

Plaintiffs' Opposition further fails to provide any counterargument to Defendants' contention that the Second Amendment applies to "the People" and not to corporations or business organizations—perhaps because this notion is supported by this Court's previous decision. Defendants pointed out in their Brief that any claim brought on behalf of the Plaintiff business organizations would fail because the Court correctly held that the Second Amendment does not apply to corporate entities. *See* ECF No. 104-7 at 25-26.

Plaintiffs' Opposition further contends that they possess "individual" standing. ECF No. 125 at 39-40. However, no Plaintiff has standing to prosecute a Second Amendment claim on his or her own behalf because no Plaintiff has alleged any infringement of their Second Amendment rights. *See Gazzola I*, 645 F. Supp. 3d at 53; *Gazzola II*, 88 F.4th at 202 ("The district court held that Appellants lacked Article III standing to challenge each law, and we agree.") (quotation

omitted)). Each Plaintiff has previously acknowledged that he or she already owns firearms, *see, e.g.,* ECF No. 13-3 ¶ 8; ECF No. 13-4 ¶ 9; ECF No. 13-8 ¶ 9, and no Plaintiff alleges any of the challenged laws prevents him/her from keeping or bearing those weapons. In opposition to the instant motion, Plaintiffs all reiterate that they own personal firearms—and will continue to purchase firearms for personal use. *See, e.g.,* ECF No. 122-2, ¶¶ 10, 11; ECF No. 122-3, ¶¶ 15, 23; ECF No. 122-4, ¶ 48; ECF No. 122-5, ¶ 88; ECF No. 122-7, ¶¶ 19, 20; ECF No. 122-9, ¶ 9; ECF No. 122-10, ¶¶ 8-10. To the extent that Plaintiffs' Opposition argues they themselves would be subject to any of the licensing or background check laws they challenge, both this Court, *Gazzola I*, 645 F. Supp. 3d at 53-54, and the Second Circuit, *Gazzola II*, 88 F.4th at 202-04, have found that they failed to allege any actual or imminent injury that would support Article III standing. There simply is no Second Amendment injury to any Plaintiff in their individual capacities.

### B. Any Derivative Second Amendment Claim Pressed On Behalf Of Others Fails

Because Plaintiffs cannot raise Second Amendment claims as business organizations and have not alleged any Second Amendment injuries as individuals, they could only pursue a derivative Second Amendment theory on behalf of their unspecified customers. The Second Circuit has set a demanding standard for such a claim to be cognizable, and Plaintiffs' claim fails because they have not plausibly alleged "that they would suffer the type of burden that is required for their derivative claim to succeed." *Gazzola II*, 88 F.4th at 195. And even if the allegations of the Complaint were viewed as sufficient standing alone, they are flatly contradicted by sources attached to the Answer and subject to judicial notice. They are even contradicted by Plaintiffs' own Opposition and declarations submitted in support of their Opposition, as discussed below.

#### 1. The Second Circuit's Holding In *Gazzola II* Sets A Demanding Standard For Derivative Claims.

Plaintiffs' Opposition correctly quotes the Second Circuit's decision, which sets the rigorous standard that Plaintiffs must meet. ECF No. 125 at 51. Indeed, *Gazzolla II* sets an extraordinarily high bar for a seller to raise a derivative claim on a buyer's behalf: such a claim can only succeed if the challenged regulations "have the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms" or "ha[ve] the effect of prohibiting law-abiding, responsible citizens from possessing common-use weapons." 88 F.4th at 196. And yet, as more fully discussed below under Point IV(B)(2), *infra*, Plaintiffs' own filings demonstrate that these laws do not "eliminate" or "prohibit" any member of the public from buying a gun – at most, they merely cut into the Plaintiffs' profit margins.

Plaintiffs' claim failed at the preliminary injunction stage because "besides [their] say-so, there is no evidence that [New York's] regulations will impose such burdensome requirements on firearms dealers that they restrict protections conferred by the Second Amendment." *Gazzola II*, 88 F.4th at 197. And now that the pleadings are in, sources subject to judicial notice establish that, despite the dire predictions in Plaintiffs' complaint, their customers have not been deprived of the right to acquire firearms. *Cf. id.* at 197 (discussing *Teixeira* and how, "whatever the scope of the right to acquire firearms, the prospective vendors failed to state a claim."). Plaintiffs' own filings merely bolster Defendants' position.

### 2. Documents Subject To Judicial Notice and Plaintiffs' Own Submissions Demonstrate That New Yorkers Continue To Purchase Guns Without Interference.

Documents subject to judicial notice establish that New Yorkers have not been "meaningfully constrained – or, for that matter, constrained at all – in acquiring firearms and ammunition." *Gazzola II*, 88 F.4th at 197. While the Complaint is full of conclusory and hyperbolic allegations about the effect of the challenged laws on the gun industry, neither

Plaintiffs' Complaint nor their Opposition actually allege that they (or any other specific business) will be or has been shut down, even though the new laws have been in effect for over two years.

In fact, Plaintiffs' Opposition does not even attempt to bury the lede, confirming in their preliminary statement that Plaintiffs' businesses are still active and selling firearms two- and one-half years after the laws have gone into effect. ECF No. 125 at 13, 25. The individual Plaintiffs' filings further reflect that they are still actively engaged in the business of purchasing and selling firearms for their respective businesses. *See e.g.,* ECF No. 122-2, ¶¶ 25, 29-30; ECF No. 122-3, ¶ 14; ECF No. 122-4, ¶¶ 41, 44, 60, 61; ECF No. 122-5 ¶¶ 87-90; ECF No. 122-7 ¶ 11; ECF No. 122-9, ¶¶ 7, 8; ECF No. 122-10, ¶ 5.

Further, Plaintiffs offer no counterargument to Defendants' contention that since the challenged law went into effect over two years ago, there has not been any significant change in the number of gun stores in New York State. *See* ECF No. 104-7 at 30. These statistics, which Plaintiffs' Opposition neglects to challenge or contradict, show that there is no reason to believe that "*any* New York firearms dealers – let alone a critical mass of the more than 1,700 such dealers – [have] close[d] due to the challenged regulations." *Gazzola II*, 88 F.4th at 197. Plaintiffs' Opposition further fails to challenge Defendants' contention that these federally-licensed gun stores are continuing to do strong business according to FBI statistics that detail the number of background checks performed in connection with firearm purchases in each state. *See* ECF No. 104-7 at 31; *see Gazzola II*, 88 F.4th at 196. In fact, Plaintiffs submitted declarations from a non-party gun store owner and a non-party gun store manager that furthers Defendants' contention that gun stores are continuing to do business despite the challenged statutes. *See e.g.* ECF No. 122-6, ¶¶ 9-16; ECF No. 122-8, ¶¶ 10-15.

Regarding licensing requirements for semiautomatic rifles, Plaintiffs' Complaint boldly asserts that "[n]o semi-automatic license is known to have issued or to be available to request, resulting in a near total stoppage of the sale of all semi-automatic rifles in New York." ECF No. 1 ¶ 160. As discussed in Defendants' Brief, this assertion is belied by statistics that show this simply is not the case. ECF No. 104-7 at 32; *see also* Declaration of Michael Deyo, ¶ 22. This assertion is also belied by Plaintiffs' own declarations, which admit that they continue to purchase and sell semiautomatic rifles at their respective businesses (and intend to continue to do so in the future). *See e.g.* ECF No. 122-2, ¶¶ 25, 34, 41, 44; ECF No. 122-3, ¶¶ 20, 33; ECF No. 122-4, ¶¶ 44, 51, 60, 61, 115; ECF No. 122-5, ¶¶ 102, 117; ECF No. 122-7, ¶¶ 22, 26, 66; ECF No. 122-9, ¶ 15; ECF No. 122-6, ¶ 55. In fact, some Plaintiffs admit they have purchased semiautomatic rifles for their own personal use (and/or intend to do so in the future). ECF No. 122-3, ¶¶ 24-26, 33, 34; ECF No. 122-4, ¶¶ 60-61. One Plaintiff admits he has not purchased a semiautomatic rifle for personal ownership because he refuses to obtain the required amendment/endorsement on his concealed carry permit in "protest" of the laws. ECF No. 122-10, ¶¶ 11-13.

Plaintiffs' Opposition argues that "gross sales data" can be used to demonstrate the "negative influence" the subject statutes have upon an individual's right to purchase a semi-automatic rifle. *See* ECF No. 125 at 52. The "gross sales data" is submitted from Plaintiff Serafini, who attributes a reduction in his sale of semiautomatic firearms after the statute's effective date to "customers vocal about resisting the license imposition as unconstitutional, and those vocal about wanting to pass down particular types of firearms to kids and grandkids." ECF No. 122-4, ¶ 114. Even if we were to assume that the alleged reduction in semiautomatic firearm sales can be attributed to the reasons mentioned, the standard set forth by the Second Circuit is not whether the subject statutes pose a "negative influence." *Cf. Penn. Central Transp. Co. v. City of New York*,

438 U.S. 104, 124 (1978) ("this Court has [] recognized, in a wide variety of context, that government may execute laws or programs that adversely affect recognized economic values."). Plaintiffs still have not demonstrated (or even plausibly alleged) that the effect of the challenged statutes eliminates the ability of law-abiding, responsible citizens to acquire firearms.

Further, if semiautomatic firearm sales have suffered based on customers' personal belief that the license imposition is unconstitutional and based on their personal preference for "passing down particular firearms" to their descendants, that is patently insufficient to meet the demanding standard set forth by the Second Circuit. Neither Plaintiff Serafini nor Plaintiffs' Opposition even allege that pursuant to the challenged statutes, customers have applied for but have been unable to obtain the permit required for a semiautomatic rifle, resulting in their inability to acquire the firearm. In fact, multiple affidavits offered by Plaintiffs state that the affiants or their customers have received semiautomatic rifle licenses from the relevant counties. *See, e.g.,* ECF No. 122-2 ¶¶ 31-33; ECF No. 122-3 ¶¶ 24-25, 33; ECF No. 122-9 ¶¶ 12-15, 27. Significantly, Plaintiffs' Opposition does not address Defendants' contention that even if "[i]ndividuals [we]re unable to obtain new semi-automatic rifle licenses," ECF No. 1 ¶ 20, the Second Circuit has already found that any such challenge would fail as against the State defendants in this action, since the hypothetical unavailability would stem from the actions of non-defendant counties, and would therefore not be "fairly traceable to the challenged action of the *named defendants*." *Gazzola II*, 88 F.4th at 202-03 (emphasis in the original).

Finally, it bears repeating that Plaintiffs' allegations about the effects of the challenged laws on their own businesses have clearly not come to pass. Although the Complaint alleges that "the new laws will fatally burden the Plaintiffs to shut down their businesses in firearms" and force them "to suffer the loss of their incomes and livelihoods," ECF No. 1 ¶ 55, Plaintiffs' own

submissions in opposition to Defendants' motion squarely contradict this claim. Over two years have passed since the challenged laws have been in effect and all remaining Plaintiffs "continue to engage in the business of commerce in firearms." ECF No. 125 at 25.

In sum, although the Second Circuit recognized the existence of a potential derivative Second Amendment claim brought by gun retailers on behalf of their buyers, it set a high standard. As the Second Circuit previously noted, "Appellants failed to show that they would suffer the type of burden that is required for their derivative claim to succeed." *Gazzola II,* 88 F.4th at 195. Plaintiffs' Complaint does not plausibly allege that the laws they are challenging actually meet this standard, and their dire (and conclusory) predictions about the effect of the laws have been contradicted by two years of data and their own submissions in opposition to this motion. The Court should find that Plaintiffs have failed to state a derivative Second Amendment claim and dismiss that claim accordingly.

### C. There Is Nothing Unconstitutional About A Background Check With Ammunition Purchases

Plaintiffs devote two paragraphs at the back of their brief, *see* ECF No. 125 at 50, to arguing against the background check requirement for ammunition purchases in N.Y. Executive Law § 228, but their argument is contradicted by the large and growing body of law from federal courts all across the country recognizing that "*Bruen* and *Heller* make clear that background checks preceding firearm sales are presumptively constitutional." *McRorey v. Garland*, 99 F.4th 831, 836 (5th Cir. 2024). These cases look to *Bruen*'s language endorsing shall-issue licensing laws, "which often require applicants to undergo a background check," because such laws "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Bruen*, 597 U.S. at 38 n.9. Accordingly, federal courts following "the Supreme Court's guidance" hold "that requirements such as background checks . . , which necessarily occasion

some delay, ordinarily will pass constitutional muster without requiring the government to justify the regulation [historically] at step two." *Maryland Shall Issue*, *Inc., v. Moore*, 116 F.4th 211, 227 (4th Cir. 2024); *accord Antonyuk v. James*, 120 F.4th 941, 1001 (2d Cir. 2024) (discussing "the kind of background check that has long been [constitutionally] permissible.").

There is no reason why the analysis would be different for a background check in connection with an ammunition purchase than it would be for a background check in connection with purchasing a firearm itself. In fact, New York's ammunition background check requirement has already been upheld against a Second Amendment challenge. *See New York State Firearms Association v. James*, 2024 WL 1932050, at *6, *7 (W.D.N.Y. July 2, 2024) (holding that "the ammunition background check requirement is consistent with the well-recognized historical tradition of preventing dangerous individuals from possessing weapons" and "the historical tradition for background checks prior to purchasing . . . ammunition is clearly established.").[6]

Of course, if a background check requirement were "put toward abusive ends," in such a way as to "deny ordinary citizens their right to public carry," *Bruen*, 597 U.S. at 38 n.9, that would "negate[] the presumption that the law or regulation is lawful." *Rocky Mtn. Gun Owners v. Polis*, 121 F.4th 96, 122 (10th Cir. 2024). But there are no allegations in the Complaint that the ammunition background check law operates in such a manner, *see* ECF No. 1 ¶¶ 287-89, let alone allegations sufficient to meet the Second Circuit's standard in *Gazzola II* that a law must "have the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms," in order for a firearm dealer to sue on behalf of customers. 88 F.4th at 196. It is undisputed that ammunition sales continue in New York, and Plaintiffs' affidavits demonstrate that they "continue to purchase ammunition through [their] business for inventory and sale to customers," even with the

---

[6] The appeal of Judge Geraci's decision in *New York State Firearms Association* has been fully briefed and argued before the Second Circuit. *See* Docket, Case No. 24-1290 (2d Cir.).

background check law in effect.  ECF No. 122-2 ¶ 50; *see also* ECF No. 122-5 ¶ 125, ECF No. 122-9 ¶ 30, ECF No. 122-7 ¶¶ 39-40.

**POINT V:     PLAINTIFFS' "CONSTITUTIONAL REGULATORY OVERBURDEN" CLAIM SHOULD BE DISMISSED**

Plaintiffs are correct when they admit that their theories for relief "face serious challenges." *See* ECF No. 125 at 50. For example, to the extent that Plaintiffs contend in their Opposition that the Second Circuit's opinion expressly agrees that they may pursue a "constitutional regulatory overburden" claim separate and apart from their Second Amendment claim (ECF No. 125 at 18-20), this interpretation of the Second Circuit's decision does not reflect the opinion itself. *Gazzola II*, 88 F.4th at 195. In support of this position, Plaintiffs contend that the Second Circuit has invited Plaintiffs to "come back with more" after this Court found Plaintiffs' motion for injunctive relief lacked information about "anticipated costs." ECF No. 125 at 51-52.

Plaintiffs' portrayal of the Second Circuit's holding on this issue is wrong. First, the Second Circuit analyzed this claim under a Second Amendment rubric *only*. *Gazzola II*, 88 F.4th at 195-198. Second, "anticipated costs" was hardly the information the Court deemed missing in Plaintiffs' motion for injunctive relief.  To the contrary, anticipated costs were *the only information Plaintiffs submitted*, which cannot satisfy the rigorous Second Amendment standard set forth for derivative claims. *See* 88 F.4th at 197-98 ("It follows that Appellants, whose declarations (again) focused only on their anticipated costs, failed to present sufficient evidence that *any* New York firearms dealers – let alone a critical mass of the more than 1,700 such dealers – may close due to the challenged regulations. . . .  On the record before us in this case, there is no evidence that New Yorkers currently lack, or will lack under the challenged statutes, relatively easy access to sellers of firearms.")

Additionally, Plaintiffs appear to try to sidestep the first prong of the *Bruen* analysis by fast-forwarding to the second step, wherein the government bears the burden of adducing historical precedents. ECF No. 125 at 52-55. Yet for the reasons stated *supra* under Point IV, Plaintiffs' claims fail prior to this analysis—at the first step—because the text of the Second Amendment simply does not apply to Plaintiffs' commercial activity at all. Neither Plaintiffs' Complaint nor their Opposition cites any basis for their apparent assertion that they may pursue a "constitutional regulatory overburden" claim separate and apart from their Second Amendment claim. Indeed, Plaintiffs provide no basis for this Court to use another, separate, unwritten constitutional right in *addition* to the Second Amendment that would use a different standard than *Bruen*. Consequently, it should be dismissed. *See Gazzola I*, 645 F. Supp. 3d at 71; *Gazzola II*, 88 F.4th at 195; *see also Austin*, 729 F. Supp. 3d at 406 (rejecting argument for "'implicit rights' that may 'lurk beneath the surface of the plain text of the Second Amendment,' particularly 'the <u>commercial</u> dealing of firearms,' which the Second Amendment's plain text certainly does not protect") (emphasis in the original)). Based on the record in this case, including sources subject to judicial notice and Plaintiffs' own admissions, everyday New Yorkers continue to enjoy easy access to sellers of firearms.[7]

**POINT VI:    PLAINTIFFS' CONSPIRACY CAUSE OF ACTION MUST BE DISMISSED**

Plaintiffs' Opposition only briefly addresses their conspiracy claim brought pursuant to 42 U.S.C. §1985(2), which was fully addressed in Defendants' brief on pages 33 through 37.  The Opposition states in conclusory fashion only that Governor Hochul "colluded with one or more persons external to her government staff and legislative or judicial peers for the purpose of

---

[7] Significantly, Plaintiffs Complaint does not plausibly allege—and their opposition neglects to mention—*any* "mass closure" of gun stores that would prevent anyone in their geographic region, or in New York State generally, from purchasing firearms. In fact, any suggestion that such a bald assertion is true is belied by the data supplied by the FBI's NICS database, which is subject to judicial notice. *See* ECF No. 104-7, at 48, fn. 14.

depriving, whether directly or indirectly, such class of persons as are ordinary New York residents seeking to exercise their Second Amendment Rights…" ECF No. 125 at 63. Plaintiffs further allege that Governor Hochul made public statements to "advance her legislative agenda." *Id.*

As an initial matter, because Plaintiffs fail to even mention any other Defendant with respect to this claim, their conspiracy claims against the other Defendants should be deemed abandoned and dismissed. *See Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) (quotation omitted); *see also Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)). Plaintiffs' Opposition further fails to address Defendants' legal argument regarding dismissal pursuant to the intra-corporate conspiracy doctrine – relief cannot be granted based on a claim that the government has conspired with itself. Plaintiffs' conspiracy claims should be deemed abandoned and dismissed for that reason as well.

Plaintiffs' Opposition also makes clear that their alleged conspiratorial actions are limited to the enactment of the challenged legislation, for which Governor Hochul is entitled to legislative immunity (see page 8, *supra*) and which has no relevance to the remaining Defendants, who play no role in the legislative process. Finally, Plaintiffs' Opposition fails to address—or even mention—Defendants' contention that the Complaint failed to properly plead Plaintiffs are members of a protected class. Nowhere in Plaintiffs' Opposition or Complaint is any discussion as to how gun store owners are a protected class for purposes of a Section 1985(2) claim. Plaintiffs' failure to plead class-based discriminatory animus on behalf of any Defendant is fatal to their claims, providing an additional ground for dismissal. *See also* ECF No. 104-7 at 34-35.

**POINT VII:   PLAINTIFFS' CLAIM THAT CERTAIN CHALLENGED STATUTES ARE PREEMPTED BY FEDERAL LAW SHOULD BE DISMISSED**

Plaintiffs' Opposition curiously addresses Defendants' contention that Plaintiffs' preemption claims should be dismissed by adding it to a list of "Additional Arguments" that

Plaintiffs' counsel has proposed to "work with State's Counsel" on. ECF No. 125 at 67. Plaintiffs then appear to request that the Court deny Defendants' motion for judgment on the pleadings regarding their preemption claim because the Complaint should be read to allege a "direct conflict of law" pertaining specifically to N.Y. Gen. Bus Law § 875-b(2) and N.Y. Gen. Bus. Law § 875-f. *Id*. at 69. According to Plaintiffs, these statutes present a direct conflict where federal law should prevail over the new state laws. *Id*. However, Plaintiffs' preemption claim with respect to NY Gen. Bus Law § 875-b(2) was previously addressed by the District Court's preliminary injunction decision. This Court ultimately held that NY Gen. Bus Law § 875-b(2) was *not* in conflict with 18 U.S.C. § 922(h). *Gazzola I,* 645 F. Supp. 3d at 60–61, n. 24. Plaintiffs declined to challenge the District Court's ruling on this issue on appeal. *See gen*. *Gazzola II*, 88 F. 4th 198-202. The law of the case doctrine therefore precludes relitigating the question again. *See Penn. Manufacturers' Ass'n Ins. Co. v. Riccelli Enters., Inc.,* No. 11 Civ. 1539, 2016 WL 6876109, at *3 (N.D.N.Y. May 6, 2016) (Sannes, J.), *aff'd*, 690 F. App'x 52 (2d Cir. 2017). Plaintiffs' Opposition also fails to address that the Second Circuit has already analyzed whether N.Y. Gen. Bus. Law § 875-f is preempted by 18 U.S.C. §§ 923(g) and 926(a), as Plaintiffs' Complaint contends, and decided that it is not preempted. *See* ECF No. 104-7 at 39-40; *Gazzola II*, 88 F.4th at 199-200.

Plaintiffs' Opposition further purportedly requests that Defendants' motion for judgment on the pleadings be denied with respect to N.Y. Exec. Law § 228 because discovery is necessary to resolve factual questions. ECF No. 125 at 69. But what Plaintiffs fail to acknowledge is that the Second Circuit has already resolved that preemption claim as well. *See* ECF No. 104-7 at 40-41; *Gazzola II*, 88 F.4th at 200-01. No further discovery is warranted to fully resolve this issue, which the Second Circuit has already found to completely "lack merit." *Id.* at 201. The Second Circuit's holding is binding on this Court and Plaintiffs' preemption claims should be dismissed.

**POINT VIII:  PLAINTIFFS' FIFTH AMENDMENT CLAIMS SHOULD BE DISMISSED**

Plaintiffs' Opposition fails to substantively address that the Second Circuit has already correctly held that this Court appropriately rejected Plaintiffs' Fifth Amendment self-incrimination claim. *See Gazzola II*, 88 F.4th at 201 & n.8. Consequently, Plaintiffs' Fifth Amendment claims should be deemed abandoned and dismissed.

**POINT IX:    PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM THAT ANY OF THE CHALLENGED STATUTES IS UNCONSTITUTIONALLY VAGUE**

Plaintiffs' only mention in their Opposition of their claim brought pursuant to a void-for-vagueness theory is to argue that if they prevail on their cross-motion for partial summary judgment, "this claim becomes of less importance." ECF No. 125 at 69. Plaintiffs' cross-motion for partial summary judgment should be denied for the reasons set forth under Point XII, *infra*. Further, for the reasons set forth in Defendants' Brief (ECF No. 104-7 at 44-47) and based on Plaintiffs' failure to address Defendants' legal arguments pertaining to their void for vagueness claims, these claims should be deemed abandoned and dismissed.

**POINT X:     PLAINTIFFS' CAUSE OF ACTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. § 1988 SHOULD BE DISMISSED**

Plaintiffs' Opposition appears to concede that the Sixth Cause of Action should be dismissed.  ECF No. 125 at 69.

**POINT XI:    PLAINTIFFS' MOTION FOR LEAVE TO AMEND OR SUPPLEMENT THEIR COMPLAINT SHOULD BE DENIED**

As an initial matter, Plaintiffs contend that when Defendants filed their motion for judgment on the pleadings, they were within time to serve an amended complaint pursuant to the amended civil case management plan. ECF No. 125 at 70. This is incorrect. Plaintiffs' amended pleadings deadline was calendared for October 20, 2024, ECF No. 90, and they failed to file an amended complaint prior to that deadline. Defendants filed their motion for judgment on the

pleadings on October 25, 2024. ECF No. 104. Regardless, the Local Rules of Practice of the Northern District of New York require that a motion to amend or supplement be supported by a proposed pleading. *See* N.D.N.Y.L.R. 7.1(a)(4). A party seeking to amend a pleading "must attach an unsigned copy of the proposed amended pleading to [his] motion papers....The motion must set forth specifically the proposed insertions and deletions of language and identify the amendments in the proposed pleading, either through the submission of a redline/strikeout version of the pleading sought to be amended or through other equivalent means." *Syfert v. City of Rome*, No. 19 Civ. 0775, 2020 WL 7053542, at *2 (N.D.N.Y. Dec. 2, 2020) (citing N.D.N.Y. L.R. 7.1(a)(4)). A plaintiff seeking to supplement a pleading must also submit a proposed pleading which is limited to "transactions or occurrences or events which have occurred since the date of the pleading that the party seeks to supplement," and "which contains paragraphs numbered consecutively to the paragraphs contained in the pleading that it seeks to supplement." *Dean v. Annucci,* No. 22 Civ. 0746, 2023 WL 2325074, at *2, n 2 (N.D.N.Y. Mar. 2, 2023).

One of the purposes of the requirement that a motion include a complete copy of a proposed pleading is to ensure that all of the allegations asserted against the defendants are contained in a single document, thereby reducing the likelihood that a party will overlook one or more allegations against him. *Blount v. Rastani*, 2021 WL 1903865, at *2 (N.D.N.Y. May 12, 2021). This requirement eliminates the confusing nature of "piecemeal" complaints. *Id*. Compliance with this Court's local rules are "not merely technical in nature" and failure to comply with Rule 7.1 is grounds for denying a motion to amend. *See Cusamano v. Sobek,* 604 F. Supp. 2d 416, 508 (N.D.N.Y. 2009); *see also White v. Clark*, 2012 WL 5877160, at *12 (N.D.N.Y. Nov. 20, 2012). Here, Plaintiffs failed to submit a red-lined version of the original pleading or other equivalent

means. *See gen.,* ECF No. 122-125; N.D.N.Y.L.R. 7.1(a)(4). For that reason alone, Plaintiffs' motion to supplement should be denied.

Further, Plaintiffs' Opposition requests generally "[i]f any claim or portion thereof be at risk of dismissal, Plaintiffs request the opportunity to amend their Complaint." ECF No. 125 at 70. This request is both procedurally and substantively improper. *Barzee v. Abdulla*, 2024 WL 4836870, at *12–13 (S.D.N.Y. 2024). "[A] district court is under no obligation to grant leave to amend when the plaintiff offers merely conclusory assertion[s] that amendment would cure a complaint's deficiencies and fail[s] to disclose what additional allegations [he] would make which might lead to a different result." *United States ex rel. Sisselman v. Zocdoc, Inc.,* 2024 WL 4305667, at *12 (S.D.N.Y. 2024). "The Second Circuit has consistently held that district courts may deny leave to amend when a plaintiff requests such leave in a cursory sentence on the last page of an opposition to a motion to dismiss, without offering any justification or attaching a proposed amended pleading." *Id*. (citing *Cinema Village Cinemart, Inc. v. Regal Entertainment Group,* 2016 WL 5719790, at *7 (S.D.N.Y. 2016), *aff'd*, 708 Fed. App'x 29 (2d Cir. 2017) (collecting cases)).

But even if Plaintiffs had properly moved for leave to amend/supplement their Complaint, any amendment would be futile. Here, the Second Circuit has already ruled that most of the plaintiffs' causes of action fail to state a claim. *See* Points II, VII, VIII, *supra*. Further, both sources subject to judicial notice and Plaintiffs' own submissions in opposition to this motion show that the gun industry in New York continues to function, and that no individual person has been denied their right to keep and bear arms. *See* Point IV, *supra.* Consequently, Plaintiffs' attempt to supplement or amend their Complaint would be futile.

## POINT XII: PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD BE DENIED

In addition to opposing Defendants' motion for judgment on the pleadings, Plaintiffs request (over three pages at the back of their sixty-page brief) that the Court grant them pre-discovery summary judgment "in the form of a permanent injunction against a list of statutory provisions, containing direction the NYSP and/or the DCJS publish regulations or otherwise perform regulatory functions." ECF No. 125 at 64-67. The Court need not reach the summary judgment motion because the Plaintiffs have not stated a claim for which relief can be granted; as discussed above, each of Plaintiffs' causes of action fails at the pleading stage. But even if the Court were to reach the merits of Plaintiffs' cross-motion of partial summary judgment, it should be denied for the four reasons discussed below.

### A. Plaintiffs Did Not Plead The Claim Or Seek The Relief That Is The Subject Of Their Summary Judgment Motion

Plaintiffs' Complaint seeks: a declaratory judgment that "all thirty-one (31) new laws, rules and regulations complained of herein shall be struck down and denied of having any legal force and effect;" an "injunctive relief order restraining Defendants and their officers, agents, servants employees and all others from enforcing the laws, rules and regulations complained of herein"; or alternatively, an appointment of a special referee or magistrate to monitor actions by Defendants "to monitor any claims of future Defendant compliance with their responsibilities under any and all new laws allowed to stand…" ECF No. 1 ¶¶ 356-358. However, the Complaint does *not* seek a permanent injunction on the basis that the NYSP and/or DCJS have failed to follow the "new laws, rules and regulations complained of," and it does not request that such relief contain direction that the NYSP and/or the DCJS publish regulations or otherwise perform regulatory functions. Nor do Plaintiffs cite to any portion of the Complaint alleging the "unfulfilled regulatory responsibilities," ECF No. 125 at 55, that now form the basis of their cross- motion. Instead, where Plaintiffs try to argue that their new contentions were "not a sleeper, plead in a complaint and laying dormant,"

*id.*, they cite primarily to the affirmation of Plaintiffs' counsel, and to materials filed well after the Complaint itself; the only cited provision of the Complaint simply lists the many statutes Plaintiffs are facially challenging; nowhere does it allege that the State Police failed to follow them. *See* ECF No. 1 ¶31. Consequently, Plaintiffs cannot now "seek a type of relief not demanded in the complaint based on a claim not alleged in the complaint, particularly when the request is for something as substantial as a permanent injunction." *Renaissance Search Partners v. Renaissance Ltd., L.L.C.,* 2014 WL 12770400, at *9 (S.D.N.Y. 2014), *R&R adopted sub nom.,* 2014 WL 4928945 (S.D.N.Y. Oct. 1, 2014). Plaintiffs' cross-motion for partial summary judgment should be denied on this basis alone.

## B. The *Pennhurst* Doctrine Bars Plaintiff's Summary Judgment Motion

Even if the argument underlying Plaintiffs' summary judgment motion had been properly pled, sovereign immunity and the Eleventh Amendment would preclude any subject-matter jurisdiction over it. The Eleventh Amendment to the United States Constitution prohibits lawsuits against a state without the unambiguous consent of the state or abrogation by Congress. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54-55 (1996). This immunity "includes suits against state officials in their official capacities." *Li v. Lorenzo,* 712 F. App'x 21, 22 (2d Cir. 2017) (citing *Davis v. New York,* 316 F.3d 93, 101-02 (2d Cir. 2002)). And it is well settled that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *see also Santiago v. City of Rome*, No. 6:24-CV-00704 (BKS/MJK), 2025 WL 553347, at *5 (N.D.N.Y. Feb. 19, 2025).

Plaintiffs' submissions make clear that their allegations of "regulatory failure" sound in state law, explaining that "the provisions cross-motioned against originated in three bills signed

into law between June 6, 2022 and July 1, 2022, specifically, NY S.4970-A, S.51001, and S.9458."

ECF No. 125 at 54; *see also id.* (asserting that the bills created "legislatively-conferred . . . regulatory authority."). But pursuant to *Pennhurst*, there can be no federal-court jurisdiction over a claim that state officers failed to fulfill a responsibility under state law. *See Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) ("To the extent Plaintiffs seek prospective relief against Defendants in their official capacity for violations of . . . 'state law,' those claims are indeed barred by the Eleventh Amendment under the *Pennhurst* doctrine."); *Santiago*, 2025 WL 553347, at *5.

**C. Plaintiffs Have Not Shown An Absence of Disputed Material Fact Or Their Entitlement to Summary Judgment**

Even if Plaintiffs had pled the claim they are moving for summary judgment on, and even if subject-matter jurisdiction were proper over that state-law claim, Plaintiffs simply have not shown (particularly at this pre-discovery stage) that there are no genuine disputes of material fact, or that they are entitled to summary judgment. Their Rule 56.1 statement is full of "impermissible commentary, along with impermissible legal arguments," *Checksfield v. IRS*, No. 21 Civ. 1180, 2024 WL 21549, at *2 (N.D.N.Y. Jan. 2, 2024); *see, e.g.,* ECF No. 122-11 ¶¶ 8, 22, 28, 29, 37-39, 48-50, 64-69; 87-90, 170-73. Many of the assertions in it are not supported by any citation, let alone "a specific citation to the record where the fact is established," as required by Local Rule 56.1(a). *See, e.g.,* ECF No. 122-11 ¶¶ 42-43, 60, 62, 69, 85, 114, 162-64, 170-71. And many other assertions are based only on citing to Plaintiffs' (unverified) complaint as if it were fact. *See, e.g.* ECF No. 122-11 ¶¶ 35, 48, 107, 127, 133-34, 139, 141, 150-51, 174, 182, 185, 188; *cf. Capricorn Mgmt. Sys., Inc. v. GEICO*, No. 15 Civ. 2926, 2024 WL 1242616, at *8 (E.D.N.Y. Mar. 16, 2020) ("Allegations in a complaint are not evidence" at summary judgment). There simply is not sufficient evidence, properly adduced, to support the Plaintiffs' claim to relief.

And many of the Plaintiffs' material assertions are vigorously disputed, precluding summary judgment. For instance, Plaintiffs aver that the Superintendent has not promulgated the annual certification for firearms dealers required under N.Y. General Business Law § 875-g(2), *see* ECF No. 122-11 ¶ 18; the State Police aver that he has. *See* Defendants' Responses to Plaintiffs' Statement of Material Facts ("D-SOF") ¶ 18; *see also* 9 NYCRR § 482-2.6. Plaintiffs aver that members of the State Police who inspect gun dealers have only "unofficial checklists of varying formats," *see* ECF No. 122-11 ¶ 36; the State Police aver that there is a specific form (GENL-122) for such inspections. D-SOF ¶ 36. Plaintiffs say that the State Police did not explain the records required to be kept in ammunition transactions, *see* ECF No. 122-11 ¶ 96; the State Police say that they did. *See* D-SOF ¶ 96; *see also* https://gunsafety.ny.gov/resources-gun-dealers. Plaintiffs claim that New Yorkers cannot obtain semiautomatic rifle licenses considered valid by the Superintendent, *see* ECF No. 122-11 ¶ 127; the State Police aver that many hundreds or thousands of New Yorkers have done so. *See* D-SOF ¶ 127; *see also, e.g.,* ECF No. 122-6 ¶ 55; ECF No. 122-3 ¶¶ 24-25, 33; ECF No. 122-5 ¶¶ 107-10 (acknowledging that semiautomatic rifle licenses are being issued and sales are continuing). Plaintiffs claim that the State Police has not issued standards for the required training course that is part of the licensing process, *see* ECF No. 122-11 ¶ 150; the State Police aver that it has. *See* D-SOF ¶ 150.

Lastly, the pre-discovery posture of Plaintiffs' summary judgment motion renders the relief they are seeking premature. *Cf. Elliott v. Cartagena*, 84 F.4th 481, 493 (2d Cir. 2023) ("Only in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery."); *see generally Weilburg v. Koss*, No. 22 Civ. 435, 2023 WL 197462, at *1-2 (N.D.N.Y. Jan. 17, 2023) (Sannes, J.) (collecting cases). Plaintiffs' summary judgment motion is predicated on a host of factual allegations regarding their own actions, beliefs,

intentions, and financial situations, generally asserted based only on citations to their own affidavits. *See, e.g.,* ECF No. 122-11 ¶¶ 63, 91, 106-08, 135-38, 140-42, 175-85. Even if this case survives the current motion for judgment on the pleadings, the Defendants are entitled, at a minimum, to test the veracity of these claimed facts. *Cf. Weilburg*, 2023 WL 197462, at *2; *see also* Attorney Cowan Declaration submitted pursuant to Fed. R. Civ. P. 56(d).

### D. Plaintiffs' Motion for Partial Summary Judgment Should be Denied Because They Cannot Satisfy the Requirements of a Permanent Injunction

Lastly, Plaintiffs simply have not made, particularly on the meager record before the Court at this early stage, the required showings for the injunctive relief they are seeking. "The party requesting permanent injunctive relief must demonstrate (1) irreparable harm ... and (2) actual success on the merits." *Roku, Inc. v. Individuals, Corps.*, 2023 WL 137747, at *2 (S.D.N.Y. Jan. 9, 2023) (citing *Ognibene v. Parkes*, 671 F.3d 174, 182 (2d Cir. 2011)). First, Plaintiffs have not and cannot demonstrate that they are subject to irreparable harm, for the reasons previously stated in this Court's decision denying Plaintiffs' request for preliminary injunctive relief. *See Gazzola I*, 645 F. Supp. 3d at 55-58. Additionally, as more fully discussed *supra* under Point IV, neither Plaintiffs' Complaint, nor their Opposition or cross-motion actually allege that they (or any other specific business) will be or has been shut down, even though the new laws they challenge have been in effect for over two years. Plaintiffs' Opposition confirms that Plaintiffs' businesses are still active and selling firearms two- and one-half years after the laws have gone into effect. ECF No. 125 at 13, 25. The individual Plaintiffs' filings further reflect that they are still actively engaged in the business of purchasing and selling firearms for their respective businesses. *See e.g.,* ECF No. 122-2, ¶¶ 25, 29-30; ECF No. 122-3, ¶ 14; ECF No. 122-4, ¶¶ 41, 44, 60, 61; ECF No. 122-5 ¶¶ 87-90; ECF No. 122-7 ¶ 11; ECF No. 122-9, ¶¶ 7, 8; ECF No. 122-10, ¶ 5.

**CONCLUSION**

Defendants respectfully request that the Court dismiss Plaintiffs' Complaint in its entirety and with prejudice, deny Plaintiffs' motion for leave to amend/supplement their Complaint, deny Plaintiffs' motion for partial summary judgment, and grant such other and further relief as it deems just and equitable.

Dated: Syracuse, New York
      March 20, 2025

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants*
300 S. State Street, Ste. 300
Syracuse, New York 13202

By: **\_s/Aimee Cowan\_\_\_\_\_**
Aimee Cowan
Assistant Attorney General, of Counsel
Bar Roll No. 516178
Telephone: (315) 448-4800
Fax: (315) 448-4853
Email: aimee.cowan@ag.ny.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 20, 2025, she filed Defendants' reply memorandum of law in further support of their motion for judgment on the pleadings, in opposition to Plaintiffs' motion for summary judgment, and in opposition to Plaintiffs' request for leave to amend/supplement the Complaint by electronically filing with the Clerk of the Court herein, using the CM/ECF system, which is understood to have sent notification of such filing electronically to the following:

Paloma A. Capanna, Esq.
Attorney for Plaintiffs
106-B Professional Park Drive
Beaufort, North Carolina 28516

Dated: Syracuse, New York
March 20, 2025

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants
300 S. State Street, Suite 300
Syracuse, New York 13202
By: **_s/Aimee Cowan_____**
Aimee Cowan, Esq.
Assistant Attorney General
Bar Roll No. 516178
Telephone:     (315) 448-4800
Fax: (315) 448-4853
Email: aimee.cowan@ag.ny.gov