**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

NADINE GAZZOLA, individually, and as co-owner,
President, and Bureau of Alcohol, Tobacco, Firearms, and
Explosives Federal Firearms Licensee ("BATFE FFL")
Responsible Person for Zero Tolerance Manufacturing,
Inc., SETH GAZZOLA, individually, and as co-owner,
Vice President, and BATFE FFL Responsible Person for
Zero Tolerance Manufacturing, Inc., JOHN A. HANUSIK,
individually, and as owner and BATFE FFL Responsible
Person for AGA Sales, JIM INGERICK, individually, and
as owner and BATFE FFL Responsible Person for
Ingerick's, LLC, d/b/a Avon Gun & Hunting Supply,
CHRISTOPHER MARTELLO, individually, and as owner
and BATFE FFL Responsible Person for Performance
Paintball, Inc., d/b/a Ikkin Arms, MICHAEL
MASTROGIOVANNI, individually, and as owner and
BATFE FFL Responsible Person for Spur Shooters Supply,
CRAIG SERAFINI, individually, and as owner and
BATFE FFL Responsible Person for Upstate Guns and
Ammo, LLC, and NICK AFFRONTI, individually, and as
BATFE FFL Responsible Person for East Side Traders
LLC,

                        Plaintiffs,

v.

KATHLEEN HOCHUL, in her official capacity as
Governor of the State of New York, STEVEN G. JAMES,
in his official capacity as the Superintendent of the New
York State Police, ROSSANA ROSADO, in her official
capacity as the Commissioner of the Department of
Criminal Justice Services of the New York State Police,
and LETITIA JAMES, in her official capacity as the
Attorney General of the State of New York,

                        Defendants.

1:22-cv-1134 (BKS/DJS)

---

**Appearances:**

*For Plaintiffs:*
Paloma A. Capanna
Law Office of Paloma A. Capanna, P.C.
106-B Professional Park Drive
Beaufort, North Carolina 28516

*For Defendants:*
Letitia James
Attorney General of the State of New York
Aimee Cowan
Assistant Attorney General
300 South State Street, Suite 300
Syracuse, New York 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiffs, licensed firearms dealers engaged in the commercial sale of firearms and ammunition, filed this action challenging New York legislation regarding the business operations of firearms dealers in the state and requiring, inter alia, licensing for the purchase of semiautomatic rifles and background checks for ammunition sales (collectively "firearms laws"). (Dkt. No. 1). The complaint names as Defendants: Kathleen Hochul, in her official capacity as Governor of the State of New York, Steven G. James, in his official capacity as the Superintendent of the New York State Police,[1] Rosanna Rosado, in her official capacity as the Commissioner of the New York Department of Criminal Justice Services, and Letitia James, in her official capacity as the Attorney General of the State of New York. (*Id.*). The complaint alleges six causes of action: Count One alleges that the firearms laws violate the Second, Fifth,

---

[1] Plaintiffs named Steven A. Nigrelli who was the Acting Superintendent of the New York State Police. (Dkt. No. 1). In accord with Fed. R. Civ. P. 25(d), the Court has substituted in his place the current New York State Police Superintendent, Steven G. James. (Dkt. No. 104-7, at 12, n.1).

and Fourteenth Amendments, 42 U.S.C. § 1983, (*id.* ¶¶ 1, 306–13); Count Two alleges that Defendant Hochul conspired with Defendants and others to enact the firearms laws in order to deprive Plaintiffs of their Second Amendment rights, 42 U.S.C. § 1985(2), (*id.* ¶¶ 314–25); Count Three alleges that certain provisions of the firearms laws are pre-empted by federal firearms law, and implicate Plaintiffs' Fifth Amendment right against self-incrimination, (*id.* ¶¶ 326–35); Count Four alleges that certain provisions of the firearms laws are void-for-vagueness, in violation of the Fifth and Fourteenth Amendments, (*id.* ¶¶ 336–43); Count Five, titled "Constitutional-Regulatory Overburden," alleges that certain provisions of the firearms laws "overly burden" a "constitutionally-protected industry" with the "intended outcome of forcing businesses to close," (*id.* ¶¶ 344–51); and Count Six seeks an award of attorney's fees and costs under 42 U.S.C. § 1988, (*id.* ¶¶ 352–55). Plaintiffs seek declaratory and injunctive relief as well as monetary damages. (*Id.* ¶¶ 356–61). Presently before the Court is Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and motion for judgment on the pleadings under Rule 12(c), as well as Plaintiffs' cross-motion for partial summary judgment under Rule 56. (Dkt. Nos. 104, 122). The motions are fully briefed. (Dkt. Nos. 125, 130, 133, 134, 135). For the reasons that follow, Defendants' motions to dismiss and for judgment on the pleadings are granted in part and denied in part and Plaintiffs' cross-motion for partial summary judgment is denied.

## II.    FACTS[2]

### A.    Plaintiffs

The eight individual Plaintiffs are "owners, employers, and employees" of "businesses engaged in lawful commerce in firearms and in gun shows." (Dkt. No. 1, ¶¶ 1, 15). Plaintiffs

---

[2] The facts are drawn from Plaintiffs' complaint and the attached exhibits. (Dkt. No. 1). *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as

Nadine Gazzola and Seth Gazzola own Zero Tolerance Manufacturing, Inc., in Ghent, NY. (*Id.* ¶ 6). Plaintiff John Hanusik does business as AGA Sales, a sole proprietorship in Catskill, NY. (*Id.* ¶ 7). Plaintiff Jim Ingerick owns Ingerick's LLC, d/b/a "Avon Gun and Hunting Supply," in Avon, NY. (*Id.* ¶ 8). Plaintiff Christoper Martello owns Performance Paintball, Inc., d/b/a/ "Ikkin Arms" in Rochester, NY. (*Id.* ¶ 9). Plaintiff Michael Mastrogiovanni "does business as 'Spur Shooters Supply,'" a sole proprietorship in Syracuse, NY. (*Id.* ¶ 10). Plaintiff Craig Serafini owns Upstate Guns and Ammo, LLC in Schenectady, NY. (*Id.* ¶ 12). Plaintiff Nick Affronti works for East Side Traders LLC in Ontario, NY. (*Id.* ¶ 13).

Plaintiffs hold Federal Firearms Licenses ("FFL"), authorized by the federal government through the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to engage in the business of buying and selling firearms under various license types. (Dkt. No. 1, ¶ 17.b); *see also* 18 U.S.C. § 923. Seth Gazzola, Martello, Mastrogiovanni, and Serafini hold "Type 01" FFLs— "dealer[s] in firearms other than destructive devices/gunsmith." (Dkt. No. 1,  ¶¶ 16, 17). They also hold state gunsmithing licenses, conferred through Columbia, Monroe, Onondaga, and Schenectady Counties. (*Id.* ¶ 17.d). Affronti holds a "Type 02" FFL as a "pawnbroker in firearms other than destructive devices." (*Id.* ¶¶ 16, 17.c). Affronti "also holds a corresponding license from NYS, conferred through the Wayne County Clerk's Office." (*Id.* ¶ 17.c). Plaintiffs Nadine Gazzola, Seth Gazzola, and Martello hold "Type 07" FFLs as "manufacturer[s] of firearms." (*Id.* ¶¶ 16, 17.e). These "[p]laintiffs hold these licenses as conferred through Columbia and Monroe

---

an exhibit or any statements or documents incorporated in it by reference.") (citation omitted). The Court assumes the truth of and draws all reasonable inferences from the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Although Defendants have attached exhibits to their answer, (Dkt. No. 79), and filed exhibits in support of their motion for judgment on the pleadings, the Court need not decide whether it may consider such exhibits because the Court finds Defendants are entitled to judgment as a matter of law based on the allegations in the complaint. Likewise, to the extent Plaintiffs rely on facts outside the complaint in their opposition to Defendants' motion for judgment on the pleadings, the Court has not considered those facts, either. However, as noted *supra* Part IV, the Court may consider matters outside the pleadings in connection with Defendants' motion under Rule 12(b)(1).

Counties." (*Id.* ¶ 17.e). "Zero Tolerance Firearms Manufacturing" has a federal license through ATF as a "Special Occupational Taxpayer, Class 2."[3] (*Id.* ¶ 17.f).

To obtain an FFL, each Plaintiff has "completed and submitted" the requisite ATF Form, is "over the age of twenty-one years," is not "a disqualified or prohibited person[] under 18 U.S.C. § 922(g)," has a physical premises where business is conducted, and has "made any additional certifications required." (*Id.* ¶ 18). Each FFL "is counter-signed by one or more Plaintiffs as 'Responsible Persons,' having completed the Responsible Person Questionnaire,'" supplied a photograph and fingerprints, "and undergone a background check." (*Id.* ¶ 17.b). Plaintiffs are required to "renew their federal licenses every three years," and are subject to background checks upon renewal submission. (*Id.* ¶ 18 ).

"Plaintiffs, as individuals, own personal firearms that are legally unrelated to any inventory owned by their businesses." (*Id.* ¶ 20). A background check was conducted on each Plaintiff through the National Instant Background Check System ("NICS") "prior to the purchase of each firearm." (*Id.*). Plaintiffs also have "current NYS concealed carry permits, conferred prior to September 1, 2022, through their counties of residence." (*Id.* ¶ 21).

B.    **Governor Hochul's Alleged "Anti-Civil Rights Agenda"**

According to Plaintiffs, in May 2022, Governor Hochul, "flanked by Defendants Nigrelli, Rosado, and James" began a "public relations campaign . . . to denounce the United States Supreme Court" in an effort "to justify her 'common sense gun laws.'" (Dkt. No. 1, ¶ 90). Both Governor Hochul and Attorney General James have used "their official New York State websites to promote" the "Every Town for Gun Safety" and "Giffords Law Center" organizations. (*Id.* ¶

---

[3] The complaint does not indicate whether Zero Tolerance Manufacturing, Inc. and Zero Tolerance *Firearms* Manufacturing are the same entity.

91). On May 30 and June 6, 2022, three of the four bills containing the firearms laws at issue were signed into New York law. (*Id.* ¶ 28).

On June 23, 2022, following the Supreme Court's issuance of *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), Governor Hochul held a press conference addressing the decision, which she described as striking "down a New York law that limits who can carry concealed weapons" and "absolutely shocking" because it took "away our right to have reasonable restrictions" on the Second Amendment. (*Id.* ¶¶ 94, 96). Governor Hochul stated that the absence of such a law "could place millions of New Yorkers in harm's way" and described the *Bruen* decision as not "just reckless," but "reprehensible." (*Id.* ¶ 94). Governor Hochul further stated that "New Yorkers" "should have the right of determination of what we want to do in terms of our gun laws in our state" and that "our states and our governors have a moral responsibility to . . . have laws that protect our citizens because of what is going on—the insanity of the gun culture that has now possessed everyone all the way up to even to the Supreme Court." (*Id.*). Governor Hochul stated that she had been "working with a team of . . . legal experts from all over this country and organizations like Everytown" to prepare. (*Id.* ¶ 95). In a meeting the same day with mayors from around the state, Governor Hochul stated that her "team" had been "in discussions with the legislature about our legislative options" and that she would do "everything in [her] power to protect New Yorkers." (*Id.* ¶ 103).

On June 24, 2022, Governor Hochul issued a "Proclamation" to force the State Legislature to reconvene, noting that the "Supreme Court's reckless and reprehensible decision to strike down New York's century-old concealed carry law puts lives at risk here in New York." (*Id.* ¶ 104).

6

On June 29, 2022, Governor Hochul gave another speech thanking the "State Police for being so aggressive in their approach in making sure that we protect citizens" and describing the *Bruen* decision as removing New York's "limitation on who can carry concealed weapons in our state." (*Id.* ¶¶ 105–06). Governor Hochul advised that she had been talking to "leaders," "academics," and "people in think tanks to find out what we can do legally, constitutionally, to make sure that we do not surrender my right as Governor, or our rights as New Yorkers to protect ourselves from gun violence." (*Id.* ¶ 108).

On July 1, 2022, the New York State Senate passed the fourth bill containing, inter alia, provisions requiring background checks for ammunition and classroom training and testing for concealed carry licenses. (*Id.* ¶¶ 28, 31.o, .q). In a speech that same day, Governor Hochul stated that as a result of her "extraordinary team" and "hard work," her team and partners crafted "gun safety legislation" that "will continue to keep New Yorkers safe from harm, even despite this setback from the Supreme Court." (*Id.* ¶ 111).

During an August 31, 2022 press conference with Governor Hochul, then-First Superintendent of the New York State Police, Steven Nigrelli, asserted that the New York State Police would "have zero tolerance" and that "if you violate this law, you will be arrested." (*Id.* ¶ 115).

### C.    Challenged Laws

In general, Plaintiffs challenge four categories of the new firearms laws: laws regulating business operations of firearms dealers, N.Y. Gen. Bus. L. § 875-b(1), § 875-b(2), § 875-c, § 875-e, § 975-f, § 875-g(1)(b), § 875-g(2), § 875-h; laws requiring training for concealed carry licenses, N.Y. Pen. L. § 400.00(1)(o)(iii), § 400.00(2)(f), § 400.00(19); laws requiring licenses to purchase semiautomatic rifles, N.Y. Pen. L. § 265.65, § 265.66, § 400.00(2), (3), (6), (7), (8), (9),

(14); and laws regarding background checks and requiring them for ammunition sales, N.Y. Exec. L. § 228; N.Y. Pen. L. § 400.02(2), § 400.03(2), § 400.06.

The new provisions in New York General Business Law § 875, require firearms dealers to, among other things, implement security plans for their business premises, *id.* § 875-b, to exclude persons under the age of 18 from portions of premises where firearms and ammunition are stocked or sold, *id.* § 875-c, to provide specific training to employees, *id.* § 875-e, to maintain records, to make reports to state officials, *id.* § 875-f, and to allow period inspection of their premises by New York State Police, *id.* § 875-g.[4] Citing reports from government websites,[5] Plaintiffs assert that as of 2021, there were 1,782 federally-licensed firearms dealers, 9 federally-licensed pawnbrokers, and 329 federally licensed firearms manufacturers in the State of New York. (Dkt. No. 1, ¶ 73). However, Plaintiffs allege that the new firearms laws "impact[]" them as individuals and as "businesses engaged in lawful commerce in firearms" and that:

> the new laws will fatally burden the Plaintiffs to shut down their businesses in firearms, to surrender or to lose their federal and/or state licenses required to engage in lawful commerce in firearms, to face criminal charges and fines, to suffer the loss of their incomes and livelihoods, to suffer the financial loss or degradation of the values of their business inventories, to cause them to lay-off one or more employees, and to, themselves, individually, be unable to purchase firearms and/or ammunition as convicted criminals are disqualified persons.

(*Id.* ¶ 55).

---

[4] Additionally, the Court notes that the knowing violation of New York General Business Law, Article 39-BB is a class A misdemeanor and that violations of New York Penal Law §§ 265.65, 265.66, 270.22, 400.00, 400.03 carry consequences under New York Penal Law. *See* N.Y. Gen. Bus. L. § 875-i; N.Y. Pen. L. §§ 265.65, 265.66, 270.22, 400.00(15), 400.03(8).

[5] Plaintiffs cited reports from https://www.atf.gov and https://www.fbi.gov. (*See* Dkt. No. 1, ¶¶ 73–74 & notes 46, 47, 48, 49) (citing https://www.atf.gov/firearms/listing-federal-firearms-licensees (last visited Sept. 26, 2025); https://www.atf.gov/resource-center/fact-sheet/2024-federal-firearms-and-explosives-licenses-types (last visited Sept. 26, 2025); https://www.atf.gov/firearms/docs/undefined/ffltypebystate12-10-2021pdf/download (last visited Sept. 26, 2025); https://www.fbi.gov/file-repository/cjis/nics_firearm_checks_-_month_year_by_state.pdf/view (last visited Sept. 26, 2025)).

III.     **PROCEDURAL HISTORY**

A.     *Gazzola I*

Plaintiffs filed the complaint in this action on November 1, 2022. (Dkt. No. 1). On November 8, 2022, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction seeking to enjoin Defendants from enforcing the state firearms laws at issue on the grounds that they: (1) were an "unconstitutional regulatory overburden," in violation of the Second and Fourteenth Amendments; (2) were preempted by federal law and violated the Fifth Amendment right against self-incrimination; and (3) were void-for-vagueness, in violation of the Fourteenth Amendment. (Dkt. No. 13, at 2–5). Following briefing and oral argument, the Court denied Plaintiffs' motion. (Dkt. No. 42); *Gazzola v. Hochul (Gazzola I)*, 645 F. Supp. 3d 37 (N.D.N.Y. 2022), *aff'd* 88 F.4th 186 (2d Cir. 2023).

1.     **Article III Standing**

a.     **Owners of FFL Businesses**

The Court found that Plaintiffs "satisfied the standing requirements for seeking a temporary restraining order and preliminary injunction as owners of FFL businesses." *Id.* at 52–53. The Court explained that Plaintiffs had adequately established standing as owners of FFL businesses in light of their allegations of "existing economic injuries arising from the challenged New York laws" and "intention to violate" the laws, and because Plaintiffs' injuries "could plausibly be redressed by enjoining these laws." *Id.*

b.     **Individual Second Amendment Claims**

As the complaint contained "isolated allegations of injury to individual Second Amendment rights," with respect to the firearms laws governing licenses to possess semiautomatic rifles, N.Y. Pen. L. § 400.00(2), background checks to purchase ammunition,

N.Y. Pen. L. § 400.02(2), and firearms training for concealed carry permit renewals, N.Y. Pen. L. § 400.00(1)(o)(iii), the Court also considered whether any individual Plaintiffs sufficiently showed individual standing. *Id.* at 53–54; (*see also* Dkt. No. 1, ¶ 31.o, .p, .q). The Court found Plaintiff Martello (the only Plaintiff who asserted an interest in purchasing a semiautomatic rifle) failed to show standing to challenge New York Penal Law § 400.00(2) (semiautomatic rifle license) because he failed to allege that he took any steps to purchase a semiautomatic rifle and because his allegation that Livingston County did not offer a semiautomatic license failed to show how a non-defendant county's failure to issue such a license was fairly traceable to the challenged provision. *Gazzola I*, 645 F. Supp. 3d at 53. The Court further found that Plaintiffs' conclusory allegations concerning purchasing ammunition and renewing their concealed carry permits failed to show actual or imminent injury. *Id.* at 53–54.

Accordingly, the Court concluded that Plaintiffs failed to establish standing for individual Second Amendment claims. *Id.* at 54.

### 2.      Likelihood of Success

#### a.      Second Amendment

As to their Second Amendment claim, the Court found that Plaintiffs, as FFL businesses, failed to show that "the Second Amendment's plain text covered the conduct regulated by the statutory provisions at issue," i.e., conduct by "corporations or . . . business organizations." *Id.* at 64–65 ("[N]one of the 'trilogy' of cases cited by Plaintiffs—*N.Y. State Rifle & Pistol Ass'n v. Bruen*, *McDonald v. City of Chicago*, and *District of Columbia v. Heller*—"cast[s] doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms." (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 81 (2022) (Kavanaugh, J., concurring))).

For the same reason—the absence of caselaw calling into question the constitutionality of laws governing the commercial sale of firearms—the Court found Plaintiffs failed to establish a

likelihood of success on their "novel" "constitutional regulatory overburden" claim that the protections of the Second Amendment extend to businesses engaged in the sale of firearms. *Id.* at 70–71.

### b.    Preemption (Fifth Amendment)

The Court found that Plaintiffs failed to demonstrate a likelihood of success on their claim that certain of the firearms laws at issue conflicted with, and were therefore preempted by federal firearms laws. *Id.* at 59–63.[6] Finding that Plaintiffs failed to demonstrate any actual conflict with federal law, the Court concluded Plaintiffs failed to demonstrate a likelihood of success on their federal preemption claim. *Id.* For the same reason—the absence of any actual conflict—the Court found Plaintiffs failed to show a likelihood of success on their claim that New York General Business Law § 875-g(1)(b) "compels them to certify compliance with New York laws," which "will force them to violate federal law," violating their Fifth Amendment right against self-incrimination. *Gazzola I*, 645 F. Supp. 3d at 69–70 (concluding New York General Business Law § 875-g(1)(b) would not "compel[] them to make a testimonial communication that is incriminating").

### c.    Vagueness (Fourteenth Amendment)

Plaintiffs also sought injunctive relief under the Fourteenth Amendment, claiming that "certain provisions of the New York laws . . . are so vague as to be unintelligible and highly likely to result in random and irregular prosecutions." *Id.* at 65 (internal quotation marks

---

[6] Specifically, Plaintiffs argued that (1) New York General Business Law § 875-b(1) and (2), which "deal generally with the security of firearms in the possession of firearms dealers," and §§ 875-f, 875-g(1)(b), which concern "the maintenance and certification of firearms compliance records" conflicted with 18 U.S.C. § 926 and 28 C.F.R. § 25.11(b); (2) New York State Executive Law § 228, which makes New York "a state point of contact for implementation of 18 U.S.C. sec. 922(t), all federal regulations and applicable guidelines adopted pursuant thereto, and the national instant criminal background check system [('NICS')] for the purchase of firearms and ammunition" conflicted with 19 U.S.C. § 922(t); and (3) New York Penal Law section § 400.02(2), which creates a "statewide license and record database specific for ammunition sales," conflicted with 18 U.S.C. § 922(t) and 28 C.F.R. § 25.6. *Gazzola I*, 645 F. Supp. 3d at 59–63.

omitted).[7] In the absence of any claim that Plaintiffs had "been faced with any enforcement action," the Court construed Plaintiffs' claim as "a facial, rather than as-applied[,] challenge." *Id.* (internal quotation marks omitted). As to the claims concerning the challenged provisions of New York General Business Law § 875, the Court found that Plaintiffs failed to demonstrate that the "provisions 'can never be validly applied,' either as a result of providing inadequate notice or inviting arbitrary enforcement." *Gazzola I*, 645 F. Supp. 3d at 67 (internal citation omitted) (first quoting *Vt. Rt. to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 128 (2d Cir. 2014); and then citing *Johnson v. United States*, 576 U.S. 591, 596 (2015)). The Court noted that "each of these claims centers on the ability of New York agencies, namely the New York State Police, to promulgate rules, regulations, or guidance," and that there was "no suggestion that the provisions will fail to provide adequate notice or invite arbitrary enforcement." *Id.* The Court further found Plaintiffs failed to show a likelihood of success on their vagueness claims stemming from New York Penal Law §§ 400.00, 400.02, 400.03, concerning training, semi-automatic firearm licensing, or ammunition sales records and background checks, as they provided "no basis for this argument." *Id.* at 68–69.

---

[7] Plaintiffs asserted unconstitutional vagueness as to: N.Y. Gen. Bus. § 875-b(2) (requiring "dealer's business premises" to be "secured by a security alarm system"); N.Y. Gen. Bus. § 875-e (employee training); N.Y. Gen. Bus. § 875-f (records of sale, inventory and submission of records to New York State Police); N.Y. Gen. Bus. § 875-g(1)(b) (annual certification of compliance to Superintendent of New York State); N.Y. Gen. Bus. § 875-h (allowing Superintendent of New York State Police to "promulgate such additional rules and regulations as the superintendent shall deem necessary to prevent firearms, rifles, and shotguns from being diverted from the legal stream of commerce"); N.Y. Pen. L. § 400.00(1), (19) (governing "[l]icensing and other provisions relating to firearms," including "in-person live firearms safety course" for "issuance or renewal" of concealed carry license); N.Y. Pen. L. § 400.00(2), (3), (6), (7), (8), (10)(c) (license for semiautomatic rifle); N.Y. Pen. L. §§ 400.02(2), 400.03(2), (3) (ammunition sales records and background check requirement for ammunition purchase). *Id.* at 66–68.

> d.     **Claims against Governor Hochul and Attorney General James (Eleventh Amendment)**

The Court found that Plaintiffs failed "to show any likelihood of success on their claims against Defendants Hochul and James" because such claims were likely barred by the Eleventh Amendment. *Id.* at 58–59.

Finally, the Court found that in the absence of a showing of suffering a constitutional deprivation, a showing of lost profits was insufficient to establish irreparable harm. *Id.* at 54–57. The Court therefore denied Plaintiffs' motion for a preliminary injunction. *Id.* at 71. Plaintiffs appealed.[8]

**B.     *Gazzola II***

Without reaching the issue of irreparable harm, the Second Circuit affirmed this Court's denial of Plaintiffs' motion for a preliminary injunction on the ground that this Court "correctly assessed the merits and standing." *Gazzola v. Hochul (Gazzola II)*, 88 F.4th 186, 194 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2659 (2024).

**1.     Second Amendment**

> a.     **Derivative Second Amendment Claim**

While the Circuit ultimately agreed that Plaintiffs failed to show a likelihood of success on the merits of their Second Amendment claim as firearms dealers, it disagreed with this Court's holding that "there was 'no basis for [Plaintiffs'] novel theory'" (of unconstitutional regulatory overburden) "that New York law violated their customers' right to acquire firearms by imposing too many burdens on them as commercial dealers." *Gazzola II*, 88 F.4th at 195

---

[8] However, as the Second Circuit noted, Plaintiffs did not appeal this Court's rejection of their claims that "New York law burdened their Second Amendment right to sell firearms," that the firearms laws were "unconstitutionally vague in violation of the Fourteenth Amendment," or this Court's determination that the claims against Governor Hochul and Attorney General James were barred by the Eleventh Amendment. *Gazzola v. Hochul (Gazzola II)*, 88 F.4th 186, 194 n.5 (2d Cir. 2023) (citing *Gazzola I*, 645 F. Supp. 3d at 64–69).

(quoting *Gazzola I*, 645 F. Supp. 3d at 71). Referring to Plaintiffs' theory as a "Derivative Second Amendment Claim," it first found Plaintiffs had standing, explaining that vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." *Id.* at 194 (quoting *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017) (en banc)). The Second Circuit held that Plaintiffs have derivative standing to pursue Second Amendment claims on behalf of their customer base. *Id.* at 194–95.

Still, analyzing Plaintiffs' allegations regarding as a derivative Second Amendment claim that the New York firearms laws are so restrictive that they "threaten[] a citizen's right to acquire firearms," the Circuit found Plaintiffs failed to show a likelihood of success. The Circuit found that "besides Appellants' say-so, there is no evidence that [the New York General Business Law] regulations will impose such burdensome requirements on firearms dealers that they restrict protections conferred by the Second Amendment." *Id.* at 197. The Circuit further noted:

> It follows that Appellants, whose declarations (again) focused only on their anticipated costs, failed to present sufficient evidence that any New York firearms dealers – let alone a critical mass of the more than 1,700 such dealers – may close due to the challenged regulations. It bears repeating that "gun buyers have no right to have a gun store in a particular location," nor a right to "travel" no more than short "distances" to the most convenient gun store that provides what they deem a satisfactory "retail experience." *Teixeira*, 873 F.3d at 679-80 & n.13. On the record before us in this case, there is no evidence that New Yorkers currently lack, or will lack under the challenged statutes, relatively easy access to sellers of firearms.

*Gazzola II*, 88 F.4th at 197–98.

### a.    Individual Plaintiffs

The Circuit affirmed this Court's finding that Plaintiffs, "proceeding . . . as individuals," failed to establish Article III standing to bring a pre-enforcement, Second Amendment, challenge to the following provisions:

(1) New York Penal Law § 400.00(2), which requires a license to possess semiautomatic rifles, *Gazzola II*, 88 F.4th at 202–03 (finding Plaintiff Martello failed to "how the *non-defendant* county's failure to provide license applications [for the purchase of a semiautomatic rifle] is fairly traceable to the challenged action of the *named defendants* – Governor Hochul, Attorney General James, Superintendent Chiumento, and Commissioner Rosado"),

(2) New York Penal Law § 400.02(2), which requires a buyer to undergo background checks to purchase ammunition, *id.* at 203 (explaining that because Plaintiff "Serafini is a seller of ammunition, and the background-check requirement applies only to 'any other person who is not a dealer in firearms . . . or a seller of ammunition,'" New York Penal Law § 400.02(2) does not require him to undergo a background check when he purchases ammunition," and therefore concluding that "he does not have standing to challenge it" (quoting N.Y. Pen. L. § 400.02(2)), and

(3) New York Penal Law § 400.00(1)(o)(iii), which requires a concealed-carry license applicant or individuals renewing existing licenses in certain counties to provide certification of completion of firearms training satisfying certain specifications, *id.* (explaining that as Plaintiffs already have concealed carry licenses, and are not residents of counties requiring renewal, New York Penal Law § 400.00(1)(o)(iii) "does not apply to them" and thus that they do not have standing to challenge it).

      2.       **Preemption (Fifth Amendment)**

As to Plaintiffs' preemption claims, the Second Circuit explained that as Congress, in 18 U.S.C. § 927, had "expressly disclaimed field preemption," Plaintiffs "must rely on conflict preemption, demonstrating a 'direct and positive conflict' between federal and state law such 'that the two cannot be reconciled or consistently stand together,'" in order to show preemption.

*Id.* at 198 (quoting 18 U.S.C. § 927). Reviewing Plaintiffs' claims that New York General

Business Law § 875-b(1) (requiring security plan), § 875-f (requiring book or electronic-based

record of "purchase, sale, inventory, and other records"), New York Executive Law § 228 and

New York Penal Law § 400.02 (requiring background checks for ammunition sales) conflicted

with federal law, specifically, 18 U.S.C. §§ 923, 926, "and regulations promulgated pursuant to §

926," the Circuit found no error in this Court's examination and rejection of "each of Appellants'

theories of preemption." *Id.* at 198–201. The Circuit further found this Court "appropriately

rejected Appellants' self-incrimination claim . . . that New York law violates their right to be free

from self-incrimination by compelling them to annually certify their compliance with New York

law." *Id.* at 201 n.8. It noted that Plaintiffs' Fifth Amendment claim rested on "their predicate

claim" that New York General Business Law § 875-g(1)(b) "conflicts with federal law, such that

compliance with New York law would implicitly be a violation of federal law," but concluded

that "[b]ecause [Plaintiffs] failed to show that predicate, their self-incrimination claim

necessarily fails." *Id.*

### C.    Timeliness of Defendants' Rule 12(b)(1) Motion

Plaintiffs argue that the Court should deny Defendants' Rule 12(b)(1) motion to dismiss

for lack of subject matter jurisdiction on the ground that it is untimely. (Dkt. No. 125, at 15–18).

Defendants reply that Plaintiffs' argument is without merit. (Dkt. No. 130-9, at 12–13). The

Court agrees.

Plaintiffs rely on the language in Rule 12(b), which governs "How to Present Defenses,"

and provides, in relevant part, that "[a] motion asserting any of these defenses must be made

before pleading if a responsive pleading is allowed." (Dkt. No. 125, at 16 (citing Fed. R. Civ. P.

12(b)). Plaintiffs argue that since Defendants withdrew their original, timely, motion to dismiss

under Rule 12(b)(1), and have filed their answer, their time for making a motion to dismiss under

Rule 12(b)(1) has expired. (*Id.*). Even if, as a technical matter, Plaintiffs are correct that a motion under Rule 12(b)(1) for lack of subject matter jurisdiction is untimely if filed after the filing of a responsive pleading, courts generally construe such motions as having been filed under Rule 12(h)(3), which provides for dismissal of an action "at any time" in the event "the Court determines . . . that it lacks subject matter jurisdiction." Fed. R. Civ. P. 12(h)(3); *see Bell v. Ramirez*, No. 13-cv-7916, 2014 WL 7178344, at *2, 2014 U.S. Dist. LEXIS 174905, at *5 (S.D.N.Y. Dec. 9, 2014) ("[W]hen a party challenges subject-matter jurisdiction after answering the complaint, courts treat the challenge as a motion under Rule 12(h)(3)"); *Greystone Bank v. Tavarez*, No. 09-cv-5192, 2010 WL 3325203, at *1, 2010 U.S. Dist. LEXIS 85462, at *2 (E.D.N.Y. Aug. 19, 2010) (noting that because the defendant answered, "a 12(b)(1) motion [was] technically not the correct procedural vehicle for its challenge to the Court's subject matter jurisdiction" but that motion could be construed as a motion pursuant to Rule 12(h)(3), which allowed for dismissal at any time for lack of subject matter jurisdiction); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (explaining that "[t]he objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment" and noting Rule 12(h)(3)'s lack of time limitation). Moreover, the standard governing a Rule 12(h)(3) motion is the same as that governing a motion under Rule 12(b)(1). *Bell*, 2014 WL 7178344, at *2, 2014 U.S. Dist. LEXIS 174905, at *5. Accordingly, the Court construes Defendants' Rule 12(b)(1) motion as having been made under Rule 12(h)(3).[9]

---

[9] Plaintiffs make no objection to the timeliness of Defendants' motion to dismiss for failure to state a claim under Rule 12(c), nor could they: a motion for judgment on the pleadings for failure to state a claim may be made "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c).

## IV.     STANDARD OF REVIEW

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018, at *8 (N.D.N.Y. Oct. 29, 2021) (citation omitted). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true[ ] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)

"The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). Thus, "[t]o survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court will grant a motion for judgment on the pleadings "if, from the pleadings, the

moving party is entitled to judgment as a matter of law." *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 340 (S.D.N.Y. 2008).

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).

## V.    ANALYSIS

### A.    Eleventh Amendment Immunity

Defendants seek dismissal of all claims against Governor Hochul and Commissioner Rosado on the grounds that they are barred by the Eleventh Amendment, no injury is fairly traceable to these Defendants, and legislative immunity bars suit against Defendant Hochul. (Dkt. No. 104-7, at 21–25). Plaintiffs assert that the *Ex parte Young*, 209 U.S. 123 (1908), exception applies to these Defendants. (Dkt. No. 125, at 40–45).

The Eleventh Amendment generally prohibits lawsuits against a state without that state's consent. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). This prohibition extends to individuals sued for damages in their capacities as state officials. *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). However, under the Supreme Court's decision in *Ex parte Young*, "[a] plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that [the] complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). For this exception to apply, "the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of

federal law." *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372–73 (2d Cir. 2005)

(quoting *Ex parte Young*, 209 U.S. at 157). A state official's "general duty to execute the laws is

not sufficient to make [the official] a proper party." *Roberson v. Cuomo*, 524 F. Supp. 3d 196,

223 (S.D.N.Y. 2021); *see also Warden v. Pataki*, 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999), *aff'd*

*sub nom. Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999). Nor is a state attorney general a proper

party absent a specific connection to the enforcement of the challenged laws. *See Chrysafis v.*

*James*, 534 F. Supp. 3d 272, 290 (E.D.N.Y. 2021); *see also Mendez v. Heller*, 530 F.2d 457, 460

(2d Cir. 1976). Connection with the enforcement of an act that is a continuing violation of

federal law includes "both a **_particular_ duty to enforce the statute in question** and a

demonstrated willingness to exercise that duty." *Citizens Union of City of New York v. Attorney*

*Gen. of New York*, No. 16-cv-9592, 2017 WL 2984167, at *4 (S.D.N.Y. June 23, 2017) (quoting

*Kelly v. New York State Civil Serv. Comm'n*, No. 14-cv-716, 2015 WL 861744, at *3, 2015 U.S.

Dist. LEXIS 27443, at *8 (S.D.N.Y. Jan. 26, 2015)).

Plaintiffs argue that New York law "contemplates the Governor can prosecute through

the NY Office of the Attorney General" and, under New York Executive Law § 63(2), (3), (8),

can "appoint a special prosecutor," and can require the State Attorney General to investigate and

prosecute unlawful acts, including matters under the New York State Police or the Department of

Criminal Justice Services' responsibility, and inquire into matters of public safety. (Dkt. No. 125,

at 41–42). Plaintiffs allege that the Governor created the firearms laws at issue, forced them

through the State Legislature, and has exhibited ongoing "animus against those who seek to

exercise their Second Amendment rights." (*Id.* at 42 (citing Dkt. No. 1, ¶¶ 89–129)). However,

these general allegations regarding Governor Hochul's support for the firearms laws and

participation in their enactment do not allow a plausible inference that the Governor had a

particular duty to enforce those laws. *See Jeannot v. New York State*, 762 F. Supp. 3d 217, 234 (E.D.N.Y. 2025) (dismissing claims against governor as barred by the Eleventh Amendment where complaint failed to allege any particular duty governor held with respect to law regarding state Medicaid program "beyond having made general statements about her support for it"); *see also Grant v. Lamont*, No. 22-cv-01223, 2023 WL 5435941, at *2, 2023 U.S. Dist. LEXIS 147954, at *5–6 (D. Conn. Aug. 23, 2023) ("But even if all of Plaintiffs' representations regarding the Governor's involvement with firearm policy are accepted, they do not constitute a sufficient connection under *Ex parte Young* to show that the Governor has a particular duty to enforce the laws in question.").

Plaintiffs' allegations regarding Governor Hochul's powers under New York Executive Law § 63 are similarly insufficient to allow an inference of a particularized duty to enforce the firearms laws in question. *See*, *e.g.*, *Kuck v. Danaher*, 822 F. Supp. 2d 109, 142 (D. Conn. 2011) ("[C]ourts in the Second Circuit have not extended the exception under *Ex parte Young* on the basis that a state official has a general duty to execute and enforce state laws."). Defendants' motion to dismiss the claims against Governor Hochul on the ground that they are barred by the Eleventh Amendment is therefore granted.

Defendants also move to dismiss the claims against Defendant Rosado, Commissioner of the Department of Criminal Justice Services of the New York State Police as barred by the Eleventh Amendment. (Dkt. No. 104-7, at 22–23). As Defendants observe in their reply, Plaintiffs have not addressed Commissioner Rosado in their opposition briefing, "except to note that the Complaint makes allegations regarding 'regulatory responsibility' and 'funding' in which 'DCJS' is referenced, to include the Commissioner herself." (Dkt. No. 130-9, at 15 (quoting Dkt. No. 125, at 40)). The only arguably specific allegations in the complaint

concerning Commissioner Rosado are that: "[s]he has designated responsibility for the promulgation of rules and regulations complained of herein, including those necessary to the lawful operation of the Plaintiffs' businesses," (Dkt. No. 1, ¶ 24), and that she "flanked" Governor Hochul, along with Defendants Nigrelli, and James, when Governor Hochul "conducted a public relations campaign across the state since May 2022 to denounce the United States Supreme Court," (*id.* ¶ 90). These allegations say nothing about Commissioner Rosado's duties in relation to enforcement of the firearms laws at issue, or otherwise, and thus are insufficient to allow a plausible inference regarding enforcement.

Although the complaint refers to the DCJS throughout, those allegations principally concern DCJS's duty to fulfill its "statutorily-defined responsibilities" to develop "a 'standardized firearms safety training' course" and to approve "course materials." (*Id.* ¶ 159(a) (quoting N.Y. Exec. L. §§ ¶¶ 837(23)(a) and 235(1))); and to issue or to make a semiautomatic rifle license "available to request," (*id.* ¶ 160). Plaintiffs also assert that DCJS has "received ten grants totaling nearly $20 million between FY2015 – FY2020 from the federal Office of Justice Programs" as "financial inducements" to report state records, but have not voluntarily contributed such records to the federal government, (*id.* ¶¶ 194–95). None of these allegations allow an inference that Commissioner Rosado or DCJS has a particular duty to enforce the firearms laws at issue. There is therefore no basis on which to infer Commissioner Rosado has a particularized duty sufficient for application of *Ex parte Young*.

These vague connections, and other similarly tenuous connections Plaintiffs allege, are wholly insufficient to establish any connection between Governor Hochul and Commissioner Rosado and the enforcement of the New York laws at issue. *See Roberson*, 524 F. Supp. 3d at 223; *Chrysafis*, 534 F. Supp. 3d at 290; *see also Antonyuk v. Hochul*, No. 22-cv-0986, 2022 WL

16744700, at *39–40, 2022 U.S. Dist. LEXIS 201944, at *114–19 (N.D.N.Y. Nov. 7, 2022) (dismissing Hochul as a defendant in an action challenging New York firearms provisions for violating the Second and Fifth Amendments because "Hochul would [not] be the individual who may provide [the plaintiffs] the (legal) relief they seek"). Accordingly, Defendants' motion to dismiss the claims against Governor Hochul and Commissioner Rosado is granted.[10]

**B.    Standing (Second Amendment)**

Defendants argues for dismissal of Plaintiffs' Second Amendment claims, asserting that the Court previously concluded that "the Plaintiff business entities had no Second Amendment right of their own," and that Plaintiffs failed to establish standing for their claim, as individuals, that firearms laws violate their Second Amendment rights. (Dkt. No. 104-7, at 25–27 (citing *Gazzola I*, 645 F. Supp. 3d at 53, 64)). Plaintiffs oppose dismissal. (Dkt. No. 125, at 18–40).

**1.    Plaintiffs as Firearms Dealers**

Defendants construe the Court's prior conclusion—that Plaintiffs failed to establish a likelihood of success on their claim that the firearms laws burdened their Second Amendment right to sell firearms, *Gazzola I*, 645 F. Supp. 3d at 64–65—as a holding that Plaintiffs lacked Article III standing. This is incorrect. The Court reached this conclusion after evaluating the *merits* of Plaintiffs' Second Amendment claim, not Plaintiffs' standing. Indeed, both this Court and the Second Circuit found Plaintiffs adequately showed standing as firearms dealers. *Gazzola I*, 645 F. Supp. 3d at 52 (finding "that at least one Plaintiff [as a business owner] satisfied the standing requirements for each claim," based on their allegations of "existing economic injuries arising from the challenged New York laws that are already in effect that could plausibly be

---

[10] Defendants further argue that "Plaintiffs' lack standing to assert any of their claims against Governor Hochul or Commissioner Rosado." (Dkt. No. 104-7, at 23–25). This is essentially a reformulation of their Eleventh Amendment argument that neither Defendant has any particular duty to enforce the firearms laws at issue. The Court has addressed this argument already and found in Defendants' favor.

redressed by enjoining these laws"); *Gazzola II*, 88 F.4th at 194 (noting that it "no trouble concluding that [Plaintiff firearms dealers] have standing to bring" a derivative Second Amendment claim). Defendants identify no basis for questioning these conclusions in their present motion. Accordingly, Defendants' motion to dismiss Plaintiffs (as firearms dealers) for lack of standing is denied.

### 2.    Plaintiffs' Individual Claims

Defendants seek dismissal of Plaintiffs' claims, as individuals, that the firearms laws violate their Second Amendment rights. (Dkt. No. 104-7, at 25–27). Specifically, Defendants argue that: "Plaintiffs' failure to allege standing in their Complaint (and then subsequently establish standing to the higher standard required of a preliminary injunction movant) requires dismissal of any Second Amendment claim Plaintiffs raise on their own behalf." *Id.* at 25 (citing *Do No Harm v. Pfizer Inc. (Do No Harm I)*, 96 F.4th 106, 121 (2d Cir. 2024), *opinion vacated and superseded on reh'g by Do No Harm v. Pfizer Inc. (Do No Harm II)*, 126 F.4th 109 (2d Cir. 2025)). Plaintiffs oppose dismissal but do not identify any facts or arguments overlooked by this Court or the Second Circuit in evaluating their individual Second Amendment claims. (Dkt. No. 125, at 39–40).

At the time Defendants filed their memorandum of law, there was support for the general proposition that "dismissal, not further proceedings, [is] the next logical step" when a court has determined at the preliminary injunction stage that a plaintiff lacks standing. *Do No Harm I*, 96 F.4th at 121. However, on March 6, 2025, following rehearing, the Second Circuit vacated *Do No Harm I. Do No Harm II*, 126 F.4th at 113. In *Do No Harm II*, the Circuit considered whether the plaintiff's "failure to establish standing to secure a preliminary injunction doomed its claims altogether," *id.* at 120 (asking "if a plaintiff seeks a preliminary injunction but fails to establish standing, is a court obligated to dismiss the case altogether?"), and concluded that "the answer to

[its] central question is nuanced," *id.* It explained that in cases where "[t]he plaintiff's legal theory itself, rather than the insufficiency of the plaintiff's evidence . . . doom[s] the plaintiff's standing," "the court cannot consider the merits of the preliminary injunction motion and should dismiss the claim altogether." *Id.* at 121 (citing *Munaf v. Geren*, 553 U.S. 674, 691 (2008)). However, it found, "[o]n the other hand, [that] if the failure to establish standing arises from the insufficiency of the plaintiff's evidence of standing [for a preliminary injunction], and that insufficiency may be remediable, dismissal . . . would be premature." *Id.* It further found that "even in cases where the plaintiff's failure to muster sufficient evidence to establish standing to secure a preliminary injunction arises from the plaintiff's failure to proffer sufficient evidence to establish standing, the consequence of that failure is that *the plaintiff isn't entitled to a preliminary injunction*," not "outright dismissal." *Id.* at 121–22. Accordingly, the Court must consider whether Plaintiffs adequately show standing to pursue their individual Second Amendment claims.

"Under Article III of the U.S. Constitution, '[t]he judicial Power of the United States' extends only to certain 'Cases' and 'Controversies.'" *Lacewell v. Office of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (citing U.S. Const. art. III, §§ 1–2). To establish Article III standing, "a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized[ ] and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). Where "a

case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc.*, 578 U.S. at 338.

Although Plaintiffs state in the complaint that they are challenging the new firearms laws "as individuals and as businesses engaged in lawful commerce in firearms," the complaint does not delineate which claims Plaintiffs pursue in an individual capacity, if any. (Dkt. No. 1, ¶ 1). The Court's previous consideration of Plaintiffs' individual claims arose from their contention in their preliminary injunction reply (which they reiterated at oral argument) that they were asserting infringement of their individual civil rights with respect to the unavailability of a license to purchase a semiautomatic rifle, the background check to purchase ammunition, and the training requirement for renewal of the concealed carry license. *Gazzola I*, 645 F. Supp. 3d at 53 (citing Dkt. No. 33, at 7). However, in opposition to Defendants' motion to dismiss, they offer two paragraphs, devoid of analysis, and no longer specify which claims they are bringing in an individual capacity, asserting only that while "much of Plaintiffs' discussion is industry specific, their [individual] use of and involvement with firearms and ammunition should be plainly understood." (Dkt. No. 125, at 39). In any event, assuming (based on their preliminary injunction submissions) that Plaintiffs are asserting individual Second Amendment claims with respect to the unavailability of licenses to purchase semiautomatic rifles throughout the state, (Dkt. No. 1, ¶ 20.b), the ammunition background check, and the requirements for renewal of their concealed carry licenses, the Court finds they have failed to allege standing.

To the extent Plaintiffs' individual challenge to the semiautomatic licensing provisions, *see*, *e.g.*, N.Y. Pen. § 400.00(2), is to the alleged unavailability of licenses at the county level or "upon information and belief, throughout the State," (Dkt. No. 1, ¶ 20.b), they have failed to allege standing because there is no basis for concluding that a "*non-defendant* county's failure to

provide license applications is fairly traceable to the challenged action of the *named* [state] *defendants*." *Gazzola II*, 88 F.4th at 202. Further, it is not disputed that individuals in New York have obtained the licensing necessary to purchase semiautomatic rifles. (*See* Dkt. No. 122-4, ¶ 49 (Serafini averring that [s]ince September 1, 2022, I got a Schenectady County amendment to my pre-existing concealed carry permit in order to continue to purchase semi-automatic rifles for personal use, ownership, and possession"); *see* Dkt. No. 79-3, ¶ 5 (counsel for NYSP averring that "since the semiautomatic rifle licensing requirement took effect there have been approximately 9,615 new firearm licenses issued throughout the State that include the authority to purchase/possess semiautomatic rifles, and during the same time period approximately 2,533 existing firearm licenses have been amended to include the authority to purchase/possess semiautomatic rifles")). Thus, even assuming license applications were unavailable in September 2022, when this action was filed, to the extent Plaintiffs challenge the availability of applications for licenses to purchase semiautomatic rifles or the availability of licenses themselves, their claim appears to be moot. *See*, *e.g.*, *New York State Rifle & Pistol Ass'n, Inc. v. James*, No. 22-cv-907, 2025 WL 553423, at *5 n.5, 2025 U.S. Dist. LEXIS 28731, at *14 n.5 (N.D.N.Y. Feb. 18, 2025) ("Where a plaintiff challenges a licensing law, their claims become moot if they receive a license." (citing *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 121–22 (2d Cir. 2020))).

Nor have Plaintiffs identified any allegations in the complaint, arguments, or evidence that would call into question the Circuit's conclusion that New York Penal Law § 400.02(2) is inapplicable to Plaintiff Serafini, the only Plaintiff who claimed that he has not purchased ammunition due to the background check requirement, because he is a firearm dealer or seller of

ammunition. *Gazzola II*, 88 F.4th at 203. Indeed, as all Plaintiffs are firearms dealers and sellers of ammunition, there is no basis for concluding § 400.02(2) applies to any Plaintiff.

Likewise, Plaintiffs, all of whom have a concealed-carry license, (Dkt. No. 1, ¶ 21), have failed to suggest there is evidence that they reside in the city of New York, or the counties of Nassau, Suffolk, or Westchester, the only counties requiring training for renewal of an existing license under New York Penal Law § 400.00(1), (10)(a) ("Elsewhere than in the city of New York and the counties of Nassau, Suffolk and Westchester, any license to carry or possess a pistol or revolver, issued at any time pursuant to this section or prior to the first day of July, nineteen hundred sixty-three and not previously revoked or cancelled, shall be in force and effect until revoked as herein provided."); *see Gazzola II*, 88 F.4th at 203–04. Accordingly, Defendants' motion to dismiss Plaintiffs' individual Second Amendment claims for failure to show Article III standing is granted.

### C.    Derivative Second Amendment Claim[11]

Defendants move for judgment on the pleadings dismissing Plaintiffs' derivative Second Amendment claim for failure to state a claim for relief. (Dkt. No. 104-7, at 27–33). Plaintiffs oppose Defendants' motion. (Dkt. No. 125, at 50–62).

In the complaint, Plaintiffs assert that the requirements the new firearms laws place on firearms dealers are so burdensome (financially and otherwise) that they will result in "the closure of their businesses." (Dkt. No. 1, ¶ 33). Specifically, Plaintiffs contend that the "compliance" provisions in New York General Business Law § 875-b§ 875-c,  § 875-e§ 875-f, § 875-g, New York Executive Law § 228, requiring background checks for ammunition sales, and

---

[11] Although Defendants include this argument under a heading referring to "standing," their argument is that the complaint fails to state a derivative Second Amendment claim as a matter of law. (Dkt. No. 104-7, at 27–33).

New York Penal Law 400.00(2), requiring licenses for semiautomatic rifles, impermissibly burden their customers' Second Amendment rights. (Dkt. No. 125, at 50–62).[12]

The Second Amendment provides that, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has held that the Second Amendment protects an individual's right to keep and bear arms for self-defense. *Bruen*, 597 U.S. at 17.[13] More specifically, the Supreme Court has recognized that the Second Amendment "forbids a State from banning the in-home possession of common-use weapons by law-abiding, responsible citizens," *Gazzola II*, 88 F.4th at 195 (citing *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)), forbids a state from "requiring them to show a special need to carry such weapons outside the home," *id.* (citing *Bruen*, 597 U.S. at 70).

From these holdings, two principles follow: first, "[a] State cannot circumvent [the Second Amendment] by banning outright the sale or transfer of common-use weapons and necessary ammunition," and; second, "commercial regulations on firearms dealers, whose services are necessary to a citizen's effective exercise of Second Amendment rights, cannot have the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms." *Gazzola II*, 88 F.4th at 195–96; *see also id.* at 196 ("It is indeed a fundamental principle of

---

[12] This section of Plaintiffs' memorandum is confusing. Plaintiffs place their arguments regarding the "compliance mandates" of New York General Business Law § 875 under the heading "Unconstitutional Regulatory Overburden," (Dkt. No. 125, at 50), and their arguments regarding the ammunition and semiautomatic licensing provisions under the heading "Second Amendment Derivative Claims," (*id.* at 60). By contrast, the Second Circuit characterized Plaintiffs' "regulatory overburden" theory and arguments regarding the "compliance mandates" as a "derivative Second Amendment claim." *Gazzola II*, 88 F.4th at 194. Plaintiffs do not explain why they revert to using the "unconstitutional regulatory overburden" language for their arguments concerning § 875, but utilize "Second Amendment Derivative Claims" in connection with their challenge to the ammunition and semiautomatic licensing provisions. Nor do they appear to contend there is a difference in applicable legal standards. Accordingly, for convenience, the Court uses a single heading to address Plaintiffs' arguments.

[13] "Strictly speaking, [states] [are] bound to respect the right to keep and bear arms because of the Fourteenth Amendment, not the Second." *Bruen*, 597 U.S. at 37.

constitutional law that 'what cannot be done directly cannot be done indirectly. The Constitution deals with substance, not shadows.'" (quoting *Cummings v. Missouri*, 71 U.S. 277, 325 (1866))). At the same time, in discussing the scope of the Second Amendment, the Supreme Court has expressly declined "to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms" and has identified such "regulatory measures" as "presumptively lawful." *Heller*, 554 U.S. at 626–27 & n.26. Thus, in order to state a claim under the Second Amendment challenging state regulations on the conditions and qualification of commercial firearms sales, Plaintiff firearms dealers must "overcome" "the presumption of legality" of those regulations. *Gazzola II*, 88 F.4th at 195.

        While neither the Supreme Court nor the Second Circuit has specified what is required to "overcome" the presumption of legality, one way the Second Circuit has found that a commercial firearms dealer might overcome it would be to show "that the New York law is so restrictive that it threatens" or "meaningfully constrains" a New York citizen's right to acquire firearms or ammunition. *Id.* at 196–97; *see id.* at 196 n.6 (noting that it has not yet had "occasion to set out specific guidance as to how a trial court must assess evidence that a commercial regulation is stifling the individual right of access to firearms" but that "whatever the standard is, a State cannot impose a regulation on commercial firearms dealers as a class that has the effect of prohibiting law-abiding, responsible citizens from possessing common-use weapons"); *see also B&L Prods. Inc. v. Newsom*, 104 F.4th 108, 119 (9th Cir. 2024) (explaining that while the Ninth Circuit has not yet "specif[ied] what is required to overcome that presumption, requiring that a regulation 'meaningfully constrain[ ]' the right to keep and bear arms for the purpose of self-defense faithfully tracks the Second Amendment's plain text" (quoting *Teixeira*, 873 F.3d at 680)).

1.      **New York General Business Law**

Here, Plaintiffs allege that "the new laws will fatally burden the Plaintiffs to shut down their businesses in firearms" and "to surrender or lose their federal and/or state licenses required to engage in lawful commerce in firearms." (Dkt. No. 1, ¶ 55). Specifically, Plaintiff firearms dealers contend they will be put out of business if required to: "implement a security plan for securing firearms . . . including firearms . . . in shipment," N.Y. Gen Bus. L. § 875-b(1); secure firearms "in a locked fireproof safe or vault . . . or in a secured and locked area" during non-business hours, *id.* § 875-b(1)(a); store ammunition separately from firearms "and out of reach of customers," *id.* § 875-b(1)(b); secure the premises with "a security alarm system . . . installed and maintained" by a "properly licensed" "security alarm operator" that is "monitored by a central station," *id.* §875-b(2)); equip the location with "a video recording device at each point of sale and each entrance and exit to the premises, which shall be recorded" and the recordings maintained for two years, *id.*; "exclude all persons under eighteen years of age from those portions of its premises where firearms . . . or ammunition are stocked or sold, unless such person is accompanied by a parent or guardian," *id.* § 875-c; "provide . . . training developed by the superintendent" to all new and existing employees, maintain training records, and hire employees that are "at least twenty-one years of age," *id.* § 875-e; maintain "a book" or "electronic-based record" detailing firearms transactions that must be available at "any time" "to law enforcement agencies" and submit copies of records to New York State Police twice per year, *id.* § 875-f; and submit an annual certification of compliance in a "form and content" regulated by the superintendent and submit to inspection at least once "every three years" by the state police "to determine compliance," with the regulations, *id.* § 875-g(1), (2).

As an initial matter, none of these requirements regarding the business operations of firearms dealers implicate the plain text of the Second Amendment—which protects the

individual right to keep and bear arms. *See Bruen*, 597 U.S. at 24 (holding that litigant invoking Second Amendment must first establish that "the Second Amendment's plain text covers and individual's conduct"). In other words, the Second Amendment does not protect Plaintiffs' proposed conduct: operating their businesses, which involve the sales of firearms and ammunition. *See B&L Prods. Inc.*, 104 F.3d at 117 (finding that "the plain text of the Second Amendment does not cover B&L's proposed conduct—namely, contracting for the sale of firearms and ammunition on state property" and explaining that the language in the Second Amendment "says nothing about commerce"). The Court therefore finds the above provisions regulating the business operations of firearms dealers to be presumptively lawful. *See id.* at 119 ("For any law to be 'presumptively lawful,' it necessarily must not implicate the plain text of the Second Amendment.").

Plaintiffs have not addressed in their briefing the requisite analysis from *Gazzola II,* 88 F.4th at 195–98, i.e. how these requirements are so restrictive as to threaten a citizen's right to acquire firearms. At the time the complaint was filed, there were 1,782 federally-licensed firearms dealers, 9 pawnbrokers, and 329 firearms manufacturers in New York. (Dkt. No. 1, ¶ 73 (citing ATF, "Report of Active Firearms Licenses – License Type by State Statistics," https://www.atf.gov/firearms/listing-federal-firearms-licensees (last visited Sept. 26, 2025))). Plaintiffs allege in the complaint that since the enactment of the new firearms laws "[b]usiness is falling off." (*Id.* ¶ 161). Plaintiffs allege that to comply with the requirement that firearms be secured during non-business hours will be time consuming, (*id.* ¶ 234 (estimating "more than one hour prior to opening and more than one hour after closing to even attempt to remove all firearms from their secure positions on the shop floor, to box or case, and to put into several, large gun safes for the night")), and costly, (*id.* ¶¶ 240–41 (estimating cost of "$20,000 -

$500,000 for safes, plus construction costs ranging from $100,000 - $250,000")). Plaintiffs estimate the financial impact of an alarm system to be a "minimum of $1,200 - $3,500/year," (*id.* ¶ 251), and that the cost of the requisite cameras and storage capacity to range from $89,000 to $143,000 every two years, (*id.* ¶ 259), that employee training will cost $2,630 per employee, per year, (*id.* ¶ 271). Plaintiffs estimate the cost of having "a bouncer at the door of their premises" to comply with the provision prohibiting unaccompanied minors in areas where firearms are sold could cost "$7,800/year - $23,400/year." (*Id.* ¶ 281).

Even crediting the eight Plaintiffs' allegations that the new statutory provisions will require, in some cases, extensive structural changes to premises and will come at a high economic cost to all firearms dealers, they offer no allegations about the impact on the approximately 1,700 firearms dealers in New York beyond asking the Court to infer those businesses are likely to incur the same costs. In the absence of allegations concerning the impact on New York firearms dealers and/or allegations regarding general operating costs, profit, profit margins, employee wages, employee ages, security measures currently in place, even crediting Plaintiffs' cost estimates, it would be little more than speculation to infer that these regulations would put the eight Plaintiffs, or any of the 1,700 firearms dealers in New York State out of business. There is, therefore, no basis, on which to plausibly infer that the new General Business Law provisions would impair citizens' access to firearms or ammunition in New York. *See B&L Prods., Inc.*, 104 F.4th at 110, 119 (finding challenged statutes banning firearm sales at certain fairgrounds and "on all state property" were a "minor constraint on the precise locations within a geographic area where one can obtain firearms" and affirming dismissal where the plaintiff made "no allegation that a ban on sales on state property would impair a single individual from keeping and bearing firearms"). Accordingly, Defendants' motion for judgment on the pleadings

as to Plaintiffs' derivative Second Amendment claims in Counts One and Five regarding the

General Business Law provisions in § 875 is granted.

### 2. Ammunition and Semiautomatic Rifles

Plaintiffs also challenge New York Executive Law § 228's requirement of a background

check for ammunition purchases and the semiautomatic licensing provisions in New York Penal

Law § 400.00(2), and assert that their derivative claims are subject to analysis under *Bruen* as

they directly implicate core Second Amendment rights. (Dkt. No. 1, ¶ 181; Dkt. No. 125, at 61–

62). However, in arguing for dismissal of Plaintiffs' derivative Second Amendment claims,

Defendants devote one paragraph to the semiautomatic licensing provisions and do not address

the ammunition background check provisions in their opening memorandum. (Dkt. No. 104-7, at

32). Plaintiffs' opposition is correspondingly minimal—though it does include two paragraphs

on the ammunition background check. (Dkt. No. 125, at 61). In addition, neither the

semiautomatic licensing nor the ammunition provisions were at issue in the motion for

preliminary injunction (beyond being raised as individual claims), and therefore were not briefed

as derivative Second Amendment claims there, either.[14] Further, while the language of the

Second Amendment may not expressly protect the conduct Plaintiffs seek to engage in—*selling*

semiautomatic rifles and ammunition, *see B&L Prods. Inc.*, 104 F.th at 117–18 (noting that "[o]n

its face," the Second Amendment's language "says nothing about commerce, let alone firearm

sales"), because Plaintiffs' conduct may nonetheless implicate the plain text of the Second

---

[14] Plaintiffs include a section in their memorandum asserting that they have standing "to challenge the concealed carry teaching requirements through allegations of business operations, deficiencies in regulatory responsibilities by the NYSP and DCJS, and a corresponding loss of business revenues." (Dkt. No. 125, at 35–39). Plaintiffs appear to argue that because the NYSP and DCJS have not "performed work assigned to them under the" new firearms laws, N.Y. Exec. L. § 837(23)(a) and N.Y. Pen. L. §265.20(3-a), Nadine Gazzola and Seth Gazzola have been unable to teach, "losing more than $48,000 to date." (Dkt. No. 125, at 37, 39; *see also* Dkt. No. 1, ¶¶ 159.e–k). The allegations regarding lost teaching income are not contained in the complaint but, in any event, allegations that two otherwise qualified firearms instructors are unable to teach, fail to allow a plausible inference of any meaningful constraint on any Second Amendment rights.

Amendment, *see id.* at 118 ("[U]nless the right to *acquire* firearms receives some Second

Amendment protection, the right to keep and hear firearms would be meaningless."), the Court

declines to address these claims in the first instance without complete briefing.[15] Accordingly,

the Court denies Defendants' motion for judgment on the pleadings as to Plaintiffs' derivative

Second Amendment claims based on the semiautomatic licensing and ammunition background

check provisions.

### D.    Preemption (Count Three)

Defendants move to dismiss Plaintiffs' claim that the eight statutes cited in paragraph 131

of the complaint, New York General Business Law § 875-b(1), § 875-b(2), § 875-f, § 875-f(2),

§ 875-f(3), § 875-g(b)(1), and New York Executive Law § 228, conflict with 18 U.S.C. § 921

and 27 C.F.R., Chapter II, part 478. (Dkt. No. 104-7, at 37–44 (citing Dkt. No. 1, ¶ 131)).

Plaintiffs oppose dismissal and argue that there is direct conflict between federal law and New

York General Business Law § 875-b(2)[16] and § 875-f and that "discovery is necessary to resolve

factual questions" regarding the "transfer of the federal NICS background check to the

Defendant NYS Police" under New York Executive Law § 228. (Dkt. No. 125, at 68–69).

Plaintiffs do not respond to Defendants' arguments regarding the other provisions of New York

General Business Law cited in their complaint.

As the Second Circuit has explained, because Congress has "expressly disclaimed field

preemption" Plaintiffs must "rely on conflict preemption, demonstrating 'a direct and positive

---

[15] Moreover, as the parties are aware, the ammunition provision has been briefed, argued, and is awaiting decision by the Second Circuit in *New York State Firearms Association v. James*, No. 23-cv-6524, 2024 WL 1932050, 2024 U.S. Dist. LEXIS 80568 (W.D.N.Y. May 2, 2024), appeal filed, No. 24-1290.

[16] As Defendants note, in *Gazzola I*, this Court found Plaintiffs failed to show that N.Y. Gen. Bus. L. § 875-b(2) conflicted with 18 U.S.C. § 922(h), and Plaintiffs did not challenge this finding on appeal. (Dkt. No. 130-9, at 29 (citing *Gazzola I*, 645 F. Supp. 3d at 60–61 n.24)).

conflict between' federal and state law such 'that the two cannot be reconciled or consistently stand together.'" *Gazzola II*, 88 F.4th at 198 (quoting 18 U.S.C. § 927).

This Court and the Second Circuit extensively analyzed all of the provisions Plaintiffs identified in their complaint as conflicting with federal law and found no conflict as a matter of law. *Gazzola I*, 645 F. Supp. 3d at 59–63; *Gazzola II*, 88 F.4th at 198–201. "[O]rdinarily, findings of fact and conclusions of law made in a preliminary injunction proceeding do not preclude reexamination of the merits at a subsequent trial." *Cayuga Indian Nation of New York v. Seneca Cnty., New York*, 978 F.3d 829, 834 (2d Cir. 2020) (quoting *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998)). "This is because a preliminary injunction order is, by its very nature, 'tentative.'" *Id.* (quoting *Goodheart Clothing Co. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 274 (2d Cir. 1992)). Thus, "[i]t would . . . be anomalous at least in most cases . . . to regard the initial [preliminary injunction] ruling as foreclosing the subsequent, more thorough consideration of the merits that the preliminary injunction expressly envisions. *Id.* (quoting *Goodheart Clothing*, 962 F.2d at 274). "However, even in the preliminary injunction posture . . . a well-considered conclusion of law by [the Second Circuit] in a published opinion, which addresses a pure issue of law that cannot be impacted by further development of the record, is binding precedent, as with any other published decision." *Giambalvo v. Suffolk Cnty., New York*, No. 23-208, 2025 WL 2627368, at *6 n.4, 2025 U.S. App. LEXIS 23638, at *21 n.6 (2d Cir. Sept. 12, 2025). Here, where Plaintiffs point to no factual allegations in the complaint and make no arguments whatsoever calling into question the holdings by this Court, or, more importantly, by the Second Circuit that the statutory provisions, by their terms, did not conflict with federal law, the Court finds no reason to conclude otherwise. Accordingly, incorporating the prior decision by this Court finding that New York General Business Law § 875-b(2) did not

conflict with 18 U.S.C. § 922(h), *Gazzola I*, 645 F. Supp. 3d at 60–61 n.24, and the published

decision by the Second Circuit regarding the remaining provisions, *Gazzola II*, 88 F.4th at 198–

201, the Court grants Defendants' motion for judgment on the pleadings with respect to

Plaintiffs' preemption claim for the reasons stated in those decisions. Count Three of the

complaint is accordingly dismissed.

### E.    Void-for-Vagueness (Fourteenth Amendment) (Count Four)

Defendants move for dismissal of Count Four, arguing that Plaintiffs fail to state a

plausible claim that any of the challenged statutes listed in the complaint are unconstitutionally

vague. (Dkt. No. 104-7, at 44–47). Plaintiffs' response to this argument, in its entirety, states

that: if Plaintiffs "prevail in their cross motion for summary judgment, thus eliminating the

premises inspection without regulations and advance notification, this claim becomes of less

importance." (Dkt. No. 125, at 69).[17] Defendants reply that "based on Plaintiffs' failure to

address Defendants' legal arguments pertaining to their void for vagueness claims, these claims

should be deemed abandoned and dismissed." (Dkt. No. 130-9, at 30). The Court agrees. In the

Second Circuit, district courts regularly find "[a] plaintiff's failure to respond to contentions

raised in a motion to dismiss claims constitute an abandonment of those claims." *M.M. ex rel.*

*J.M. v. New York City Dep't of Educ.*, No. 09-cv-5236, 2010 WL 2985477, at *6, 2010 U.S. Dist.

LEXIS 75127, at 17 (S.D.N.Y. July 27, 2010) (citing cases); *see also Lomonoco v. Saint Anne*

*Inst.*, 15-cv-1163, 2018 WL 2324051, at *12, 2018 U.S. Dist. LEXIS 85169, at *34 (N.D.N.Y.

May 22, 2018) ("[T]he Court may, and does, construe the failure to respond to an opposing

---

[17] Piecing Plaintiffs' allusion to "premises inspection" together with their motion for partial summary judgment, it appears that Plaintiffs are most concerned about the absence of regulatory materials regarding the on-site inspection of firearms dealers' premises to evaluate compliance with New York General Business Law § 875. (Dkt. No. 125, at 65 (referring to the "failure of the NYSP Superintendent to issue regulations in advance of any on-site period inspections of licensed dealers in firearms" as "[c]ritical")). But the absence of such regulatory materials are irrelevant to the issue of whether the provisions in New York General Business Law § 875 are facially vague.

party's arguments as an effective abandonment of the claim."). Indeed, despite having the

opportunity to file a reply, Plaintiffs did not respond to Defendants' abandonment argument.

Accordingly, Plaintiffs' Fourteenth Amendment vagueness claims are dismissed as abandoned.

### F.    Conspiracy (Count Two)

Defendants move for dismissal of Count Two, which alleges that Governor Hochul,

Defendants, and others conspired to deprive Plaintiffs of their Second and Fourteenth

Amendment rights, in violation of 42 U.S.C. § 1985(2). (Dkt. No. 104-7, at 33–37). Plaintiffs

oppose dismissal. (Dkt. No. 125, at 62–64).

To state a conspiracy claim under 42 U.S.C. § 1985(2), a plaintiff must allege "(1) a

conspiracy, (2) for the purpose of impeding, hindering, obstructing, or defeating, in any manner,

(3) the due course of justice in any State or Territory, (4) with intent to deny any citizen the equal

protection of the laws." *Thomas v. DeCastro*, No. 14-cv-6409, 2018 WL 1322207, at *12, 2018

U.S. Dist. LEXIS 41121, at *40 (S.D.N.Y. Mar. 13, 2018) (internal quotation marks and citation

omitted). "[A] claim under the second clause of [§] 1985(2) requires a showing of class-based

invidiously discriminatory animus on the part of the conspiring parties." *Langton v. Town of*

*Chester Library Bd.*, No. 14-cv-9474, 2020 WL 2850898, at *4, 2020 U.S. Dist. LEXIS 96533,

at *9 (S.D.N.Y. June 1, 2020) (internal quotation marks and citation omitted); *see Ruggiero v.*

*City of Cortland*, No. 17-cv-790, 2018 WL 5983505, at *8, 2018 U.S. Dist. LEXIS 193841, at

*23 (N.D.N.Y. Nov. 14, 2018) (dismissing a conspiracy claim brought under § 1985(2) where,

plaintiff "failed to plausibly allege that any of th[e] conspiratorial misconduct stem[ed] from the

kind of racial or other class-based animus required by controlling federal law") (internal

quotation marks and citation omitted).

As Defendants observe, there are no allegations in the complaint plausibly alleging class-

based discrimination or animus on the part of Defendants. Plaintiffs argue that they are a "class

of . . . ordinary New York residents seeking to exercise their Second Amendment rights." (Dkt. No. 125, at 63). But Plaintiffs allege no facts suggesting that such a class possesses the "inherited or immutable characteristics sufficient to satisfy the class-based animus requirement." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (rejecting the plaintiff's argument that "Section 1985(3) encompasses classes of jailhouse lawyers and members of an [inmate liaison committee]," explaining "[t]hese putative 'classes' plainly do not possess the type of inherited or immutable characteristics sufficient to satisfy the class-based animus requirement")[18]; *see also Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971) (noting that Section 1985(3) was not intended to provide a federal remedy for "all tortious, conspiratorial interferences with the rights of others" and was specifically limited "by requiring, as an element of the cause of action . . . invidiously discriminatory motivation"). Accordingly, Defendants' motion to dismiss Plaintiffs' § 1985(2) conspiracy claim (Count Two) is granted.

### G.    Attorney's Fees and Costs (Count Six)

Defendants move for dismissal of Plaintiffs' sixth cause of action, which seeks an award of attorney's fees and costs under 42 U.S.C. § 1988, on the ground that § 1988 defines the procedures under which remedies may be sought in civil rights action, and it does not allow an independent cause of action. (Dkt. No. 104-7, at 48). Plaintiffs respond that it "is acceptable to remove Count Six and to amend ¶ 359 [of the complaint] to state the request for '[a]n award of Plaintiffs' attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.'" (Dkt. No. 125, at 69). Thus, Defendants' motion to dismiss Count Six is granted and the complaint is amended accordingly.

---

[18] In their opposition, Plaintiffs rely on 42 U.S.C. § 1985(3) in support of their conspiracy claim. (Dkt. No. 125, at 64). Regardless of whether Plaintiffs rely on § 1985(2) or (3), they fail to allege class-based animus.

## VI.    MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs seek partial summary judgment "in the form of a permanent injunction against a list of statutory provisions, containing direction [sic] the NYSP and/or the DCJS publish regulations or otherwise perform regulatory functions." (Dkt. No. 125, at 64–67). Plaintiffs assert that "[m]ore than two years have passed since the deadline for performance of the NYSP Superintendent of regulatory responsibilities under legislatively-conferred authority through NYS S.4970-A" and that the Superintendent of the NYSP should therefore "be enjoined from performing regulatory functions or otherwise enforcing against Plaintiffs, witnesses, and others similarly effected" within the jurisdiction of the Court. (Dkt. No. 122-11, ¶¶ 21–22). Specifically, Plaintiffs cite New York General Business Law § 875-b(2), ¶ 875-e(3), § 875-f, § 875-g(1)(b), § 875-g(2)(a), § 875-h. (Dkt. No. 122-11, ¶ 22).[19] Defendants object, arguing, inter alia, that this Court does not have jurisdiction over a claim that state officers failed to comply with state law, Plaintiffs have not shown an absence of disputed material facts at this pre-discovery stage of the case, and Plaintiffs cannot demonstrate irreparable harm. (Dkt. No. 130-9, at 32–37). However, the Court has granted Defendants' motion to dismiss Plaintiffs' derivative Second Amendment, preemption (Fifth Amendment), and void-for-vagueness (Fourteenth Amendment) claims and, as there are no viable claims remaining regarding these New York General Business Law provisions, there is no basis for summary judgment or a permanent injunction. And, to the extent Plaintiffs are relying on provisions in the New York Penal Law and Executive Law, they have failed to provide briefing establishing an entitlement to a permanent

---

[19] Plaintiffs also cite New York Penal Law § 400.00(19), § 400.02(2), § 400.03(2) and (6), and New York Executive Law § 235(1), § 837(23)(a) in their Notice of Motion. (Dkt. No. 122, at 3).

injunction concerning these provisions. Accordingly, Plaintiffs' motion for partial summary judgment is denied.[20]

## VII.    MOTION TO AMEND

Plaintiffs seek leave to file and serve an amended complaint following this Court's rulings on the pending motions. (Dkt. No. 125, at 69–70). Defendants oppose Plaintiffs' motion. A party may amend its pleading "once as a matter of course within . . . 21 days after serving it, or . . . 21 days after service of [a responsive pleading or a motion under Rule 12(b)]." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend under Rule 15(a) "shall be freely given when justice so requires." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (quoting Fed. R. Civ. P. 15(a)(2)).

However, Plaintiffs' motion does not comply with Local Rule 15.1(a). This rule requires that a motion to amend "set forth specifically the proposed insertions and deletions of language and identify the amendments in the proposed pleading, either through the submission of a redline/strikeout version of the pleading sought to be amended or through other equivalent means." N.D.N.Y. L.R. 15.1(a). Plaintiffs did not submit a redline version of their proposed amended complaint or an equivalent demonstration of the proposed insertions and deletions of language. The Court therefore has no basis on which to evaluate their request. Accordingly, Plaintiffs' request is denied at this time without prejudice. The Court will decide whether to permit Plaintiffs to renew a motion to amend, following the briefing required by this Order.

## VIII.    CONCLUSION

For these reasons, it is hereby

---

[20] Having denied Plaintiffs' cross-motion for partial summary judgment, the Court denies Defendants' request (Dkt. No. 134) to strike portions of Plaintiffs' reply.

**ORDERED** that Defendants' motion to dismiss and motion for judgment on the pleadings (Dkt. No. 104) are **GRANTED** in part and **DENIED in part**; and it is further

**ORDERED** that Plaintiffs' individual Second Amendment claims are **DISMISSED** without prejudice for lack of standing; and it is further

**ORDERED** that the claims against Defendants Hochul and Rosado are **DISMISSED** without prejudice as barred by sovereign immunity, and the Clerk is directed to terminate them as Defendants; and it is further

**ORDERED** that Plaintiffs' derivative Second Amendment claims concerning New York General Business Law § 875 in Counts One and Five, preemption and Fifth Amendment claims in Count Three, vagueness claims (Count Four), and conspiracy claim under 42 U.S.C. § 1985(2) (Count Two) are all **DISMISSED**; and it is further

**ORDERED** that Count Six (42 U.S.C. § 1988) is **DISMISSED** and paragraph ¶ 359 of the complaint is amended to state the request for an award of Plaintiffs' attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law; and it is further

**ORDERED** that Defendants' motion to dismiss and motion for judgment on the pleadings are otherwise **DENIED**; and it is further

**ORDERED** that Plaintiffs' cross-motion for summary judgment (Dkt. No. 122) and for leave to amend are **DENIED**; and it is further

**ORDERED** that to the extent Plaintiffs seek to amend the complaint they must file a letter brief, of no longer than ten pages, describing each cause of action that they seek to bring, how they have standing for each cause of action, how each cause of action is consistent with *Gazzola II,* and the legal basis for each cause of action. Any letter brief must be filed within twenty-one (21) days of the date of this order. Defendants may file a letter brief, of no more than

ten pages, in response within fourteen days of receipt of Plaintiffs' letter brief. Upon review, the Court will decide whether a conference is warranted and whether to permit Plaintiffs to file a motion to amend; and it is further

**ORDERED** that the parties must seek permission from the Court before filing any motion for summary judgment prior to the completion of discovery. The party seeking to file any such motion must submit a letter brief not to exceed five pages, setting forth the grounds for the anticipated motion. The opposing party may respond with a letter brief not to exceed five pages, describing any anticipated arguments in opposition. No such motion shall be filed until the Court enters an order permitting it.

**IT IS SO ORDERED.**

Dated: <u>September 26, 2025</u>
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge