## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

---

**Nadine Gazzola**, individually, and as co-owner,
President, and as BATFE Federal Firearms Licensee
Responsible Person for **Zero Tolerance
Manufacturing, Inc.**; *et al.,*

                    Plaintiffs

   *v.*

**Kathleen Hochul**, in her Official Capacity as
Governor of the State of New York; *et al.,*

                  Defendants.

Civ. No.: 1:22-cv-1134

Hon. Brenda K. Sannes

---

## ATTORNEY AFFIRMATION BY PALOMA A. CAPANNA
## ATTORNEY FOR PLAINTIFFS

1. I am Paloma A. Capanna, Attorney, and I represent the Plaintiffs in the above-captioned civil right case.  I make this Attorney Affirmation under penalties of perjury.  These statements are true to the best of my knowledge, and are based upon my personal knowledge and experience unless otherwise specified.

2. This affirmation is submitted in opposition to Defendants' "Motion to Dismiss" (ECF-144).

3. I take the following basic time line from various sources on the Internet.

   a. For purposes of this review of the State's proffered historic statutes under *Bruen* and *Rahimi*, I use the dates 1607 through 1625 for the royal English land grants that became the thirteen colonies of *New York*, New Jersey, *Massachusetts*, *Pennsylvania*,

*Connecticut*, New Hampshire, Delaware, Rhode Island, Maryland, Virginia, North Carolina, South Carolina, and Georgia.

b. Broadly, I use the dates of 1607 to 1775 for British authority over the American colonies.

c. Broadly, I use the dates of 1754 to 1763 for the French and Indian War.

d. Broadly, I use the dates of 1775 to 1783 for the American Revolutionary War.

e. I use the date of 1788 for the ratification of the U.S. Constitution and 1791 for the ratification of the first ten amendments to the U.S. Constitution ("Bill of Rights").

## I.  THE HISTORIC LAWS OFFERED BY THE STATE.

4. The State's submitted historical laws and other papers were not in chronological order.  I went through them and did rearrange them into Table 1, attached hereto.  That process allowed me to group the documents, naturally by date, and to use that structure within the Memorandum of Law.  I also use the chronological order within this Affirmation.  I apologize that it scrambles the "ECF" numbers.  I decided it was easier (admittedly, from my vantage point) to deal with things consistently in chronological order.

5. I note in the Memorandum that the State's submitted laws were generally devoid of context, particularly, to the higher authority that defined what was "lawful" and whether something printed was actually "the law" or part of the rebellion of the Colonists against the Crown.

6. Within the Memorandum I made effort to illustrate the political and legal tension created between those in or asserting authority and those being repressed, as well as those taking up

arms for independence against those having claimed dominion over subjects for approximately 150 years.

7. I did initially also have some difficulty replicating Ms. Cowan's submission.  My research methodology was to put the law into the book from whence it came so that my first step was to digest the full source material for immediate context.

8. I did not identify any grants of authority pertaining to ammunition.

9. I did identify some grants of authority pertaining to the storage of gunpowder, such as, e.g., Village of Ilion, New York.  These may be fairly described as zoning laws.

10. The pre-ratification laws offered by the State omit a point of history relating to ECF 144-2 and 144-3.  It is a Royal Proclamation of King Charles I of England issued November 24, 1630, "Forbidding Disorderly Trading with the Savages." <u>British Royal Proclamations Relating to America (1603-1783)</u>, Clarence S. Brigham, A.M., Ed., Burt Franklin (New York, 1911), [66].[1]  It was issued the year after the 1629 royal charter for the Massachusetts Bay Colony. The 1630 Royal Proclamation forbade the sale, barter, or other delivery or conveyance "unto any of the Salvages or Natives of American, where any of Our English Colonies are or shall bee planted, any Weapons or Habiliments of Warre or any kinde whatsoever, or to teach them or any of them the use of Gunnes, or how to make, or amend them, or anything, belonging to them." *Id*.

    a. Gutenberg.org digitized book at https://www.gutenberg.org/files/46167/46167-h/46167-h.htm#LOP.

---

[1]  The "Introduction" notes it to be "all English Royal proclamations which concern North and South American, from 1603 to 1783.  Only those proclamations are printed which emanated directly from the King."

11. The 1630 Royal Proclamation recounted the specific scenario to be addressed, as follows:

> "divers Interloping and irregular Merchants, and disobedient Fishermen and Mariners…did Trade with the Salvages of that Countrey, … did Barter away to the Salvages, Swords, Pikes, Muskets, Fowling-Pieces, Match, Powder, Shotte, and other Warlike Armes, Weapons, and Munition, and teach them the use thereof, not onely to their owne present ruine (divers of them having been slaughtered by the barbarous people with their owne Weapons formerly sold by them) but also to the great hazard of the lives of the English already, planted there, and to the apparent desctruction of that hopefull Plantation." *Id*.

12. The 1630 Royal Proclamation against "Disorderly Trading with Savages" characterized the problem as arising from those "seeking only their present and private profit." *Id*.   King Charles I issued the Proclamation "Out of Our Princely care for the prosperity of these Colonies, which being well governed may be of great use to this Nation…" *Id*.

13. The attitude of the King towards Native Americans was reflected in the original seal of the Massachusetts Bay Colony showing an Indigenous person speaking the words "Come Over and Help Us," whilst holding a bow and arrow. ECF 144-7, p. 2; and, Commonwealth of Massachusetts, Secretary, Website, "Historical Sketch of Massachusetts: Colonization," at https://www.sec.state.ma.us/divisions/cis/historical/historical-sketch.htm.

14. The 1630 Royal Proclamation reaffirmed Colonial authority in this matter, noting "the said President and Counsell for New England, and to other Governours and Counsell in any other Forreigne English Conoie in their severall places respectively, to proceede against the Offenders in any the kindes aforesaid, according to the powers already granted unto them, and according to Our Lawes in that behalfe." *Id*.

15. Observation is made of:

> "The numerous petitions sent to England by the colonial executives begging for help did not go unheeded. British authorities appreciated the necessity of upholding the hands of the colonial royal officials in order to keep the colonies in a state of subordination. Again and again decisions were rendered to strengthen the governor's powers or to support his recommendations. The trade laws, the billeting act, the stamp act, the tea-tax, the declaratory act, and finally, war itself, were simply parts of the policy of the English government to support its powers as exercised through the king's agents."

> Flick, Alendandr Clarence, Ph.D., "Loyalism in New York During the American Revolution," *Studies in History, Economics and Public Law*, Vol. XIV, No. 1, Columbia University Press, London, 1901).

   a. Digitized version available at:
   https://archives2.gnb.ca/exhibits/forthavoc/html/NYLoyalism.aspx?culture=en-CA.

16. **New York at ECF 144-2**. Cross-reference to ECF 144-1, ¶7 (Cowan affm.), which does not state any date for the excerpt proffered from <u>The Colonial Laws of New York From the Year 1664 to the Revolution</u>, Charles Z. Lincoln, et al., Eds. (NY State Printer, 1894). The State's exhibit is an excerpt from "The Duke of York's Laws, **1665-75**." *Id.* at 1. I find it to have stated: "The Duke of York's Laws for the government of the Colony of New York were compiled from the statutes for the government of the other English colonies in America, under the direction of Nicolls, the first English Governor." *Id.* Or, "Collected out of the Several Laws now in force in his Majesties American Colonyes and Plantations[2].]" *Id.* at 7.

   a. The text plainly allows sales, but not by those "Without License first had and obtained under the Governours hand and Seal…". ECF 144-2, p. 3.

---

[2] *N.B.*: The word "plantations" in this context was reference to "Britain's earliest colonies." Banton, *supra*, p. 29. "The term was first widely applied to settlements on expropriated lands in early seventh-century Ulster, but came to be extended to colonies in north America." *Id*., p. 29, n. 1.

b. Google Books digitized book at:
   https://books.google.com/books?id=d3U4AAAAIAAJ&printsec=frontcover&source=
   gbs_ge_summary_r&cad=0#v=onepage&q&f=false.

c. New York ratified the U.S. Constitution on July 26, 1788. U.S. Senate Website at
   https://www.senate.gov/states/NY/timeline.shtml.

17. **Pennsylvania at ECF 144-3**.  Cross-reference to ECF 144-1, ¶8 (Cowan affm.).  This book
compiles and publishes the Duke of York's laws in force from **1676 to 1682**. Charter to
William Pennsylvania, and Laws of the Province of Pennsylvania with Appendix, Staughton
George, et al., Eds., PA State Printer (1879).    The laws are "Digested into one Volume for
the publicke use of the Territoryes in America under the Government of his Royall Highnesse.
Collected out of the Severall Laws now in force in his Majesties American Colonyes and
Plantation." *Id.* (page 3, not formally numbered, but preceding page formally numbered "4").

a. The text plainly allows sales, but not by those "Without License first had and obtained
   under the Governors hand and Seal…". ECF 144-3, p. 6.

b. Google Books digitized book at:
   https://books.google.com/books?id=d3U4AAAAIAAJ&printsec=frontcover&source=
   gbs_ge_summary_r&cad=0#v=onepage&q&f=false.

c. Pennsylvania ratified the U.S. Constitution on December 12, 1787. U.S. Senate
   Website at https://www.senate.gov/states/PA/timeline.shtml.

18. **Connecticut** at ECF 144-4.  Cross-reference to ECF 144-1, ¶9 (Cowan affm.).  The Public
Records of the Colony of Connecticut, J. Hammond Trumbull, Ed., Brown & Parsons
(Hartford, 1850).  The section of the book containing the State's excerpt is from "Capitall
Lawes Established by the Generall Court, the First of December, **1642**." *Id.* at 77.

a. This section begins with decrees of the court that "1." command that any man worshiping "any other God but the Lord God, he shall be put to death," citing Biblical excerpts and continues with the "2." Command that "Yf any man or woman be a witch (that is) hath or consulteth w$^{th}$ a familiar spirit, they shall be put to death," also citing Biblical excerpts, continuing through a list of additional offenses, before flowing through a list of individual issues, then including the paragraphs referenced by the State. *Id.*

b. The text plainly allows sales, but not by those those "w$^{th}$out lycence of this or the p$^r$ticuler Court, or som two Magistrats…" ECF 144-4, p. 3.

c. Digitized book available on Connecticut General Assembly Website at: https://www.cga.ct.gov/hco/books/The_Public_Records_of_the_Colony_of_Connecti cut_1665.pdf.

d. Connecticut ratified the U.S. Constitution on July 16, 1787. U.S. Senate Website at https://www.senate.gov/states/CT/timeline.shtml.

19. **Massachusetts** at ECF 144-5.  Cross-reference to ECF-1, ¶10 (Cowan affm.).  The State's excerpt is from <u>The General Laws of the Massachusets Colony: Revised & Re-printed by Order of the General Court in October **1658**</u>, Samuel Green (Cambridge, 1672).

a. Massachusetts ratified the U.S. Constitution on June 26, 1787. U.S. Senate Website at https://www.senate.gov/states/MA/timeline.shtml.

b. Google Books digitized book at: https://www.cga.ct.gov/hco/books/The_Public_Records_of_the_Colony_of_Connecti cut_1665.pdf.

20. **New York letter at ECF 144-6**.  Cross-reference to ECF 144-1, ¶11 (Cowan affm.).  <u>Documents Relative to the Colonial History of the State of New-York, Vol. VI, London</u>

<u>Documents (1734-1755)</u>, E.B. O'Callaghan, M.D., Ed., Weed, Parsons and Company (Albany, 1855).

    a.  In other portions of the same resource, British Colonists of New York reported giving "a large quantity of gun powder" to several Nations tribal representative, saying, "Here is a present which the King your Father hath sent you by Gen Braddock." *Id.* at 982 (Mount Johnson, July 1, 1755).

    b.  There is also reference they gave members of the several Nations firearms, such as, "I must correct you a little and put you in mind that last War, when I armed, cloathed and fitted you out completely, several of your warriours deceived me and did not go upon service." *Id*. at 984 (Mount Johnson, July 4, 1755).

    c.  The description by the State misquotes the addressee as "Lords of Trade." ECF 144-1, ¶11 (Cowan affm.). It is, rather, addressed to "The Right Honorable the Lords of Trade & Plantations." ECF 144-6, p. 5 (below the signature line, as was customary). "The board was to examine colonial legislation and to recommend disallowance of those laws that conflicted with imperial trade policies," among other duties. Dartmouth Libraries, Archives & Manuscripts, Great Britain, Board of Trade (1696-1779), at https://archives-manuscripts.dartmouth.edu/agents/corporate_entities/1475. It was "the sovereign's channel of communication with the board and the colonial governors." Banton, Mandy and The National Archives of the UK, "Administering the Empire, 1801-1968 (Second Edition)," University of London Press (London, 2015).

d. The description by the State is further misleading that it is not a discussion of "a prohibition." ECF 144-1, ¶11 (Cowan affm.).  Rather, it is a letter enclosing "Proclamations" issued by the Governor of the Province of New York. ECF 144-6, p. 5 ("…for which end I have issued the inclosed Proclamations to forbid…")  The State did not include the proclamations, nor response from the Lords of Trade & Plantations or the Crown.  It is unknown what, if anything, went into effect and for what period.

e. The excerpted quote by the State is also misleading.  It is not an embargo on "provisions, warlike stores, or merchandizes." ECF 144-1, ¶11 (Cowan affm.).  It is a Proclamation "to forbid the Exportation of Gun powder, or the supplying the French with any kind of provisions, warlike stores, or merchandizes." ECF 144-6, p. 5 (emphasis added).

f. Digitized book available through University of Pennsylvania, Library, complete set, at: https://onlinebooks.library.upenn.edu/webbin/book/lookupid?key=olbp69764.

21. **Massachusetts** record of an *ex parte* interim court order at ECF 144-7.  Cross-referenced to ECF 144-1, ¶12 (Cowan affm.).  The State characterizes the excerpt as "a provision disarming followers of…" (*id*.), but that is not an accurate or complete reflection upon the recorded event.  Records of the Governor and Company of the Massachusetts Bay in New England, Vol. I (1628-1641), Nathaniel B. Shurtleff, M.D., Ed.. William White Press (Boston, 1853).  The dozens of men named from Boston and surrounding jurisdictions were to be disarmed upon written notice "until this Court shall take further order therein" and to remain disarmed in the interim. *Id*. at 211 (November 20, **1637**).  The basis for the order is speculation that Mr.

Wheeleright[3] and Mrs. Hutchinson[4], "…as others in Germany, in former times, *may*, upon some revelation, make some suddaine irruption vpon those that differ from them in judgment, for pvention whereof it is ordered…" *Id.* (emphasis added). To be released from the disarmament order, a man so-named by the court need "acknowledg their sinn in subscribing the seditious libell, or do not iustify it, but acknowledg it evill to two magistrates" and "they shalbee thereby freed from delivering in their armes according to the former orer." *Id.* at 212.

22. **Rhode Island and Providence Plantations** at ECF 144-8. Cross-reference to ECF 144-1, ¶13 (Cowan affm.). The State's excerpt is taken from "a meeting of the Governor and Councill of this Colony, January 22, **1676**-7." <u>Records of the Colony of Rhode Island and Providence Plantations in New England</u>, <u>Vol. II (1664-1677)</u>, John Russell Bartlett, Ed., A.C. Greene and Brothers Printers (Providence, 1857), p. 560. The meeting of the Colonial powers concerns "Indian wigwam(s)," "wherein severall Indians doe meet, gittinge drinke, and are often drunke, and is to be feared by such meetings they *may* have opportunity to plot anew, mischiefe to our great damage." *Id.* It results in notices to be published in Newport and Portsmouth allowing Colonial landowners to pull down wigwams, to take away "all such liquors or strong drinke, and to break all such bottles or vessells, in pieces," and to take away guns or ammunition, to

---

[3] Mr. (John) Wheelright (ca. 1592-1679), was an English clergyman, banished from the Massachusetts colony 1637-1643 for supporting Hutchinson.

[4] Mrs. (Anne) Hutchinson (ca. 1591-1643) was found guilty of sedition in 1637 and banished from the Massachusetts colony. "Analysis: Transcript of the Trial of Anne Hutchinson," Meg Meneghel-MacDonald, PhD (2022) on https://www.ebsco.com/research-starters/law/analysis-transcript-trial-anne-hutchinson. The events involving Hutchinson and Wheelright during 1636-1638 can be referred to as "The Antinomian Controversy," characterized at least by one author as "the first great intellectual crisis in the settlement of New England." Hall, David, "The Antinomian Controversy, 1636-1638: A Documentary History," Duke University Press (1990).

be disposed of according to the "discretions" of the Governor or Deputy Governor. *Id*. at 560-561.

    a.  Google Books digitized copy available at:
https://books.google.com/books?id=nbwLW6vRz6UC&pg=PA561#v=onepage&q&f=false.

    b.  Rhode Island ratified the U.S. Constitution on May 29, 1790. U.S. Senate Website at https://www.senate.gov/states/RI/timeline.shtml.

23. **Virginia** at ECF 144-9.  Cross-reference to ECF 144-1, ¶14 (Cowan affm.).

    a.  I find that the excerpt provided by the State appears was passed March 29, 1756, during the reign of King George II.  <u>A Collection of All the Laws of Virginia</u>, <u>Vol. VII</u>, William Waller Hening, Ed., Franklin Press (Richmond, 1820), p. 35.  A person "is, or is suspected to be a Papist," was asked to take "oaths appointed by act of parliament," and if refused or defaulted in the oath, would be divested of "any arms, weapons, gunpowder or ammunition, (other than such necessary weapons as shall be allowed to him, by order of the justices of the peace at their court, for the defence of his house or person). *Id*. at 36-37.  To be "discharged of and from all disabilities and forfeitures," the person could take the oath in open court and sign the same. *Id*. at 38.  Likewise, "no Papist, or reputed Papist" refusing to take the oath may retain any horse valued above Five Pounds. *Id*.

    b.  Within this same resource, the Virginia assembly passes An Act for preventing and repelling the hostile incursions of the Indians at enmity with the inhabitants of this colony, increasing the reward for "Indians' scalps." *Id.* at 121.  To claim the $15/$30 reward, "the person or persons, not being an Indian or Indians, so taken prisoner, killing

or destroying such Indian enemy," shall provide an affidavit, the Indian or the scalp of the Indian, to the governor or commander in chief, who will in turn direct the treasurer to remit "payment of the said rewards." *Id.* at 121-122.  Any Indian so providing such a "service" "in friendship and amity with the inhabitants of this colony" shall be paid the equivalent in goods. *Id.* at 123.

    c.   Google Books digitized copy at:
https://books.google.com/books?id=KIYFlm7yr9wC&pg=PA39#v=onepage&q&f=false.

    d.   Virginia ratified the U.S. Constitution on June 25, 1788. U.S. Senate Website at https://www.senate.gov/states/VA/timeline.shtml.

24. With respect to the State's submissions at ECF 144-10 (Massachusetts), 144-11 (Pennsylvania), and 144-12 (New Jersey).  The over-arching political and legal event was passage of The Tory Act and then The Tory Resolution by the Second Continental Congress. The act and resolution were directed at the "United Colonies," including the three noted by the State. <u>Journals of the Continental Congress</u>, <u>1774-1789</u>, vol. IV (January 1, 1776 to June 4, 1776), U.S. Gov't. Printing Office (Washington, D.C., 1906), p. 18-22 (January 2, 1776) and p. 205 (March 14, 1776).

    a.   The Tory Act of 1776.  On January 2, 1776, the Second Continental Congress passed seven resolutions to the "United Colonies."

    b.   The Tory Resolution of 1776.  On March 14, 1776, the Second Continental Congress passed a resolution recommending the language found, in part, in the State's submissions, as follows:

> "immediately to cause all Persons to be disarmed, within their respective Colonies, who are notoriously disaffected <u>to the cause of</u>

America, or who have not associated, and shall refuse to associate to defend by Arms these united Colonies…and to apply the Arms taken from such Person sin each respective Colony, in the first place, to the Arming the continental Troops raised in said Colony, in the next, to the arming such Troops as are raised by the Colony for its own defence, and the Residue to be applied to the arming the Associators; that the Arms when taken be appraised by indifferent Persons, and such as are applied to the Arming the Continental Troops, be paid for by the Congress and the Residue by the respective Assemblies, Conventions, or Councils or Committees of Safety." (emphasis added)

    c.  Digitized copy at:
https://archive.org/details/journalsofcontin04unit/page/18/mode/2up?q=disarmed.

25. "Overall, oaths produced a special kind of obligation during the American Revolution, one rooted in the unique values of the period." Murphy, Kevin, Ph.D, "Loyalty Oaths and the Crisis of the American Revolution," 2025 Selected Papers of the Consortium on the Revolutionary Era (Nov. 3, 2025), available at https://ageofrevolutions.com/2025/11/03/loyalty-oaths-and-the-crisis-of-the-american-revolution/#_ftnref12.  "They represented a form of coercion at odds with our own understandings of religious liberty and personal autonomy, formed after the American Revolution." *Id*.

26. **Massachusetts** at ECF 144-10.  Cross-reference to ECF 144-1, ¶15 (Cowan affm.).  I cannot replicate the excerpt provided by the State (without bibliographic reference).  It represents to be "An Act" for the "Colony of the Massachusetts-Bay, in New-England" upon resolve of the American Congress of March 14, 1776," which aligns with the Tory Resolution (above).  The Duke University Firearms Law Center offers a similar PDF document with different pages. [5]

---

[5] *N.B.*:  the Duke Center for Firearms Law "original source document" link is broken, as is the "view law source" link.

27. The pages headline as "An Act <u>for the Executing</u> in the Colony of the Massachusetts-Bay, in New-England…" (emphasis added).  Compare to the subsequent State exhibit as "Laws Enacted in the second sitting of the…" ECF 144-11, p. 1.

    a.  Any action taken preceded the ratification by Massachusetts of the U.S. Constitution.

    b.  Massachusetts did not ratify the Bill of Rights until 1939. National Archives Website at    https://www.archives.gov/publications/prologue/2016/winter/poh-bill-of-rights. (Also, Connecticut and Georgia. *Id*.)

28. **Pennsylvania** at ECF 144-11.  Cross-reference to ECF 144-1, ¶16 (Cowan affm.).  It appears the original version of the Pennsylvania "Act for the Further Security of the Government' was passed **April 1, 1778** (Ch. 796).  Those who did not timely swear the oath suffered forfeiture of arms and ammunitions *and* legal prosecution "to conviction" and "without appeal to the supreme or any other court whatsoever." ECF 144-11, p. 5.

    a.  This preceded Pennsylvania's ratification of the U.S. Constitution on December 12, 1787. U.S. Senate Website at https://www.senate.gov/states/PA/timeline.shtml.

29. **New Jersey** at ECF 144-12.  Cross-reference to Cowan, ECF 144-1, ¶17.

    a.  The Act includes capitol punishment (ECF 144-12, p. 4, 5), detainment if not traveling with designated passports or permissions (*id.* at 5), expulsion behind "Enemy's Lines," including "such of the Wives and Children of Persons lately residing within this State" (*id.*), explusion "into the Lines of the Enemy" "together with such Parts of his Family as they shall think proper" (*id*. at 7).

30. **City of Buffalo, New York** at ECF 144-15.  Cross-reference to ECF 144-1, ¶20 (Cowan

affm.).  The act to revise the charter[6] of the city is noted as approved by the governor

**March 27, 1891**. ECF 144-15, p. 2.  At §209 concerning "any pistol or revolver, or other-

dangerous weapon or weapons" as requiring a permit, with exceptions. *Id.* at p. 4.  The standard

for issuance being "sufficient reasons." *Id.* at p. 3.

  a. <u>Cite as</u>: 1891 N.Y. Laws Ch. 127, 176-177.

  b. Google Books digitized version at:
     https://books.google.com/books?id=p3BZAAAAYAAJ&pg=PP9#v=onepage&q&f=f
     alse.

31. **City of Syracuse, New York** at ECF 144-17.  Cross-reference to ECF 144-1, ¶22 (Cowan

affm.).  The permit applying to "pistols." ECF 144-17, p. 3.  The standard for issue being "in

proper cases." *Id.*

32. **City of Troy, New York** at ECF 144-18.  Cross-reference to ECF 144-1, ¶23 (Cowan affm.).

The 1905 grant of authority allowing a permit applying to "a loaded revolver, pistol or firearm

for his protection." ECF 144-18, p. 2.  The standard for issue being "a proper and law abiding

person." *Id.*

33. **City of Albany, New York** at ECF 144-20.  Cross-reference to ECF 144-1, ¶25 (Cowan affm.).

The 1910 grant of authority allowing enactment of an ordinance to require a permit applying

to "any loaded revolver, pistol or firearm." ECF 144-20, p. **3**.  The standard for issue being "a

proper and law abiding person." *Id.*

---

[6] The "charter" being that "which establishes or continues a specific county, city or village as a
municipal corporation or body politic and includes the fundamental provisions defining,
extending or limiting its corporate powers or affecting the framework of its government."
NY Municipal Home Rule §2(2).

34. **City of Lockport** at ECF 144-19.  Cross-reference to ECF 144-1, ¶24 (Cowan affm.).  The The 1913 grant of authority allowing enactment of an ordinance to require a permit applying "a pistol or revolver." ECF 144-20, p. **3**.  The standard for issue being "in the discretion of the chief of police." *Id*.

## II. A SURVEY OF NEW YORK GRANTS OF AUTHORITY TO MUNICIPALITIES 1891-1895.

35. I also undertook a broad survey of the laws of the State of New York for the five year period of 1891 to 1895.  This was after ratification of the Fourteenth Amendment to the U.S. Constitution in 1865.  It was before the Sullivan Act of 1911 granted powers statewide for municipalities to enact requirements for concealed carry licenses.

    a.  Using the official publication of laws for New York, I used the search engine to systematically go through each of five volumes on the Internet using a set of key words to search each volume.

    b.  I read through not just the search word in the provision where it was found, but I located the start of each grant by New York to the municipality to survey the law for similar language and intent.

    c.  These grants of authority may be fairly described as "nuisance" and/or "zoning," and concealed carry.  The "nuisance" language alongside "the firing of guns" were noises and activities like "the flying of kites" and "riding down hill on sleighs." (To Village of Mechanicville, 1891, *infra*.)  The express purposes was repetitively described as "or any other amusement or practice endangering property, or having a tendency to frighten horses." (*Id*.)

36. From the State of New York to the Village of Mechanicville (Saratoga County), New York. [Not cited by the State.] An act to amend previous laws. The Mechanicville Trustees being authorized to regulate or prevent:

> "the firing of guns, cannons or pistols, crackers, rockets or squibs, and fire-balls, the flying of kites, rolling of hoops, playing of ball, riding down hill on sleighs or other vehicles, or any other amusement or practice endangering property, or having a tendency to frighten horses, or dangerous to the life or limb of persons passing through the streets or over the sidewalks of said village."

Cite as: 1891 N.Y. Laws Ch. 106, Tit. III, §3 (numbered 17) from the Laws of the State of New York, Banks & Brothers, Publishers (Albany, 1891), p. 252.

37. From the State of New York to the Village of Bath-on-the-Hudson (Steuben County), New York. [Not cited by the State.] An act to amend previous laws. The Bath-on-the-Hudson Trustees being authorized "to regulate or prohibit" the following:

> "the ringing of bells, blowing of horns, firing of guns, pistols, powder or other explosive substance, and the making of any improper noises within said village…or the using of bicycles, tricycles and velocipedes in or upon the streets of said village."

a. Cite as: 1891 N.Y. Laws Ch. 305, 613 (§9, ¶4).

38. From the State of New York to the Village of Moravia (Cayuga County), New York. [Not cited by the State.] An act to amend previous laws. The Moravia Trustees being authorized to "prohibit or regulate" as follows:

> "the rolling of hoops, playing at ball, flying of kites, sliding down hill on sleds, or any other amusement or practice having a tendency to annoy persons passing on the streets or sidewalks, or to frighten teams or horses in said village, and regulate or prevent the firing of guns or pistols, firearms, the firing of crackers, rockets, squibs and fireworks in said village, or building any fire in any street in said village."

Cite as: 1891 N.Y. Laws Ch. 343, 674-675 (numbered "2.").

39. The State of New York in establishing the City of Niagara Falls, New York. [Not cited by the State.] An Act to incorporate the city of Niagara Falls included authority for the Common Council "To license, regulate, restrain or suppress the public use of billiard tables, bowling alleys and pistol and shooting galleries." Cite as: 1892 N.Y. Laws Ch. 143, §48, ¶14.

40. Two years later, in 1894, the Chief of Police was granted authority to issue a permit to carry a pistol or pistols in the city for "sufficient reasons." 1894 N.Y. Laws Ch. 149, 292-23 (§105).

41. From the State of New York to the City of New York, New York. [Not cited by the State.] An Act to amend previous laws, beginning 1882, to include authority within the police pension fund to grant or issue a "permits to carry pistols in said city," the standard for issuance being "in proper cases." Cite as: 1892 N.Y. Laws Ch. 539, ¶8, 1073-1074.

   a. Also required, a permit for "masquerade or fancy-dress ball." *Id.* at ¶9.

   b. Also the authority "To regulate bathing suits, and determine the time and place of bathing in any exposed place in the river, canal or in any creek, basin, raceway or other public place in said city." *Id*. at ¶23.

42. City of Troy, New York. [Not cited by the State.] The Troy Common Council being granted the authority to enact ordinances "In relation to the use of guns, pistols, firearms, firecrackers, fireworks, and detonating works of all descriptions within the city..." Cite as: 1892 N.Y. Laws Ch. 670, 129 (§6, ¶12).

43. From the State of New York to the Village of Ilion, New York. [Not cited by the State.] Amending prior laws of 1865 and 1866, to allow the Trustees of Ilion to regulate "To suppress or restrain houses of ill-fame, billiard tables, bowling alleys and pistol galleries." <u>Cite as</u>: 1893 N.Y. Laws Ch. 71, 110 (§26, ¶5). Also, "To direct the location for all slaughter-houses or

houses for storing gunpowder or other combustible substance, and to regulate the keeping and conveying of gunpowder or other dangerous materials and the use of candles and lights in barns and other buildings." *Id.* (¶7).

44. From the State of New York to the City of Ogdensburg (Saint Lawrence County), New York. [Not cited by the State.]  Amending prior laws to include:

> "To prevent or regulate the ringing or tolling of bells, except those of railroad cars and engines, blowing of steam whistles, blowing of horns or crying of goods and wares, firing of guns, gunpowder or other explosive substances, and the making of any unnecessary noise which may tend to disturb the peace of the city; and the sale or exposure to sale of fire-crackers, rockets, squibs or other explosive compounds."

Cite as:  1893 N.Y. Laws Ch. 87, 150 (§19, ¶17).

45. From the State of New York to the Village of Horseheads (Chemung County), New York. [Not cited by the State.]  Amending prior laws to include regulation of "the location of slaughter-houses, houses for storing gunpowder and other explosive material." Cite as: 1893 N.Y. Laws Ch. 266, 508 (§21). Also, regulation of "keeping and conveying of gunpowder or other dangerous materials." Cite as:  1893 N.Y. Laws Ch. 266, 110 (§26, ¶7).

46. The State of New York establishing the City of Olean (Cattaraugus County), New York.  [Not cited by the State.]  Amending prior laws to allow the Common Council of Olean "To license, regulate, restrain or suppress the public use of billiard tables, bowling alleys and pistol and shooting galleries." Cite as:  1893 N.Y. Laws Ch. 478, 1017 (§82, ¶45).

47. From the State of New York to the Village of Mohawk (Herkimer County), New York. Amending prior laws to allow the Trustees of Mohawk to "suppress or restrain houses of ill

fame, billiard tables, bowling alleys and pistol galleries." Cite as:  1894 N.Y. Laws Ch. 99, 206 (§24, Fifth).

48. In 1895, the Fisheries, Game and Forest Commission was formed to take on functions related to fish and game regulations, hunting seasons, and poaching, as first found at 1895 N.Y. Laws Ch. 974, 893-925, which included the first conservation-oriented regulations on the use of a gun (§71, Manner of killing [birds]).

    a. *See*, NY State Archives, "Environmental Conservation, Department of," on the Web at https://www.archives.nysed.gov/creator-authority/new-york-state-department-environmental-conservation-17.

49. The Sullivan Act.  Cite as:  1911 N.Y. Laws, Ch. 195, 442-445, title "An Act to amend the penal law, in relation to the sale and carrying of dangerous weapons."  At §1897, Carrying and use of dangerous weapons, established a written license requirement, as follows:

> "Any person over the age of sixteen years, who shall have in his possession in any city, village or town of this state, any pistol, revolver or other firearm of a size which may be concealed upon the person, without a written license therefor, issued to him by a police magistrate of *such* city or village, or by a justice of the peace of such town, or in such a manner as may be [prescribed] by ordinance in *such* city, village or town, shall be guilty of a misdemeanor." *Id.* at 443, third paragraph (emphasis added).

50. The 1911 iteration of the written concealed carry permit appears to require a permit in each municipality by its use of the word "such."

Dated:  January 30, 2026

                  *Paloma A. Capanna*

                  Paloma A. Capanna, Attorney

                  Attorney for the Plaintiffs

**TABLE 1:**
**CHRONOLOGICAL TABLE OF LAWS SUBMITTED BY THE STATE**

| ECF | Year | Country | State | Conferring Body | Notes |
|---|---|---|---|---|---|
| **1. Religious Intolerance Oaths** | | | | | |
| 144-7 | 1637 | | Company of Massachusetts Bay | (court order) | Male followers of Hutchinson/Wheelright to be disarmed unless an oath is sworn |
| **2. Colonial Actions Against Native Americans Upon Authority of King Charles I/Duke of York** | | | | | |
| 144-4 | 1642 | | Connecticut | General Court | Selling of X with a license |
| 144-5 | 1658 | | Massachusetts Colony | | |
| 144-2 | 1665 | U.K. | Colony of New York | Duke of York | Selling of X with a license |
| 144-3 | 1676 | U.K. | Province PA | Duke of York | Selling of X with a license |
| 144-8 | 1676 | | Rhode Island Colony | | Removal of wigwams, drink, guns, and ammunition from Native Americans |
| **3. Revolutionary War Period Loyalty Oaths** | | | | | |
| 144-6 | 1755 | | | (letter) | British Colonists of New York gave a large quantity of gun powder to the several Nations |
| 144-9 | 1756 | | Virginia | | A Papist or suspected Papist to be disarmed unless an oath is sworn |
| 144-10 | Post-1776 | | Colony of Massachusetts Bay | | Disarming of persons notoriously disaffected to the cause of America |
| 144-11 | 1778 | | Pennsylvania | | (oath) |
| 144-12 | (1776) | | New Jersey | | (oath) |
| **4. Municipal Pistol Permit Requirements (Pre-1911 Sullivan Act)** | | | | | |
| 144-15 | 1891 | | City – Buffalo | | Pistol permit |
| 144-17 | (?) | | City-Syracuse | | Pistol permit |
| 144-18 | 1905 | | Troy | | Pistol permit |
| 144-20 | 1910 | | Albany | | Pistol permit |
| 144-19 | 1913 | | Lockport | | Pistol permit. |

**TABLE 2:**

**CHRONOLOGICAL TABLE OF LAWS INCLUDED BY PLAINTIFFS**

| | Year | Government | Conferred Upon | Authorization to Regulate |
|---|---|---|---|---|
| **1. Colonial Period Under British Rule** | | | | |
| | 1630 | Britain | Colonies | Trading of firearms with Native American peoples to be conducted by those with a government-issued license |
| | | Royal Proclamation, "Forbidding Disorderly Trading with the Savages" | | |
| **2. Revolutionary War Period** | | | | |
| | 1775 | King George III | Britain | "King's Proclamation for Suppressing Rebellion and Sedition" |
| | 1776 | Second Continental Congress | United Colonies | |
| | | "Tory Act" | | |
| | 1776 | Second Continental Congress | United Colonies | |
| | | "Tory Resolution" | | Loyalty Oath – the refusal or default of which could result in disarmament, expulsion behind "Enemy Lines," including expulsion of women, children, and so much of a man's family as appropriate; repurposing of the firearms to Loyalists for the war effort |
| | 1776 | Second Continental Congress | | Declaration of Independence |

**TABLE 3:**

**TABLE OF STATE OF NEW YORK LAWS INCLUDED BY PLAINTIFFS**

**FOR THE PERIOD 1891 – 1895**

| | Year | State | Conferred Upon | Authorization to Regulate | Type |
|---|---|---|---|---|---|
| **1. State of New York, 1891-1895 State Grants of Authority to Municipalities** | | | | | |
| | 1891 | New York | Mechanicville | The firing of guns, cannons or pistols | Nuisance |
| | 1891 | New York | Bath-on-the-Hudson | The firing of guns, pistols, powder or other explosive substance | Nuisance |
| | 1891 | New York | Moravia | The firing of guns or pistols, firearms | Nuisance |
| | 1892 | New York | Niagara Falls | Pistol and shooting galleries | Zoning |
| | 1894 | New York | Niagara Falls | Pistol Permit | Pistol Permit |
| | 1892 | New York | New York City | Pistol Permit | Pistol Permit |
| | 1892 | New York | Troy | The use of guns, pistols, firearms, firecrackers, fireworks, and detonating works of all descriptions | Nuisance |
| | 1893 | New York | Ilion | Pistol galleries | Zoning |
| | 1893 | New York | Ilion | Storing gunpowder or other combustible substance | Zoning |
| | 1893 | New York | Ogdensburg | Firing of guns, gunpowder or other explosive substances | Nuisance |
| | 1893 | New York | Horseheads | Storing gunpowder and other explosive material | Zoning |
| | 1893 | New York | Olean | Pistol and shooting galleries | Zoning |
| | 1894 | New York | Mowhawk | Pistol galleries | Zoning |
| | | | | | |