IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

**Nadine Gazzola**, individually, and as co-owner, President, and as BATFE Federal Firearms Licensee Responsible Person for **Zero Tolerance Manufacturing, Inc.**; *et al.,*

        Plaintiffs

*v.*

**Kathleen Hochul**, in her Official Capacity as Governor of the State of New York; *et al.,*

        Defendants.

Civ. No.: 1:22-cv-1134

Hon. Brenda K. Sannes

---

## DECLARATION OF PLAINTIFF
## CRAIG SERAFINI – UPSTATE GUNS & AMMO, LLC

1. I am Craig Serafini and I am a plaintiff in the above-captioned litigation. I make this Declaration under penalties of perjury. These statements are true to the best of my knowledge, and are based upon my personal knowledge and experience unless otherwise specified.

2. I am a PLAINTIFF in the above-referenced case. This affidavit is submitted in opposition to Defendants' current "Motion to Dismiss" (ECF-144).

## I.   PRIOR SUBMISSIONS TO THE COURTS.

3. I previously submitted an affidavit in support of our motion for temporary relief. ECF 13-4 (filed 11/08/22). I reviewed that affidavit in preparation for submission of this one. The document was an accurate reflection of facts and circumstances at that time.

4. I also previously submitted a pair of affidavits in opposition to the prior motion to dismiss and in support of our cross-motion. ECF 122-4 (filed 01/16/25) and ECF 133-4 (filed 04/17/25). I would ask the Court review these affidavits as containing much specific information that is directly relevant to our defense of the present motion, as well as in opposition to the affidavits of Mr. Deyo of the NYS Police.

5. I repeat and reallege the allegations of my prior affidavits, and incorporate them herein for purposes of this motion.

## II.   KNOWLEDGE OF THE FACTS AND CIRCUMSTANCES OF THE AMMUNITION REQUIREMENTS AND THE SEMI-AUTOMATIC RIFLE REQUIREMENTS.

6. I am registered with the NYS Police as an authorized user of the Web-based NYS NICS since the platform launched in September 2023. My employees are authorized by myself and are registered with the NYSP to perform dealer background check functions and responsibilities. I have administrative privileges to view all transactions.

7. Myself and my authorized employees have consistently and regularly used the "NYS NICS" for more than two years.

8. Myself and my authorized employees have input hundreds of requested background checks for firearms and for ammunition.

9. All my observations concerning my customers is made with my direct knowledge.

10. The responses we receive from "NYS NICS" include responses of "delay," "under review," "pending," and other non-immediate determinations.

11. On a given day, we manage zero to fifteen (0-15) open transaction requests.

12. We have consistently witnessed "NYS NICS" fail to make a final determination <u>for more than thirty days (30-days)</u> on a requested background check for ammunition and firearms.

13. My estimate for this data point would be two to three transactions per month (2-3/month) hit the 30-day mark without a determination of "proceed" or "deny."

14. That said, June, July, August, and into September 2025, there was a noticeable up-tick in background checks that went to "pending"

15. My understanding from the NYS Police is that they want dealers in firearms to rerun the same customer check after the expiration of 30 days.

16. As per NYSP instructions from their "Help" telephone operators, we enter the same customer and the same ammunition or firearms request as a "new transaction."

17. Also as per NYSP instructions, we enter the same customer and the same ammunition or firearms request approximately three times, each as a "new transaction."

18. I am required to pay for every background check requested, even when it is a rerun. This is also true for any customer who does not return to complete the transaction when the "proceed" is received at some point within an hour to more than a month or two or three or more later.

19. We are not notified by the NYSP NICS system or the NYSP when (or if) there is a change to the status of a customer background check.  We manually scroll up and down all visible transactions or try a search to find the transaction.  We are not required to do this, but we do so as a service to our clients.

20. We do make telephone calls to customers if we identify a change in the status of their background check.  Some customers do also return in person to the shop to inquire into any change in the status of their background check, and we will check while they wait - *again*.  Other customers place a telephone call to check on their status before making the trip, and we will check while they wait on hold – *again*.  We have customers, both in person and over the telephone, who we repeatedly inform that we still have not received a response to the background check request.

21. The general customer reaction to a "denial" is disbelief.

22. We do inform customers who are "denied" on how to file an appeal with the NYS Police.

23. My general understanding is that if a customer does not receive any determination from the NYS Police, he or she has no right of appeal.

24. We continue to have some customers not complete desired ammunition purchases.  Some customers still do not know that a NYSP ammunition background check is required.  Some customers are not willing to do an ammunition background check which they find unconstitutional, a violation of *Bruen*, illegal, intrusive, and unwarranted – resulting in them leaving without completing any purchase and, almost always, with the explanation that they will travel out of New York to make their purchase.  Some customers do provide valid government identification and personal information, along with remittance of the fee, and,

eventually, we do receive a "proceed" determination and make efforts to update that customer, but the customer does not ever return to complete the ammunition transaction.

25. Customers have reported to us their independent efforts to contact the NYS Police to obtain a determination of a background check that is in "delay" or "under investigation" or other non-responsive status.

26. We do get some split responses from the NYSP for the same customer, whether either ammunition or the firearm is "proceed" and the other is "deny" or "delay."

27. We continue to receive some "deny" responses to customers presenting what appears to be a valid county-issued concealed carry permit.

28. I have seen a separate SAR license issued by Saratoga County.

29. We continue to receive "deny" for some customers presenting what appears to be a valid county-issued concealed carry permit with an "SAR endorsement" or an "SAR amendment."

30. We continue to get customers who do not know that there is an SAR license requirement.

31. We inform customers on how to proceed to their county clerk in the manner of a concealed carry permit.

32. The blame for this rests squarely on the shoulders of the Superintendent of NYSP for not issuing the statewide license, approved as to form, and for issuing an SAR license application on the same application as the concealed carry permit.

33. There is nothing in the law that I have read or in anything I have read as published by the NYS Police that requires a New York resident to obtain a concealed carry permit in order to obtain an SAR license to purchase a semi-automatic rifle.

34. Myself, my co-plaintiffs, and our witnesses have been making the same complaints, each step of these requirements going into effect and operations through the NYS Police and no change has been made to respond to any of our legal arguments or direct contact with the NYSP "help line."

35. I am not aware of any text, history, or tradition that required or allowed the government to prevent all persons from purchasing ammunition, unless so-approved by a governor or president and the state police under the governor's control or the military under the president's control.

36. I am aware of New York's long history of requiring a concealed carry permit since the Sullivan Act. I am not aware of any text, history, or tradition that presumed a person wishing to acquire a semi-automatic rifle or other semi-automatic firearm was required first to obtain a government license for that class of arms.

37. Ammunition is required for the operation of ALL firearms.

38. The semi-automatic rifle is a commonly-used firearm. It is potentially the most common firearm in use today, even more so than a handgun. Or, at least it *was*, arguably, in New York, prior to September 1, 2022 when the CCIA went into effect.

39. I ask the Court deny the State's current motion to dismiss.

Dated: __Feb 2, 2026__

Glenville, New York



**Craig Serafini**

PLAINTIFF

Upstate Guns & Ammo LLC

3410 State Street, Suite #2

Schenectady, New York 12304