UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Nadine Gazzola, individually, and as co-owner, President, and as BATFE Federal Firearms Licensee Responsible Person for Zero Tolerance Manufacturing, Inc., et al.<br><br>                                              *Plaintiffs*,<br><br>          -against-<br><br>STEVEN G. JAMES, in his Official Capacity as the Superintendent of the New York State Police; and LETITIA JAMES, in her official capacity as Attorney General of the State of New York.<br><br>                                              *Defendants*. | 1:22-cv-1134<br>(BKS/DJS) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS
PURSUANT TO FED R. CIV. P. 12(c)**

LETITIA JAMES
Attorney General of the State of New York
Syracuse Regional Office
Attorney for Defendants
300 S. State Street, Ste. 300
Syracuse, NY 13202

By:   Aimee Cowan, Esq.
       Assistant Attorney General, of Counsel
       Bar Roll No. 516178
       Telephone: (315) 448-4800
       Fax: (315) 448-4853
       E-mail: Aimee.Cowan@ag.ny.gov

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

ARGUMENT……………………………………………………………………………………..1

**POINT I:**     **PLAINTIFFS' DERIVATIVE SECOND AMENDMENT CHALLENGE TO THE AMMUNITION BACKGROUND CHECK SHOULD BE DISMISSED…………………………………………………………………...1**

    **A.**     **Under <u>NYSFA</u>, The Ammunition Background Check Does Not Implicate The Second Amendment's Text……………………………………………………..2**

        1.     <u>NYSFA</u> Bars Plaintiff's Facial Challenge………………………………..2

        2.     Plaintiffs Have Not Pled an As-Applied Challenge, and <u>NYSFA</u> Would Render Any Such Challenge Meritless…………………………………...3

        3.     <u>NYSFA</u> Holds That The Background Check Fee Is Not A Constitutional Violation………………………………………………………………5

    **B.**     **Background Checks In Connection With The Purchase of Ammunition Are Consistent With American Law And History………………………………….5**

**POINT II:**     **PLAINTIFFS' CHALLENGE TO LICENSING FOR SEMIAUTOMATIC RIFLES FAILS AS A MATTER OF LAW…………………………………….8**

CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

Frey v. City of New York,
    157 F.4th 118 (2d Cir. 2025)……………………………………………………………..9

Gazzola v. Hochul,
    88 F.4th 186 (2d Cir. 2023)…………………………………………………………….2, 4, 10

Giambalvo v. Suffolk Cnty,
    155 F.4th 163 (2d Cir. 2025)……………………………………………………………3, 8, 9

Jenkins v. County of Washington,
    126 F. Supp. 3d 255 (N.D.N.Y. 2015)…………………………………………………….5

McGregor v. Suffolk County,
    No. 23 Civ. 1130, 2025 WL 3704289 (E.D.N.Y. Dec. 22, 2025)…………………………….9

New York State Firearms Association v. James,
    157 F.4th 232 (2d Cir. 2025)……………………………………………………1, 2, 3, 4, 5, 8

New York State Rifle & Pistol Ass'n, Inc. v. Bruen,
    597 U.S. 1 (2022)…………………………………………………………………..…4, 6, 7, 8

Rhode v. Bonta,
    145 F.4th 1090 (9th Cir. 2025)…………………………………………………………..……8

Singleton v. Fifth Generation, Inc.,
    No. 15 Civ. 474, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016)……………………………..9

United States v. Rahimi,
    602 U.S. 680 (2024)…………………………………………………………………….3, 6, 7

United States v. Salerno,
    481 U.S. 739 (1987)…………………………………………………………………….3

United States v. Vereen,
    152 F.4th 89 (2d Cir. 2025)………………………………………………………………...4

Zherka v. Bondi,
    140 F.4th 68 (2d Cir. 2025)………………………………………………………………...7

**STATUTES**

Fed. R. Civ. P. Rule 8………………………………………………………………………………1

Fed. R. Civ. P. 12(d)……………………………………………………………………………10

Defendants[1] respectfully submit this reply memorandum of law in further support of their motion for judgment on the pleadings with respect to the two final provisions of New York state law still at issue in this case: "(1) New York's ammunition background check requirements" and "(2) New York's semiautomatic rifle licensing requirement."[2] ECF No. 143.

## ARGUMENT

### POINT I: PLAINTIFFS' DERIVATIVE SECOND AMENDMENT CHALLENGE TO THE AMMUNITION BACKGROUND CHECK SHOULD BE DISMISSED

Plaintiffs' opposition contends that with respect to the ammunition background check provisions, their 126-page complaint satisfies the pleading and notice requirements for Fed. R. Civ. P. Rule 8. ECF No. 152 at 5-7. Plaintiffs further argue that they have "continuously put Defendants on increasingly detailed notice of their claims" by filing an emergency Temporary Restraining Order, serving Rule 26 disclosures and cross-moving for partial summary judgment. Id. at 8-9. Defendants do not contest that the complaint is detailed—overwhelmingly so—or that plaintiffs have provided defendants with information regarding their claims. However, the level and amount of detail provided, much of it irrelevant, is immaterial. Plaintiffs' ammunition background check claim fails because a recent binding Second Circuit opinion says that it fails—and Plaintiffs present no authority to the contrary. See New York State Firearms Association v. James, 157 F.4th 232 (2d Cir. 2025) ("NYSFA").[3] Plaintiffs disagree with that outcome,

---

[1] For ease of reading, this reply brief uses the same defined terms as Defendants' moving brief, ECF No. 144-22.

[2] Plaintiffs' opposition memorandum asserts in a footnote that "Defendants did not file against Plaintiffs' claims concerning their ability to teach the CCIA course. This is the third of the three cross-over claims." ECF No. 152 at 18 [page numbers refer to docket page numbers], fn. 9. However, this issue has already been decided. The Court's September 26, 2025, Memorandum-Decision and Order explicitly states that "[t]he allegations regarding lost teaching income are not contained in the complaint, but, in any event, allegations that two otherwise qualified firearms instructors are unable to teach, fail to allow a plausible inference of any meaningful constraint on any Second Amendment rights." ECF No. 136 at 34, fn. 14.

[3] Plaintiffs refer to the case as Borrello, the name of one of the remaining individual plaintiffs left in that case after the dismissal of the NYSFA organization. ECF No. 152 at 26 & n.35; see N.Y. State Firearms Ass'n v. James, No. 23 Civ. 6524, 2024 WL 1932050, at *4 (W.D.N.Y. May 2, 2024). This brief refers

1

contending that "the Second Circuit decision is littered with mistakes," ECF No. 152 at 27, but the Court of Appeals' opinion is binding and requires a dismissal on the merits.

    A.    **Under <u>NYSFA</u>, The Ammunition Background Check Does Not Implicate The Second Amendment's Text**

        1.    <u>NYSFA</u> Bars Plaintiff's Facial Challenge

As previously discussed, in <u>NYSFA</u>, the Second Circuit unanimously affirmed the denial of a preliminary injunction against the same ammunition background check provision challenged by Plaintiffs here. Plaintiffs' opposition reiterates a point that Defendants do not contest, that "[a] State cannot circumvent those holdings [regarding the right to bear arms] by banning outright the sale or transfer of common-use weapons and necessary ammunition." ECF No. 152 at 22, citing <u>Gazzola v. Hochul,</u> 88 F.4th 186, 195-196 (2d Cir. 2023) ("<u>Gazzola</u> II"). The background check provision does not outright ban the sale of necessary ammunition—or anything remotely close—and Plaintiffs have never alleged that it does. <u>See</u> ECF No. 151-2 ¶¶ 8, 9, 12 (asserting that the declarant has been "actively using" the system "for over two years," has put in "hundreds of requested background checks," and that only "some of my customers" receive a "response of 'delay,' 'under review,' 'under investigation,' and other non-immediate determinations."). In fact, Plaintiffs' own submissions in response to this motion show that the vast majority of individuals have been able to purchase ammunition since the provision was enacted. <u>See e.g.</u> ECF No. 151-3 at 10-12 (spreadsheet showing 42 of 48 ammunition background checks received a "proceed" response, and that at least two checks marked "delayed" for human review were approved within three days).

---

to the case as <u>NYSFA</u> in keeping with Defendants' moving papers, and with the name of the case at the time the Second Circuit decided it.

2

While Plaintiffs' opposition notes some perceived inadequacies with the ammunition background check system, ECF No. 152 at 38-43, it completely ignores (1) their burden to "establish that no set of circumstances exists under which the [challenged provision] would be valid," United States v. Rahimi, 602 U.S. 680, 693 (2024) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)), and (2) the undeniable reality that the Second Circuit has already held in NYSFA that a facial challenge to this provision fails "because the Second Amendment is not implicated under th[e]se circumstances." 157 F.4th at 246. The Circuit emphasized that any burden on Second Amendment rights is "*de minimis*" where "a background check is designed to return a 'proceed' response immediately for those who are not disqualified from purchasing ammunition," and furthermore that "'a short delay does not violate an individual's Second Amendment rights' so as to rebut the presumptive validity of a challenged law." Id. (quoting Giambalvo v. Suffolk Cnty, 155 F.4th 163, 183-84 (2d Cir. 2025)). Plaintiffs accordingly cannot state a claim with respect to their facial constitutional challenge to the background check.

        2.        Plaintiffs Have Not Pled an As-Applied Challenge, and NYSFA Would Render Any Such Challenge Meritless

While Plaintiffs' complaint does not plead any as-applied challenge to the ammunition background check, see ECF No. 144-22 at 17-18, even if it did, an as-applied challenge would still fail. To the extent that Plaintiffs attempt to distinguish NYSFA, they point to their status as commercial sellers of ammunition, rather than buyers like the NYSFA plaintiffs. See ECF No. 152 at 26-27. They write that they are "not aware of any FFL being a named party in the [NYSFA] case," id., and that "[n]o customer, not even a world class competition shooter, . . . .would be able to analyze, develop proofs, and present evidence in admissible form like the Plaintiffs," who have "a built-in compare/contrast barometer created and honed by their federal license and work." Id. at 26. While Plaintiffs assert that NYSFA "is thus distinguished," id., their position reflects a

3

fundamental misunderstanding of the Second Circuit's holdings, which require commercial sellers pressing a Second Amendment claim to meet a *higher* standard than buyers, not a lower one. See United States v. Vereen, 152 F.4th 89, 95-96 (2d Cir. 2025) (summarizing the law on "ancillary" Second Amendment claims and explaining that "post-Bruen, we have upheld a range of regulations on firearms retailers.").

Most fundamentally, Plaintiffs' argument is based on a misunderstanding of the outcome of their first appeal in this case. While they claim that they "already have one good decision from the Second Circuit," ECF No. 152 at 26, and that "[t]he Second Circuit expressly adopted Plaintiffs' argument," id at 12, in fact, Plaintiffs *lost* their preliminary injunction motion, and the Second Circuit set a standard that they have not been able to meet, either on the four corners of their Complaint or on the undisputed facts. The Second Circuit has repeatedly held that the burden on the seller from an ammunition background check would not give rise to a Second Amendment challenge unless it meaningfully affected *the public*'s ability to acquire a gun. See NYSFA, 157 F.4th at 249 ("the retailer must demonstrate that the challenged regulation meaningfully constrains the *consumer's* Second Amendment right, not that it burdens the retailers' non-existent constitutional right to sell firearms.") (emphasis in the original); Gazzola II, 88 F.4th at 196 (Plaintiffs must "show[] that the New York law is so restrictive that it threatens a citizen's right to acquire firearms" or ammunition). Plaintiffs have not demonstrated that the background check has meaningfully constrained the consumer's Second Amendment right. And Plaintiffs' own "witness" information demonstrates that over a three-day period two-and one-half years ago, starting on the day that the New York NICS was launched, ammunition background checks for their customers were marked "proceed" on 42 of 48 ammunition sales, an overwhelmingly positive

4

88% approval rate. ECF No. 151-3.[4] Plaintiffs' opinion that the Second Circuit's ruling in NYSFA is "littered with mistakes" does not change the binding nature of that decision, and they simply have not alleged "that New York citizens will be meaningfully constrained – or, for that matter constrained at all – in acquiring firearms and ammunition," particularly when both sides' papers agree that the overwhelming majority of background checks result in a swift approval.

        3.      NYSFA Holds That The Background Check Fee Is Not A Constitutional Violation

Plaintiffs do not appear to challenge or address Defendants' assertion that the nominal fee for each use of the state-provided background check system is constitutional. See ECF No. 144-22 at 18-19. "In th[e Northern] District, when a non-movant fails to oppose a legal argument asserted by a movant [for judgment on the pleadings], the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a 'modest' burden." Jenkins v. County of Washington, 126 F. Supp. 3d 255, 277 (N.D.N.Y. 2015). Here, Defendants' argument not only "possesses facial merit," id., it has already prevailed before the Second Circuit, which concluded that "the $2.50 fee imposed on the retailer does not meaningfully constrain a purchaser's right to keep and bear arms." NYSFA, 157 F.4th at 249.

    **B.**    **Background Checks In Connection With The Purchase of Ammunition Are Consistent With American Law And History**

For the reasons stated above, and the reasons stated in Defendants' opening brief, NYSFA is binding precedent holding that the ammunition background check does not "meaningfully constrain an individual's right to 'keep' and 'bear' arms so as to implicate the plain text of the

---

[4] Interestingly, the same "witness" avers that he used himself as the first background check on the first day that the New York State NICS was launched in September 2023, and that he was given a "proceed" response within a day. ECF No. 151-3 ¶ 9.

5

Second Amendment." 157 F.4th at 249-50. Accordingly, "we have no occasion to engage in the historical analysis at step two" of the Bruen/Rahimi framework. Id. But even if there were such a basis, Plaintiffs' challenge would fail at the second step because the ammunition background check is fully "consistent with the principles that underpin the Nation's regulatory tradition." Rahimi, 602 U.S. at 681.

The Defendants' moving brief provided an abbreviated version of the historical survey presented to the Second Circuit in NYSFA, tracing the regulation of commerce in ammunition in Early America, including bars on ammunition sales to outsiders, foreign powers, or Native Americans absent specific approval from the governor; colonial laws keeping ammunition from potentially dangerous groups with exceptions for persons who appeared and swore an oath; and Founding-era laws prohibiting ammunition possession unless persons swore loyalty to the new United States. See ECF No. 144-22 at 12-16. Each of these laws is relevantly similar to the ammunition background check law in "why and how the regulation burdens the right" – they prohibited the distribution of ammunition to potentially dangerous persons but allowed for that distribution when assurances of safety could be verified. See Rahimi, 602 U.S. at 692 ("Why and how the regulation burdens the right are central to this inquiry. For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations.").

Plaintiffs' opposition contains a great deal of heated rhetoric but argues at base that all this history should simply be ignored. They say that colonial commercial laws preventing distribution of ammunition do not matter because "[t]he aims of commerce during imperialism is not relevant to a Bruen analysis," ECF No. 152 at 19, that laws disarming potentially dangerous groups must

6

be ignored because "[n]o historical evils may be embraced as analogies," id. at 18, and that Revolutionary loyalty oaths are "[i]rrelevant to a Bruen [a]nalysis." Id. at 19. And once the Court excludes all the history, they argue that the law should be struck down based on a lack of history. Plaintiffs' demand to distinguish away all relevant history is contrary to the Supreme Court's holding in Rahimi, where the Court rejected such an attempt by an 8-to-1 vote, explaining that a modern "law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" Rahimi, 602 U.S. at 692 (quoting New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 30 (2022)). The ammunition background check comports with Second Amendment principles because it prevents the sale of ammunition to "individuals who pose a credible threat to the physical safety of others" – individuals who fail a background check – which is specifically permitted pursuant to Rahimi. 602 U.S at 693; see Bruen, 597 U.S. at 38 n.9 (approving of licensing laws that "often require applicants to undergo a background check" because they "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens").

To the extent that Plaintiffs contend that laws and history cited by Defendants were discriminatory in some way, particularly as to race or religion (ECF No. 152 at 24-28), Defendants noted in their opening brief that race-based or religion-based assessments of dangerousness would never pass constitutional review in 2025. The unfortunate reality is that the early American laws to which Bruen directs the constitutional inquiry often codified prejudices that existed at the time. ECF No. 144-22 at 22, fn. 4. Like the Second Circuit, "[w]e cite them not as examples to be followed but rather, according to the analysis the Supreme Court has directed we undertake, as examples of a historical tradition." Zherka v. Bondi, 140 F.4th 68, 90 (2d Cir. 2025). Put another way, such laws if evaluated today would violate the *Fourteenth Amendment*, not the Second.

7

Finally, Plaintiffs' opposition contends that the California ammunition background check system was found unconstitutional under Bruen and is on appeal. ECF No. 152 at 34, citing Rhode v. Bonta, 145 F.4th 1090 (9th Cir. 2025). But as Plaintiffs note, the Ninth Circuit panel decision, which affirmed the District Court's decision finding the California law to be unconstitutional under Bruen, was vacated and will be reheard *en banc*. Perhaps more importantly, the Second Circuit in NYSFA "respectfully disagree[d] with the analysis set forth in th[e Rhode] majority opinion," emphasizing that background check regimes in California and New York are not the same. NYSFA, 157 F.4th at 250. Further, the Second Circuit disagreed with the Rhode majority's merits analysis, rejecting the contention – similar to the one offered by Plaintiffs here – "that *any* delay or fee, however minimal, suffices to constitute a meaningful constraint" on the Second Amendment. Id. at 251. "That conclusion, as detailed [in NYSFA] is contradicted by our Circuit's precedents, our sister courts' precedents, and, indeed, the Ninth Circuit's own precedents." Id. (collecting cases). In sum, Plaintiffs' request that this Court abandon Second Circuit precedent should be flatly rejected.

**POINT II:  PLAINTIFFS' CHALLENGE TO LICENSING FOR SEMIAUTOMATIC RIFLES FAILS AS A MATTER OF LAW**

Plaintiff's thirty-five-page opposition devotes barely one page to opposing Defendants' contention that New York's semiautomatic rifle licensing law is constitutional under recent Supreme Court and Second Circuit precedent. ECF NO. 152 at 44-45. Plaintiffs' opposition does not dispute that licenses have been issued, nor does it contend that regulatory confusion has prevented the sales of semiautomatic rifles. It appears that Plaintiffs simply object to the existence of a licensing requirement for a semiautomatic rifle, see ECF No. 122-10, ¶ 12, which should be disposed of at the first step of Bruen for the reasons previously set forth. ECF No. 144-22 at 26-33; see Giambalvo, 155 F.4th at 181 (licensing laws "are not constitutionally suspect"); Frey v. City of

8

New York, 157 F.4th 118, 140 (2d Cir. 2025) (licensing laws are "presumptively constitutional" absent specific allegations of abuse). Indeed, Plaintiffs' opposition fails to address *any* of the recent Second Circuit decisions on the constitutional validity of gun licensing. See ECF No. 144-22 at 26-31. Nor do they address the recent decision by the U.S. District Court for the Eastern District of New York, which upheld the exact law they are challenging as "straightforward," finding "no genuine dispute of fact that the Rifle Bill comports with the United States' history of firearm regulation." McGregor v. Suffolk County, No. 23 Civ. 1130, 2025 WL 3704289, at *1, *3 (E.D.N.Y. Dec. 22, 2025).

Finally, the overwhelming majority of the Plaintiffs have averred in sworn declarations that they have obtained semiautomatic rifle licenses and that they continue to sell semiautomatic rifles to licensed persons. See ECF No. 144-22 at 33. Nor do they dispute that the license application cannot be considered a meaningful constraint, since "[a] short delay does not violate an individual's Second Amendment rights." Frey, 157 F.4th at 141 (quoting Giambalvo, 155 F.4th at 184). To the extent that Plaintiffs contend that they "still do not have any customers who show me a stand-alone SAR license," see e.g. ECF No. 151-5 ¶ 22, ECF No. 151-6 ¶ 23, one Plaintiff has seen a separate SAR license issued by Saratoga County, ECF No. 152-2 ¶ 28. Furthermore, the data demonstrates that between September 4, 2022, and about December 23, 2025, there were approximately 40,714 new firearm licenses issued throughout the State that include the authority to purchase/possess semiautomatic rifles, and during the same time period there were approximately 75,947 firearm license amendment transactions throughout the State that involve licenses which include the authority to purchase/possess semiautomatic rifles. See ECF No. 145-1 ¶ 6.[5] The fact that the data

---

[5] Plaintiffs have not denied the accuracy of these figures, nor have they disputed that they are subject to judicial notice. See Singleton v. Fifth Generation, Inc., No. 15 Civ. 474, 2016 WL 406295, at *2-3 (N.D.N.Y. Jan. 12, 2016) (Sannes, J.) (court may take judicial notice of "matters of public record" in determining motion for judgment on the pleadings, including documents issued by government agencies). In the event the Court were to find these or other items of

does not specify a "stand alone" semiautomatic rifle license versus an amendment onto concealed carry permits is of no moment. The process, legal standard, fee and result are the same. In sum, there simply is no plausible allegation "that New York citizens" or that any Plaintiff "will be meaningfully constrained – or, for that matter, constrained at all" in obtaining a semiautomatic rifle permit or buying a semiautomatic rifle with one. Gazzola II, 88 F.4th at 197.

## CONCLUSION

Defendants respectfully request that the Court dismiss the remainder of Plaintiffs' Complaint in its entirety and with prejudice, and grant such other and further relief as it deems just and equitable.

Dated: Syracuse, New York
February 13, 2026

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants*
300 S. State Street, Ste. 300
Syracuse, New York 13202

By: **s/Aimee Cowan**
Aimee Cowan
Assistant Attorney General, of Counsel
Bar Roll No. 516178
Telephone: (315) 448-4800
Fax: (315) 448-4853
Email: aimee.cowan@ag.ny.gov

---

evidence to be outcome-determinative but not subject to judicial notice, Defendants do not object to the motion being converted to one for summary judgment under Fed. R. Civ. P. 12(d), without prejudice to filing a summary judgment motion at the close of discovery, if necessary. Such an outcome might be particularly appropriate given that Plaintiffs have also introduced material beyond the four corners of the complaint.

10

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 13, 2026, she filed Defendants' Reply Memorandum of Law by electronically filing with the Clerk of the Court herein, using the CM/ECF system, which is understood to have sent notification of such filing electronically to the following:

    Paloma A. Capanna, Esq.
    Attorney for Plaintiffs
    106-B Professional Park Drive
    Beaufort, North Carolina 28516

Dated: Syracuse, New York
        February 13, 2026

                                LETITIA JAMES
                                Attorney General of the State of New York
                                Attorney for Defendants
                                300 S. State Street, Suite 300
                                Syracuse, New York 13202
                                By: **s/Aimee Cowan**
                                Aimee Cowan, Esq.
                                Assistant Attorney General
                                Bar Roll No. 516178
                                Telephone:    (315) 448-4800
                                Fax: (315) 448-4853
                                Email: aimee.cowan@ag.ny.gov