**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

NADINE GAZZOLA, individually, and as co-owner, President, and Bureau of Alcohol, Tobacco, Firearms, and Explosives Federal Firearms Licensee ("BATFE FFL") Responsible Person for Zero Tolerance Manufacturing, Inc., SETH GAZZOLA, individually, and as co-owner, Vice President, and BATFE FFL Responsible Person for Zero Tolerance Manufacturing, Inc., JOHN A. HANUSIK, individually, and as owner and BATFE FFL Responsible Person for AGA Sales, JIM INGERICK, individually, and as owner and BATFE FFL Responsible Person for Ingerick's, LLC, d/b/a Avon Gun & Hunting Supply, CHRISTOPHER MARTELLO, individually, and as owner and BATFE FFL Responsible Person for Performance Paintball, Inc., d/b/a Ikkin Arms, MICHAEL MASTROGIOVANNI, individually, and as owner and BATFE FFL Responsible Person for Spur Shooters Supply, CRAIG SERAFINI, individually, and as owner and BATFE FFL Responsible Person for Upstate Guns and Ammo, LLC, and NICK AFFRONTI, individually, and as BATFE FFL Responsible Person for East Side Traders LLC,

                              Plaintiffs,

v.

STEVEN G. JAMES, in his official capacity as the Superintendent of the New York State Police, and LETITIA JAMES, in her official capacity as the Attorney General of the State of New York,

                              Defendants.

1:22-cv-1134 (BKS/DJS)

---

**Appearances:**

*For Plaintiffs:*
Paloma A. Capanna
Law Office of Paloma A. Capanna, P.C.
106-B Professional Park Drive
Beaufort, North Carolina 28516

*For Defendants:*
Letitia James
Attorney General of the State of New York
Aimee Cowan
Assistant Attorney General
300 South State Street, Suite 300
Syracuse, New York 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.   INTRODUCTION

Plaintiffs, licensed firearms dealers engaged in the commercial sale of firearms and ammunition, filed this action under 42 U.S.C. § 1983, against Defendants Steven G. James, in his official capacity as the Superintendent of the New York State Police, and Letitia James, in her official capacity as the Attorney General of the State of New York. (Dkt. No. 1). Plaintiffs allege that New York's ammunition background check and semiautomatic rifle license requirements violate the Second Amendment and seek declaratory and injunctive relief, as well as monetary damages. (*Id.*). Presently before the Court is Defendants' motion for judgment on the pleadings under Rule 12(c).[1] (Dkt. No. 144). The motion is fully briefed. (Dkt. Nos. 145, 151, 152, 155). For the reasons that follow, Defendants' motion to dismiss is granted.

## II.   FACTS[2]

The facts and procedural history of this case are set forth at length in the Court's prior decision. (Dkt. No. 136, at 3–16). The Court assumes the parties' familiarity with those facts and recites only those facts relevant to the remaining claims.

---

[1] This is Defendants' second motion for judgment on the pleadings; the Court granted Defendants' first motion and dismissed all claims except the two remaining claims. (Dkt. No. 136).

[2] The facts are drawn from Plaintiffs' complaint and the attached exhibits. (Dkt. No. 1). *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (citation omitted). The Court assumes the truth of and draws all reasonable inferences from the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Defendants have attached exhibits to their answer, (Dkt. No. 79), and both parties

2

### A.    The Plaintiffs

The eight individual Plaintiffs hold Federal Firearms Licenses ("FFL"), authorized by the federal government through the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to engage in the business of buying and selling firearms. (Dkt. No. 1, ¶ 17.b); *see also* 18 U.S.C. § 923. Plaintiffs are "owners, employers, and employees" of "businesses engaged in lawful commerce in firearms and in gun shows" in the Northern District of New York. (Dkt. No. 1, ¶¶ 1, 15). Plaintiffs Nadine Gazzola and Seth Gazzola own Zero Tolerance Manufacturing, Inc., in Ghent, NY. (*Id.* ¶ 6). Plaintiff John Hanusik does business as AGA Sales, a sole proprietorship in Catskill, NY. (*Id.* ¶ 7). Plaintiff Jim Ingerick owns Ingerick's LLC, d/b/a "Avon Gun and Hunting Supply," in Avon, NY. (*Id.* ¶ 8). Plaintiff Christoper Martello owns Performance Paintball, Inc., d/b/a/ "Ikkin Arms" in Rochester, NY. (*Id.* ¶ 9). Plaintiff Michael Mastrogiovanni "does business as 'Spur Shooters Supply,'" a sole proprietorship in Syracuse, NY. (*Id.* ¶ 10). Plaintiff Craig Serafini owns Upstate Guns and Ammo, LLC in Schenectady, NY. (*Id.* ¶ 12). Plaintiff Nick Affronti works for East Side Traders LLC in Ontario, NY. (*Id.* ¶ 13).

### B.    Ammunition Background Check

Plaintiffs assert that "[h]istorically, there has not been an ammunition background check." (*Id.* ¶ 216). In 2022, however, the New York State Legislature passed the Concealed Carry Improvement Act ("CCIA") requiring, as relevant here, an ammunition seller conduct a background check on a prospective purchaser of ammunition before the sale and keep a detailed record of every sale of ammunition. N.Y. Penal Law §§ 400.02(2), 400.03(2)–(3); N.Y. Exec. Law § 228(5)(a). Before completing an ammunition sale, a "seller of ammunition" or "dealer in

---

have submitted exhibits in connection with the pending motion for judgment on the pleadings. None appear appropriate for judicial notice and none are referenced in or integral to the Complaint. The Court therefore has not considered these exhibits in deciding the present motion.

firearms" must "verif[y] the identity" of the purchaser by examining "a valid [state-issued] identification document" and contact "the statewide license and record database" and provide it "with information sufficient to identify" the purchaser of ammunition. N.Y. Penal Law § 400.03(3)(a), (c). "If the . . . [database] notifies the . . . seller that the information available . . . does not demonstrate that the receipt of ammunition by" the purchaser "would violate 18 U.S.C. § 922(g) or state law,"[3] and that the purchaser is "eligible to possess ammunition," the system "assigns a unique identification number to the [transaction]," which it provides to the seller to record. N.Y. Penal Law § 400.03(4)–(5).

In addition to conducting a background check, the CCIA requires sellers to keep detailed records of ammunition transactions. Section 400.03(2) directs "[a]ny seller of ammunition or dealer in firearms" to keep a record "approved as to form by the superintendent of state police." *See also* N.Y. Penal Law § 400.02(2) (directing that the New York State Police "shall[]" "create[] and maintain[]" "a statewide license and record database specific for ammunition sales"). Each record must include "the date, name, age, occupation and residence of any person . . . to whom ammunition is delivered, and the amount, calibre, manufacturer's name and serial number" of such ammunition. N.Y. Penal Law § 400.03(2). However, as of November 1, 2022, the date this action was filed, Defendant Superintendent James "ha[d] failed to promulgate" a "form" for recording ammunition sales. (Dkt. No. 1, ¶ 217(a)). Thus, in order to comply with the recordkeeping provisions, "Plaintiffs are writing the [requisite ammunition sales] information down on plain paper," and "wonder whether this" method of recording ammunition sales "would . . . comply with the law." (Dkt. No. 1, ¶ 217(a), (c); *see also id.* ¶ 288 ("Plaintiffs are thus

---

[3] Section 922(g) states that "[i]t shall be unlawful for" an individual in certain prohibited categories, including, among others, an individual who has been convicted of a felony, "is a fugitive," or "is an unlawful user of or addicted to any controlled substance," to possess "any firearm or ammunition." 18 U.S.C. § 922(g)(1)–(9).

mandated to indefinitely create ammunition purchase records by their own hand, until and unless Defendant NYS Police specifies a format or otherwise converts into an electronic system.")). "Any form of ammunition background check or sales record-keeping involves Plaintiff and employee time for creation and maintenance." (*Id.* ¶ 289). Further, Plaintiffs "protest" Defendants' expenditure of "resources to try to make up its own background check system or to try to add an ammunition background check system—particularly . . . if it is the Plaintiffs who will bear the cost and that cost will drove them out-of-business from offering the very firearm that is protected by the Second Amendment." (*Id.* ¶ 215).

        **C.**        **Semiautomatic Rifle License**

        The CCIA also includes provisions governing the sale and purchase of semiautomatic rifles and requires a license for such purchases after September 4, 2022. N.Y. Penal Law § 400.00(1), (2). The new provisions govern new semiautomatic licenses, N.Y. Penal Law § 400.00(1), as well as amendments, *id.* § 400.00(9), and recertifications, *id.* § 400.00(10)(c). Plaintiffs assert that Defendants have "created" "confusion . . . around the new laws," (Dkt. No. 1, ¶ 160(g)), by: (1) publishing a "wrongful instruction" in a "memorandum" stating that "[e]xisting firearm license holders can *add* a Semi-Automatic Rifle to their [existing] firearm license," when the statutory provisions require "that a *unique* [semiautomatic rifle] license will issue," (*id.* ¶ 160(c)–(d)) (emphasis added); (2) publishing a semiautomatic rifle license application entitled "Semi-Automatic Rifle License Amendment," when license "[a]mendments" and new license applications "are separately dealt with," (*id.* ¶ 160(a)–(b) (asserting the title of the application "is adding to the confusion, not clarifying the laws"). In addition, Plaintiffs assert that "[n]o semi-automatic license is known to have issued or to be available to request," except in "[c]ounties allowing existing concealed carry permit holders to add a semi-automatic rifle to their existing concealed carry permit," resulting in a near total stoppage of the sale of all semi-

automatic rifles in New York." (*id.* ¶ 160). Since September 4, 2022, the effective date of the legislation, "Plaintiffs have been unable to engage in commerce of semi-automatic rifles because of the confusion created by the Defendants around the new laws," (*id.* ¶ 160(g)), and are "refusing to sell semi-automatic rifles to such customers for fear of being arrested for non-compliance and committing a crime," (*id.* ¶ 160), and Plaintiffs' "sales of semiautomatic rifles have plummeted and, along with it, general store inventory, as well," (*id.* ¶ 160(g)).

## III.   STANDARD OF REVIEW

"The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). Thus, "[t]o survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court will grant a motion for judgment on the pleadings "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 340 (S.D.N.Y. 2008).

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).

## IV.    DISCUSSION

Defendants move for judgment on the pleadings dismissing Plaintiffs' derivative Second Amendment claim, with respect to the ammunition background check and semiautomatic rifle license requirement, for failure to state a claim for relief. (Dkt. No. 144-22). Plaintiffs oppose Defendants' motion. (Dkt. No. 152).

The Second Amendment provides that, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has held that the Second Amendment protects an individual's right to keep and bear arms for self-defense. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022).[4] More specifically, the Supreme Court has recognized that the Second Amendment "forbids a State from banning the in-home possession of common-use weapons by law-abiding, responsible citizens," *Gazzola v. Hochul*, 88 F.4th 186, 195 (2d Cir. 2023) (citing *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)), and forbids a state from "requiring them to show a special need to carry such weapons outside the home," *id.* (citing *Bruen*, 597 U.S. at 70).

In *Bruen*, "the Supreme Court . . . prescribed a two-step framework to evaluate Second Amendment challenges." *New York State Firearms Assn. v. James ("NYSFA")*, 157 F.4th 232, 244 (2d Cir. 2025) (citing *Bruen*, 597 U.S. 1). A court must "ask first 'whether the Second Amendment's text applies to the challenged regulation; second, if it does, we ask whether the regulation is consistent with the nation's historical tradition of firearm regulation.'" *Id.* (quoting *United States v. Vereen*, 152 F.4th 89, 94 (2d Cir. 2025)).

---

[4] "Strictly speaking, [states] [are] bound to respect the right to keep and bear arms because of the Fourteenth Amendment, not the Second." *Bruen*, 597 U.S. at 37.

The first step requires a plaintiff to allege "that 'the Second Amendment's plain text covers an individual's conduct'—namely, to 'keep' and 'bear' arms." *Id.* (quoting *Bruen*, 597 U.S. at 24). "Of course, to 'keep' and 'bear' arms, one must also be able to acquire them and maintain them in operable condition," *Vereen*, 152 F.4th at 95, which "necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms, and to keep them in repair," *Gazzola*, 88 F.4th at 196 (quoting *Andrews v. State*, 50 Tenn. 165, 178 (1871)). Courts refer to the rights to purchase firearms and suitable ammunition as "ancillary rights." *Vereen*, 152 F.4th at 95 (citing *Gazzola*, 88 F.4th at 197); *see also NYSFA*, 157 F.4th at 244 (describing "the acquisition and maintenance of firearms and ammunition" as "ancillary conduct"). An "ancillary right" "is 'only protected to the extent that [it is] necessary to the realization of the textually specified right to keep and bear arms.'" *NYSFA*, 157 F.4th at 244 (quoting *Vereen*, 152 F.4th at 95). "Thus, 'regulations on the means of acquiring, transporting, and storing firearms only implicate the text of the Second Amendment if they *meaningfully constrain* the right to possess and carry arms.'" *Id.* (quoting *Vereen*, 152 F.4th at 95); *see, e.g.*, *Gazzola*, 88 F.4th at 196 ("[C]ommercial regulations on firearms dealers, whose services are necessary to a citizen's effective exercise of Second Amendment rights, cannot have the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms."). Indeed, the Supreme Court has recognized "laws imposing conditions and qualifications on the commercial sale of arms" as "presumptively lawful regulatory measures." *Heller*, 554 U.S. at 626–27 & n.26.

"A law regulating the means of acquiring firearms and ammunition does not meaningfully constrain the right to possess arms unless it 'is so restrictive that it threatens a citizen's right to acquire firearms [and ammunition]." *NYSFA*, 157 F.4th at 244 (quoting

*Gazzola*, 88 F.4th at 196). The Second Circuit has therefore found the "modest administrative burdens that naturally follow" laws regulating the commercial sales of firearms and ammunition, "will not ordinarily be sufficient to overcome" the presumption of lawfulness. *NYSFA*, 157 F.4th at 245. For example, "[m]ere inconveniences" related to a preferred gun store location or "retail experience" "do not constitute such threat" to an individual's right to acquire firearms. *Id.* at 244–45; *see Gazzola*, 88 F.4th at 197–98 ("[G]un buyers have no right to have a gun store in a particular location . . . [n]or a right to travel only short distances or receive a certain type of retail experience") (internal quotation marks omitted). "[C]onsequences that are part and parcel of ordinary regulatory measures—such as reasonable processing times and the hassle of filling out paperwork—generally will not meaningfully impair one's ability to acquire arms," either. *NYSFA*, 157 F.4th at 245. In contrast, the Second Circuit has cited a commercial sale regulation "put toward abusive ends," a lengthy processing delay on a firearm permit, an exorbitant fee, and a ban on the purchase of more than one firearm in a thirty-day period, as examples of regulations that may impose a "substantial burden" sufficient to constitute a meaningful constraint on an individual's right to bear arms. *Id*. at 245–247 (internal quotation marks omitted) (citing inter alia *Nguyen v. Bonta*, 140 F.4th 1237, 1242 (9th Cir. 2025)).

### A.    Ammunition Background Check

Plaintiffs allege that New York's imposition of a background check on ammunition sales, violates the Second Amendment," (Dkt. No. 1, ¶ 216 (alleging that "[h]istorically, there has not been an ammunition background check")), and assert the cost will drive them out of business, (*id.* ¶ 215). Defendants assert that the ammunition background check provisions do not implicate

9

the Second Amendment and that Plaintiffs' claim therefore fails under step one of *Bruen*. (Dkt. No. 144-22, at 14–26). Plaintiffs oppose dismissal. (Dkt. No. 152, at 38–43).[5]

### 1.    *NYSFA v. James*

Defendants argue that *NYSFA*, where the Second Circuit recently found the plaintiffs were unlikely to succeed in their Second Amendment challenge to New York's ammunition background check requirements, forecloses Plaintiffs' challenge in this case. (Dkt. No. 144-2, at 14). While the ammunition background check is a central issue in both *NYSFA* and the present case, because the two cases involve different aspects of the regime, *NYSFA* does not automatically necessitate dismissal. *Compare NYSFA*, 157 F.4th 232 (challenging, as violating the Second Amendment, the delay in purchase caused by a background check, the $2.50 fee, and the requirement that ammunition sellers be licensed by the state), *with* Dkt. No. 1, ¶¶ 216–17 (challenging the ammunition background check in general and ammunition seller recordkeeping requirements). However, the framework the Second Circuit utilized in *NYSFA* is equally applicable here.

---

[5] Much of Plaintiffs' brief concerns the implementation of the background check system, which occurred after the filing of the original complaint, and references facts outside the complaint. (*See*, *e.g.*, Dkt. No. 152, at 41 (asserting that "responses [to ammunition background checks] vary and have little actual meaning," that "[a]t least one Dealer received additional remarks such as 'No DQs,' 'No remarks approved'" and that "[d]ealers have received denials on ammunition purchases by persons with concealed carry licenses and/or SAR license 'endorsements' or 'amendments'") (internal citations omitted)). The Court declines to consider these facts or the corresponding arguments to the extent they fall outside the Complaint and confines its review to the Complaint and the claims raised therein. Further, the Court declines to consider these new factual assertions as a basis for amendment or supplementation of the Complaint. This case has been pending for more than three years and Plaintiffs have had more than one opportunity to seek amendment.  Plaintiffs previously moved to amend the complaint, but as their motion failed to comply with the Local Rules, the Court denied the motion without prejudice to renewal and directed Plaintiffs to file a letter brief "describing each cause of action they seek to bring . . . and the legal basis for each cause of action." (Dkt. No. 136, at 41–43). Plaintiffs filed a letter brief, (Dkt. No. 137), but as they failed to identify any additional facts in support of their original claims, the Court found amendment would be futile, (Dkt. No. 143). However, Plaintiffs' letter brief also indicated that they sought to challenge allegedly unconstitutional enforcement activities that had occurred *following* the filing of the original complaint. (Dkt. No. 137). The Court therefore considered whether to permit the filing of a supplemental complaint but denied the request because the factual allegations Plaintiffs outlined in their brief were "vague and wholly untethered to any individual Plaintiff." (Dkt. No. 143).

10

In *NYSFA*, at the first step of the *Bruen* analysis, the Circuit found that because "New York's [ammunition] background check regime" was "a 'commercial sale regulation' that imposes 'conditions and qualifications' on the ammunition retailer," it concerned "ancillary," as opposed to "individual" conduct, and that the plaintiffs were therefore required to show that the provisions at issue "meaningfully constrain[ed] an individual's right to 'keep' and 'bear' arms." *NYSFA*, 157 F.4th at 244–46 (quoting *Vereen*, 152 F.4th at 97). The Circuit rejected the plaintiffs' facial challenge to the delay allegedly caused by the background check, explaining that because the "system is designed to return a 'proceed' response immediately for those who are not disqualified from purchasing ammunition, there are at least some circumstances in which the delay caused by the background check process is *de minimis*." *Id.* at 246 (internal citation and quotation marks omitted). It explained that because "'a short delay does not violate an individual's Second Amendment rights,' so as to rebut the presumptive validity of a challenged law," the Second Amendment was not implicated, and the plaintiffs were therefore unlikely to succeed on their facial challenge. *Id.* (quoting *Giambalvo v. Suffolk Cnty.*, 155 F.4th 163, 183–84 (2d Cir. 2025)). The Circuit also rejected the plaintiffs' as-applied argument—that the one-day delay due to a downed background check system violated the Second Amendment—for the same reasons. *Id.* at 247 (explaining that "the modest delays reflected in the present record do not meaningfully constrain Plaintiffs' ability to 'keep' or 'bear' arms.").

The Circuit found the plaintiffs' second argument—that the $2.50 fee was a meaningful constraint—failed as a matter of law. *Id.* at 248. It explained that because the statute imposed the fee on the seller, "not on purchasers like the individual plaintiffs," the fee "would have no impact whatsoever (not even a marginal or incremental one) on the purchaser's Second Amendment rights." *Id.* The Circuit explained that in order "to facially challenge a fee imposed on the

11

retailer, a purchaser-plaintiff must show that, at a minimum, *all* retailers pass the fee onto the consumer." *Id.* And as the plaintiffs had alleged "only that, 'on information and belief,' licensed dealers are passing the fee onto the purchasers" and offered only "anecdotal evidence that some retailers are passing the fee onto the purchasers" and had otherwise failed to submit any evidence or "articulate plausible factual allegations supporting the contention that every seller passes this fee onto the purchaser," the Circuit found the plaintiffs were unlikely to succeed on their facial challenge to the fee.[6] *Id.*

The Circuit also rejected the plaintiffs' third argument—that the provisions requiring sellers of ammunition to be licensed by the state meaningfully constrained their Second Amendment rights. *Id.* at 249. The Circuit acknowledged that in *Gazzola*, it had "quoted the Tennessee Supreme Court's observation that the right to keep arms involves, among other rights, 'the right to purchase *and provide* ammunition suitable for such arms.'" *Id.* at 249 (citing *Gazzola*, 88 F.4th at 196 (quoting *Andrews v. State*, 50 Tenn. 165, 178 (1871)). It stated, however, that "in doing so, [it] did not suggest that there is a separate right to sell ammunition under the Second Amendment," and that it had, instead, "quoted that passage for the more general proposition that the government cannot effectively 'circumvent' the Second Amendment's prohibitions by targeting ancillary rights." *Id.* (quoting *Gazzola,* 88 F.4th at 195–96). The Circuit therefore found "that the proposed course of conduct—to sell ammunition without first registering with the Superintendent—is not conduct independently covered by the Second Amendment's text." *Id.* Further finding there was "no evidence . . . that Plaintiffs lack easy access to licensed or registered ammunition sellers" it concluded the plaintiffs were unlikely

---

[6] The Second Circuit found that even if the plaintiffs were able to establish that sellers were passing the fee onto purchaser, they were unlikely to succeed on an as-applied challenge. *See NYSFA*, 157 F.4th at 249 ("Plaintiffs submit no evidence, nor seriously contend, that the $2.50 fee is exorbitant or prohibitively expensive.").

to succeed on their claim that the "licensing provisions meaningfully constrain a purchaser's right to keep and bear arms." *Id.* With these considerations in mind, the Court turns to Plaintiffs' arguments.

### 2.    General Challenge to Ammunition Background Check

"A facial constitutional challenge is the 'most difficult challenge to mount successfully, because it requires a [plaintiff] to establish that no set of circumstances exists under which the [challenged provision] would be valid.'" *NYSFA*, 157 F.4th at 246 (quoting *United States v. Rahimi*, 602 U.S. 680, 693 (2024)). In order to prevail, "the [state] need only demonstrate that [the challenged provision] is constitutional in some of its applications." *Id.* (quoting *Rahimi*, 602 U.S. at 693). New York's background check regime is no doubt a "commercial sale regulation" that imposes "conditions and qualifications" on the ammunition retailer and purchaser. *NYSFA*, 157 F.4th at 246 (quoting *Vereen*, 152 F.4th at 97). In general, courts have identified background checks as a "presumptively lawful regulatory measure" in the commercial sale of ammunition and firearms. *Heller*, 554 U.S. at 624–25 & n.26; *see also Giambalvo*, 155 F.4th at 181, 184 (noting that firearm safety courses and background checks are presumptively constitutional).

Here, the Complaint offers no facts that would allow a plausible inference that New York's ammunition background check regime impairs any individual's right to "keep" or "bear" arms so as to rebut the presumptive lawfulness of New York's ammunition background check regime. In their briefing, Plaintiffs assert, among other things, that: the new provisions contain "no legal metric for disqualification from an ammunition purchase"; there is "no definition (or limit) of the 'databases' trolled for a record that may relate to said unspecified disqualifiers"; and the "NYSP did not disclose the name of their external software vendor" or whether a denial that is the result of "automated programming is audited by a human person." (Dkt. No. 152, at 38–40). None of these assertions suggest a basis for finding an impairment on an individual's right

13

to purchase ammunition. Plaintiffs' argument that the statutory scheme lacks disqualifiers is without merit. Section 400.03(5) specifically references 18 U.S.C. § 922(g) which states that "[i]t shall be unlawful for" an individual in certain prohibited categories, including, among others, an individual who has been convicted of a felony, "is a fugitive," or "is an unlawful user of or addicted to any controlled substance,"  to possess "any firearm or ammunition." 18 U.S.C. § 922(g)(1)–(9). Plaintiffs' arguments regarding software vendors and audits lack any factual connection to the allegations in the Complaint.

To the extent Plaintiffs assert that the cost of implementing the background check "will drive them out-of-business" and ultimately prohibit them "from offering the very firearm that is protected by the Second Amendment," (Dkt. No. 1, ¶ 215), they proffer no facts from which to draw a plausible inference that such costs will impair their businesses to the point of closure, or, indeed, to any degree. The Court therefore finds Plaintiffs fail to plausibly allege that the ammunition background check requirement will meaningfully constrain the individual right to "keep" or "bear" arms.

### 3.     Recordkeeping Requirement

Plaintiffs allege that having to manually create and maintain an ammunition sales record containing the information specified in Section 400.003(2), is a significant burden on "Plaintiff and employee time." (Dkt. No. 160, ¶ 289). Each record must include "the date, name, age, occupation and residence of any person . . . to whom ammunition is delivered, and the amount, calibre, manufacturer's name and serial number" of such ammunition. N.Y. Penal Law § 400.03(2). Plaintiffs identify no facts in the Complaint that would allow a plausible inference that these administrative tasks are so burdensome, that implementation would lead to closure of any firearms retailer or impair the sale of ammunition to any purchaser. *NYSFA*, 157 F.4th at 245 (observing that "consequences that are part and parcel of ordinary regulatory measures—such as

reasonable processing times and the hassle of filling out paperwork—generally will not meaningfully impair one's ability to acquire arms"). Thus, the Court finds the Complaint fails to plausibly allege that the recordkeeping requirements meaningfully constrain the individual right to "keep" or "bear" arms.

### B.    Semiautomatic Rifle License

Plaintiffs assert that since September 4, 2022, the effective date of the provisions requiring a license to purchase a semiautomatic rifle, they "have been unable to engage in commerce of semi-automatic rifles" and their "sales of semiautomatic rifles have plummeted" "and ground to a near halt" "because of the confusion created by the Defendants around the new laws." (Dkt. No. 1, ¶ 160(g)–(h), (k)). Specifically, Plaintiffs allege that: (1) Section 400.00(2), titled "Types of licenses," does not provide any "licensing criteria" or "process" for obtaining a semiautomatic rifle license, (*id.* ¶ 160(f)); (2) the license application the New York State Police created, which is titled "Pistol/Revolver License Amendment and Semi-Automatic Rifle License Amendment," is confusing because "[a]n 'amendment' contemplates an original license already issued to an individual" and is "separately dealt with under NY Pen § 400.00(9)," (*id.* ¶ 160(b)); (3) the "Frequent Questions & Answers" document published by the New York State Police and DCJS, which says that "[e]xisting firearm license holders can add a Semi-Automatic Rifle to their firearm license through their local licensing officer," "appears to be a wrongful instruction" because the new laws "clearly contemplate that a *unique* SAR license will issue," (*id.* ¶ 160(e)(i) (emphasis added) (citing N.Y. Penal Law §§ 400.00(1) and (6)); and (4) while some counties "are offering to add semi-automatic rifles to . . . concealed carry permit[s]," Plaintiffs "are unaware of any county licensing officer that is offering a separate SAR license to individuals without concealed carry permits," (*id.* ¶ 160(i)). Plaintiffs are "refusing to sell semi-automatic rifles" to individuals who obtained licenses through an add-on to their concealed carry permits

15

because they "believe this violates the letter, if not the spirit, of the new laws." (*Id.* ¶ 160).

Plaintiffs argue that the semiautomatic rifle licensing provisions have the effect of a categorical

prohibition on an "entire class of arms." (Dkt. No. 152, at 13 (quoting *Heller*, 554 U.S. at 628)).

Defendants seek dismissal on the grounds that "Plaintiff's Complaint does not attack any

particular aspect of the Semiautomatic Rifle Law as unconstitutional" and to the extent Plaintiffs

contend that no licenses have been issued or that "regulatory confusion has prevented the sales of

semiautomatic rifles, those assertions are not well-pled." (Dkt. No. 144-22, at 27). In their

opposition, Plaintiffs reiterate their contention "that there is no statewide, uniform

[semiautomatic rifle] license" and request "a permanent injunction against enforcement."[7] (Dkt.

No. 152, at 44).

Plaintiffs assert that Section 400.00(2), titled "Types of licenses," does not provide any

"process" or "licensing criteria" for obtaining a semiautomatic rifle license. (Dkt. No. 1, ¶

160(f)). However, this appears to be an objection regarding *where* the process and criteria are

located because section 400.00(3), which is titled "Applications," addresses the process:

applications for a semiautomatic rifle license "shall be made and renewed . . . to the licensing

officer in the city or county" of the applicant's residence and details the information that must be

included in the application, *see* N.Y. Penal Law § 400.00(3)(a) ("An application shall state the

full name, date of birth, residence, present occupation . . . , whether or not he or she is a citizen

of the United States, whether or not he or she complies with each requirement for eligibility

---

[7] Plaintiffs also assert that the New York State Police "is approving county-level amendments on new CCPs and onto existing CCPs" and published a semiautomatic rifle licensing form that is "printed on the same form that is used for the CCP application." (Dkt. No. 152, at 44). Plaintiffs point out that although New York's concealed carry permit requires a training course, the new laws do "not impose the CCP requirements onto those who want to purchase an SAR." (*Id.*). Plaintiffs also refer to "coupons," which apparently are required for "each addition of a requisite firearm to the license and off the license," and state that although a "P-12 form that is required to be sent by a dealer to the New York State Police upon the sale of a handgun" a P-12 form is not required for the sale of a semiautomatic rifle. (*Id.* at 44–45). The relevance of these assertions, which constitute the majority of Plaintiffs' opposition to Defendants' motion, is not clear to the Court and Plaintiffs offer no explanation or legal analysis. (*See id.*).

16

specified in [New York Penal Law 400.00(1)] and such other facts as may be required to show the good character, competency and integrity of each person or individual signing the application."), and Section 400.00(1) outlines the criteria an applicant must satisfy to obtain a semiautomatic rifle license, *see* N.Y. Penal Law § 400.00(1) (a)–(m). Plaintiffs do not otherwise challenge the constitutionality of this provision, thus the Court finds they have failed to allege that the process or criteria for a semiautomatic rifle license are so confusing or burdensome to overcome the presumption that "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful regulatory measures," *Heller*, 554 U.S. at 626–27 & n.26. *See NYSFA*, 157 F.4th at 245 (explaining that "modest administrative burdens that naturally follow" from regulatory measures "will not ordinarily be sufficient to overcome that presumption").

The remainder of Plaintiffs' challenge to the semiautomatic rifle licensing provisions concerns the form of the licenses that are being issued (as add-ons to the concealed carry permits) and the confusion resulting from different licensing practices by different counties as a result of NYSP's failure to create a unique semiautomatic rifle license.[8] Although Plaintiffs alleged in the Complaint that they were refusing to sell semiautomatic rifles when presented with licenses in a form they believed did not comply with Section 400.00, Plaintiffs do not allege that licenses are not being issued or that the licensing scheme has prevented any individual who obtained a license (even one in an improper form) from purchasing a semiautomatic rifle elsewhere in the state. *See NYSFA*, 157 F.4th at 248 (finding facial challenge to fee provision failed where there was no allegation or evidence that provision impacted purchasers of

---

[8] Plaintiffs do not appear to be alone in their confusion. *See McGregor v. Suffolk Cnty.*, 690 F. Supp. 3d 147, 150 & n.1 (E.D.N.Y. 2023) (observing that "[i]n practice, the administrative shortcut of adding a rifle endorsement to a pistol license has led to some confusion" and noting the plaintiffs' contention that at least one county "considers pistol licenses" sufficient "to purchase rifles").

ammunition and where the plaintiffs offered "anecdotal evidence that some retailers are passing the fee onto the purchaser"); *see also Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 680 (9th Cir. 2017) (en banc) ("[T]he Second Amendment does not elevate convenience and preference over all other considerations."). Nor have Plaintiffs pled any "factual content" to support their otherwise conclusory allegations that their sales have "plummeted" and "ground to a near halt," such as the number of semiautomatic rifles they keep in inventory, the number they sold prior to the effective date of the licensing provisions compared to the number they sold after. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice (quoting T*wombly*, 550 U.S. at 557)). Thus, the Court concludes that Plaintiffs fail to plausibly allege that the administrative burdens of the semiautomatic licensing provisions in Section 400.00 constitute meaningful restraint on any individual's right to keep or bear arms.

Accordingly, as Plaintiffs have failed to allege, under the first step of the *Bruen* analysis, "that any of the challenged provisions—individually or collectively—meaningfully constrain an individual's right to keep and bear arms so as to implicate the plain text of the Second Amendment," the Court does not "engage in the historical analysis at step two." *NYSFA*, 157 F.4th at 249–50. Defendants' motion for judgment on the pleadings is therefore granted.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion for judgment on the pleadings (Dkt. No. 144) is **GRANTED**; and it is further

**ORDERED** that the Complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk is directed to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

Dated: <u>March 24, 2026</u>
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge